## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MORTON LIPETZ and EVELYN JEAN LIPETZ, Individually And On Behalf of All Others Similarly Situated | ) ) ) | Case No. 1:08-CV-06171-RJS |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) ) | |
| WACHOVIA CORPORATION, G. KENNEDY THOMPSON and THOMAS J. WURTZ, | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

## MEMORANUM OF LAW IN SUPPORT
## OF THE UNION PENSION FUND GROUP'S MOTION FOR
## APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS
## SELECTION OF COUNSEL AS LEAD COUNSEL FOR THE CLASS

Marc I. Gross
Fei-Lu Qian
**POMERANTZ HAUDEK BLOCK
   GROSSMAN & GROSS LLP**
100 Park Avenue
New York, New York 10017
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

Patrick V. Dahlstrom
**POMERANTZ HAUDEK BLOCK
   GROSSMAN & GROSS LLP**
One North La Salle Street, Suite 2225
Chicago, Illinois 60602
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

**Attorneys for the Union Pension Fund Group**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ..................................................................... 3

ARGUMENT ................................................................................................................................. 7

I.     THE UNION PENSION FUND GROUP SHOULD BE APPOINTED
      LEAD PLAINTIFF

     A.     The Union Pension Fund Group Is Willing to Serve as Class
            Representative ....................................................................................................... 7

     B.     The Union Pension fund Group Has the Largest Financial
            Interest in the Action ............................................................................................ 8

     C.     The Union Pension Fund Group Satisfies the Requirements of
            Rule 23 of the Federal Rules of Civil Procedure .................................................. 9

     D.     The Union Pension Fund Group Fairly and Adequately Represents
            the Interests of the class and Are Not Subject to Unique Defenses ...................... 11

II.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE
      APPROVED .................................................................................................................... 11

CONCLUSION ............................................................................................................................. 12

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re Donkenny, Inc. Sec. Litigation,*
   171 F.R.D. 156 (S.D.N.Y. 1997) ............................................................................................9

*Fischler v. Amsouth Bancorporation,*
   176 F.R.D. 583 (M.D. Fla. 1997)..........................................................................................10

*Gluck v. Cellstar Corp.,*
   976 F. Supp. 542 (N.D. Tex. 1997) .......................................................................................10

*Greebel v. FTP Software,*
   939 F. Supp. 57 (D. Mass. 1996) ..........................................................................................10

*Lax v. First Merchants Acceptance Corp.,*
   1997 U.S. Dist. LEXIS 11866, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ...........................9

*In re McKesson HBOC, Inc. Sec. Litigation,*
   97 F. Supp. 993 (N.D. Cal. 1999).............................................................................................9

*In re Olsten Corp. Sec. Litigation,*
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...................................................................................9, 10

*In re Oxford Health Plans, Inc. Sec. Litigation,*
   182 F.R.D. 42 (S.D.N.Y. 1998) .............................................................................................10

### DOCKETED CASES

*Bristol County Retirement System v. Wachovia Corp., et al.,*
   No. 3:08-cv-2844-SC .............................................................................................................6, 7

### STATUTES

15 U.S.C.
   § 78u-4(a)(3)(A)........................................................................................................................6
   § 78u-4(a)(3)(B)(i) .................................................................................................................1, 7
   § 78u-4(a)(3)(B)(ii)...................................................................................................................7
   § 78u-4(a)(3)(B)(iii)...............................................................................................................7, 9
   § 78u-4(a)(3)(B)(iii)(I)...........................................................................................................2, 11
   § 78u-4(a)(3)(B)(iii)(I)(bb) .......................................................................................................9
   § 78u-4(a)(3)(B)(iii)(II)(aa) .....................................................................................................11
   § 78u-4(a)(3)(B)(v) ..................................................................................................................11

The Iron Workers Locals #40, 361 & 417 Union Security Funds ("Iron Workers #40"); Iron Workers Local #580 Pension Fund ("Iron Workers #580"); Iron Workers District Council of Western New York & Vicinity Pension Plan ("Iron Workers District Council"); Iron Workers Local 12 Pension Fund ("Iron Workers Local 12"); and Local 295/Local 851 IBT Employer Group Pension Trust Fund ("Local 295/Local 851") (collectively the "Union Pension Fund Group"), respectfully submits this memorandum in support of its motion to be appointed as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Act of 1995 (the "PSLRA"), and for approval of their selection of the law firm of Pomerantz Haudek Block Grossman & Gross LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

This action arises from allegations concerning violations of the federal securities laws by Wachovia Corporation ("Wachovia" or the "Company") and certain of its officers (collectively "Defendants"). During the period from May 8, 2006 through June 6, 2008 (the "Class Period"), Defendants disseminated materially false and misleading information concerning the Company's operations and financial condition while suppressing or recklessly ignoring information known to them about the Company's business and finances, including understating loan loss reserves, thereby materially overstating reported earnings. Defendants' misstatements artificially inflated the price of Wachovia stock and caused substantial damage to the Company's investors.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court must

consider which movant has the "largest financial interest" in the relief sought by the Class in this litigation and whether there has been a *prima facie* showing that that movant is an adequate and typical class representative under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The Union Pension Fund Group believes that it is the "most adequate plaintiff" under the PSLRA to serve as Lead Plaintiff on behalf of investors in this action. As set forth in more detail below, the Union Pension Fund Group's significant financial interest in this matter is evidenced by, among other things, its collective loss on its members' investments in Wachovia stock during the Class Period. The Certifications required by the PSLRA setting forth the Union Pension Fund Group's transactions in Wachovia stock are attached hereto as Exhibits 3-7. Accompanying charts reflecting the calculations of the losses of the Union Pension Fund Group are attached hereto as Exhibit 8. These transactions and losses demonstrate that the Union Pension Fund Group has an extremely large financial interest in this matter.

Moreover, as sophisticated institutional investors with experience supervising counsel in complex securities litigation, the members of the Union Pension Fund Group are the prototypical lead plaintiffs envisioned by the PSLRA. These institutions share common goals of strengthening corporate governance to protect investors from fraudulent reporting by publicly traded companies such as Wachovia, as well as ensuring that the Class will benefit from the active involvement and supervision of class counsel. The members of the Union Pension Fund Group have agreed and are determined to work together to seek Lead Plaintiff appointment and prosecute the case on behalf of the Class. Thus, the Court can be assured that the appointment of the Union Pension Fund Group

2

will fulfill Congress' goal in enacting the PSLRA to empower institutional investors with a real financial interest in the litigation and that the Union Pension Fund Group will vigorously represent the interests of the Class.

## FACTUAL AND PROCEDURAL BACKGROUND

Wachovia, headquartered in Charlotte, North Carolina, is one of America's largest financial services providers. Throughout the Class Period, defendants knew, but concealed from the investing public that Wachovia's portfolio of collateralized debt obligations ("CDOs") contained billions of dollars worth of impaired and risky securities, many of which were backed by subprime mortgage loans; defendants failed to properly account for highly leveraged loans such as mortgage-backed securities; Wachovia had inadequate controls to prevent management from understating loan loss allowances by billions of dollars causing the Company's financial statements to be materially misstated; Wachovia had become heavily involved in the underwriting, sale and subsequent auctions of auction rate securities, which were much riskier than represented to investors in the securities and the municipalities which issued them; and Wachovia had been heavily involved in pay-option adjustable rate mortgages.

In addition, the Company knew that the 2006 acquisition of Golden West Financial Corp. ("Golden West"), a California-based mortgage lender for $24 billion had been a colossal mistake and would lead to large losses. After the acquisition, Golden West's Pick-A-Payment programs contributed substantially to Wachovia's overall results. As of December 31, 2007, Pick-A-Payment loans represented 46% of the Company's consumer loans, of which 59% were concentrated in California.

3

Golden West's main product was called "Pick-A-Payment" -- a loan program that allowed customers to choose from multiple payment options ranging from the standard 30 year payoff to a variety of option adjustable-rate mortgages ("option ARMs"). Such options include interest only payments, and a minimum payment that covered only a portion of the interest due, while adding the unpaid portion to the outstanding loan balance. The option ARMs were high risk, because in many cases the amount owed increased, rather than declined over time. As long as home prices rose, the risk of increased payments was mitigated. But, as the housing market began to level off in 2006, the risk rose significantly, as mortgage balances started to exceed the value of the homes.

As the housing bubble deflated, it was incumbent upon Wachovia to significantly increase its reserves (or allowances) for loan losses associated with these option ARMs. While the Company made some increases, it failed to make adequate and timely adjustments. Indeed, Wachovia admitted that its methodology for computing reserves was flawed. As a result, the Company's reported earnings were materially inflated.

During the Class Period, Wachovia misrepresented Golden West's underwriting standards as "conservative" and "low risk" with no exposure to the subprime market that was undermining many of its competitors. By way of example, on May 8, 2006, Defendant CEO G. Kennedy Thompson ("Thompson") characterized Golden West's Pick-A-Pay mortgage program as an "elegantly simple option ARM product that is low risk because of, number one, the product features of their option ARM and two, because of their rigorous underwriting process." Thompson also added, "They have no subprime origination at Golden West, so a very conservative portfolio."

4

On October 19, 2007, during an earnings conference call for the Company's third quarter 2007, Thompson admitted the Company's subprime exposure by disclosing that Wachovia had about "$300 million in losses on AAA subprime paper that was in trading desks or in inventory." Wachovia shares fell $1.74 following the disclosure of the news.

On February 28, 2008, the Company filed its annual report on a Form 10-K for the fiscal year 2007, ended December 31, 2007. In the annual report, the Company disclosed that the loan loss "provision expense in the first half of 2008 is likely to exceed 75 basis points of average net loans on an annualized basis." This is compared to sentiment in mid-January 2008 when the Company believed "provision expense in the first half of 2008 is expected to remain below 75 basis points of average net loans on an annualized basis." On this news, Wachovia shares fell $3.48 over the next two days.

On April 14, 2008, Wachovia shocked the market when it reported a loss of $350 million, or $0.20 per share, for the first quarter of 2008. The Company attributed the loss to a $2.8 billion increase in credit loss reserves, including $1.1 billion for "Pick-A-Pay."

The need to increase Pick-A-Pay reserves was attributed to Wachovia's adoption of a "refined reserve modeling" that resulted in "higher than expected loss factors on Pick-A-Pay;" and $2 billion in mark-to-market losses for mortgage backed securities, including a "$729 million loss on unfunded leverage finance commitments." The Company said that it expected additional net charge-offs and reserve building in its Pick-A-Pay Payment portfolio of $3.2-$3.8 billion in 2008 and $2.4-$2.8 billion in 2009. In reaction to the news, shares fell $2.26 or more than 8% and closed at $25.55.

On June 9, 2008, *BusinessWeek* published an article entitled "Wachovia: Golden West Wasn't Golden" reporting that "Wachovia could end up incurring losses of as much

as $11 billion on Golden West's $112 billion mortgage portfolio." It added that Golden West "took control of all mortgage lending" after the acquisition by Wachovia and "began pushing Wachovia's sales force to steer applicants into its signature 'Pick-A-Payment' loans." In so doing, "Golden West focused too much on appraisals and too little on verifying the income of assets of applicants." The disclosures in the *BusinessWeek* article caused Wachovia common shares to fall $1.24, and close at $18.89.

On June 6, 2008, the first securities class action against Wachovia, styled *Bristol County Retirement Sys. v. Wachovia Corp., et al.*, No. 3:08-cv-2844-SC, was filed in the Northern District of California. On June 9, 2008, counsel in that action published a notice on *Prime Newswire* informing investors of a class period of May 8, 2006 through April 11, 2008 and that the deadline to move for appointment as Lead Plaintiff is August 8, 2008. *See* attached hereto Exhibit 1. On August 6, 2008, counsel for the Plaintiff voluntarily dismissed the action.

On July 7, 2008, the above-captioned securities class action against Wachovia was filed in this District. On July 8, 2008, counsel for the plaintiff in this action published a notice in *Market Wire* informing investors to a Class Period of May 8, 2006 through June 6, 2008. *See* attached hereto Exhibit 2. The PSLRA permits any member of the class to move for appointment as Lead Plaintiff within 60 days of the first-published notice. *See* 15 U.S.C. § 78u-4(a)(3)(A). The Union Pension Fund Group has satisfied this requirement by making this motion.

6

## ARGUMENT

### I.    THE UNION PENSION FUND GROUP
### SHOULD BE APPOINTED LEAD PLAINTIFF

Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of

Lead Plaintiffs in class actions brought under the Exchange Act. The PSLRA directs

courts to consider any motion to serve as Lead Plaintiff filed by class members in

response to a  published notice of class action by the later of (i) 90 days after the date of

publication, or (ii) as soon as practicable after the Court decides any pending motion to

consolidate.  15 U.S.C. § 78u-4(a)(3)(B)(i) and (ii).

The PSLRA provides a "rebuttable presumption" that the most "adequate

plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in
> response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest
> financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the
> Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, the Union Pension Fund Group satisfies all three of these

criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the

Class and, therefore, should be appointed Lead Plaintiff for the Class.

### A.    The Union Pension Fund Group
### Is Willing to Serve as Class Representative

As mentioned above, on June 9, 2008, counsel in the first filed action against the

defendants, styled *Bristol County Retirement Sys. v. Wachovia Corp., et al.*, No. 3:08-cv-

2844-SC, caused a notice to be published pursuant to Sections 21D(a)(3)(A)(i) of the

PSLRA announcing that a securities class action had been filed against the defendants herein, and investors of Wachovia stock that they had until August 8, 2008, to file a motion to be appointed as Lead Plaintiff. *See* attached hereto Exhibit 1.

