UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MORTON LIPETZ and EVELYN JEAN LIPETZ, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>  vs.<br><br>WACHOVIA CORPORATION, G. KENNEDY THOMPSON and THOMAS J. WURTZ,<br><br>     Defendants. | Civil Action No. 08-6171<br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE FULTON COUNTY EMPLOYEES' RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF, AND FOR APPROVAL OF SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL** |

Institutional investor class member and lead plaintiff movant Fulton County Employees' Retirement System ("Fulton County" or "Movant"), respectfully submits this memorandum of law in support of its motion for: (i) appointment of Fulton County as lead plaintiff in the above-captioned action pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4;[1] (ii) approval of Fulton County's selection of the law firm of Scott + Scott LLP to serve as lead counsel for the class pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v); and (iii) granting such other and additional relief as the Court may deem just and proper.

## I.   INTRODUCTION

Presently pending before this Court is the above-captioned securities class action lawsuit (the "Action") brought on behalf of all persons who purchased or otherwise acquired the securities of Wachovia Corporation ("Wachovia" or the "Company") between May 8, 2006, and June 6, 2008, inclusive (the "Class Period"), and were damaged thereby.  This Action is brought pursuant to §§10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

Pursuant to the PSLRA, the court is to appoint as lead plaintiff the movant with the largest financial interest in the litigation that otherwise satisfies the requirements of Rule 23) of the Federal Rules of Civil Procedure. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  Here, Fulton County should be appointed as lead plaintiff in the Action because: (1) this motion is timely filed; (2) to the best of its knowledge, Fulton County possesses the largest financial interest in this litigation;

---

[1] At present, one securities fraud class action is pending in this Court against defendant Wachovia Corporation, *Lipetz et al. v. Wachovia Corporation et al.*, 08-cv-06171-RJS (the "Action"), filed on July 7, 2008.  This Motion is to apply to any actions subsequently consolidated with this present Action.

and (3) Fulton County will adequately represent the interests of the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). Finally, Fulton County's selection of the law firm of Scott + Scott LLP ("Scott + Scott") to serve as lead counsel for the class should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.    FACTUAL BACKGROUND [2]

This is a securities class action brought on behalf of all persons or entities, except for defendants, who purchased or otherwise acquired Wachovia securities between May 8, 2006, and June 6, 2008, against Wachovia and certain of its officers and/or directors for violations of the Exchange Act.

Wachovia is a financial holding company that provides commercial and retail banking services, and other financial services in the United States and internationally. The Company provides these and various other corporate lending, commercial leasing, investment banking and wealth management services to a broad clientele.

During the Class Period, defendants allegedly misled the investing public by falsely representing that Wachovia had strict and selective underwriting and loan origination practices and concealed the Company's extremely aggressive residential mortgage lending practices, its failure to write down impaired securities containing subprime debt, its poor internal controls and its improper practices with respect to auction rate securities.

Specifically, defendants misrepresented that Wachovia maintained a conservative lending approach that set it apart from other lenders. Such reassurances were repeated by defendants throughout the Class Period in order to artificially support Wachovia's stock price in the midst of a weakening mortgage market that was adversely affecting companies like Wachovia. At that

---

[2]    These facts are derived from the allegations contained in the complaint captioned *Lipetz et al. v. Wachovia Corporation et al.*, 08-cv-06171-RJS (S.D.N.Y.), filed July 7, 2008.

time, there was widespread market concern with the mortgage lending industry, and in particular, concern with adjustable rate mortgages ("ARMs").  Despite the fact that Wachovia held significant option ARMs, the Company falsely represented that its loan underwriting practices were much better than at other banks and that this would allow it to prosper while lenders with less exacting standards and procedures would fare much worse.

In reality, however, Wachovia's actual lending practices differed materially from the description of those practices in statements made to investors.  Wachovia's ability to weather the deterioration in the real estate and credit markets was grossly exaggerated by defendants, at precisely the worst time, when analysts began to ask tough questions.  Moreover, the Company had inadequate loan loss reserves and falsely represented that its capital position was sufficient to fund its dividend.

Wachovia continued to tout the Company's strength despite the fact that a recent acquisition by Wachovia of Golden West Financial Corporation through a May 2006 merger exposed Wachovia to a significant amount of volatile subprime residential mortgage holdings.  As a result of this exposure from the merger, Wachovia began to steer Wachovia mortgage applicants into its signature "Pick-a-Payment" loans, which allowed borrowers to determine their own monthly payments, but cost almost a full percentage point more than traditional 30-year, fixed-rate mortgages.  In spite of Wachovia's dangerous exposure to the subprime mortgage market at a time when such exposure was financially devastating other subprime investors, Wachovia continued to assure the market that its business prospects were strong.

