**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MORTON and EVELYN JEAN LIPETZ, On Behalf Of Themselves And All Others Similarly Situated, | |
| Plaintiffs, | Civil Action No. 1:08-cv-06171-RJS |
| vs. | ECF Filed |
| WACHOVIA CORPORATION, G. KENNEDY THOMPSON, and THOMAS J. WURTZ | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE WACHOVIA INSTITUTIONAL INVESTOR GROUP FOR (1) APPOINTMENT AS LEAD PLAINTIFF AND (2) APPROVAL OF ITS SELECTION OF COUNSEL <u>AS LEAD COUNSEL FOR THE CLASS</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND OF THE ACTION ..............................................................................................2

THE PROCEDURAL REQUIREMENTS PURSUANT TO THE PSLRA...................................5

ARGUMENT....................................................................................................................................5

I.     The Wachovia Institutional Investor Group Should Be Appointed Lead Plaintiff..............5

       A.     The Wachovia Institutional Investor Group Believes That It Has the
              Largest Financial Interest In the Relief Sought By the Class .................................6

       B.     The Wachovia Institutional Investor Group Otherwise Satisfies the
              Requirements of Rule 23 .......................................................................................7

II.    The Court Should Approve the Wachovia Institutional Investor Group's Selection
       of Lead Counsel ..................................................................................................................10

CONCLUSION................................................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Corwin v. Seizinger*,
  Nos. 07 Civ. 6728(DC), 07 Civ. 7016(DC), 07 Civ. 7476(DC), 2008 WL
  123846 (S.D.N.Y. Jan. 8, 2008) ................................................................................................ 8

*Glauser v. EVCI Center Colleges Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006) ......................................................................................... 8, 10

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005) ................................................................................................... 10

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-cv-1825(NGG)(RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ............................. 7

*In re Fuwei Films Sec. Litig.*,
  247 F.R.D. 432 (S.D.N.Y. 2008) ............................................................................................. 6

*In re Initial Pub. Offering Sec. Litig.*,
  214 F.R.D. 117 (S.D.N.Y. 2002) ............................................................................................. 9

*In re Orion Securities Litigation*
  No. 08 Civ. 1328 (RJS), 2008 WL 55368 (S.D.N.Y. July 7, 2008) ......................................... 6

*Reimer v. Ambac Fin. Group, Inc.*,
  No. 08 Civ. 411(NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008) ................................. 7, 8

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*,
  No. 05-CV-4617 (RJH), 2006 WL 197036 (S.D.N.Y. Jan 25, 2006) ...................................... 7

**STATUTES**

15 U.S.C. § 78u-4 .................................................................................................... 1, 5, 6, 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 .......................................................................................................... 2, 6, 7

H.R. Conf. Rep. No. 104-369, 104th Cong. 1st Sess. (1995),
  *reprinted in* 1995 U.S.C.C.A.N. 730 .................................................................................... 10

Maine Public Employees Retirement System ("Maine PERS"), Fjärde AP-Fonden ("AP4"), and Public Employees' Retirement System of Mississippi ("Mississippi PERS") (collectively, the "Wachovia Institutional Investor Group"), respectfully submit this memorandum in support of their motion (i) for appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and (ii) for approval of their selection of the law firms of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Schiffrin Barroway Topaz & Kessler, LLP ("SBTK") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

This securities class action lawsuit arises from allegations concerning violations of the federal securities laws by Wachovia Corporation ("Wachovia" or the "Company") and certain of its senior executives (collectively, "Defendants"). Between May 8, 2006 and June 6, 2008 (the "Class Period"), Defendants disseminated materially false and misleading information to investors regarding the Company's financial condition, while concealing or recklessly ignoring information known to them about the Company's business and finances, including its acquisition of Golden West and exposure to subprime losses. Defendants' misstatements artificially inflated the trading price of Wachovia securities and caused substantial damage to Wachovia investors as information correcting Defendants' misrepresentations began entering the market, causing the price of Wachovia securities to decline.