The Union Pension Fund Group has filed the instant motion pursuant to the Notice and has attached Certifications attesting that it is willing to serve as a Lead Plaintiff for the Class and is willing to provide testimonies at deposition and trial, if necessary. *See* attached hereto Exhibits 3-7. William Shuzman, Co-Counsel for Iron Workers #40 and Iron Workers #580, signed their Certifications and is authorized to litigate this case on behalf of Iron Workers #40 and Iron Workers #580 that suffered losses in their investments of Wachovia stock during the Class Period. Thomas G. Pryce signed Iron Workers District Council's Certification and is authorized to litigate this case on behalf of Iron Workers District Council that suffered losses in its investments of Wachovia stock during the Class Period. Garry M. Simmons, Trustee of Iron Workers Local 12 signed Iron Workers Local 12's Certification and is authorized to litigate this case on behalf of Iron Workers Local 12 that suffered losses in its investments of Wachovia stock during the Class Period. Neil J. Savasta signed Local 295/Local 851's Certification and is authorized to litigate this case on behalf of Local 295/Local 851 that suffered losses in its investments of Wachovia stock during the Class Period. Accordingly, the Union Pension Fund Group satisfies the first requirement to serve as Lead Plaintiff for the Class.

**B.    The Union Pension Fund Group Has**
**      The Largest Financial Interest in the Action**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial

8

interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see In re Donkenny, Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997).

As of the time of the filing of this motion, the Union Pension Fund Group believes that it has the largest financial interest of anyone in the relief sought by the Class. The Union Pension Fund Group purchased (1) 213,034 shares of Wachovia stock; (2) expended $9,022,540 for their shares of Wachovia stock and (3) retained 182,619 shares. Under Last-In-First-Out Methodology ("LIFO"), the Union Pension Fund Group suffered a loss of approximately $4,381,188 related to its transactions of Wachovia stock. Under First-In-First-Out ("FIFO") Methodology, the Union Pension Fund Group suffered a loss of approximately $5,149,246 related to its transactions of Wachovia stock. *See* attached hereto Exhibit 8. S*ee also In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 993 (N.D. Cal. 1999); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998); *Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). Because the Union Pension Fund Group possesses the largest financial interest in the outcome of this litigation, it may be presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

## C. The Union Pension Fund Group Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

9

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification -- a prima facie showing that the Movant satisfy the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60, 64 (D. Mass. 1996). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) and *Fischler v. Amsouth Bancorporation*, 176 F.R.D. 583 (M.D. Fla. 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998).

The Union Pension Fund Group fulfills all of the requirements of Rule 23. The Union Pension Fund Group shares substantially similar questions of law and fact with the members of the Class and their claims are typical of the members of the class. The Union Pension Fund Group and all members of the Class allege that defendants violated the Exchange Act by publicly disseminating a series of false and misleading statements concerning Wachovia. The Union Pension Fund Group, as did all of the member of the Class, purchased Wachovia stock during the Class Period at prices artificially inflated, maintained, or stabilized by Defendants' misrepresentations and omissions and were damaged thereby. These shared claims also satisfy the requirement that the claims of the representative parties be typical of the claims of the Class.

Thus, the close alignment of interests between the Union Pension Fund Group and other Class members, as well as the strong desire of the proposed Lead Plaintiff to prosecute this action on behalf of the Class, provide ample reasons to grant the Union Pension Fund Group's motion to serve as Lead Plaintiff of the Class.

**D.      The Union Pension Fund Group Fairly and Adequately Represents the Interests of the Class and Are Not Subject to Unique Defenses**

The presumption in favor of appointing the Union Pension Fund Group as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interest of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

The Union Pension Fund Group's ability and desire to fairly and adequately represent the Class have been discussed above. The Union Pension Fund Group is not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class. Accordingly, the Union Pension Fund Group should be appointed Lead Plaintiff for the Class.

**III.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

11

The Union Pension Fund Group has selected the law firm of Pomerantz Haudek Block Grossman & Gross LLP as Lead Counsel. The Pomerantz firm is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in the firm's resume. *See* attached hereto Exhibit 9. As a result of their extensive experience in litigation involving issues similar to those raised in this action, the Union Pension Fund Group's counsel has the skill and knowledge which will enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Union Pension Fund Group's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the Union Pension Fund Group respectfully requests the Court issue an Order (a) appointing the Union Pension Fund Group as Lead Plaintiff of the Class; (b) approving Pomerantz Haudek Block Grossman & Gross LLP as Lead Counsel; and (c) granting such other relief as the Court may deem to be just and proper.

Dated: August 8, 2008
       New York, New York

Respectfully submitted,

**POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS LLP**

/s Marc I. Gross
Marc I. Gross
Fei-Lu Qian
100 Park Avenue
New York, New York 10017
Telephone:   (212) 661-1100
Facsimile:    (212) 661-8665

12

**POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS LLP**
Patrick V. Dahlstrom
One North La Salle Street
Suite 2225
Chicago, Illinois 60602
Telephone:      (312) 377-1181
Facsimile:      (312) 377-1184

**POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS LLP**
Cheryl Hamer Mackell
1025 Connecticut Avenue, N.W.
Suite 1000
Washington, DC 20036
Telephone: (202) 327-5420
Facsimile: (202) 327-5422

**Attorneys for the Union Pension Fund
Group**

13

# Exhibit 1

PZM        Labaton Sucharow LLP Announces Filing of Securities Class Action
           Jun 9 2008  15:35:47

\*T
       Labaton Sucharow LLP Announces Filing of Securities Class
          Action Lawsuit Against Wachovia Corp. -- WB
\*T
NEW YORK, June 9, 2008 (PRIME NEWSWIRE) -- Labaton Sucharow LLP filed a
class action lawsuit on June 6, 2008 in the United States District
Court for the Northern District of California, on behalf of persons who
purchased the securities of Wachovia Corp. (NYSE:WB) ("Wachovia" or the
"Company") between May 8, 2006 and April 11, 2008, inclusive (the
"Class Period"). The complaint names Wachovia, G. Kennedy Thomson
(former CEO), Thomas J. Wurtz (CFO) and Donald K. Truslow (Chief Risk
Officer) as defendants (collectively, "Defendants"). The complaint
alleges that during the Class Period Defendants violated Sections 10(b)
and 20(a) of the Securities Exchange Act of 1934 by issuing various
materially false and misleading statements about Wachovia's financial
results and business operations, which had the effect of artificially
inflating the market price of the Company's securities.

You can view a copy of the complaint online at
http://www.labaton.com/en/cases/Newly-Filed-Cases.cfm or obtain it from
the Court. The case number is C-08-02844 SC, and the Judge presiding
over the case is the Honorable Samuel Conti.

In summary, the complaint alleges that Defendants misled investors by
falsely representing that Wachovia had strict and selective
underwriting and loan origination practices and a conservative lending
approach that set it apart from other lenders. Such reassurances were
repeated by defendants throughout the Class Period in order to
artificially support Wachovia's stock price in the midst of a weakening
mortgage market. In response to increased market concern with the
mortgage lending industry, and Wachovia's option ARMs in particular,
Wachovia falsely represented that its loan underwriting practices were
much better than at other banks and that this would allow it to prosper
while lenders with less exacting standards and procedures would fare
much worse. In reality, Wachovia's actual lending practices differed
materially from the description of those practices in statements made
to investors. The Company's ability to weather the deterioration in the
real estate and credit markets was grossly exaggerated by Defendants,
at precisely the worst time, when analysts began to ask tough
questions. The Company, moreover, had inadequate loan loss reserves and
falsely represented that its capital position was sufficient to fund
its dividend.

Shortly after last assuring the market of its liquidity, the strength
of its underwriting practices, and the adequacy of its reserves,
Wachovia reported a surprise quarterly loss, undertook emergency
measures to increase capital, and cut its dividend. On April 14, 2008,
before the open of ordinary trading, Wachovia reported a loss of $350
million, or $0.20 per share, for the first quarter of 2008. The Company
attributed the results to: (1) a $2.8 billion increase credit loss
reserves, including $1.1 billion specifically for "Pick-A-Pay" reserve
build, the lending program highly touted by the Company during the
Class Period. The need to increase Pick-A-Pay reserves was attributed
Copyright (c) 2008

PZM        Labaton Sucharow LLP Announces Filing of Securities Class Action
           Jun 9 2008  15:35:47
to Wachovia's adoption of a "refined reserve modeling" that resulted in
"higher than expected loss factors on Pick-a-Pay"; and (2) $2 billion
in mark-to-market losses for mortgage backed securities, including a
"$729 million loss on unfunded leveraged finance commitments." In order
to shore-up its capital, Wachovia announced the following steps: (1)
reduce the dividend 41% to $0.375; and (2) plan to raise capital by
$7-8 billion through public offerings.

In reaction to the news, shares fell from $27.81 to $25.55 (8.13%) on
abnormally high volume.

Plaintiff is represented by the law firm of Labaton Sucharow LLP, which
has been representing plaintiffs in securities class actions for over
40 years.

If you bought Wachovia securities between May 8, 2006 and April 11,
2008, inclusive, you may qualify to serve as Lead Plaintiff. Lead
Plaintiff papers must be filed with the court no later than August 8,
2008. If you would like to consider serving as lead plaintiff or have
any questions about the lawsuit, please contact one of our
representatives or Andrei V. Rado, Esq. of Labaton Sucharow, at
800-321-0476. A lead plaintiff is a court-appointed representative
party that acts on behalf of absent class members. You do not need to
be a lead plaintiff in order to share in any recovery that may result
from this litigation. You can share in a recovery as an absent class
member by filing out claim forms that will be made available at the
appropriate time.

More information on this and other class actions can be found on the
Class Action Newsline at www.primenewswire.com/ca

*T
-0-
CONTACT: Labaton Sucharow LLP
         Andrei V. Rado, Esq.
         800-321-0476
*T


Provider ID: 00144330
-0- Jun/09/2008 19:35 GMT

Copyright (c) 2008

# Exhibit 2

MWR          Law Offices of Brodsky & Smith, LLC Announces Expanded Class
             Jul 8 2008  10:37:21

Law Offices of Brodsky & Smith, LLC Announces Expanded Class Period
in Class Action Lawsuit Against Wachovia Corp.

BALA CYNWYD, PA -- (MARKET WIRE) -- 07/08/08 --  Law offices of
Brodsky & Smith, LLC announces that a class action lawsuit alleging
an expanded class period has been filed on behalf of all persons who
purchased the common stock of Wachovia Corp. ("Wachovia" or the
"Company") (NYSE: WB) between May 8, 2006 and June 6, 2008.  The
class action lawsuit was filed in the United States District Court
for the Southern District of New York.

The Complaint alleges that defendants violated federal securities
laws by issuing a series of material misrepresentations to the
market, thereby artificially inflating the price of Wachovia.

No class has yet been certified in the above action.  Until a class
is certified, you are not represented by counsel unless you retain
one.  If you are a Wachovia shareholder you have certain rights.  To
be a member of the class you need not take any action at this time,
and you may retain counsel of your choice.  If you want to discuss
your legal rights, you may e-mail or call the law office of Brodsky &
Smith, LLC who will, without obligation or cost to you, attempt to
answer your questions.  You may contact Evan J. Smith, Esquire or
Marc L. Ackerman, Esquire at Brodsky & Smith, LLC, Two Bala Plaza,
Suite 602, Bala Cynwyd, PA 19004, by e-mail at
clients@brodsky-smith.com, or by calling toll free 877-LEGAL-90.


Contact:
Evan J. Smith, Esquire
Marc L. Ackerman, Esquire
Brodsky & Smith, LLC
Email Contact
877-LEGAL-90
-0- Jul/08/2008 14:37 GMT

Copyright (c) 2008

# Exhibit 3

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

1.      I,        William Shuzman,                          make this

declaration on behalf of Iron Workers Locals #40, 361 & 417 Union Security Funds

pursuant to Section 21D(a)(2) of the Securities Exchange Act of 1934.

2.      I have reviewed the Complaint against Wachovia Corporation and authorize, if

necessary, the filing of a comparable Complaint on behalf of Iron Workers Locals #40,

361 & 417 Union Security Funds.

3.      Iron Workers Locals #40, 361 & 417 Union Security Funds did not purchase

Wachovia Corporation common stock at the direction of plaintiffs' counsel or in order to

participate in any private action arising under Title I of the Securities Exchange Act of

1934.

4.      Iron Workers Locals.#40, 361 & 417 Union Security Funds is willing to serve as a

representative party on behalf of a Class as set forth in the Complaint, including

providing testimony at deposition and trial, if necessary.  Iron Workers Locals #40, 361 &

417 Union Security Funds understands that the Court has the authority to select the most

adequate lead plaintiff in this action and that the firm of Pomerantz Haudek Block

Grossman & Gross LLP may exercise its discretion in determining whether to move on

behalf for appointment as lead plaintiff.

5.      Attached hereto as Exhibit A is a list of all Iron Workers Locals #40, 361 & 417

Union Security Funds transactions in Wachovia Corporation common stock during the

relevant period.