Shortly after last assuring the market of its liquidity, the strength of its underwriting practices, and the adequacy of its reserves, Wachovia stunned investors by reporting a quarterly loss, undertaking emergency measures to increase capital, and cutting its dividend.  On April 14,

2008, before the open of the normal trading session, Wachovia reported a loss of $350 million, or $0.20 per share, for the first quarter of 2008. The Company attributed the results to: (1) a $2.8 billion increase credit loss reserves, including $1.1 billion specifically for its "Pick-A-Pay" reserve build connected to Wachovia's adoption of a "refined reserve modeling" that resulted in "higher than expected loss factors on Pick-a-Pay"; and (2) a $2 billion in mark-to-market losses for mortgage backed securities, including a "$729 million loss on unfunded leveraged finance commitments." In order to shore-up its capital, Wachovia announced the following steps: (1) 41% reduction in the dividend to $0.375; and (2) a plan to raise capital by $7-8 billion through public offerings. In reaction to this shocking news, shares of Wachovia fell from $27.81 to $25.55, representing a decline of 8.13%, on abnormally high volume.

By late May of 2008, Wachovia disclosed that it had received subpoenas and or inquiries from the SEC and regulators from several states related to auction rate securities. Shortly thereafter, on June 2, 2008, Wachovia announced an immediate change in the Company's management. As a result, on June 2, 2008, Wachovia's stock dropped to $23.40 per share on volume of 66 million shares.

By June 9, 2008, after all information about Wachovia and its subprime exposure was disseminated to the market, the Company's stock dropped even further, to $18.89 per share on volume of 88 million shares, causing significant harm to Wachovia investors.

### III.    ARGUMENT

#### A.    Fulton County Satisfies the Lead Plaintiff Requirements of the Exchange Act and Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure governing the appointment of a lead plaintiff in private actions arising under the Exchange Act were that brought as class actions pursuant to the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4(a)(1)-(3)(B)(ii). First, the plaintiff who files

the initial action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff (the "Early Notice"). 15 U.S.C. §78u-4(a)(3)(A)(i). Here, the relevant Early Notice was published in *Prime Newswire* on June 9, 2008. *See* Declaration of David R. Scott ("Scott Decl."), Ex. A. Within 60 days after publication of the notice, any "person" or "group of persons" who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §78u-4(a)(3)(A)-(B); *see also Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05 Civ. 04617, 2006 WL 197036, at *2 (S.D.N.Y. Jan. 25, 2006).

Second, the PSLRA provides that within 90 days after publication of the Early Notice the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. §78u-4(a)(3)(B). Under this Exchange Act provision, the Court "shall" appoint the "most adequate plaintiff" to serve as lead plaintiff. *Freudenberg v. E*Trade Fin. Corp.*, No. 07 Civ. 8538, 2008 WL 2876373, at *3 (S.D.N.Y. July 16, 2008). The Exchange Act provides that the Court is to presume the "most adequate plaintiff" to be the class member plaintiff who: (1) has either filed a complaint or moved for lead plaintiff in response to a notice; (2) "has the largest financial interest in the relief sought;" and (3) satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see also Olsen v. New York Community Bancorp, Inc.*, 233 F.R.D. 101, 105 (E.D.N.Y. 2005).

### 1. Fulton County Has Timely Moved for Appointment as Lead Plaintiff

All class members who are interested in moving for appointment as lead plaintiff in this

matter must have done so within 60 days of the initial publication of the Early Notice on June 9, 2008. 15 U.S.C. §78u-4(a)(3)(A)-(B). Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required June 9th Early Notice, Fulton County hereby timely moves this Court to be appointed lead plaintiff on behalf of all members of the class. Fulton County also has duly signed and filed a certification stating its willingness to serve as a representative party on behalf of the class. *See* Scott Decl., Ex. B.

### 2. Fulton County Has the Requisite Financial Interest in the Relief Sought By the Class

During the Class Period, Fulton County purchased 140,600 shares of Wachovia securities and lost more than $1,939,703 as a result thereof.[3]  *See* Scott Decl., Ex. C. Movant is not aware of any other lead plaintiff applicant with a larger financial interest in the litigation. Because Fulton County has a substantial financial interest and, as discussed below, otherwise satisfies all of the PSLRA's prerequisites for appointment as lead plaintiff in this action, it should be appointed lead plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

### 3. Congress Expressly Envisioned that Institutional Investors Like Fulton County Would Be Appointed as Lead Plaintiffs in Securities Fraud Actions Like This

Congress reasoned that increasing the role of larger investors, like Fulton County, which typically have a larger financial stake in the outcome of the litigation, would be beneficial because investors with a large financial stake are more apt to effectively manage complex securities litigation. *See* Conference Report on the Private Securities Litigation Reform Act of

---

[3] The total potential recoverable losses suffered by lead plaintiff movants are not the same as their legally compensable damages, measurement of which is often a complex legal question that cannot be determined at this stage of the litigation. The approximate losses, however, can be determined from the certification requirement under Section 21D of the Exchange Act, 15 U.S.C. §78u-4(a)(2)(A) and based upon reference to information concerning the current market for the Company's shares.