The Wachovia Institutional Investor Group believes that it is the "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff in this action. The Wachovia Institutional Investor Group respectfully submits that it has the largest

financial interest in the relief sought by the Class, having suffered over $40 million in losses on its Class Period investment in Wachovia securities as a result of the Defendants' misconduct.[1] In addition, the members of the Wachovia Institutional Investor Group satisfy the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure as they are adequate Class representatives with claims that are typical of other Class members' claims. Furthermore, the members of the Wachovia Institutional Investor Group are sophisticated public pension fund systems with hundreds of billions of dollars of assets under management that have extensive combined experience serving as fiduciaries and are committed to ensuring that the Class will benefit from the active supervision of Class counsel. As such, the members of the Wachovia Institutional Investor Group respectfully submit that they are the paradigmatic Lead Plaintiff contemplated by Congress in enacting the PSLRA—sophisticated institutional investors with a real financial interest in the action who have the resources and desire to vigorously prosecute the action in the best interests of the Class.

## **BACKGROUND OF THE ACTION**[2]

Wachovia is registered as a financial holding and a bank holding company, and provides, *inter alia*, commercial and retail banking and trust services through full-service banking offices. ¶¶ 2, 36.

---

[1] Copies of the Certifications of Maine PERS, AP4, and Mississippi PERS are attached as Exhibits A, B and C, respectively, to the Declaration of Gerald H. Silk ("Silk Decl."). As required by the PSLRA, these Certifications set forth the transactions of Maine PERS, AP4 and Mississippi PERS in Wachovia securities during the Class Period. In addition, charts setting forth calculations of the Wachovia Institutional Investor Group's losses on both a first-in, first-out ("FIFO") and a last-in, first-out ("LIFO") basis are attached as Exhibits D, E and F, respectively, to the Silk Decl.

[2] References herein to "Compl. ¶__" are to the Class Action Complaint captioned as *Lipetz v. Wachovia Corp.*, No. 08-cv-06171-RJS (S.D.N.Y. filed July 7, 2008) [Dkt# 1].

2

During the Class Period, the Defendants issued false and misleading statements assuring investors of Wachovia's sound financial condition and misrepresenting that the Company adhered to strict and selective underwriting and loan origination practices. Throughout the summer of 2007, even as several major banks began reporting losses tied to the contracting credit and housing markets, Wachovia assured investors that it was able to weather the storm and manage its balance sheet. ¶ 61. In particular, Wachovia represented to investors that its strict and selective underwriting and loan origination practices and conservative lending approach set it apart from other lenders. Such reassurances were repeated by Defendants throughout the Class Period in order to artificially sustain Wachovia's stock price in the midst of a weakening mortgage market.

On May 8, 2006—the date beginning the Class Period—Wachovia announced its acquisition of Golden West Financial Corporation ("Golden West") for $24 billion. Golden West's principal business operations included issuing mortgages with non-conventional terms, called "Pick-a-Payment" loans. Golden West's products entailed significant risk to the issuer and called for rigorous underwriting standards. As investors would later learn, Wachovia continued to issue these risky Pick-a-Payment loans to borrowers with questionable credit, without adhering to proper underwriting standards. ¶ 83.

Shortly after assuring the market of its liquidity, the strength of its underwriting practices and the adequacy of its reserves, Wachovia shocked investors on April 14, 2008 by reporting a $350 million quarterly loss and announcing emergency measures to increase the Company's capital. Wachovia attributed its dismal first quarter results to a $2.8 billion increase in credit loss reserves, $1 billion of which related to "Pick-A-Pay"

loans, and to $2 billion in mark-to-market losses on mortgage-backed securities held by the Company. In response to the news, shares fell $2.26, or more than 8%, to close at $25.55.