6.      During the three year period preceding the date on which this Certification is

signed, Iron Workers Locals #40, 361 & 417 Union Security Funds has not sought to

serve as a representative party on behalf of a class under the federal securities laws except

as follows:

                 Lead Plaintiff:  American Italian Pasta Company, 4:05-cv-00725-ODS
                                  W.D. Missouri

                 Juniper Networks, 2:06-cv-00349-RTR
                                  N.D. Cal

7.      Iron Workers Locals #40, 361 & 417 Union Security Funds agrees not to accept

any payment for serving as a representative party on behalf of the class as set forth in the

Complaint, beyond its pro rata share of any recovery, except such reasonable costs and

expenses directly relating to the representation of the class as ordered or approved by the

Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed___August 4, 2008___, at
             (Date)

       ___New York, NY___
          (City, State)

       (Signature)

William Shuzman – Fund Co-Counsel
    (Type or Print Name)

# Exhibit A

**WACHOVIA CORP**
**CLASS PERIOD:  MAY 08 2006 through JUNE 06 2008**
**Iron Workers Locals #40, 361 & 417 Union Security Funds**

| Trade Date | Trans | Shares | Price |
|---|---|---|---|
| 12/1/2006 | PUR | 480 | $54.0900 |
| 3/26/2007 | PUR | 2,880 | $56.4300 |
| 6/22/2007 | PUR | 2,900 | $52.4165 |
| 8/2/2007 | PUR | 5,260 | $46.7160 |
| 10/22/2007 | PUR | 29,030 | $46.2780 |
| 11/12/2007 | PUR | 1,820 | $42.0240 |
| 11/12/2007 | PUR | 3,490 | $42.0240 |
| 12/3/2007 | PUR | 3,270 | $42.1700 |
| 12/26/2007 | PUR | 5,030 | $38.9640 |
| 12/27/2007 | PUR | 17,970 | $38.4520 |
| 4/9/2008 | PUR | 16,460 | $26.9060 |

# Exhibit 4

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

1.  I,                    William Shuzman                    make this

declaration on behalf of Iron Workers Local #580 Pension Fund pursuant to Section

21D(a)(2) of the Securities Exchange Act of 1934.

2.      I have reviewed the Complaint against Wachovia Corporation and authorize, if

necessary, the filing of a comparable Complaint on behalf of Iron Workers Local #580

Pension Fund.

3.      Iron Workers Local #580 Pension Fund did not purchase Wachovia Corporation

common stock at the direction of plaintiffs' counsel or in order to participate in any

private action arising under Title I of the Securities Exchange Act of 1934.

4.      Iron Workers Local #580 Pension Fund is willing to serve as a representative

party on behalf of a Class as set forth in the Complaint, including providing testimony at

deposition and trial, if necessary. Iron Workers Local #580 Pension Fund understands

that the Court has the authority to select the most adequate lead plaintiff in this action and

that the firm of Pomerantz Haudek Block Grossman & Gross LLP may exercise its

discretion in determining whether to move on behalf for appointment as lead plaintiff.

5.      Attached hereto as Exhibit A is a list of all Iron Workers Local #580 Pension

Fund transactions in Wachovia Corporation common stock during the relevant period.

6.     During the three year period preceding the date on which this Certification is signed, Iron Workers Local #580 Pension Fund has not sought to serve as a representative party on behalf of a class under the federal securities laws except as follows:

> Lead Plaintiff: Symbol Technologies, Inc., 2:05-cv-03923-DHR-AKT, E.D. NY
>
> Bradley Pharmaceuticals, Inc., 2:04-cv-01219 PGS-RJH, District of New Jersey
>
> Par Pharmaceutical, 2:06-cv-03226-PGS-RJH, District of New Jersey
>
> Juniper Networks, 2:06-cv-00349-RTR, N.D. Cal.

7.     Iron Workers Local #580 Pension Fund agrees not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond its pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed ____7/25/2008____, at       New York, N.Y.
                 (Date)                 (City, State)

                                      _____
                                              (Signature)

                       William Shuzman, Esq. - Fund Co-Counsel
                                  (Type or Print Name)

# Exhibit A

**WACHOVIA CORP**
**CLASS PERIOD: MAY 08 2006 through JUNE 06 2008**
**Iron Workers Local #580 Pension Fund**

| Trade Date | Trans | Shares | Price |
|---|---|---|---|
| 5/25/2006 | SLD | (5,500) | $53.3000 |
| 5/25/2006 | SLD | (1,900) | $53.3000 |
| 10/4/2006 | PUR | 6,463 | $55.7800 |
| 10/4/2006 | PUR | 1,681 | $55.7800 |
| 12/1/2006 | PUR | 770 | $54.1300 |
| 12/13/2006 | PUR | 1,350 | $56.1900 |
| 12/15/2006 | SLD | (2,115) | $57.1500 |
| 5/21/2007 | PUR | 2,830 | $56.5700 |
| 6/1/2007 | PUR | 700 | $54.5622 |
| 6/1/2007 | PUR | 1,100 | $54.5622 |
| 7/27/2007 | PUR | 1,800 | $48.2370 |
| 7/27/2007 | PUR | 625 | $48.2370 |
| 10/1/2007 | PUR | 9,010 | $51.0170 |
| 10/16/2007 | PUR | 500 | $48.8625 |
| 10/16/2007 | PUR | 1,250 | $48.8500 |
| 10/22/2007 | PUR | 2,010 | $46.7510 |
| 11/12/2007 | PUR | 2,780 | $41.3330 |
| 12/19/2007 | PUR | 2,350 | $39.2200 |
| 12/31/2007 | PUR | 750 | $38.3400 |
| 3/19/2008 | PUR | 1,860 | $29.3300 |
| 4/7/2008 | PUR | 300 | $27.9100 |
| 4/14/2008 | PUR | 8,400 | $24.9140 |

# Exhibit 5

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

1.        I, Thomas G. Pryce        ,                    make this

declaration on behalf of Iron Workers District Council of Western New York & Vicinity

Pension Plan pursuant to Section 21D(a)(2) of the Securities Exchange Act of 1934.

2.        I have reviewed the Complaint against Wachovia Corporation and authorize, if

necessary, the filing of a comparable Complaint on behalf of Iron Workers District

Council of Western New York & Vicinity Pension Plan.

3.        Iron Workers District Council of Western New York & Vicinity Pension Plan did

not purchase Wachovia Corporation common stock at the direction of plaintiffs' counsel

or in order to participate in any private action arising under Title I of the Securities

Exchange Act of 1934.

4.        Iron Workers District Council of Western New York & Vicinity Pension Plan is

willing to serve as a representative party on behalf of a Class as set forth in the

Complaint, including providing testimony at deposition and trial, if necessary. Iron

Workers District Council of Western New York & Vicinity Pension Plan understands that

the Court has the authority to select the most adequate lead plaintiff in this action and that

the firm of Pomerantz Haudek Block Grossman & Gross LLP may exercise its discretion

in determining whether to move on behalf for appointment as lead plaintiff.

5.    Attached hereto as Exhibit A is a list of all Iron Workers District Council of

Western New York & Vicinity Pension Plan transactions in Wachovia Corporation

common stock during the relevant period.

6.    During the three year period preceding the date on which this Certification is

signed, Iron Workers District Council of Western New York & Vicinity Pension Plan has

not sought to serve as a representative party on behalf of a class under the federal

securities laws.

7.    Iron Workers District Council of Western New York & Vicinity Pension Plan

agrees not to accept any payment for serving as a representative party on behalf of the

class as set forth in the Complaint, beyond its pro rata share of any recovery, except such

reasonable costs and expenses directly relating to the representation of the class as

ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed _____ August 6, 2008 , at '    Niagara Falls, N.Y.
                    (Date)                              (City, State)

                                                      (Signature)

                                             Thomas G. Pryce
                                             (Type or Print Name)

# Exhibit A

**WACHOVIA CORP**
**CLASS PERIOD:  MAY 08 2006 through JUNE 06 2008**
**Iron Workers District Council of Western New York**
**& Vicinity Pension Plan**

| Trade Date | Trans | Shares | Price |
|---|---|---|---|
| 6/22/2007 | PUR | 10 | $52.5851 |
| 6/22/2007 | PUR | 3,310 | $52.5851 |
| 8/1/2007 | PUR | 140 | $46.5747 |
| 8/1/2007 | PUR | 10,800 | $46.5747 |
| 10/19/2007 | PUR | 14,260 | $46.7498 |
| 11/9/2007 | PUR | 7,870 | $41.1619 |
| 11/9/2007 | PUR | 60 | $41.1619 |
| 2/29/2008 | PUR | 70 | $31.6279 |
| 5/1/2008 | SLD | (31,900) | $30.3112 |
| 5/1/2008 | SLD | (220) | $30.3112 |

Sch_dc

# Exhibit 6

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

1.    I,    Garry M. Simmons ,    Trustee,                    make this
declaration on behalf of Iron Workers Local 12 Pension Fund pursuant to Section
21D(a)(2) of the Securities Exchange Act of 1934.

2.    I have reviewed the Complaint against Wachovia Corporation and authorize, if
necessary, the filing of a comparable Complaint on behalf of Iron Workers Local 12
Pension Fund.

3.    Iron Workers Local 12 Pension Fund did not purchase Wachovia Corporation
common stock at the direction of plaintiffs' counsel or in order to participate in any
private action arising under Title 1 of the Securities Exchange Act of 1934.

4.    Iron Workers Local 12 Pension Fund is willing to serve as a representative party
on behalf of a Class as set forth in the Complaint, including providing testimony at
deposition and trial, if necessary. Iron Workers Local 12 Pension Fund understands that
the Court has the authority to select the most adequate lead plaintiff in this action and that
the firm of Pomerantz Haudek Block Grossman & Gross LLP may exercise its discretion
in determining whether to move on behalf for appointment as lead plaintiff.

5.    Attached hereto as Exhibit A is a list of all Iron Workers Local 12 Pension Fund

transactions in Wachovia Corporation common stock during the relevant period.

6.      During the three year period preceding the date on which this Certification is signed, Iron Workers Local 12 Pension Fund has not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      Iron Workers Local 12 Pension Fund agrees not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond its pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed _August_ _6_ ,2008 , at    _Albany, New York_
              (Date)                        (City, State)

                                        _Garry M. Simmons_
                                          (Signature)

                                        Garry M. Simmons, Trustee
                                        (Type or Print Name)

# Exhibit A

**WACHOVIA CORP**
**CLASS PERIOD: MAY 08 2006 through JUNE 06 2008**
**Iron Workers Local 12 Pension Fund**

| Trade Date | Trans | Shares | Price |
|---|---|---|---|
| 6/27/2006 | SLD | (900) | $52.8387 |
| 7/11/2006 | SLD | (1,300) | $53.8800 |
| 7/14/2006 | PUR | 1,825 | $52.9450 |
| 12/1/2006 | PUR | 530 | $54.0590 |
| 12/1/2006 | PUR | 60 | $54.0594 |
| 8/1/2007 | PUR | 520 | $46.6912 |
| 8/3/2007 | PUR | 5,620 | $46.5690 |
| 11/9/2007 | PUR | 170 | $41.1619 |
| 11/9/2007 | PUR | 1,570 | $41.1619 |
| 1/28/2008 | SLD | (6,330) | $37.3311 |
| 2/29/2008 | PUR | 1,480 | $31.6279 |
| 2/29/2008 | PUR | 310 | $31.6279 |
| 5/2/2008 | SLD | (3,460) | $30.6610 |
| 5/2/2008 | SLD | (870) | $30.6610 |

Exhibit 7

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

1.      I, *NEIL J. SAVASTA*,                                    make this

declaration on behalf of Local 295/ Local 851 IBT Employer Group Pension Trust Fund

pursuant to Section 21D(a)(2) of the Securities Exchange Act of 1934.

2.      I have reviewed the Complaint against Wachovia Corporation and authorize, if

necessary, the filing of a comparable Complaint on behalf of Local 295/ Local 851 IBT

Employer Group Pension Trust Fund.

3.      Local 295/ Local 851 IBT Employer Group Pension Trust Fund did not purchase

Wachovia Corporation common stock at the direction of plaintiffs' counsel or in order to

participate in any private action arising under Title I of the Securities Exchange Act of

1934.

4.      Local 295/ Local 851 IBT Employer Group Pension Trust Fund is willing to serve

as a representative party on behalf of a Class as set forth in the Complaint, including

providing testimony at deposition and trial, if necessary. Local 295/ Local 851 IBT

Employer Group Pension Trust Fund understands that the Court has the authority to select

the most adequate lead plaintiff in this action and that the firm of Pomerantz Haudek

Block Grossman & Gross LLP may exercise its discretion in determining whether to

move on behalf for appointment as lead plaintiff.

5.      Attached hereto as Exhibit A is a list of all Local 295/ Local 851 IBT Employer

Group Pension Trust Fund transactions in Wachovia Corporation common stock during

the relevant period.