1995, H.R. Rep. No. 104-369, at 34 (1995) reprinted in 1995 U.S.C.C.A.N. 697, 733. ("[C]lass members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.") Indeed, courts have found that the appointment of institutional investors is consistent with the legislative intent of the PSLRA. *In re eSpeed Sec. Litig.*, 232 F.R.D. 95, 99-100 & n. 23 (S.D.N.Y. 2005) ("the PSLRA reflects a preference on the part of the Congress that passed it that institutional investors are the most desirable lead plaintiffs"); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 311 (S.D.N.Y. 2001) (as an institutional investor, the proposed lead plaintiff "closely fits the profile of the kind of lead plaintiff Congress had in mind when it enacted the Reform Act").

Here, Fulton County, a sophisticated institutional investor with the largest financial stake in this litigation, is precisely the type of Lead Plaintiff envisioned by Congress and, therefore, should be appointed as such.

### 4. Fulton County Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure

According to 15 U.S.C. §78u-4(a)(3)(B), the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Of the four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the class representative. *Olsen*, 233 F.R.D. at 108. Consequently, in deciding a motion to serve as lead plaintiff, the Court need only inquire into the typicality and

adequacy of the proposed lead plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc*., 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Sofran v. LaBranche & Co., Inc*., 220 F.R.D. 398, 402 (S.D.N.Y. 2004) ("the claims of the class representatives need not be identical to the claims of the class to satisfy typicality"); *In re Crayfish Co. Sec. Litig.*, 2002 U.S. Dist. LEXIS 10134, at *15 (S.D.N.Y. June 6, 2002).

Fulton County satisfies this requirement because, like all other class members, it: (1) purchased or acquired Wachovia securities during the Class Period; (2) purchased or acquired Wachovia securities in reliance upon the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages thereby. Thus, Fulton County's claims are typical of those of other class members since their claims and the claims of other class members arise out of the same conduct and course of events.

Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry of a movant's adequacy to represent the class to the following: (a) the absence of potential conflict between the named plaintiffs and the class member; (b) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation; and (c) the class has a sufficient interest to ensure vigorous adequacy. *Weltz v. Lee,* 199 F.R.D. 129, 133

(S.D.N.Y. 2001).

Here, Fulton County is clearly "adequate" because its interests are aligned with the interests of the class and because both suffered from the same artificial inflation of the price of Wachovia securities and would benefit from the same relief. Additionally, Fulton County is represented by Scott + Scott, a firm with significant securities fraud litigation experience that is more than adequately equipped and informed in this action to proceed as a class representative and lead plaintiff. Moreover, there is no evidence of antagonism between Fulton County and the class. Finally, as shown below, Fulton County's proposed lead counsel for the class, Scott + Scott, is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Therefore, Fulton County *prima facie* satisfies all of the requirements of Rule 23 for the purposes of this Motion.

### B. The Court Should Approve Fulton County's Selection of Counsel

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. In that regard, Fulton County has selected Scott + Scott to serve as lead counsel. Scott + Scott is a firm with substantial experience in the prosecution of shareholder and securities class actions and possesses the resources necessary to efficiently conduct this litigation. *See* Scott Decl., Ex. D. Accordingly, the Court should approve Movant's selection of counsel.

### IV. CONCLUSION

For all the foregoing reasons, Fulton County respectfully requests that the Court: (1) appoint Fulton County as lead plaintiff in the above-captioned action; (2) approve Fulton County's selection of Scott + Scott to serve as lead counsel for the class, and (3) order such other relief as the Court may deem just and proper.

DATED:  August 8, 2008                Respectfully submitted,

SCOTT + SCOTT, LLP


/s/ David R. Scott
DAVID R. SCOTT (DS 8053)
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Tel: 860/537-5537
Fax: 860/537-4432
Email: drscott@scott-scott.com


SCOTT + SCOTT, LLP
BETH KASWAN
29 West 57th Street
New York, NY  10019
Tel: 212/223-6444
Fax: 212/223-6334
Email: bkaswan@scott-scott.com

**Proposed Lead Counsel**

**Attorneys for Fulton County Employees'
Retirement System**

- 11 -

- 12 -

## **CERTIFICATE OF SERVICE**

    I, David R. Scott, hereby certify that a copy of the foregoing was served on all parties on August 8, 2008 via the Court's ECF system.

/s/ David R. Scott