Following this April disclosure, on June 2, 2008, the Company announced that Ken Thompson, the Company's CEO and one of the chief proponents of the merger with Golden West, was "retiring at the request of the Board." ¶ 80. Media reports in the ensuing days revealed additional facts regarding the poor quality of Wachovia's Pick-a-Payment loans and the tactics used by Golden West and Wachovia to push these loans onto borrowers who were unable to repay them, further eroding investors' confidence. In addition to the misrepresentations regarding Golden West and the Company's exposure to subprime-related losses, investors also learned of other questionable business practices that have resulted in several investigations and lawsuits, including inquiries from federal regulators regarding the Company's involvement in the auction rate securities business. ¶ 79. As a result of these disclosures, by June 9, 2008, Wachovia's stock price had slid to $18.89 per share. ¶ 84.

In sum, as a result of Defendants' misrepresentations and the subsequent disclosures revealing the truth regarding Wachovia's financial condition, the Company's stock fell from a Class Period high of $58.80 per share in February 2007, to under $20 per share by the end of the Class Period.

**PROCEDURAL REQUIREMENTS PURSUANT TO THE PSLRA**

On June 6, 2008, the first securities class action against Defendants, styled *Bristol County Retirement System v. Wachovia Corp.*, *et al.*, No. 08-CV-2844-SC, was filed in the Northern District of California, alleging a class period of May 8, 2006 through April 11, 2008. Notice of the pendency of this action was published on June 9, 2008, alerting

4

investors to the August 8, 2008 deadline for filing a motion for appointment as lead plaintiff. *See* Silk Decl., Exhibit G. Subsequently, on July 7, 2008, another securities class action against Defendants, styled *Lipetz v. Wachovia Corporation, et al.*, No. 08-CV-6171 (RJS), was filed in this District, alleging an expanded class period from May 8, 2006 to June 6, 2008. On July 8, 2008, counsel in the *Lipetz* action published a new notice informing investors of the May 8, 2006 to June 6, 2008 class period. *See* Silk Decl., Exhibit H. On August 6, 2008, counsel for the plaintiff in the *Bristol County Retirement System* action filed a Notice of Voluntary Dismissal, which the Northern District of California "so ordered" the following day.

The PSLRA permits any member of the purported class to move for appointment as lead plaintiff within 60 days of the publication of the first notice that a class action has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). By the filing of this motion, the Wachovia Institutional Investor Group has timely moved for appointment as Lead Plaintiff under the PSLRA.

**ARGUMENT**

**I.     The Wachovia Institutional Investor Group Should Be Appointed Lead Plaintiff**

The Wachovia Institutional Investor Group respectfully submits that it should be appointed Lead Plaintiff because it is "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA establishes a presumption that the "most adequate plaintiff" is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also In re Orion Sec. Litig.*, No. 08-CV-1238 (RJS), 2008 WL

5

2811358, at *4 (S.D.N.Y. July 8, 2008) (Sullivan, J.); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436-37 (S.D.N.Y. 2008) (Sullivan, J.).

### A. The Wachovia Institutional Investor Group Believes That It Has the Largest Financial Interest In the Relief Sought By the Class

The Wachovia Institutional Investor Group should be appointed Lead Plaintiff because it has the largest financial interest in the relief sought by the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Courts focus on the approximate financial losses of the movants to determine which movant has the largest financial interest in the litigation. *See, e.g., In re Orion Sec. Litig.*, 2008 WL 2811358, at *4 (appointing as lead plaintiff the movant with the largest financial loss); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. at 437 (same). Although courts may also consider other factors—such as the number of gross shares purchased during the class period, the number of net shares purchased during the class period, and the total net funds expended during the class period—the greatest weight is placed on the movants' approximate financial losses. *See, e.g., In re Orion Sec. Litig.*, 2008 WL 2811358, at *5 ("This Court, like many others, shall place the most emphasis on . . . the approximate losses suffered by the movant.") (*quoting Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007)) (internal quotation marks omitted); *see also Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05-CV-4617 (RJH), 2006 WL 197036, at *3 (S.D.N.Y. Jan. 25, 2006) ("The amount of financial loss is the most significant of the . . . elements.") (internal citation and quotation marks omitted).