6.      During the three year period preceding the date on which this Certification is

signed, Local 295/ Local 851 IBT Employer Group Pension Trust Fund has not sought to

serve as a representative party on behalf of a class under the federal securities laws except

as follows:

> • MoneyGram International, Inc., 0:08-cv-00883-DSD-JJG,
>   D. Minnesota

7.      Local 295/ Local 851 IBT Employer Group Pension Trust Fund agrees not to

accept any payment for serving as a representative party on behalf of the class as set forth

in the Complaint, beyond its pro rata share of any recovery, except such reasonable costs

and expenses directly relating to the representation of the class as ordered or approved by

the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed    8/7/08            , at     New York  NY
                (Date)                          (City, State)

                                       _____
                                              (Signature)

                                       Neil J. Savasta
                                        (Type or Print Name)

# Exhibit A

**WACHOVIA CORP**
**CLASS PERIOD: MAY 08 2006 through JUNE 06 2008**
**Local 295/Local 851 IBT Employer Group**
**Pension Trust Fund**

| Trade Date | Trans | Shares | Price |
|---|---|---|---|
| 10/8/2007 | PUR | 210 | $51.4500 |
| 10/19/2007 | PUR | 6,200 | $46.3750 |
| 10/24/2007 | PUR | 3,700 | $45.4000 |
| 11/6/2007 | SLD | (210) | $42.7789 |
| 11/19/2007 | PUR | 4,700 | $37.8200 |
| 12/6/2007 | SLD | (3,700) | $43.2750 |
| 1/4/2008 | PUR | 1,900 | $35.5180 |
| 1/9/2008 | PUR | 37 | $33.5300 |
| 1/9/2008 | PUR | 63 | $33.4880 |
| 2/13/2008 | PUR | 4,857 | $34.7400 |
| 2/13/2008 | PUR | 34 | $34.6020 |
| 2/13/2008 | PUR | 309 | $34.5190 |
| 3/4/2008 | PUR | 700 | $29.0700 |
| 3/17/2008 | PUR | 200 | $25.4200 |
| 3/17/2008 | PUR | 2,600 | $25.3740 |
| 3/17/2008 | PUR | 1,400 | $25.2790 |
| 3/17/2008 | PUR | 1,400 | $25.1850 |
| 3/20/2008 | PUR | 100 | $30.9900 |
| 4/8/2008 | PUR | 900 | $27.7450 |
| 6/4/2008 | SLD | (3,998) | $21.7640 |
| 6/4/2008 | SLD | (202) | $21.6850 |

Exhibit 8

**WACHOVIA CORP**
**CLASS PERIOD: MAY 08 2006 through JUNE 06 2008**

| Plaintiff | Purchase Shares | Amount | Sold Shares | Amount | Shares Retained | 60-Day* Mean Price $15.9681 Estimated Value | Estimated Gain(Loss) | FIFO Shs Retained | FIFO Estimated Gain(Loss) | LIFO Estimated Gain(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|
| IWL 12 | 12,085 | ($542,752) | (12,860) | $486,667 | (775) | | ($56,085) | 3,450 | (194,190) | ($68,461) |
| IW 40 | 88,590 | ($3,620,553) | | | 88,590 | $1,414,614 | ($2,205,939) | 88,590 | (2,205,939) | ($2,205,939) |
| LOCAL 295/851 | 29,310 | ($1,085,598) | (9,110) | $279,701 | 20,200 | $322,556 | ($483,341) | 20,200 | (483,341) | ($483,341) |
| IW 580 | 46,529 | ($2,094,247) | (9,515) | $515,292 | 37,014 | $591,043 | ($987,912) | 46,529 | (1,351,268) | ($987,912) |
| IW Dist Council | 36,520 | ($1,679,390) | (32,120) | $973,596 | 4,400 | $70,260 | ($635,534) | 23,850 | (914,508) | ($635,534) |
| Summary | 213,034 | ($9,022,540) | (63,605) | $2,255,255 | 149,429 | | ($4,368,812) | 182,619 | (5,149,246) | ($4,381,188) |

**WACHOVIA CORP**
**CLASS PERIOD: MAY 08 2006 through JUNE 06 2008**

| Plaintiff | Purchase Date | Shares | Price | Amount | Sales Date | Shares | Price | Amount | Shares Retained | 60-Day* Mean Price $15.9681 Estimated Value | Estimated Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| IW 40 | 12/1/2006 | 480 | $54.0900 | ($25,963) | | | | | | | |
| | 3/26/2007 | 2,880 | $56.4300 | ($162,518) | | | | | | | |
| | 6/22/2007 | 2,900 | $52.4165 | ($152,008) | | | | | | | |
| | 8/2/2007 | 5,260 | $46.7160 | ($245,726) | | | | | | | |
| | 10/22/2007 | 29,030 | $46.2780 | ($1,343,450) | | | | | | | |
| | 11/12/2007 | 1,820 | $42.0240 | ($76,484) | | | | | | | |
| | 11/12/2007 | 3,490 | $42.0240 | ($146,664) | | | | | | | |
| | 12/3/2007 | 3,270 | $42.1700 | ($137,896) | | | | | | | |
| | 12/26/2007 | 5,030 | $38.9640 | ($195,989) | | | | | | | |
| | 12/27/2007 | 17,970 | $38.4520 | ($690,982) | | | | | | | |
| | 4/9/2008 | 16,460 | $26.9060 | ($442,873) | | | | | | | |
| | | 88,590 | | ($3,620,553) | | | | | 88,590 | $1,414,614 | ($2,205,939) |

**WACHOVIA CORP**
**CLASS PERIOD: MAY 08 2006 through JUNE 06 2008**
(Includes 90-Day Sales at Statutory Pricing)

| Plaintiff | Purchase Date | Shares | Price | Amount | Sales Date | Shares | Price | Amount | Shares Retained | 60-Day Mean Price $15.9681 Estimated Value | Estimated Gain(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| LOCAL 295/851 | 10/8/2007 | 210 | $51.4500 | ($10,805) | 11/6/2007 | (210) | $42.7789 | $8,984 | | | |
| | 10/19/2007 | 6,200 | $46.3750 | ($287,525) | 12/6/2007 | (3,700) | $43.2750 | $160,118 | | | |
| | 10/24/2007 | 3,700 | $45.4000 | ($167,980) | 6/4/2008 | (3,998) | $21.7640 | $87,012 | | | |
| | 11/19/2007 | 4,700 | $37.8200 | ($177,754) | 6/4/2008 | (202) | $21.6850 | $4,380 | | | |
| | 1/4/2008 | 1,900 | $35.5180 | ($67,484) | 6/11/2008 | (1,000) | $19.2067 | $19,207 | | | |
| | 1/9/2008 | 37 | $33.5300 | ($1,241) | | | | | | | |
| | 1/9/2008 | 63 | $33.4880 | ($2,110) | | | | | | | |
| | 2/13/2008 | 4,857 | $34.7400 | ($168,732) | | | | | | | |
| | 2/13/2008 | 34 | $34.6020 | ($1,176) | | | | | | | |
| | 2/13/2008 | 309 | $34.5190 | ($10,666) | | | | | | | |
| | 3/4/2008 | 700 | $29.0700 | ($20,349) | | | | | | | |
| | 3/17/2008 | 200 | $25.4200 | ($5,084) | | | | | | | |
| | 3/17/2008 | 2,600 | $25.3740 | ($65,972) | | | | | | | |
| | 3/17/2008 | 1,400 | $25.2790 | ($35,391) | | | | | | | |
| | 3/17/2008 | 1,400 | $25.1850 | ($35,259) | | | | | | | |
| | 3/20/2008 | 100 | $30.9900 | ($3,099) | | | | | | | |
| | 4/8/2008 | 900 | $27.7450 | ($24,971) | | | | | | | |
| | | 29,310 | | ($1,085,598) | | (9,110) | | $279,701 | 20,200 | $322,556 | ($483,341) |

**WACHOVIA CORP**
**CLASS PERIOD: MAY 08 2006 through JUNE 06 2008**

| Plaintiff | Purchase Date | Shares | Price | Amount | Sales Date | Shares | Price | Amount | Shares Retained | 60-Day* Mean Price $15.9681 Estimated Value | Estimated Gain(Loss) | FIFO Shs Retained | FIFO Estimated Gain(Loss) | LIFO Estimated Gain(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WWL 12 | | | | | | | | | | | | | | |
| | 7/14/2006 | 1,825 | $52.9450 | ($96,625) | PreClass | 4,225 | $52.8387 | $47,555 | | | | | | |
| | 12/1/2006 | 60 | $54.0594 | ($3,244) | 6/27/2006 | (900) | $53.8800 | $70,044 | | | | | | |
| | 12/1/2006 | 530 | $54.0590 | ($28,651) | 7/11/2006 | (1,300) | $37.3311 | $236,306 | | | | | | |
| | 8/1/2007 | 520 | $46.6912 | ($24,279) | 1/28/2008 | (6,330) | $30.6610 | $106,087 | | | | | | |
| | 8/3/2007 | 5,620 | $46.5690 | ($261,718) | 5/2/2008 | (3,460) | $30.6610 | $26,675 | | | | | | |
| | 11/9/2007 | 170 | $41.1619 | ($6,998) | 5/2/2008 | (870) | | | | | | | | |
| | 11/9/2007 | 1,570 | $41.1619 | ($64,624) | | | | | | | | | | |
| | 2/29/2008 | 1,480 | $31.6279 | ($46,809) | | | | | | | | | | |
| | 2/29/2008 | 310 | $31.6279 | ($9,805) | | | | | | | | | | |
| | | 12,085 | | ($542,752) | | (12,860) | | $486,667 | (775) | | ($56,085) | 3,450 | ($194,190) | ($68,461) |

* Avg of Closing Prices June 09-Aug 07

**WACHOVIA CORP**
**CLASS PERIOD: MAY 08 2006 through JUNE 06 2008**

| Plaintiff | Purchase Date | Shares | Price | Amount | Sales Date | Shares | Price | Amount | Shares Retained | 60-Day* Mean Price $15.9681 Estimated Value | Estimated Gain/(Loss) | FIFO Shs Retained | FIFO Estimated Gain/(Loss) | LIFO Estimated Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| IW Dist Council | | | | | | | | | | | | | | |
| | 6/22/2007 | 10 | $52.5851 | ($526) | PreClass | | | | | | | | | |
| | 6/22/2007 | 3,310 | $52.5851 | ($174,057) | 5/1/2008 | 19,450 | $30.3112 | $966,927 | | | | | | |
| | 8/1/2007 | 10,800 | $46.5747 | ($503,007) | 5/1/2008 | (31,900) | $30.3112 | $6,668 | | | | | | |
| | 8/1/2007 | 140 | $46.5747 | ($6,520) | | (220) | | | | | | | | |
| | 10/19/2007 | 14,260 | $46.7498 | ($666,652) | | | | | | | | | | |
| | 11/9/2007 | 7,870 | $41.1619 | ($323,944) | | | | | | | | | | |
| | 11/9/2007 | 60 | $41.1619 | ($2,470) | | | | | | | | | | |
| | 2/29/2008 | 70 | $31.6279 | ($2,214) | | | | | | | | | | |
| | | 36,520 | | ($1,679,390) | | (32,120) | | $973,598 | 4,400 | $70,260 | ($635,534) | 23,850 | ($914,508) | ($635,534) |

**WACHOVIA CORP**
**CLASS PERIOD: MAY 08 2006 through JUNE 06 2008**
**Acquisitions: GDW 10/02/2006 Close Price $55.7800 CLF**

| Plaintiff | Purchase Date | Shares | Price | Amount | Sales Date | Shares | Price | Amount | Shares Retained | 60-Day* Mean Price $15.9681 Estimated Value | Estimated Gain(Loss) | FIFO Shs Retained | FIFO Estimated Gain(Loss) | LIFO Estimated Gain(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| IW 580 | 10/4/2006 | 6,463 | $55.7800 | ($360,506) | PreClass | 13,525 | | $101,270 | | | | | | |
| | 10/4/2006 | 1,681 | $55.7800 | ($93,768) | 5/25/2006 | (1,900) | $53.3000 | | | | | | | |
| | 12/1/2006 | 770 | $54.1300 | ($41,680) | 5/25/2006 | (5,500) | $53.3000 | $293,150 | | | | | | |
| | 12/13/2006 | 1,350 | $56.1900 | ($75,857) | 12/15/2006 | (2,115) | $57.1500 | $120,872 | | | | | | |
| | 5/21/2007 | 2,830 | $56.5700 | ($160,093) | | | | | | | | | | |
| | 6/1/2007 | 700 | $54.5622 | ($38,194) | | | | | | | | | | |
| | 6/1/2007 | 1,100 | $54.5622 | ($60,018) | | | | | | | | | | |
| | 7/27/2007 | 1,800 | $48.2370 | ($86,827) | | | | | | | | | | |
| | 7/27/2007 | 625 | $48.2370 | ($30,148) | | | | | | | | | | |
| | 10/1/2007 | 9,010 | $51.0170 | ($459,663) | | | | | | | | | | |
| | 10/16/2007 | 500 | $48.8625 | ($24,431) | | | | | | | | | | |
| | 10/16/2007 | 1,250 | $48.8500 | ($61,063) | | | | | | | | | | |
| | 10/22/2007 | 2,010 | $46.7510 | ($93,970) | | | | | | | | | | |
| | 11/12/2007 | 2,780 | $41.3330 | ($114,906) | | | | | | | | | | |
| | 12/19/2007 | 2,350 | $39.2200 | ($92,167) | | | | | | | | | | |
| | 12/31/2007 | 750 | $38.3400 | ($28,755) | | | | | | | | | | |
| | 3/19/2008 | 1,860 | $29.3300 | ($54,554) | | | | | | | | | | |
| | 4/7/2008 | 300 | $27.9100 | ($8,373) | | | | | | | | | | |
| | 4/14/2008 | 8,400 | $24.9140 | ($209,278) | | | | | | | | | | |
| | | 46,529 | | ($2,094,247) | | (9,515) | | $515,292 | 37,014 | $591,043 | ($987,912) | 46,529 | ($1,351,268) | ($987,912) |

Exhibit 9

## POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP

Pomerantz Haudek Block Grossman & Gross LLP ("Pomerantz Firm" or "Firm") is one of the nation's foremost specialists in corporate, securities, antitrust and ERISA class litigation. The Firm was founded by the late Abraham L. Pomerantz, one of the "pioneers who developed the class action/derivative action field."[1] Mr. Pomerantz rose to national prominence as a "champion of the small investor" and a "battler against corporate skullduggery."[2]  Recently, the Institutional Shareholder Services ranked the Pomerantz Firm third in the country in 2005 for the highest average settlement amount achieved on behalf of clients.[3]

For over 70 years, the Firm has specialized in representing victims of securities frauds, breaches of fiduciary duty, corporate mismanagement, and price fixing conspiracies, as it continues the proud tradition established by Mr. Pomerantz. The Firm also has thriving ERISA, healthcare and consumer litigation practices. Pomerantz has set important precedents in its practice areas. The Firm is led by senior partner Stanley M. Grossman, a nationally prominent litigator. Mr. Grossman recently argued *Stoneridge Investment Partners v. Scientific Atlanta, Inc.*, to the United States Supreme Court, and made strong arguments that a cause of action exists against secondary actors for "scheme liability" under Section 10(b) of the Securities Exchange Act of 1934. Although the Court affirmed, by a vote of 5 to 3, the decision of the Court of Appeals dismissing the claims against the two "secondary" defendants, it made statements that we believe will be helpful to plaintiffs in future

---

[1] New York Law Journal (August 1, 1983).