The Wachovia Institutional Investor Group believes that it has the largest financial interest in this action by virtue of the significant losses it suffered on its investment in Wachovia securities. As a result of the market corrections caused by the revelation of Wachovia's misconduct, the Wachovia Institutional Investor Group suffered

6

approximately $41 million in losses on their Class Period investment in Wachovia securities on a FIFO basis and sustained $29 million in losses on a LIFO basis.[3] Accordingly, the Wachovia Institutional Investor Group believes that it has the largest financial interest of any qualified movant seeking appointment as Lead Plaintiff.

### B. The Wachovia Institutional Investor Group Otherwise Satisfies the Requirements of Rule 23

The Wachovia Institutional Investor Group should be appointed Lead Plaintiff because it also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. On a motion to serve as Lead Plaintiff, the movant "need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) (*quoting In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998)); *Corwin v. Seizinger*, Nos. 07 Civ. 6728(DC), 07 Civ. 7016(DC), 07 Civ. 7476(DC), 2008 WL 123846, at *2 (S.D.N.Y. Jan. 8, 2008). The Wachovia Institutional Investor Group satisfies both of these requirements.

The Wachovia Institutional Investor Group's claims are typical of the claims of other Class members. Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Reimer v. Ambac Fin. Group, Inc.*, No. 08 Civ.

---

[3] Courts commonly employ either the FIFO or LIFO accounting methods to determine a movant's financial interest under the PSLRA. *See, e.g., In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825(NGG)(RER), 2007 WL 680779, at *7 n.10 (E.D.N.Y. Mar. 2, 2007) (noting that "Courts have recognized two potential accounting methods when assessing gains/losses that result from the purchase and sale of securities" and identifying FIFO and LIFO as those methods). Under the FIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the earliest and moving chronologically forward. Under the alternative LIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the latest and moving chronologically backward. The Wachovia Institutional Investor Group's losses calculated on both a FIFO and LIFO basis are included in the charts attached as Exhibits D, E and F, respectively, to the Silk Decl.

411(NRB), 2008 WL 2073931, at *4 (S.D.N.Y. May 9, 2008) (*quoting In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  The Wachovia Institutional Investor Group's claims in this action arise from the very same course of misconduct at Wachovia as the claims of the other Class members—*i.e.*, the artificial inflation and consequent market correction of Wachovia stock caused by Defendants' fraudulent public disclosures.  *See, e.g.*, *Glauser*, 236 F.R.D. at 189 (finding a lead plaintiff movant's claim to be typical where the movant "like all class members, (1) purchased or acquired EVCI securities during the proposed class period, (2) at prices allegedly artificially inflated by Defendants' false and misleading statements and/or omissions, and (3) suffered damages thereby."); *Corwin*, 2008 WL 123846, at *3 (finding typicality where the lead plaintiff movant "purchased or acquired GPC securities during the Class Period at prices allegedly artificially inflated by defendants' purported materially false and misleading statements and/or omissions, and suffered damages when the truth was disclosed to the market").  Accordingly, the Wachovia Institutional Investor Group meets the typicality requirement of Rule 23.

The Wachovia Institutional Investor Group likewise satisfies the adequacy requirement of Rule 23.  The adequacy requirement is satisfied where "the class members' interests are not antagonistic to one another;" the movant "has a sufficient interest in the outcome of the case to ensure vigorous advocacy," and where "class counsel is qualified, experienced, and generally able to conduct the litigation."  *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002).  The Wachovia Institutional Investor Group satisfies each of these elements of the adequacy requirement.