[2] Robert J. Cole, *Class Action Dean*, The National Law Journal, Vol. 1 No. 2 at 1 (Sept. 25, 1978).

[3] Securities Class Action Services 50 for 2005.

1

cases. For example, the Court ruled that "secondary actors" who engage in deceptive *conduct* can be liable for violating Section 10(b) even if they never make any public false statements. The Court also left open the possibility that accountants and investment banks, which operate in the "realm of financing business" might be subject to scheme liability claims in situations where others would not be. 128 S. Ct. 761 (2008).

Courts have consistently acknowledged the ability of the Pomerantz Firm to vigorously pursue the claims of class members. In granting the fee request in *In re Salomon Brothers Treasury Litigation*, 91 Civ. 5471 (RPP) (S.D.N.Y.), where the Firm successfully negotiated a $100 million settlement for the class in a complex antitrust and securities case, Judge Patterson stated:

> I am going to approve the settlement, and I am going to approve the attorneys fees that you have requested with cost.
>
> As I am doing it so summarily, does not mean I have not considered it at length. But it does not need that much consideration because I've observed the conduct of the attorneys involved here. They get the work done, and it was a tough one.
>
> I think that there were a lot of people who thought there was going to be no recovery at all in this case.

In appointing Pomerantz Lead Counsel in *American Italian Pasta Co. Sec. Litig.*, No 05-CV0725-W-ODS (W.D. Mo.), a class action which involved a massive fraud and restatements spanning several years, the District Court observed that the Firm "has significant experience (and has been extremely effective) litigating securities class actions, employs highly qualified attorneys, and possesses ample resources to effectively manage the class litigation and protect the class's interests."

The Pomerantz Firm, as Lead Counsel, negotiated a $146.25 million settlement in *In re Charter Communications Sec. Litig.*, 02 Cv1186 (E.D. Mo.). Approving the settlement, the Court praised the Firm's efforts: "This Court believes Lead Plaintiff achieved an excellent result in a

2

complex action, where the risk of obtaining a significantly smaller recovery, if any, was substantial."
In awarding fees to the Pomerantz Firm, the Court cited "the vigor with which Lead Counsel . . .
investigated claims, briefed the motions to dismiss, and negotiated the settlement . . .."

In approving the $100 million settlement in *Snyder v. Nationwide Insurance Co.*, Index No.
97/0633 (N.Y. Supreme Court, Onondaga County), a case where the Pomerantz Firm served as co-
lead counsel, Judge Tormey stated, "It was a pleasure to work with you. This is a good result.
You've got some great attorneys working on it."

In *Sherleigh Associates Inc. Profit Sharing Plan v. COHR, Inc.,* No. 98-3028-JSL (BQRx)
(C.D. Cal.), where as co-lead, the Pomerantz Firm helped obtained a substantial settlement, the court
stated: "This is a good job. I don't always think all jobs are good. This one is a good job." And in
*In re Wiring Devices Antitrust Litigation*, MDL Docket No. 331 (E.D.N.Y. Sept. 9, 1980), where the
Firm was again lead counsel, Chief Judge Jack B. Weinstein stated:

> Counsel for the plaintiffs I think did an excellent job . . . . They are
> outstanding and skillful. The litigation was and is extremely com-
> plex. They assumed a great deal of responsibility. They recovered a
> very large amount given the possibility of no recovery here which was
> in my opinion substantial.

Certifying a class in a securities fraud action against analysts in *DeMarco v. Robertson
Stephens*, 2005 U.S. Dist. LEXIS (S.D.N.Y.), Judge Lynch stated that the Pomerantz Firm had "ably
and zealously represented the interests of the class." Numerous courts have agreed with that
assessment. *See, e.g., Steinberg v. Nationwide Mutual Insurance Co.*, 99 CV 7725 (E.D.N.Y.)
(Judge Spatt, in granting class certification and appointing the Firm as class counsel, observed: "The
Pomerantz firm has a strong reputation as class counsel and has demonstrated its competence to
serve as class counsel in this motion for class certification." 2004 U.S. Dist. LEXIS 17669 at *24);

3

*Mercury Savings and Loan*, CV 90-87 LHM (C.D. Cal. 1995) (Judge McLaughlin commended the Firm for the "absolutely extraordinary job in this litigation."); *Boardwalk Marketplace Securities Litigation*, MDL No. 712 (D. Conn.) (Judge Eginton described the Firm's services as "exemplary," praised it for its "usual fine job of lawyering...[in] an extremely complex matter," and concluded that the case was "very well-handled and managed." Tr. at 6, 5/20/92; Tr. at 10, 10/10/92); *Nodar v. Weksel*, 84 Civ. 3870 (S.D.N.Y.) (Judge Broderick acknowledged "that the services rendered [by the Pomerantz Firm] were excellent services from the point of view of the class represented, [and] the result was an excellent result . . . ." Tr. at 21-22, 12/27/90); *Klein v. A.G. Becker Paribas, Inc.*, 83 Civ. 6456 (S.D.N.Y. 1987) (Judge Goettel complimented the Firm for providing "excellent . . . absolutely top-drawer representation for the class, particularly in light of the vigorous defense offered by the defense firm." (Tr. at 22, 3/6/87)); *Digital Securities Litigation*, 83-3255Y (D. Mass.) (Judge Young lauded the Firm for its "[v]ery fine lawyering" (Tr. at 13, 9/18/86); *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 40 (S.D.N.Y. 1977) (Judge Frankel, referring to Pomerantz, said: "Their experience in handling class actions of this nature is known to the court and certainly puts to rest any doubt that the absent class members will receive the quality of representation to which they are entitled."); *Rauch v. Bilzerian,* 88 Civ. 15624 (Sup. Ct. N.J. 1991) (The Court referred to the partners from the Pomerantz Firm who had tried the case as "exceptionally competent counsel," and as having provided "top drawer, topflight [representation], certainly as good as I've seen in my stay on this court.").

Pomerantz has a long legacy of setting important precedents. Most recently, the Firm was before the Supreme Court on an issue of critical importance — whether scheme liability is actionable under § 10(b) and Rule 10b-5(a) and (c). *See Stoneridge Investment Partners v. Scientific-Atlanta*,

No. 06-43 (2007). While affirming the dismissal of two "secondary actors," the Court made numerous statements that make clear that "scheme liability" is still alive, al be it, in more limited circumstances. Among the many important reported decisions obtained on behalf of the Pomerantz Firm's clients are: *EBC I, Inc. v. Goldman Sachs & Co.*, 2005 N.Y. LEXIS 1178 (June 7, 2005) (New York State's highest court found for the first time that a lead managing underwriter can owe fiduciary duties to an issuer in connection with the issuer's IPO even where the underwriting contract does not establish any fiduciary relationship); *Ross v. Bernhard*, 396 U.S. 531 (1970) ((establishing the right to trial by jury of derivative actions); *Kronfeld v. TWA*, 832 F.2d 726 (2d Cir. 1987) (holding, *before Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), that a corporation may have a duty to disclose ongoing merger negotiations); *In re Summit Medical Systems Secs. Litig.*, 294 F.3d 969, 978 (8th Cir. 2002) (holding that standing existed for aftermarket purchasers who could trace their purchase of shares to a false registration); *Wool v. Tandem, Inc.*, 818 F.2d 1433 (9th Cir. 1987) (establishing that "in and out" traders may recover damages under the federal securities laws); *Rosenfeld v. Black*, 445 F.2d 1337 (2d Cir. 1971); *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 740 F.2d 190 (2d Cir. 1984) (establishing limits on advisory fees charged by investment advisors under the Investment Company Act); *Moses v. Burgin*, 445 F.2d 369 (1st Cir. 1971) (establishing duty of investment advisor to disclose all material facts to funds' outside directors); *In re Comverse Technology Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. 2007) (clarifying the standards for calculating the "largest financial interest" in a manner consistent with the Supreme Court's ruling on loss causation in *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336 (2005)). *See, e.g., Pearlman v. Feldmann*, 219 F.2d 173 (2d Cir. 1955)*DeMarco v. Robertson Stephens*, 2005 U.S. Dist. LEXIS 2005 (S.D.N.Y. 2005); *Salomon Analyst AT&T Litig.*, 350 F. Supp. 2d 455 (S.D.N.Y. 2004) (GEL);

5

*DeMarco v. Robertson Stephens*, 318 F. Supp. 2d 110 (S.D.N.Y. 2004); *In re Green Tree Fin. Corp.*

*Options Litig.*, No. 97-2679, 2002 U.S. Dist. LEXIS 13986 (D. Minn. July 29, 2002); *Drolet v.*

*Healthsource, Inc.*, 968 F. Supp. 757 (D.N.H. 1997); *In re Texas International Company Sec. Litig.*,

[1988-89 Decisions] Fed. Sec. L. Rep. (CCH) ¶ 94,125 (W.D. Okla. 1988); *Fisher v. Kletz*, 266 F.

Supp. 180 (S.D.N.Y. 1967).

Moreover, among the class and shareholder derivative actions in which Pomerantz was lead

or co-lead counsel are:

> *In re Salomon Analysts AT&T Litig.*, 91 Civ. 5471 (S.D.N.Y.)
> ($74.75 million recovery);
>
> *In re Charter Communications, Inc. Secs. Litig.*, 4:02CV1186 (E.D.
> Mo. 2005) ($146.25 million recovery);
>
> *In re Elan Corp. Sec. Litig.*, No. 02-CV-0865(RMB) (S.D.N.Y. 2005)
> ($75 million recovery);
>
> *In re Safety-Kleen Corp. Stockholders Litigation*, C.A. No. 3:00-CV-
> 736-17 (D.S.C. 2004) ($54.5 million recovery);
>
> *In re Transkaryotic Sec. Litig.*, No. 03-10165 (D. Mass 2008)
> (member of Executive Committee) ($50 million recovery);
>
> *In re Summit Metals, Inc. v. Gray*, No., 98-2870 (D. Del. 2004) ($43
> million judgment and required turnover of the stock of two
> corporations);
>
> *In re Livent, Inc. Noteholders Securities Litigation* Case No. 98-CV-
> 7161 (S.D.N.Y. 2003) ($17.25 million aggregate settlements; $36
> million additional judgment (with interest);
>
> *In re American Italian Pasta Company Sec. Litig.*, No. 05-CV-0725
> (W.D. Mo. 2008) ($25 million settlement from the company; case is
> continuing against outside auditor);
>
> *In re Methionine Antitrust Litigation*, Master File No. C-99-3491-
> CRB, MDL No. 1311 (N.D. Cal. 2002) ($107 million recovery);

*In re Sorbates Direct Purchaser Antitrust Litigation*, C98-4886 Cal
(N.D. Cal. 2000) (over $82 million recovery);

*Snyder v. Nationwide Insurance Co.*, Index No. 97/0633 (Supreme
Court, N.Y., Onondaga County 1998) ($100 million recovery);

*In re First Executive Corporation Securities Litigation*, CV-89-7135
DT (Kx) (C.D. Cal. 1994) ($102 million partial recovery);

*In re Salomon Brothers Treasury Litigation*, 91 Civ. 5471 (RPP)
(S.D.N.Y. 1994) ($100 million recovery);

*Mardean Duckworth v. Country Life Insurance Co.*, No. 98 CH
01046 (C.D. Ill. 2000) ($45 million recovery);

*In re National Health Laboratories, Inc. Securities*, CV-92-1949-H
(CM) (S.D. Cal. 1995) ($64 million recovery);

*In re Boardwalk Marketplace Securities Litigation*, M.D.L. Docket
No. 712 (D. Conn. 1994) (over $66 million benefit);

*In re Woolworth Corporation Securities Class Action Litigation*, 94
Civ. 2217 (RO) (S.D.N.Y. 1997) (recovery of $20 million);

*Frank v. Paul* (CenTrust Savings Bank Securities Litigation), 90-
0084-CIV (S.D. Fla. 1996) ($20 million recovery);

*Wallace v. Fox* Docket No. 3:96 - CV - 00772 (PCD) (D. Conn.
1997) (Northeast Utilities Shareholder Derivative Action) ($25
million recovery);

*Hurley v. FDIC*, Civil Action No. 88-1940-T (D. Mass. 1992) ($29
million judgment after trial against two former officers of First
Service Bank for Savings);

*In re Ocean Drilling & Exploration Company Shareholders Litiga-
tion*, Civ. No. 11898 (Del. Ch. 1991) ($38 million cash benefit);

*In re Telerate, Inc. Shareholders Litigation*, Civ. 1115 (Del. Ch.
1989) ($95 million benefit).

*In re AM International, Inc. Securities Litigation*, M-21-31, MDL
Docket No. 494 (S.D.N.Y. 1987) ($23 million recovery);

*In re Data Point Securities Litigation*, SA-82-CA-338 (W.D. Tex.
1987) ($28.4 million recovery); and

7

*In re National Student Marketing Securities Litigation*, MDL Docket No. 105 (D.D.C. 1983) ($35 million recovery);

Brief biographies of the Firm's lawyers are provided below:

## ROBERT J. AXELROD

Robert J. Axelrod is a partner at Pomerantz. Mr. Axelrod practices securities, antitrust, and insurance and consumer litigation. As a member of the Firm's Healthcare and Consumer Group, Mr. Axelrod currently is prosecuting actions on behalf of clients including the American Medical Association, the American Dental Association, and the Medical Society of the State of New York, against such insurers as United Healthcare Corporation, CIGNA, Aetna, Oxford, Health Net, Inc., and Nationwide. Mr. Axelrod was on the successful trial team in *Addison v. American Medical Security*. Additional healthcare cases that Mr. Axelrod has litigated with partner D. Brian Hufford, include *American Medical Association v. United Healthcare Corporation*, *American Dental Association v. Aetna, Inc.*, and *Wachtel v. Health Net Inc.* In *Health Net*, 01-4183, 03-1801, there is a preliminary settlement of over $200 million in cash, plus important non-cash benefits, including the revamping of the system for calculating the reimbursements of claimants. Mr. Axelrod also has been involved in the prosecution of numerous securities and antitrust actions.