8

The members of the Wachovia Institutional Investor Group are adequate to represent the Class because their interests are perfectly aligned with those of the other class members and are not antagonistic in any way. The members of the Wachovia Institutional Investor Group seek the exact same relief under identical claims and legal theories as the other members of the Class. Moreover, there are no facts to suggest that the members of the Wachovia Institutional Investor Group have any actual or potential conflict of interest with other Class members or that any other antagonism exists between the members of the Wachovia Institutional Investor Group and the Class.

Moreover, the members of the Wachovia Institutional Investor Group are also adequate to represent the interests of the Class because they have a significant financial interest in the action—having suffered losses of approximately $41 million—that will ensure their vigorous prosecution of this case. As such, the Wachovia Institutional Investor Group, comprised of sophisticated institutional investors with a real financial interest in the litigation, is the prototypical Lead Plaintiff envisioned by Congress in its enactment of the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at 34, 104th Cong. 1st Sess. (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 180 (3d Cir. 2005) (holding that the PSLRA establishes "a paradigm in which the plaintiff with the largest stake in the case, usually a large and sophisticated institution, is accorded the status of lead plaintiff and assigned the right to appoint and duty to monitor lead counsel for the class"); *Glauser*, 236 F.R.D. at 188.

Finally, the Wachovia Institutional Investor Group has demonstrated its adequacy through its selection of BLB&G and SBTK as counsel to represent the Class. As discussed more fully below, BLB&G and SBTK have repeatedly demonstrated an ability to effectively prosecute complex securities class actions.

II.     **The Court Should Approve the Wachovia Institutional Investor Group's Selection of Lead Counsel**

The Court should approve the Wachovia Institutional Investor Group's choice of the law firms of BLB&G and SBTK to serve as Lead Counsel. Pursuant to Section 21D(a)(3)(B)(v) of the PSLRA, *codified at* 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is to select and retain Lead Counsel to represent the Class, subject to Court approval. The Wachovia Institutional Investor Group has selected and retained the law firms of BLB&G and SBTK, two of the preeminent securities class action law firms in the country.

Both BLB&G and SBTK have been appointed lead counsel in numerous complex securities class actions in this District and around the country. Indeed, the two firms have helped investors to obtain two of the three largest securities class action recoveries in history.[4] BLB&G served as co-lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-CV-3288 (DLC) (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the class. Likewise, SBTK also has a distinguished record of success serving as counsel in securities class action lawsuits. For example, SBTK served as a co-lead counsel in *In re Tyco International, Ltd. Securities Litigation*, No. 02-266-PB (D.N.H.),

---

[4] BLB&G's and SBTK's firm biographies are attached as Exhibits I and J, respectively, to the Silk Decl.

in which over $3.2 billion was recovered on behalf of shareholders—one of the three largest securities class action settlements of all time.

Accordingly, the Court should approve the Wachovia Institutional Investor Group's selection of BLB&G and SBTK as Lead Counsel for the Class.

## CONCLUSION

For the foregoing reasons, the Wachovia Institutional Investor Group respectfully requests that the Court: (i) appoint the Wachovia Institutional Investor Group as Lead Plaintiff pursuant to the PSLRA; (ii) approve the Wachovia Institutional Investor Group's selection of BLB&G and SBTK as Lead Counsel for the Class; and (iii) grant such other and further relief as the Court may deem just and proper.

Dated: August 8, 2008

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/ Gerald H. Silk
John P. Coffey (JC-3832)
Gerald H. Silk (GS-4565)
Noam Mandel (NM-0203)
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
(212) 554-1400
(212) 554-1444 (fax)
sean@blbglaw.com
jerry@blbglaw.com
noam@blbglaw.com

*Counsel for Public Employees' Retirement System of Mississippi and Proposed Lead Counsel for the Class*

**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**

Sean M. Handler
Darren J. Check
Naumon A. Amjed

11

>280 King of Prussia Road
>Radnor, PA 19087
>(610) 667-7706
>(610) 667-7056 (fax)
>
>*Counsel for Fjärde AP-Fonden and Maine Public Employees Retirement System and Proposed Lead Counsel for the Class*