Mr. Axelrod serves as a member of the Class Action Committee of the New York State Bar Association. He is a member of the Temple University College of Liberal Arts Alumni Board, and serves as a trustee and General Counsel of Temple Beth El in Huntington, New York.

Mr. Axelrod is admitted in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second and Third Circuits.

8

## **DANIEL L. BERGER**

Daniel L. Berger graduated from Haverford College in 1976, and Columbia Law School in 1979 where he was a Stone Scholar.

Mr. Berger joined the Firm as a partner in September 2006. Previously, Mr. Berger was a senior partner of Bernstein Litowitz Berger & Grossmann, where he litigated complex securities and discrimination class actions for 22 years. While at that firm, Mr. Berger tried two 10b-5 securities class actions to jury verdicts, among the very few such cases ever tried. He served as principal lead counsel in many of the largest securities litigations in history, achieving successful recoveries for classes of investors in cases including *In re Cendant Corp. Sec. Litig.*, (D. N.J.) ($3.3 Billion); *In re Lucent Technologies, Inc. Sec. Litig.* (D. N.J.) ($675 Million); *In re Bristol-Myers Squibb Sec. Litig.*, (S.D.N.Y.) ($300 Million); *In re Daimler Chrysler A.G. Sec. Litig.*, (D. Del.) ($300 Million); *In re Conseco, Inc. Sec. Litig.*, (S.D. Ind.) ($120 Million); *In re Symbol Technologies Sec. Litig.*, (E.D.N.Y.) ($139 Million); and *In re OM Group Sec. Litig.*, (N.D. Ohio) ($92 Million). Mr. Berger has successfully argued several appeals that made new law favorable to investors, including *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2005); *McCall v. Scott*, 250 F.3d 997 (6th Cir. 2001) and *Fine v. American Solar King Corp.*, 919 F.2d 290 (5th Cir. 1990). Mr. Berger also was lead class counsel in several important discrimination class actions, in particular *Roberts v. Texaco, Inc.* (S.D.N.Y.), where he represented African-American employees of Texaco and achieved the largest settlement ($175 Million) of a race discrimination class action.

Mr. Berger's work has received praise from many federal courts. For example, in commenting on the settlement achieved in *McCall v. Scott*, one of the most significant recoveries in a derivative action, the United States District Court for the Middle District of Tennessee wrote:

9

> [The settlement] confers an exceptional benefit upon the company
> and the shareholders by way of the corporate governance
> plan....Counsel's excellent qualifications and reputations are well
> documented in the record, and they have litigated this complex case
> adeptly and tenaciously throughout the six years it has been pending.
> They assumed an enormous risk and have shown great patience by
> taking this case on a contingent basis, and despite an early setback
> they have persevered and brought about not only a large cash
> settlement but sweeping corporate reforms that may be invaluable to
> the beneficiaries.

In addition, Mr. Berger's work as lead trial counsel in *In re ICN/Viratek Sec. Litig.* was noted

by the United States District Court for the Southern District of New York, which said:

> "[P]laintiffs' counsel did a superb job here on behalf of the class. . .
> This was a very hard fought case. You had very able, superb
> opponents, and they put you to your task. . . The trial work was
> beautifully done and I believe very efficiently done. . .

Mr. Berger was a member of the Board of Managers of Haverford College from 2000-2003

and currently serves on the Board of Managers of Columbia Law School. He served on the Board of

inMotion, Inc., a non-profit organization providing legal services to victims of domestic violence, for

six years, and currently is a member of the Board of Madison Square Park Association.

Mr. Berger is admitted in New York, the United States District Courts for the Southern and

Eastern Districts of New York, and the United States Courts of Appeals for the Second, Third, Fifth,

Sixth, Seventh, Ninth and Tenth Circuits.

10

## MICHAEL M. BUCHMAN

Michael Buchman joined the Firm as a partner in 2007. Mr. Buchman has litigated complex antitrust and consumer protection class actions for over ten years. Mr. Buchman served as an Assistant Attorney General in the Antitrust Bureau of the New York State Attorney General's Office. He has an advanced degree in international antitrust and trade law from Fordham University School of Law.

Mr. Buchman has extensive experience litigating complex commercial matters in federal and state courts. Over the past seven years, he has spearheaded an effort to challenge anticompetitive conduct by pharmaceutical companies designed to artificially inflate the price of brand name prescription drugs. He has served as co-lead counsel in a number of "generic drug" cases, including *In re Buspirone Antitrust Litig.*, MDL 1413 (S.D.N.Y.) ($90m settlement); *In re Relafen Antitrust Litig.*, 01-12222-WGY (D. Mass.) ($75m settlement); and *In re Augmentin Antitrust Litig.*, 02 Civ. 445 (E.D. Va. Norfolk Div.) ($29m settlement). Some of the settlements obtained by Mr. Buchman have resulted in substantial "cy pres" monetary awards for well known charitable organizations. For example, in *Augmentin*, awards exceeding $100,000 were donated on a "cy pres" basis to St. Jude Children's Research Hospital and Children's Rights of New York. Mr. Buchman also has extensive experience in other areas of antitrust law. For example, he was actively involved in *In re NASDAQ Market-Makers Antitrust Litig.*, MDL 1023 (S.D.N.Y.) ($1.027b) and *In re Visa Check/Mastermoney Antitrust Litigation*, CV 96-5238 (E.D.N.Y.) ($3b), two of the largest antitrust settlements ever reached.

Courts have acknowledged the high quality of Mr. Buchman's litigation efforts. For example, former Chief Judge William G. Young noted in *Relafen*, where Mr. Buchman was a co-lead, "[t]his

11

proposed settlement is the result of a great deal of very fine lawyering . . ." Similarly, in *Buspar*, where he also was a co-lead, Judge John G. Koeltl stated: "Let me say that the lawyers in this case have done a stupendous job. They really have." His "tenacious and skillful" work as a co-lead was also recognized by Judge Lewis A. Kaplan of the Southern District of New York in an international antitrust class action brought on behalf of foreign purchasers and sellers of works of art sold at auction by Christie's and Sotheby's which resulted in a $40 million settlement.

Mr. Buchman frequently speaks on antitrust and consumer protection class action issues. In 2002, he appeared on the *CBS Evening News* and spoke about generic drug litigations. That same year, he presented at the Practicing Law Institute's 10th Annual Consumer Financial Services Litigation on Recent Developments in State Unfair Deceptive Acts and Practices Statutes and Private Attorney General Litigation. On February 7, 2007, he spoke at the 4th National In-House Counsel Conference on Managing Complex Litigation on class certification. Mr. Buchman has also authored or co-authored articles on procedure or competition law, including a Task Force on Dealer Terminations for The Association of the Bar of the City of New York, Committee on Antitrust and Trade Regulation entitled *Dealer Termination in New York* dated June 1,1998, and *What's in a Name — the Diversity Death-Knell for Underwriters of Lloyd's of London and their Names; Humm v. Lombard World Trade, Inc.*, Vol. 4, Issue 10 International Insurance Law Review 314 (1996).

He is admitted in the states of Connecticut and New York, and the United States Supreme Court, the United States Court of Appeals for the Second Circuit, the United States District Courts for the Southern and Eastern Districts of New York and the Districts of Arizona and Connecticut, and the United States Court of International Trade.

## PATRICK V. DAHLSTROM

Mr. Dahlstrom is a 1987 graduate of the Washington College of Law at American University in Washington, D.C., where he was a Dean's Fellow, Editor-in-Chief of the Administrative Law Journal, a member of the Moot Court Board representing Washington College of Law in the New York County Bar Association's Antitrust Moot Court Competition, and a member of the Vietnam Veterans of America Legal Services/Public Interest Law Clinic.

Upon graduating, Mr. Dahlstrom served as the Pro Se Staff Attorney for the United States District Court for the Eastern District of New York and was a law clerk to the Honorable Joan M. Azrack, United States Magistrate Judge. He joined the Pomerantz Firm as an associate in the Fall of 1991 and became a partner in January 1996. Mr. Dahlstrom is the resident partner in the Pomerantz Firm's Chicago Office. He focuses on securities fraud litigation.

Recently, in *In re Comverse Technology Sec. Litig.*, 2007 U.S. LEXIS 14878 (E.D.N.Y. 2007), Mr. Dahlstrom obtained important clarification regarding the calculation of the "largest financial interest" in connection with of the selection of a lead plaintiff, in a manner consistent with *Dura*, 544 U.S. 336 (2005). In *DeMarco v. Robertson Stephens*, 2005 U.S. Dist. LEXIS (S.D.N.Y. 2005), he obtained the first class certification in a federal securities case involving fraud by analysts. Some examples of other notable litigations by Mr. Dahlstrom are *In re Safety-Kleen Stockholders Securities Litigation,* 3:00-736-17 (D. S.C.) (as co-lead counsel, Firm obtained $54.5 million settlement); *In re Livent, Inc. Noteholders Securities Litigation*, 98 Civ. 7161 (VM) (S.D.N.Y.) (Firm, as sole-lead, obtained $17 million settlement, plus $36 million judgment (with interest)); and *In re Woolworth Corporation Securities Class Action Litigation*, 94 Civ. 2217 (RO) (S.D.N.Y.) (Firm, as co-lead counsel, secured a $20 million settlement). Mr. Dahlstrom was also co-class

13

counsel and a member of the trial team in *In re ICN/Viratek Securities Litigation*, 87 Civ. 4296 (KMW) (S.D.N.Y.).

Mr. Dahlstrom is admitted in New York and Illinois, as well as the United States District Courts for the Southern and Eastern Districts of New York, the Northern District of Illinois, the Northern District of Indiana, the Eastern District of Wisconsin, the District of Colorado, the Western District of Pennsylvania, the United States Courts of Appeals for the Fourth, Sixth, Seventh and Eight Circuits, and the United States Supreme Court.

## MARC I. GROSS

Marc I. Gross has been associated with the Firm since 1976 and became a partner in 1984. He graduated from New York University Law School in 1976 and received his undergraduate degree from Columbia University in 1973.

Mr. Gross has extensive experience in litigating class (securities, antitrust and consumer) and derivative actions. He is sole or co-lead counsel in many of the Firm's major pending cases, and has won rulings highly favorable to plaintiffs.

Mr. Gross has obtained numerous large recoveries. For example, he was sole Lead Counsel in *In re Charter Communications Inc. Sec. Litig.*, MDL No. 1506 E.D. Mo. (CAS), a case where, as described above, the Court lauded the Firm's efforts in obtaining a $146.25 million settlement. He was also co-lead counsel in *Snyder v. Nationwide Insurance Co.*, Index No. 97/0633 (N.Y. Supreme Court, Onondaga County), which resulted in a settlement valued at $100 million for defrauded life insurance policy customers in New York. In approving the settlement, Judge Tormey stated:

> The Court approves the settlement in all respects. It is so ordered, and I compliment you all, not only the manner in which you

14

> arrived at this result today, but the time that you -- in which it was
> done. And I think you all did a very, very good job for all the people.
> You made attorneys look good. I thank you very much. It was nice
> working with you all.

Mr. Gross was the attorney in charge of *Texas Int'l Co. Sec. Litig.* (W.D. Okla.), where, in

granting class certification, the Court observed:

> The performance of plaintiffs' counsel thus far leaves the Court with
> no doubt that plaintiffs' claims will be vigorously and satisfactorily
> prosecuted throughout the course of this litigation.

In the course of approving the subsequent settlement of the case, the Court added:

> I would like to compliment all the parties and attorneys in this case.
> . . . You have all worked together better than I think any case I've had
> that involved these extensive issues and parties and potential
> problems. And I for one appreciate it. And I think it shows certainly
> a great deal of professionalism on all your part.

Other examples of Mr. Gross' representation as sole or co-lead counsel are: *In re Elan Corp.*

*Sec. Litig.*, No. 02-CV-865 (RMB)(FM) (S.D.N.Y.) ($75 million settlement); *In re Salomon Analysts*

*AT&T Litig.* ($74.75 million settlement) (S.D.N.Y.); *In re National Health Labs., Inc. Securities*,

CV-92-1949-H (CM) (S.D. Cal. 1995) ($64 million recovery); *In re American Italian Pasta Co. Sec.*

*Litig*, No 05-CV0725-W-ODS (S.D.N.Y.) ($25 mi partial settlement with case ongoing against

auditors); *Mardean Duckworth v. Country Life Insurance Co*, No. 98 CH 01046 (C.D. Ill. 2000) ($45

million settlement); and *Frank v. Paul (Centrust Savings Bank Securities Litigation)*, 93 Civ. 1453

(TCP) (E.D.N.Y. 1996) (over $20 million recovery). He was a member of the Plaintiffs' Executive

Committee in *In re Transkaryotic Therapies Sec. Litig.* (03-cv-10165-RWZ) (D. Mass.), which has

settled for $50 million (court approval of settlement has been requested);

Mr. Gross has been a member of the New York City Bar Association's Federal Courts

Committee, an early neutral evaluator for the Eastern District of New York, and a mediator for the

15

Commercial Division of the Supreme Court of the State of New York. He is currently a Vice President of the Institute of Law and Economic Policy ("ILEP"), a not-for profit organization devoted to promoting academic research and dialogue in securities law issues and litigation. At the 2006 ILEP Conference, Mr. Gross was a commentator on a panel discussing Sarbanes-Oxley governance issues. He was Treasurer of the National Association of Securities and Commercial Law Trial Attorneys. He was a guest panelist for a Spring 1998 conference on "Courts on Trial" sponsored by the Institute of Law and Economics and held at the University of Arizona Law School, and is the author of "*Complex Litigation at the Millennium Loser-Pays - or Whose 'Fault' Is It Anyway: A Response to Hensler-Rowe's "Beyond 'It Just Ain't Worth It'"*", which appeared in the 64 Law & Contemporary Problems (Duke Law School) (2001).

Mr. Gross has also served as Chairman of Neighbors Helping Neighbors, a not-for-profit housing group based in Brooklyn, New York that is affiliated with the Neighborhood Reinvestment Corporation.

Mr. Gross is admitted in New York, the United States District Courts for the Southern, Northern and Eastern Districts of New York, the Eastern and Western Districts of Missouri, District of Nebraska, District of Arizona, the United States Courts of Appeals for the First, Second, Third and Eighth Circuits, and the United States Supreme Court.

## STANLEY M. GROSSMAN

Stanley M. Grossman, the senior partner of the Pomerantz Firm, was featured in the New York Law Journal (August 1, 1983) article: "*Top Litigators in Securities Field -- A Who's Who of City's Leading Courtroom Combatants*." He has been with the Pomerantz Firm since February

16

1969, and has been a member of the Firm since 1976. Throughout this period, he has mainly represented plaintiffs in securities and antitrust class actions, including many of those listed in the firm biography. *See. e.g., Ross v. Bernhard*, 396 U.S. 531; *Rosenfeld v. Black*, 445 F.2d 137 (2d Cir. 1971); *Wool v. Tandem*, 818 F.2d 1433 (9th Cir.); *In re Salomon Bros. Treasury Litig*, 9 F.3d 230 (2d Cir.). Recently, he appeared before the United States Supreme Court to argue that scheme liability is actionable under Section 10(b) and Rule 10b-5(a) and (c). *See Stoneridge Investment Partners v. Scientific-Atlanta*, No. 06-43 (2007). Other examples of cases where he was the lead or co-lead counsel for plaintiffs and the class include: *In re Salomon Brothers Treasury Litigation*, 91 Civ. 5471 (RPP)(S.D.N.Y. 1994) ($100 million cash recovery); *In re First Executive Corporation Securities Litigation*, CV-89-7135 DT (Kx)(C.D. Cal. 1994) ($100 million settlement); *In re Sorbates Direct Purchaser Antitrust Litigation*, C98-4886 CAL (N.D. Cal. 2000) (over $80 million settlement for the class).

Senior Judge Milton Pollack of the Southern District of New York appointed Mr. Grossman to the Executive Committee of counsel charged with allocating to claimants hundreds of millions of dollars obtained in settlements with Drexel Burnham & Co. and Michael Milken.

Many courts have acknowledged the high quality of the legal representation provided by Mr. Grossman to investors. For example, in *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 79 Civ. 3123 (S.D.N.Y.), where Mr. Grossman was lead trial counsel for plaintiff, Judge Pollack noted at the completion of the:

> [I] can fairly say, having remained abreast of the law on the factual and legal matters that have been presented, that I know of no case that has been better presented so as to give the Court an opportunity to reach a determination, for which the court thanks you.

17

Mr. Grossman was also the lead trial attorney in *Rauch v. Bilzerian* (Super. Ct. N.J.)(directors owed the same duty of loyalty to preferred shareholders as common shareholders in a corporate takeover), where the court described the Pomerantz team as "exceptionally competent counsel." He headed the six week trial on liability in *Walsh v. Northrop Grumman* (E.D.N.Y.) (a securities and ERISA class action arising from Northrop's takeover of Grumman), after which a substantial settlement was reached.

Mr. Grossman has lectured to the profession on various occasions under the auspices of the Southern Federal Securities Institute, Columbia University School of Law, Duke University Law School, University of Arizona Law School, Brooklyn Law School, ALI-ABA, PLI, the New York State Bar Association, and the Association of the Bar of the City of New York. Most recently, Mr. Grossman was a featured panelist in a Practicing Law Institute "Hot Topic Briefing" entitled "*Stoneridge*- Is There Scheme Liability or Not?" He also was a panelist at an April 2008 Conference sponsored by the Institute for Law and Economic Policy, entitled "The Continuing Evolution of Securities Class Actions." Mr. Grossman also recently presented at the 2008 Meeting of the American Bar Association, in a discussion entitled "Insider's View of the Stoneridge Case: Investor Protection or Frivolous Litigation"; and he participated as a panelist on securities litigation developments at the 2008 annual meeting of the ABA Section of Litigation. Mr. Grossman is the author of "Commentary: The Social Meaning of Shareholder Suits," 65 BROOKLYN LAW REV. (1999), among other articles.

Mr. Grossman has been active in numerous professional organizations. He is the former president of the National Association of Securities Attorneys — an organization of attorneys specializing in securities class action litigation. During his tenure, he represented the organization

18

in meetings with the Chairman of the Securities and Exchange Commission, members of Congress and of the Executive Branch in furnishing input and commentary on legislation which became the Private Securities Litigation Reform Act of 1995 ("PSLRA"). In the summer of 1998, at the invitation of Chairman of the Judiciary Committee Henry Hyde, Mr. Grossman testified before Congress on proposed legislation dealing with "federalization of state class actions." Subsequently, Mr. Grossman was asked to participate with Congressional counsel in drafting proposed legislation.

Mr. Grossman presently serves as a vice president and adviser of ILEP, the public policy research and educational foundation focusing on securities laws. He is also a member of the United States Advisory Board of the Institute for Consumer Antitrust Studies at Loyola University Chicago. Additionally, he is on the Advisory Committee for the Abraham L. Pomerantz Lectures at Brooklyn Law School.

He is currently a member of the Judiciary Committee of the New York City Bar Association. Previously he served on the Association's Committee on Professional and Judicial Ethics; State Courts of Superior Jurisdiction; and Trade and Antitrust. He is also a member of the Litigation Section dealing with class actions at the American Bar Association.

Mr. Grossman is actively involved in local and national civic affairs. In June, 1999, he was appointed by the New York City Bar Association to chair a special Blue Ribbon Commission on the future of the City University of New York. Upon the publication of the Commission's Report, the President of the Association described it as "insightful, measured and persuasive . . . a striking example of the very best of what this Association can do."

He is a director of the Lincoln Center Institute for the Arts in Education, as well as a member of the Appleseed Foundation, a national public interest advocacy group. In addition, he is a member

of the AFL-CIO Center for Working Capital's National Advisory Council of Employee Benefit Professionals.

Mr. Grossman is admitted in New York, the United States District Courts for the Southern, and Eastern Districts of New York, Central District of California, Eastern District of Wisconsin, District of Arizona, District of Colorado, the United States Courts of Appeals for the First, Second, Third, Ninth and Eleventh Circuits, and the United States Supreme Court.

## D. BRIAN HUFFORD

D. Brian Hufford joined the Pomerantz Firm in April 1993 and became a partner in July 1995. After obtaining a Masters of Urban Affairs from Wichita State University in 1982, Mr. Hufford attended the Yale Law School, where he was Notes and Topics Editor for the *Yale Law and Policy Review* and was awarded the Thomas I. Emerson Prize for the Outstanding Legislative Services Project. Graduating from Yale in 1985, Mr. Hufford subsequently spent two years in Washington, D.C. as an Honors Attorney in the United States Department of the Treasury's Honors Law Program. From 1987 until he joined the Firm in 1993, he was a litigation associate at Davis Polk & Wardwell, where he worked primarily on securities and class actions. His article "*Deterring Fraud vs. Avoiding the Strike Suit: Reaching An Appropriate Balance,*" was published in 61 *Brooklyn Law Rev.* 593 (Summer 1995).

At the Pomerantz Firm, Mr. Hufford has prosecuted not only a number of securities and antitrust cases, but is also the attorney in charge of the Firm's Healthcare and Consumer Group. Mr. Hufford successfully argued before the New York Appellate Division in *Batas v. Prudential*, 281 A.D.2d 260, 724 N.Y.S.2d 3 (1st Dep't 2001), in which the court upheld claims that Prudential relied

20

on improper procedures for the determination of medical necessity in its health insurance contracts. Mr. Hufford also successfully argued *Drolet v. Healthsource, Inc.*, 968 F. Supp. 757 (D.N.H. 1997), in which the court upheld the charge that the defendant breached fiduciary duties under ERISA by misrepresenting the financial incentives it paid to physicians to reduce medical expenditures. In addition, Mr. Hufford received a successful decision upholding claims against United Healthcare in *American Medical Association v. United Healthcare Corp.*, 2002 U.S. Dist. LEXIS 20309 (S.D.N.Y. Oct. 23, 2002), where plaintiffs claimed that the defendant relied on an improper database for determining "usual, customary and reasonable" fees for the purpose of reimbursing subscribers for services received from out-of-network health care providers. Moreover, Mr. Hufford was the Pomerantz partner in charge *Addison v. HealthNet*, where a preliminary settlement of over $200 million, plus important non-cash was reached. If approved by the court, this will be one of the largest settlements ever in a health insurance litigation. Mr. Hufford was also the partner-in-charge in Addison *v. American Medical Security*, Case No. CA 001455-AB (Cir. Ct., Palm Beach Cty., Fla.), in which plaintiffs won a two-week bench trial, with the Court finding in March 2002 that the defendant had violated Florida law by, among other things, improperly raising health care premiums based on an individual's health history.

Mr. Hufford has written and lectured in the area of healthcare litigation. Further, he was featured in the book *Net Law: How Lawyers Use the Internet*, by Paul Jacobsen (Jan. 1997), which discusses how he has used the Internet to investigate some of the firm's pending class actions.

Mr. Hufford is admitted in New York and Ohio, and the United States District Courts of the Southern and Eastern Districts of New York.

21

## CHERYL HAMER MACKELL

Cheryl Hamer Mackell joined the Firm in February 2003 to head up its Washington, D.C. office and became a partner in January 2007. She is a 1973 graduate of Columbia University and a 1983 graduate of Lincoln University Law School. She studied tax law at Golden Gate University and holds a Certificate in Journalism from New York University. At Pomerantz, Ms. Mackell has been involved in numerous securities fraud cases, including *In re Symbol Technologies, Inc. Sec. Litig.*, (E.D.N.Y. filed Aug. 16, 2005) and *In re American Italian Pasta Co. Sec. Litig.*, (W.D. Mo. Filed Aug. 12, 2005).

Before joining Pomerantz, Ms. Mackell served as of counsel to nationally known securities class action law firms focusing on plaintiff securities fraud litigation. In private practice for over 20 years, she has litigated, at both the state and federal levels, RICO, Continuing Criminal Enterprise, death penalty and civil rights cases. She has authored numerous criminal writs and appeals.

She was an Adjunct Professor at Pace University, Dyson College of Arts and Sciences, Criminal Justice Program and The Graduate School of Public Administration, where she taught Non-Profit Corporate Law, from 1996 to 1998. She is a member of the American Bar Association's Litigation and Individual Rights Sections, the Corporate, Finance & Securities Law Section of the District of Columbia Bar.

Ms. Mackell is admitted in California, United States District Court for the Northern, Southern, Eastern and Central Districts of California, the District of New Mexico, the District of Columbia, the United States Courts of Appeals for the Second, Third, Fourth, Seventh, Ninth, Tenth and Eleventh Circuits, and the United States Supreme Court.

22

## H. ADAM PRUSSIN

H. Adam Prussin joined the Firm as of counsel in June 2000, and became a partner in January 2002. He graduated *cum laude* from Yale College in 1969, and after obtaining a Masters Degree from the University of Michigan in 1971, he received his J.D. from Harvard Law School in 1974.

In addition to securities litigation, Mr. Prussin has extensive experience in derivative actions. He has published several articles on the subject of the standards and procedures for obtaining dismissal of shareholder derivative actions, including *"Termination of Derivative Suits Against Directors on Business Judgement Grounds: From Zapata to Aronson,"* 39 The Business Lawyer 1503, 1984; *"Dismissal of Derivative Actions Under the Business Judgement Rule: Zapata One Year Later,"* 38 The Business Lawyer 401, 1983; and *"The Business Judgement Rule and Shareholder Derivative Actions: Viva Zapata?,"* 37 The Business Lawyer 27, 1981.

Mr. Prussin was special litigation counsel in *Summit Metals, Inc. v. Gray*, a derivative action which resulted in entry of a judgment, after trial, of $43 million in cash, plus an order transferring the stock of two multi-million-dollar companies to the plaintiff. He was also one of the lead lawyers in *In re Livent Noteholders Securities Litigation*. Mr. Prussin is co-lead counsel in several of the Firm's pending derivative actions.

Before joining the Firm, Mr. Prussin was a named partner in Silverman, Harnes, Harnes, Prussin & Keller, which specializes in representing plaintiffs in shareholder derivative and class action litigation, particularly those involving self-dealing by corporate officers, directors and controlling shareholders. Mr. Prussin played a key role in several landmark derivative cases in the Delaware courts, and has appeared frequently before the Delaware Supreme Court.

23

Before joining Silverman, Harnes in 1994, Mr. Prussin was of counsel to Weil, Gotshal & Manges. While there, he represented numerous corporate defendants in shareholder derivative actions and class actions, and also in general commercial, bankruptcy and antitrust disputes.

Mr. Prussin is admitted in New York, the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second, Ninth and D.C. Circuits.

## J. DOUGLAS RICHARDS

J. Douglas Richards joined Pomerantz in March 2007 as a partner specializing in antitrust class actions. He served for more than two years as Deputy General Counsel of the Commodity Futures Trading Commission, where he supervised numerous attorneys in the Office of General Counsel and managed more than 35 appeals in the United States Courts of Appeals. Mr. Richards was responsible for the management of all litigation by and against that federal agency, and was the recipient of a Special Act or Service Award. Prior to that time, he was a litigation partner for more than eight years with O'Sullivan Graev & Karabell (which merged into O'Melveny & Myers in 2002 and became its New York office). While with O'Sullivan he participated in diverse commercial litigation including antitrust cases such as *In re Beer Industry Antitrust Litigation*, 86 CV 2400 (E.D.N.Y.), in which he was a lead trial counsel for defendant the Stroh Brewery Company and successfully obtained a directed verdict for it after a two-week jury trial. Mr. Richards has broad experience with the litigation of antitrust and trade regulation matters at the trial and appellate levels.

Mr. Richards has especially extensive experience in the successful prosecution of antitrust class actions. He was co-lead counsel for the plaintiffs in a class action against Microsoft in New

24

York state court, which resulted in a settlement providing benefits of more than $160 million for New York consumers and needy public schools. He was co-lead counsel in *In re Buspirone Antitrust Litigation*, MDL No. 1410 (S.D.N.Y.), which led to a $90 million settlement and in which presiding Judge Koeltl stated that the plaintiffs' attorneys had done "a stupendous job." He was co-lead counsel in *In re Relafen Antitrust Litig.*, No. 01-12239 (D. Mass.), which led to a $75 million settlement and in which presiding Judge Young stated that the settlement was "the result of a great deal of very fine lawyering." He was co-lead counsel for international customers of Christie's and Sotheby's in connection with class action claims against them for price-fixing, in connection with which presiding Judge Kaplan observed that the representation of the plaintiffs had been "tenacious and skillful," and in which a $40 million settlement was achieved for foreign auction house customers. He also made a substantial contribution to the record-setting recovery of more than $3 billion in the antitrust class action against Visa and MasterCard in *In re Visa Check/Mastermoney Antitrust Litig.*, CV-96-5238 (E.D.N.Y.), which is the largest antitrust settlement in the over 100 year history of the Sherman Act.

Mr. Richards has argued more than twenty-five appeals in the federal and state courts of appeals. In recent years, he has argued appeals on several cutting-edge issues of antitrust law, including to the Supreme Court in *Bell Atlantic Corp. v. Twombly*, No. 05-1126, a case governing pleading requirements for antitrust conspiracy cases. He participated in 2007 in the briefing to the Supreme Court in *Credit Suisse v. Billing*, No. 05-1157, a case concerning the scope of operation of antitrust law in regulated industries. He also has argued such leading appellate cases as *In re Tamoxifen Citrate Antitrust Litig.*, 429 F.3d 370 (2d Cir. 2005), *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004), and *Kruman v. Christie's Int'l PLC*, 284 F.3d 384 (2d Cir. 2002).

25

Mr. Richards also has been a frequent speaker on issues of antitrust law. On Nov. 9, 2006, he was a speaker along with United States District Judge Todd Rakoff, former FTC Commissioner Tom Leary and David Copeland of Kaye Scholer at Federal Bar Council presentation in the Southern District of New York courthouse, titled "Antitrust Issues in Patent Litigation Settlements: the Divergent Views of Federal Courts and Agencies." On June 21, 2005, he was a speaker, along with United States District Judge Thomas Penfield Jackson, Professor Eleanor Fox of NYU Law School and Commissioner Jon Leibowitz of the FTC, at the annual symposium of the American Antitrust Institute titled "Thinking Creatively About Antitrust Remedies." He also recently authored *What Makes An Antitrust Class Action Remedy Successful?: A Tale of Two Settlements*, 80 Tulane L. Rev. 621 (2005).

Mr. Richards is admitted in New York, as well as the United States District Court for the Northern, Eastern, Southern and Western Districts of New York, the District of Connecticut, all of the Circuits of the United States Courts of Appeals, and the United States Supreme Court.

## SHAHEEN RUSHD

Shaheen Rushd graduated *summa cum laude* from New York Law School in 1981 and obtained her undergraduate degree from Kalamazoo College in 1977 (*magna cum laude*; elected to Phi Beta Kappa).

Ms. Rushd joined the Firm as an associate in January 1983 and became a partner in July 1991. Previously, Ms. Rushd was a staff attorney at the New York Regional Office of the Federal Trade Commission and served as law clerk to the Honorable Leonard I. Garth, Circuit Court Judge of the United States Court of Appeals for the Third Circuit.

26

Ms. Rushd specializes in securities and antitrust class actions. She has participated in the litigation of many of the Firm's major cases, including *Stoneridge Investment Partners v. Scientific-Atlanta, Inc.; EBC I, Inc. v. Goldman Sachs & Co.; Comverse Technology, Inc. Sec. Litig.; Kronfeld v. TWA*; and *In re Safety-Kleen Corp. Stockholders Litigation*. She was also part of the successful trial teams in *Walsh v. Northrop Grumman, et al.*, CV-94-5105 (E.D.N.Y.) and *Rauch v. Bilzerian*, 88 Civ. 15624 (Super. Ct. N.J.).

Ms. Rushd was a trustee of Kalamazoo College from 1996 through June 2002. She has served as an Adjunct Instructor at New York Law School and was a member of the New York City Bar Association's Antitrust and Trade Regulation Committee. She is a member of the ABA Section of Business Law.

Ms. Rushd is admitted in New York, the United States District Court for the Southern and Eastern Districts of New York, the United States Courts of Appeals for the Eighth and Eleventh Circuits, and the United States Supreme Court.

## MURIELLE STEVEN WALSH

Murielle Steven Walsh joined the Firm as an associate in April 1998 and became partner in January 2007. Ms. Steven Walsh graduated *cum laude* from New York Law School in 1996, where she was the recipient of the Irving Mariash Scholarship. During law school, Ms. Steven Walsh interned with the Kings County District Attorney and worked within the mergers and acquisitions group of Sullivan & Cromwell.

At Pomerantz, Ms. Steven Walsh specializes in securities and corporate governance-related litigation. Ms. Steven Walsh was part of the trial team in *Lewis v. Beall*, a derivative action in

27

California state court that focused on the duties of corporate directors. More recently, in *In re Livent Noteholders' Securities Litigation*, Ms. Steven Walsh was one of the lead attorneys in prosecuting this securities class action against the company's former chief executive officers, and obtained a $36.6 million judgment against these individuals (which was recently affirmed by the Second Circuit). The Pomerantz Firm also obtained settlements totaling over $17 million from other defendants in the case.

Ms. Steven Walsh is also part of the team working on the *EBC I v. Goldman Sachs* case, in which the Pomerantz firm obtained a landmark ruling from the New York Court of Appeals - that underwriters owe certain fiduciary duties to their issuer clients.

Ms. Steven Walsh currently serves as a member of the editorial board for Class Action Reports. In the past, she has been involved in political asylum work with the Association of the Bar of the City of New York.

Ms. Steven Walsh is admitted in New York and in the United States District Courts for the Eastern and Southern Districts of New York.

## JOSHUA B. SILVERMAN

Joshua B. Silverman joined the Pomerantz Firm in April 2006, as Of Counsel. Mr. Silverman is a 1993 graduate of the University of Michigan, where he received *Phi Beta Kappa* honors, and a 1996 graduate of the University of Michigan Law School. He focuses on prosecution of securities fraud class action lawsuits. He was a key member of the Pomerantz team of lawyers in *Stoneridge Investment Partners v. Scientific-Atlanta, Inc.*

Before joining the Pomerantz Firm, Mr. Silverman was a litigation associate at McGuireWoods LLP and its Chicago predecessor, Ross & Hardies. His practice there focused on complex commercial litigation including class action commodities fraud, civil RICO and antitrust cases. Mr. Silverman also spent two years as a securities trader.

Mr. Silverman is admitted in Illinois, the United States District Court for the Northern District of Illinois, the United States Courts of Appeals for the Seventh and Eighth Circuits, and the United States Supreme Court.

## LEIGH HANDELMAN SMOLLAR

Leigh Handelman Smollar became Of Counsel to the Firm in 2008. She has been associated with the Firm since January 2002.

Ms. Handelman Smollar graduated from Chicago-Kent College of Law in 1996. Upon her graduation, she spent the next 5 years specializing in complex litigation, handling a broad variety of matters.

Ms. Handelman Smollar co-authored an article for the Illinois Institute for Continuing Legal Education (IICLE) entitled "Shareholder Derivative Suits and Stockholder Litigation in Illinois," published in IICLE Chancery and Special Remedies 2004 Practice Handbook.

Ms. Handelman Smollar is admitted in Illinois, the United States District Court for the Northern District of Illinois, Eastern District of Missouri, and the United States Courts of Appeals for the Seventh and Eighth Circuits.

## JASON S. COWART

Jason S. Cowart became associated with the Firm in February 2005. He focuses on the prosecution of securities fraud class actions. Mr. Cowart graduated *cum laude* from Northwestern University Law School in 1999. While in law school, he won the Moot Court competition and was an editor of the Journal of International Law and Business.

After law school, Mr. Cowart served as a law clerk to United States District Court Judge Richard Enslen. Before joining the Pomerantz Firm, Mr. Cowart was a litigation associate at Sidley Austin Brown & Wood LLP for over four years. During that time, Mr. Cowart concentrated his practice on complex commercial litigation including antitrust, contract, fraud, and health care-related matters.

Mr. Cowart is the co-author of *State Immunity, Political Accountability and Alden v. Maine*, 75 Notre Dame L. Rev. 1069 (2000).

Mr. Cowart is admitted in New York and Washington, D.C., the United States District Court for the Southern and Eastern Districts of New York, the Western District of Michigan, the District of Columbia, and the United States Supreme Court.

## R. JAMES HODGSON

Jim Hodgson became associated with the Firm in May 2007. He focuses on the prosecution of securities fraud class actions.

Mr. Hodgson graduated from the University of Pennsylvania Law School in 2003. While in law school, he served as a judicial intern to the Honorable John F. Keenan, United States District Judge, Southern District of New York. He also served as a Senior Editor of the University of

Pennsylvania Law Review and, upon graduation, was recognized with an award for "Exemplary Public Service while at Penn Law School."

Following law school, Mr. Hodgson was associated with the law firm of Fried, Frank, Harris, Shriver & Jacobson LLP for nearly four years. At Fried, Frank, Mr. Hodgson focused his practice on general commercial and securities litigation, regulatory defense, copyright enforcement, and white-collar criminal defense. In addition, he has tried (on a pro bono basis) numerous asylum law cases on behalf of refugees seeking asylum protection in the United States.

Mr. Hodgson is admitted in New York. He is a member of American Bar Association, New York State Bar Association, and Association of the Bar of the City of New York.

## JEREMY A. LIEBERMAN

Jeremy A. Lieberman became associated with the Firm in August 2004. He focuses on the prosecution of securities fraud class actions. Mr. Lieberman graduated from Fordham University School of Law in 2002. While in law school, Mr. Lieberman served as a staff member of the Fordham Urban Law Journal.

Upon graduation, Mr. Lieberman was a litigation associate at Chadbourne & Parke LLP, where he specialized in complex commercial litigation and products liability.

Mr. Lieberman is admitted in New York. He is a member of the New York State Bar Association.

31

## FEI-LU QIAN

Fei-Lu Qian became associated with the Firm in July 2005. He focuses on the prosecution of securities fraud class actions. Mr. Qian graduated from Albany Law School of Union University in 2003. He was Associate Editor of the Albany Law Review. While in law school, he interned at the New York State Office of the Attorney General.

Mr. Qian began his legal career as an associate at Lovell Stewart Halebian LLP, where he specialized in securities litigation.

Mr. Qian is admitted in New York and the United States District Courts for the Southern and Eastern Districts of New York.

## CAROL A. STRAW

Carol A. Straw became associated with the Firm in 2007. She focuses on securities fraud class and derivative actions. Ms. Straw is a 1991 graduate of Columbia University School of Law and received her undergraduate degree from Queens College, *cum laude*, with honors in Economics.

Before law school, Ms. Straw interned with the NYC Public Development Corporation under the Mayor's Urban Fellows Program. After law school, she had her own private practice for many years.

Ms. Straw has represented indigent clients in divorce and child support proceedings as a participant in the Brooklyn Volunteer Lawyers Association.

Ms. Straw is admitted in New York and the District of Columbia.

## TAMAR A. WEINRIB

32

Tamar A. Weinrib joined Pomerantz as an associate in April 2008. Ms. Weinrib graduated from Fordham University School of Law in 2004 and, while there, participated in and coached Moot Court competitions.

After law school, Ms. Weinrib worked as a litigation associate in the New York office of Clifford Chance US LLP for over three years, where she focused on complex commercial litigation. In addition, she was involved in pro bono cases, including a criminal appeal and a housing dispute filed with the Human Rights Commission.

Ms. Weinrib is admitted in New York and the United States District Courts for the Southern and Eastern Districts of New York.

### SUSAN J. WEISWASSER

Susan J. Weiswasser became associated with the Firm in December 2004. She focuses on health insurance and other class action insurance litigation..

Ms. Weiswasser graduated from Brooklyn Law School in 2000. While in law school, Ms. Weiswasser served as a law clerk intern to the Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York. Ms. Weiswasser also served as a legal intern with the New York State Capital Defender Office.

Ms. Weiswasser is admitted in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Third Circuit. She is a member of the New York City Bar Association.

33