## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MORTON and EVELYN JEAN LIPETZ, On Behalf Of Themselves And All Others Similarly Situated,<br><br>                Plaintiffs,<br><br>      vs.<br><br>WACHOVIA CORPORATION, G. KENNEDY THOMPSON, and THOMAS J. WURTZ<br><br>              Defendants. | Civil Action No. 1:08-cv-06171-RJS<br><br>ECF Filed |

**DECLARATION OF GERALD H. SILK IN SUPPORT OF THE MOTION OF THE WACHOVIA INSTITUTIONAL INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF <u>COUNSEL AS LEAD COUNSEL FOR THE CLASS</u>**

I, Gerald H. Silk, declare as follows:

1.      I am a member in good standing of the bars of the State of New York and of this Court.  I am a partner in the law firm of Bernstein Litowitz Berger & Grossmann LLP.  I submit this declaration in support of the motion filed by Maine Public Employees Retirement System ("Maine PERS"), Fjärde AP-Fonden ("AP4"), and Public Employees' Retirement System of Mississippi ("Mississippi PERS") (collectively, the "Wachovia Institutional Investor Group") for appointment as Lead Plaintiff and for approval of their selection of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Schiffrin Barroway Topaz & Kessler, LLP ("SBTK") as Lead Counsel for the Class.

2.      Attached as Exhibits A through J are true and correct copies of the following documents:

Exhibit A:      Certification of Maine PERS;

Exhibit B:      Certification of AP4;

Exhibit C:      Certification of Mississippi PERS;

Exhibit D:      Chart of Maine PERS's transactions and losses;

Exhibit E:      Chart of AP4's transactions and losses;

Exhibit F:      Chart of Mississippi PERS's transactions and losses;

Exhibit G:      First notice of pendency of class action;

Exhibit H:      Subsequent notice of pendency, expanding the class period;

Exhibit I:      Firm biography of BLB&G; and

Exhibit J:      Firm biography of SBTK.

Executed this eighth day of August, 2008.

_____/s/    Gerald H. Silk_____
                Gerald H. Silk

**Ex. A**

**CERTIFICATION OF JOHN C. MILAZZO IN SUPPORT OF THE MAINE PUBLIC
EMPLOYEES RETIREMENT SYSTEM'S MOTION FOR CONSOLIDATION, FOR ITS
APPOINTMENT AS LEAD PLAINTIFF, AND FOR THE APPROVAL OF ITS
SELECTION OF COUNSEL**

I, John C. Milazzo, on behalf of the Maine Public Employees Retirement System ("MPERS"),

declare, as to the claims asserted under the federal securities laws, that:

      1.     MPERS did not purchase the security that is the subject of this action at the

direction of Plaintiff's counsel or in order to participate in any private action.

      2.     MPERS is willing to serve as a representative party on behalf of the class,

including providing testimony at deposition and trial, if necessary.

      3.     Attached in Schedule A are MPERS' transactions in Wachovia Corporation

(NYSE: WB) securities during the Class Period.

      4.     MPERS has fully reviewed the facts and allegations of the complaints filed in this

action and have authorized Schiffrin Barroway Topaz & Kessler, LLP to file a motion for

appointment as lead plaintiff on its behalf in this action.

      5.     I am authorized to make legal decisions on behalf of MPERS.

      6.     MPERS intends to actively monitor and vigorously pursue this action for the

benefit of the class, and will endeavor to provide fair and adequate representation and work

directly with the efforts of Class counsel to ensure that the largest recovery for the Class

consistent with good faith and meritorious judgment is obtained.

      7.     During the three years prior to the date of this Certification, MPERS has sought to

serve as a representative party for a class in actions filed under the federal securities laws against

New Century Financial Corp., Eli Lilly & Co., and Amgen, Inc.  Further, MPERS is a plaintiff in

a class action complaint filed against American International Group, Inc.

8.    MPERS will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 2/ day of July, 2008.

Maine Public Employees Retirement System

By: _____

John C. Milazzo
*Chief Deputy Executive Director & General Counsel*

Maine Public Employees Retirement System

## SCHEDULE A

| Date | Purchase or Sale | Type of Securities | Number of Securities | Price of Securities |
|---|---|---|---|---|
| 6/19/2006 | Purchase | Com Stk | 4,500 | 52.6897 |
| 6/20/2006 | Purchase | Com Stk | 2,500 | 52.8836 |
| 6/21/2006 | Purchase | Com Stk | 500 | 53.3929 |
| 7/6/2006 | Purchase | Com Stk | 10,700 | 53.7532 |
| 7/7/2006 | Purchase | Com Stk | 20,900 | 53.8817 |
| 7/11/2006 | Purchase | Com Stk | 300 | 53.7581 |
| 7/12/2006 | Purchase | Com Stk | 400 | 53.7648 |
| 7/13/2006 | Purchase | Com Stk | 1,000 | 53.6545 |
| 7/31/2006 | Purchase | Com Stk | 1,000 | 53.6729 |
| 8/1/2006 | Purchase | Com Stk | 3,700 | 53.6000 |
| 8/1/2006 | Purchase | Com Stk | 5,500 | 53.8137 |
| 8/2/2006 | Purchase | Com Stk | 1,700 | 54.3515 |
| 8/11/2006 | Purchase | Com Stk | 3,700 | 53.4561 |
| 8/14/2006 | Purchase | Com Stk | 10,300 | 54.1372 |
| 8/15/2006 | Purchase | Com Stk | 7,700 | 55.1301 |
| 8/16/2006 | Purchase | Com Stk | 3,800 | 55.4048 |
| 8/17/2006 | Purchase | Com Stk | 4,900 | 55.6206 |
| 8/18/2006 | Purchase | Com Stk | 3,500 | 55.6624 |
| 10/2/2006 | Purchase[1] | Com Stk | 27,747.72 | 55.8000 |
| 10/2/2006 | Purchase[1] | Com Stk | 25,435.41 | 55.8000 |
| 12/15/2006 | Purchase | Com Stk | 43,381 | 56.9872 |
| 1/8/2007 | Purchase | Com Stk | 101,300 | 56.2660 |
| 1/12/2007 | Purchase | Com Stk | 6,700 | 56.4790 |
| 1/12/2007 | Purchase | Com Stk | 600 | 56.5000 |
| 1/24/2007 | Purchase | Com Stk | 10,200 | 56.4200 |
| 1/24/2007 | Purchase | Com Stk | 14,300 | 56.6055 |
| 1/25/2007 | Purchase | Com Stk | 11,900 | 56.3850 |
| 2/14/2007 | Purchase | Com Stk | 8,300 | 57.6943 |
| 3/16/2007 | Purchase | Com Stk | 2,900 | 55.0000 |
| 3/16/2007 | Purchase | Com Stk | 2,600 | 55.0000 |
| 3/19/2007 | Purchase | Com Stk | 1,900 | 55.7661 |
| 3/19/2007 | Purchase | Com Stk | 2,200 | 55.7661 |
| 3/20/2007 | Purchase | Com Stk | 1,400 | 55.9062 |
| 3/20/2007 | Purchase | Com Stk | 1,200 | 55.9062 |
| 3/21/2007 | Purchase | Com Stk | 3,600 | 56.6087 |
| 3/22/2007 | Purchase | Com Stk | 1,500 | 57.0270 |
| 3/22/2007 | Purchase | Com Stk | 800 | 57.0700 |
| 9/11/2007 | Purchase | Com Stk | 11,700 | 48.6990 |
| 11/19/2007 | Purchase | Com Stk | 2,800 | 38.3117 |
| 11/20/2007 | Purchase | Com Stk | 2,400 | 37.6394 |
| 11/20/2007 | Purchase | Com Stk | 100 | 38.0750 |
| 11/20/2007 | Purchase | Com Stk | 3,800 | 38.1140 |

**Maine Public Employees Retirement System**

| | | | | |
|---|---|---|---|---|
| 11/20/2007 | Purchase | Com Stk | 5,500 | 38.2403 |
| 11/20/2007 | Purchase | Com Stk | 3,800 | 38.2451 |
| 11/21/2007 | Purchase | Com Stk | 900 | 38.0949 |
| 11/21/2007 | Purchase | Com Stk | 200 | 38.5607 |
| 11/21/2007 | Purchase | Com Stk | 200 | 39.3129 |
| 11/21/2007 | Purchase | Com Stk | 2,300 | 39.4313 |
| 11/26/2007 | Purchase | Com Stk | 100 | 39.0463 |
| 11/26/2007 | Purchase | Com Stk | 1,000 | 39.1425 |
| 11/29/2007 | Purchase | Com Stk | 1,600 | 40.8146 |
| 11/29/2007 | Purchase | Com Stk | 700 | 40.8308 |
| 11/29/2007 | Purchase | Com Stk | 700 | 40.8445 |
| 11/29/2007 | Purchase | Com Stk | 1,800 | 40.8575 |
| 11/29/2007 | Purchase | Com Stk | 100 | 40.8602 |
| 11/29/2007 | Purchase | Com Stk | 300 | 40.8931 |
| 11/29/2007 | Purchase | Com Stk | 100 | 40.8936 |
| 12/4/2007 | Purchase | Com Stk | 6,600 | 41.7795 |
| 12/5/2007 | Purchase | Com Stk | 200 | 42.3344 |
| 12/5/2007 | Purchase | Com Stk | 100 | 42.3522 |
| 12/5/2007 | Purchase | Com Stk | 1,500 | 42.3948 |
| 12/5/2007 | Purchase | Com Stk | 300 | 42.4000 |
| 12/5/2007 | Purchase | Com Stk | 100 | 42.4363 |
| 12/5/2007 | Purchase | Com Stk | 400 | 42.4715 |
| 12/5/2007 | Purchase | Com Stk | 600 | 42.4904 |
| 12/5/2007 | Purchase | Com Stk | 1,800 | 42.6364 |
| 12/5/2007 | Purchase | Com Stk | 600 | 42.8359 |
| 12/7/2007 | Purchase | Com Stk | 300 | 43.2307 |
| 12/7/2007 | Purchase | Com Stk | 100 | 43.2642 |
| 12/7/2007 | Purchase | Com Stk | 3,300 | 43.2866 |
| 12/20/2007 | Purchase | Com Stk | 100 | 38.3250 |
| 12/20/2007 | Purchase | Com Stk | 700 | 38.3299 |
| 12/20/2007 | Purchase | Com Stk | 871 | 38.3656 |
| 12/20/2007 | Purchase | Com Stk | 829 | 38.3758 |
| 12/20/2007 | Purchase | Com Stk | 700 | 38.4350 |
| 12/20/2007 | Purchase | Com Stk | 400 | 38.4585 |
| 12/20/2007 | Purchase | Com Stk | 200 | 38.4922 |
| 1/8/2008 | Purchase | Com Stk | 300 | 34.7604 |
| 1/8/2008 | Purchase | Com Stk | 600 | 34.7711 |
| 1/8/2008 | Purchase | Com Stk | 1,400 | 34.8083 |
| 1/8/2008 | Purchase | Com Stk | 500 | 34.8116 |
| 1/8/2008 | Purchase | Com Stk | 900 | 34.8227 |
| 1/8/2008 | Purchase | Com Stk | 900 | 35.0500 |
| 1/11/2008 | Purchase | Com Stk | 3,100 | 36.5041 |
| 1/11/2008 | Purchase | Com Stk | 1,100 | 36.6567 |
| 1/11/2008 | Purchase | Com Stk | 1,700 | 36.8595 |
| 1/11/2008 | Purchase | Com Stk | 2,600 | 36.9410 |
| 1/11/2008 | Purchase | Com Stk | 200 | 36.9888 |

**Maine Public Employees Retirement System**

| | | | | |
|---|---|---|---|---|
| 1/11/2008 | Purchase | Com Stk | 800 | 37.0050 |
| 1/14/2008 | Purchase | Com Stk | 1,900 | 35.9856 |
| 1/14/2008 | Purchase | Com Stk | 2,600 | 36.2116 |
| 1/31/2008 | Purchase | Com Stk | 100 | 37.2631 |
| 1/31/2008 | Purchase | Com Stk | 200 | 37.4402 |
| 1/31/2008 | Purchase | Com Stk | 100 | 37.4441 |
| 1/31/2008 | Purchase | Com Stk | 1,400 | 37.4779 |
| 1/31/2008 | Purchase | Com Stk | 200 | 37.4813 |
| 1/31/2008 | Purchase | Com Stk | 300 | 37.4936 |
| 1/31/2008 | Purchase | Com Stk | 200 | 37.8078 |
| 1/31/2008 | Purchase | Com Stk | 2,400 | 38.3749 |
| 2/6/2008 | Purchase | Com Stk | 163,600 | 34.5970 |
| 2/11/2008 | Purchase | Com Stk | 100 | 34.3250 |
| 2/11/2008 | Purchase | Com Stk | 400 | 34.3432 |
| 2/11/2008 | Purchase | Com Stk | 300 | 34.3465 |
| 2/11/2008 | Purchase | Com Stk | 1,300 | 34.3514 |
| 2/11/2008 | Purchase | Com Stk | 400 | 34.3782 |
| 2/11/2008 | Purchase | Com Stk | 1,800 | 34.4600 |
| 3/4/2008 | Purchase | Com Stk | 4,100 | 29.3860 |
| 3/4/2008 | Purchase | Com Stk | 900 | 29.3931 |
| 3/4/2008 | Purchase | Com Stk | 500 | 29.4300 |
| 3/4/2008 | Purchase | Com Stk | 2,500 | 29.4324 |
| 3/4/2008 | Purchase | Com Stk | 1,700 | 29.4500 |
| 3/4/2008 | Purchase | Com Stk | 500 | 29.4700 |
| 3/4/2008 | Purchase | Com Stk | 1,300 | 29.4830 |
| 3/20/2008 | Purchase | Com Stk | 2,800 | 29.5476 |
| 3/20/2008 | Purchase | Com Stk | 1,900 | 29.5641 |
| 3/20/2008 | Purchase | Com Stk | 3,800 | 29.5825 |
| 3/20/2008 | Purchase | Com Stk | 2,800 | 29.7249 |
| 4/4/2008 | Purchase | Com Stk | 11,400 | 27.8040 |
| 4/8/2008 | Purchase | Com Stk | 1,600 | 27.5170 |
| 4/8/2008 | Purchase | Com Stk | 800 | 27.5000 |
| 4/8/2008 | Purchase | Com Stk | 2,200 | 27.5070 |
| 4/14/2008 | Purchase[2] | Com Stk | 31,400 | 24.0000 |

**Maine Public Employees Retirement System**

| | | | | |
|---|---|---|---|---|
| 4/14/2008 | Purchase | Com Stk | 9,100 | 25.0020 |
| 4/15/2008 | Purchase | Com Stk | 57,500 | 25.5690 |
| 4/15/2008 | Purchase | Com Stk | 10,900 | 25.5010 |
| 5/2/2008 | Purchase | Com Stk | 2,700 | 30.1900 |
| 5/2/2008 | Purchase | Com Stk | 2,700 | 30.2100 |
| 10/6/2006 | Sale | Com Stk | 600 | 56.5400 |
| 10/9/2006 | Sale | Com Stk | 800 | 56.1871 |
| 10/10/2006 | Sale | Com Stk | 1,000 | 55.9057 |
| 10/20/2006 | Sale | Com Stk | 0.72 | 54.3333 |
| 10/20/2006 | Sale | Com Stk | 0.41 | 54.3415 |
| 11/17/2006 | Sale | Com Stk | 2,300 | 55.0102 |
| 11/20/2006 | Sale | Com Stk | 2,200 | 54.9401 |
| 11/21/2006 | Sale | Com Stk | 7,600 | 54.4863 |
| 11/22/2006 | Sale | Com Stk | 2,100 | 54.5231 |
| 11/24/2006 | Sale | Com Stk | 2,600 | 54.3400 |
| 11/27/2006 | Sale | Com Stk | 5,100 | 53.9997 |
| 11/28/2006 | Sale | Com Stk | 1,135 | 53.2813 |
| 4/20/2007 | Sale | Com Stk | 201,900 | 55.6082 |
| 4/20/2007 | Sale | Com Stk | 11,800 | 55.7689 |
| 4/23/2007 | Sale | Com Stk | 3,881 | 55.5607 |
| 3/19/2008 | Sale | Com Stk | 12,000 | 29.2472 |
| 4/16/2008 | Sale | Com Stk | 25,900 | 25.2490 |
| 4/28/2008 | Sale | Com Stk | 137,700 | 28.2710 |

[1] Shares received as a result of merger with Golden West Financial Corp. completed on 10/2/06. The price used is the closing price of Wachovia Financial Corp. the day before the merger was completed.

[2] Shares obtained in a secondary offering on 4/14/2008.

**Ex. B**

**CERTIFICATION OF AGNETA WILHELMSON KÅREMAR IN SUPPORT OF FJÄRDE AP-FONDEN'S MOTION FOR CONSOLIDATION, FOR ITS APPOINTMENT AS LEAD PLAINTIFF, AND FOR THE APPROVAL OF ITS SELECTION OF COUNSEL**

Fjärde AP-Fonden ("AP4" or "Plaintiff"), declares, as to the claims asserted under the federal securities laws, that:

1.     AP4 did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

2.     AP4 is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

3.     Attached in Schedule A are AP4's transactions in Wachovia Corporation (NYSE: WB) securities during the Class Period.

4.     AP4 has full power and authority to bring suit to recover for its investment losses.

5.     AP4 has fully reviewed the facts and allegations of the complaints filed in this action and have authorized Schiffrin Barroway Topaz & Kessler, LLP to file a motion for appointment as lead plaintiff on its behalf in this action.

6.     I, Agneta Wilhelmson Kåremar, Administrative Director of AP4 am authorized to make legal decisions on behalf of AP4.

7.     AP4 intends to actively monitor and vigorously pursue this action for the benefit of the class, and will endeavor to provide fair and adequate representation and work directly with the efforts of Class counsel to ensure that the largest recovery for the Class consistent with good faith and meritorious judgment is obtained.

8.     AP4 has, within the three year period preceding the date hereof, sought to serve as a representative party in federal securities class actions against Pfizer, Inc. and Citigroup, Inc.

9.    AP4 will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25 day of July, 2007.

Fjärde AP-Fonden

By: _____
Agneta Wilhelmson Kåremar
*Administrative Director*

AP4

## SCHEDULE A

| Date | Purchase or Sale | Type of Securities | Number of Securities | Price of Securities |
|---|---|---|---|---|
| 8/4/2006 | Purchase | Com Stk | 125,000 | 55.9969 |
| 8/14/2006 | Purchase | Com Stk | 78,000 | 54.1149 |
| 5/8/2007 | Purchase | Com Stk | 16,800 | 56.3764 |
| 5/16/2007 | Purchase | Com Stk | 21,900 | 56.6697 |
| 12/17/2007 | Purchase | Com Stk | 13,313 | 39.5389 |
| 2/12/2008 | Purchase | Com Stk | 40,736 | 35.0762 |
| 5/14/2008 | Purchase | Com Stk | 31,951 | 27.7985 |
| 5/8/2006 | Sale | Com Stk | 180,000 | 56.0542 |
| 5/9/2006 | Sale | Com Stk | 50,000 | 54.703 |

**Ex. C**

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, George W. Neville, Esq., on behalf of the Public Employees' Retirement System of Mississippi ("Mississippi PERS"), hereby certify, as to the claims asserted under the federal securities laws, that:

1.     I am a Special Assistant Attorney General in the Office of the Attorney General of the State of Mississippi. I have reviewed a complaint filed in this matter. Mississippi PERS has authorized Bernstein Litowitz Berger & Grossmann LLP to file a motion for appointment as lead plaintiff on its behalf.

2.     Mississippi PERS did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.     Mississippi PERS is willing to serve as a lead plaintiff and representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary. Mississippi PERS fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the Class.

4.     Mississippi PERS' transactions in the Wachovia Corporation securities that are the subject of this action are set forth in the chart attached hereto.

5.     Mississippi PERS has sought to serve and was appointed as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification:

*In re Boston Scientific Corp. Securities Litigation*, Case No. 05-cv-11934 (D. Mass.)
*In re The Mills Corporation Securities Litigation*, Case No. 06-cv-77 (E.D. Va.)
*In re Coca-Cola Enterprises Inc. Securities Litigation*, Case No. 06-cv-275 (N.D. Ga.)
*In re Sears Holdings Corporation Securities Litigation*, Case No. 06-cv-4053 (S.D.N.Y.)
*In re Sonus Networks, Inc. Securities Litigation-II*, Case No. 06-cv-10040 (D. Mass.)
*In re Semtech Corp. Securities Litigation*, Case No. 07-cv-7114 (C.D. Cal.)
*In re Ambac Financial Group, Inc. Securities Litigation*, Case No. 08-cv-411 (S.D.N.Y)
*In re Schering-Plough Corporation/Enhance. Securities Litigation*, Case No. 08-cv-397 (D.N.J.)
*In re Maxim Integrated Products Inc. Securities Litigation*, Case No. 08-cv-832 (N.D. Cal.)

6.     Mississippi PERS is serving as a lead plaintiff and representative party on behalf of a class in *In re Merck & Co. Inc. Securities, Derivative & "ERISA" Litigation*, MDL No. 1658 (SRC); 05-cv-01151 (D.N.J.), 05-cv-2367 (D.N.J.). Mississippi PERS intervened in the action and was appointed to serve as a lead plaintiff and representative party in the action in 2007.

7.      Mississippi PERS has sought to serve as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for lead plaintiff or was not appointed lead plaintiff:

> *In re General Motors Securities Litigation*, Case No. 05-cv-60290 (E.D. Mich.)
> *In re Guidant Corporation Securities Litigation*, Case No. 05-cv-1658 (S.D. Ind.)
> *Johnson v. Dana Corporation et al.*, Case No. 05-cv-7388 (N.D. Ohio)
> *In re Mercury Interactive Securities Litigation*, Case No. 05-cv-3395 (N.D. Cal.)
> *In re Take-Two Interactive Securities Litigation*, Case No. 06-cv-803 (S.D.N.Y.)
> *In re Par Pharmaceutical Companies, Inc. Securities Litigation*, Case No. 06-cv-3226 (D.N.J.)
> *In re Dell, Inc. Securities Litigation*, Case No. 06-cv-726 (W.D. Tex.)
> *Freudenberg v. E\*Trade Financial Corporation, et al.*, Case No. 07-cv-8538 (S.D.N.Y.)

8.      During the three-year period preceding the date of this Certification, Mississippi PERS sought to serve and did serve as a class representative on behalf of a class in the following action that has been fully settled:

> *In re Cigna Corp. Securities Litigation*, Case No. 02-cv-8088 (E.D. Pa.)

9.      Mississippi PERS will not accept any payment for serving as a representative party on behalf of the Class beyond Mississippi PERS' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___ day of August, 2008

George W. Neville
Special Assistant Attorney General
*Legal Counsel to the Public Employees' Retirement System of Mississippi*

**Mississippi PERS**
**Transactions in Wachovia Corporation (WB)**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 06/01/06 | 1,600 | $54.6200 |
| Purchase | 06/01/06 | 200 | $54.6200 |
| Purchase | 06/01/06 | 300 | $54.6200 |
| Purchase | 06/09/06 | 10,400 | $54.5370 |
| Purchase | 06/30/06 | 10,000 | $54.0680 |
| Purchase | 08/30/06 | 1,900 | $55.2600 |
| Purchase | 09/15/06 | 2,500 | $55.1000 |
| Purchase | 09/26/06 | 1,000 | $55.5000 |
| Purchase | 09/26/06 | 200 | $55.5000 |
| Purchase | 09/29/06 | 15,639 | $55.7800 |
| Purchase[1] | 10/04/06 | 99,565 | $55.8000 |
| Purchase[1] | 10/04/06 | 29,008 | $55.8000 |
| Purchase[1] | 10/04/06 | 68,538 | $55.8000 |
| Purchase[1] | 10/04/06 | 23,228 | $55.8000 |
| Purchase | 11/09/06 | 1,100 | $55.1800 |
| Purchase | 01/11/07 | 800 | $56.5800 |
| Purchase | 01/11/07 | 900 | $56.5800 |
| Purchase | 01/31/07 | 800 | $56.5000 |
| Purchase | 02/02/07 | 1,820 | $56.4160 |
| Purchase | 02/13/07 | 7,600 | $57.7180 |
| Purchase | 02/22/07 | 600 | $58.7700 |
| Purchase | 02/28/07 | 4,000 | $55.5030 |
| Purchase | 04/13/07 | 5,800 | $53.8690 |
| Purchase | 04/20/07 | 200 | $55.8500 |
| Purchase | 04/30/07 | 2,200 | $55.9970 |
| Purchase | 06/07/07 | 3,100 | $53.1100 |
| Purchase | 06/07/07 | 1,000 | $52.8500 |
| Purchase | 06/07/07 | 1,200 | $52.8500 |
| Purchase | 06/22/07 | 21,700 | $51.8300 |
| Purchase | 09/12/07 | 4,800 | $48.9170 |
| Purchase | 09/21/07 | 9,400 | $51.3540 |
| Purchase | 09/26/07 | 1,200 | $50.6400 |
| Purchase | 10/03/07 | 4,200 | $51.2170 |
| Purchase | 10/03/07 | 11,900 | $51.3700 |
| Purchase[2] | 10/17/07 | 2,264 | $50.1500 |
| Purchase | 10/22/07 | 1,700 | $46.4400 |
| Purchase | 11/09/07 | 229,800 | $39.3100 |
| Purchase | 11/13/07 | 900 | $43.7400 |
| Purchase | 11/13/07 | 800 | $43.7400 |
| Purchase | 11/20/07 | 5,800 | $37.6170 |

[1] Shares received as a result of Wachovia's acquisition of Golden West Financial Corp. on 10/2/2006. The price used is the closing price of Wachovia Financial Corp. shares the day before the merger was completed.

[2] Shares received as a result of Wachovia's acquisition of A.G. Edwards, Inc. on 10/1/2007. The price used is the closing price of Wachovia Financial Corp. shares the day before the merger was completed.

**Mississippi PERS**
**Transactions in Wachovia Corporation (WB)**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 11/21/07 | 600 | $38.8200 |
| Purchase | 12/21/07 | 21,700 | $39.5000 |
| Purchase | 12/26/07 | 1,500 | $39.0700 |
| Purchase | 12/26/07 | 3,000 | $39.0700 |
| Purchase | 02/15/08 | 1,500 | $33.7600 |
| Purchase | 02/15/08 | 1,400 | $33.7600 |
| Purchase | 03/04/08 | 21,000 | $29.3710 |
| Purchase | 04/10/08 | 4,700 | $27.8700 |
| Purchase | 04/14/08 | 4,500 | $25.0140 |
| Purchase | 04/14/08 | 300 | $24.9890 |
| Purchase | 04/14/08 | 47,300 | $25.5400 |
| Purchase | 04/30/08 | 9,000 | $29.1500 |
| Purchase | 04/30/08 | 2,000 | $29.1500 |
| Purchase | 04/30/08 | 1,900 | $29.1500 |
| Purchase | 04/30/08 | 26,600 | $29.4340 |
| Sale | 06/27/06 | (13,100) | $52.8400 |
| Sale | 06/27/06 | (13,000) | $52.8400 |
| Sale | 08/15/06 | (17,900) | $55.1750 |
| Sale | 09/05/06 | (11,000) | $55.1100 |
| Sale | 10/30/06 | (23,228) | $55.5230 |
| Sale | 12/11/06 | (1,900) | $56.2800 |
| Sale | 12/14/06 | (1,300) | $56.2100 |
| Sale | 12/28/06 | (4,600) | $57.4220 |
| Sale | 02/26/07 | (5,330) | $57.0460 |
| Sale | 03/13/07 | (4,190) | $54.1920 |
| Sale | 03/14/07 | (5,940) | $54.1320 |
| Sale | 04/02/07 | (18,400) | $53.6850 |
| Sale | 06/15/07 | (16,000) | $54.0560 |
| Sale | 06/20/07 | (1,100) | $53.2500 |
| Sale | 11/20/07 | (1,900) | $38.4300 |
| Sale | 11/20/07 | (66,638) | $38.3565 |
| Sale | 12/11/07 | (46,500) | $41.9500 |
| Sale | 12/13/07 | (500) | $40.1900 |
| Sale | 01/24/08 | (83,300) | $36.4340 |
| Sale | 01/25/08 | (4,700) | $37.6250 |
| Sale | 02/01/08 | (38,100) | $38.6420 |
| Sale | 02/26/08 | (67,100) | $34.6610 |
| Sale | 03/11/08 | (9,600) | $28.3790 |
| Sale | 03/12/08 | (8,100) | $29.9730 |
| Sale | 03/20/08 | (10,700) | $30.7240 |
| Sale | 03/24/08 | (12,000) | $31.8100 |

**Ex. D**

**Maine Public Employees Retirement System**
**FIFO Loss Calculations in Wachovia Corp (WB)**
Class Period: 05/08/06 - 06/06/08
Retained share price: $15.9681 (6/9/08 - 8/07/08)

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| | Pre-class holdings | 0 | | | | | | | |
| Purchase | 6/19/2006 | 4,500 | $ 52.6897 | $ 237,103.65 | Sale | 10/6/2006 | (600) | $ 56.5400 | $ (33,924.00) |
| Purchase | 6/20/2006 | 2,500 | $ 52.8836 | $ 132,209.00 | Sale | 10/9/2006 | (800) | $ 56.1871 | $ (44,949.68) |
| Purchase | 6/21/2006 | 500 | $ 53.3929 | $ 26,696.45 | Sale | 10/10/2006 | (1,000) | $ 55.9057 | $ (55,905.70) |
| Purchase | 7/6/2006 | 10,700 | $ 53.7532 | $ 575,159.24 | Sale | 10/20/2006 | (0.72) | $ 54.3333 | $ (39.12) |
| Purchase | 7/7/2006 | 20,900 | $ 53.8817 | $ 1,126,127.53 | Sale | 10/20/2006 | (0.41) | $ 54.3415 | $ (22.28) |
| Purchase | 7/11/2006 | 300 | $ 53.7581 | $ 16,127.43 | Sale | 11/17/2006 | (2,300) | $ 55.0102 | $ (126,523.46) |
| Purchase | 7/12/2006 | 400 | $ 53.7648 | $ 21,505.92 | Sale | 11/20/2006 | (2,200) | $ 54.9401 | $ (120,868.22) |
| Purchase | 7/13/2006 | 1,000 | $ 53.6545 | $ 53,654.50 | Sale | 11/21/2006 | (7,600) | $ 54.4863 | $ (414,095.88) |
| Purchase | 7/31/2006 | 1,000 | $ 53.6729 | $ 53,672.90 | Sale | 11/22/2006 | (2,100) | $ 54.5231 | $ (114,498.51) |
| Purchase | 8/1/2006 | 3,700 | $ 53.6000 | $ 198,320.00 | Sale | 11/24/2006 | (2,600) | $ 54.3400 | $ (141,284.00) |
| Purchase | 8/1/2006 | 5,500 | $ 53.8137 | $ 295,975.35 | Sale | 11/27/2006 | (5,100) | $ 53.9997 | $ (275,398.47) |
| Purchase | 8/2/2006 | 1,700 | $ 54.3515 | $ 92,397.55 | Sale | 11/28/2006 | (1,135) | $ 53.2813 | $ (60,474.28) |
| Purchase | 8/11/2006 | 3,700 | $ 53.4561 | $ 197,787.57 | Sale | 4/20/2007 | (201,900) | $ 55.6082 | $ (11,227,295.58) |
| Purchase | 8/14/2006 | 10,300 | $ 54.1372 | $ 557,613.16 | Sale | 4/20/2007 | (11,800) | $ 55.7689 | $ (658,073.02) |
| Purchase | 8/15/2006 | 7,700 | $ 55.1301 | $ 424,501.77 | Sale | 4/23/2007 | (3,881) | $ 55.5607 | $ (215,631.08) |
| Purchase | 8/16/2006 | 3,800 | $ 55.4048 | $ 210,538.24 | Sale | 3/19/2008 | (12,000) | $ 29.2472 | $ (350,966.40) |
| Purchase | 8/17/2006 | 4,900 | $ 55.6206 | $ 272,540.94 | Sale | 4/16/2008 | (25,900) | $ 25.2490 | $ (653,949.10) |
| Purchase | 8/18/2006 | 3,500 | $ 55.6624 | $ 194,818.40 | Sale | 4/28/2008 | (137,700) | $ 28.2710 | $ (3,892,916.70) |
| Purchase[2] | 10/2/2006 | 27,747.72 | $ 55.8000 | $ 1,548,322.78 | Sale[1] | 6/9/2008 | (6,100) | $ 18.8900 | $ (115,229.00) |
| Purchase[2] | 10/2/2006 | 25,435.41 | $ 55.8000 | $ 1,419,295.88 | Sale[1] | 6/9/2008 | (2,000) | $ 18.9900 | $ (37,980.00) |
| Purchase | 12/15/2006 | 43,381 | $ 56.9872 | $ 2,472,161.72 | Sale[1] | 6/9/2008 | (2,000) | $ 18.8900 | $ (37,780.00) |
| Purchase | 1/8/2007 | 101,300 | $ 56.2660 | $ 5,699,745.80 | Sale[1] | 6/9/2008 | (300) | $ 18.8900 | $ (5,667.00) |
| Purchase | 1/12/2007 | 6,700 | $ 56.4790 | $ 378,409.30 | Sale[1] | 6/9/2008 | (1,200) | $ 19.0020 | $ (22,802.40) |
| Purchase | 1/12/2007 | 600 | $ 56.5000 | $ 33,900.00 | Sale[1] | 6/10/2008 | (2,200) | $ 19.3250 | $ (42,515.00) |
| Purchase | 1/24/2007 | 10,200 | $ 56.4200 | $ 575,484.00 | Sale[1] | 6/10/2008 | (19,300) | $ 19.9640 | $ (385,305.20) |
| Purchase | 1/24/2007 | 14,300 | $ 56.6055 | $ 809,458.65 | Sale[1] | 6/10/2008 | (3,100) | $ 20.2650 | $ (62,821.50) |
| Purchase | 1/25/2007 | 11,900 | $ 56.3850 | $ 670,981.50 | Sale[1] | 6/10/2008 | (16,400) | $ 19.8880 | $ (326,163.20) |
| Purchase | 2/14/2007 | 8,300 | $ 57.6943 | $ 478,862.69 | Sale[1] | 6/10/2008 | (2,300) | $ 19.9200 | $ (45,816.00) |
| Purchase | 3/16/2007 | 2,900 | $ 55.0000 | $ 159,500.00 | Sale[1] | 6/10/2008 | (21,700) | $ 19.7730 | $ (429,074.10) |
| Purchase | 3/16/2007 | 2,600 | $ 55.0000 | $ 143,000.00 | Sale[1] | 6/11/2008 | (2,600) | $ 19.3050 | $ (50,193.00) |
| Purchase | 3/19/2007 | 1,900 | $ 55.7661 | $ 105,955.59 | Sale[1] | 6/11/2008 | (4,400) | $ 19.4780 | $ (85,703.20) |
| Purchase | 3/19/2007 | 2,200 | $ 55.7661 | $ 122,685.42 | Sale[1] | 6/11/2008 | (1,600) | $ 19.6160 | $ (31,385.60) |
| Purchase | 3/20/2007 | 1,400 | $ 55.9062 | $ 78,268.68 | Sale[1] | 6/11/2008 | (17,700) | $ 19.4230 | $ (343,787.10) |
| Purchase | 3/20/2007 | 1,200 | $ 55.9062 | $ 67,087.44 | Sale[1] | 6/11/2008 | (8,800) | $ 19.2067 | $ (169,018.67) |
| Purchase | 3/21/2007 | 3,600 | $ 56.6087 | $ 203,791.32 | Sale[1] | 6/24/2008 | (24,800) | $ 18.1058 | $ (449,024.67) |

**Maine Public Employees Retirement System**
**FIFO Loss Calculations in Wachovia Corp (WB)**
Class Period: 05/08/06 - 06/06/08
Retained share price: $15.9681 (6/9/08 - 8/07/08)

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Purchase | 3/22/2007 | 1,500 | $ 57.0270 | $ 85,540.50 | | | | | |
| Purchase | 3/22/2007 | 800 | $ 57.0700 | $ 45,656.00 | | | | | |
| Purchase | 9/11/2007 | 11,700 | $ 48.6990 | $ 569,778.30 | | | | | |
| Purchase | 11/19/2007 | 2,800 | $ 38.3117 | $ 107,272.76 | | | | | |
| Purchase | 11/20/2007 | 2,400 | $ 37.6394 | $ 90,334.56 | | | | | |
| Purchase | 11/20/2007 | 100 | $ 38.0750 | $ 3,807.50 | | | | | |
| Purchase | 11/20/2007 | 3,800 | $ 38.1140 | $ 144,833.20 | | | | | |
| Purchase | 11/20/2007 | 5,500 | $ 38.2403 | $ 210,321.65 | | | | | |
| Purchase | 11/20/2007 | 3,800 | $ 38.2451 | $ 145,331.38 | | | | | |
| Purchase | 11/21/2007 | 900 | $ 38.0949 | $ 34,285.41 | | | | | |
| Purchase | 11/21/2007 | 200 | $ 38.5607 | $ 7,712.14 | | | | | |
| Purchase | 11/21/2007 | 200 | $ 39.3129 | $ 7,862.58 | | | | | |
| Purchase | 11/21/2007 | 2,300 | $ 39.4313 | $ 90,691.99 | | | | | |
| Purchase | 11/26/2007 | 100 | $ 39.0463 | $ 3,904.63 | | | | | |
| Purchase | 11/26/2007 | 1,000 | $ 39.1425 | $ 39,142.50 | | | | | |
| Purchase | 11/29/2007 | 1,600 | $ 40.8146 | $ 65,303.36 | | | | | |
| Purchase | 11/29/2007 | 700 | $ 40.8308 | $ 28,581.56 | | | | | |
| Purchase | 11/29/2007 | 700 | $ 40.8445 | $ 28,591.15 | | | | | |
| Purchase | 11/29/2007 | 1,800 | $ 40.8575 | $ 73,543.50 | | | | | |
| Purchase | 11/29/2007 | 100 | $ 40.8602 | $ 4,086.02 | | | | | |
| Purchase | 11/29/2007 | 300 | $ 40.8931 | $ 12,267.93 | | | | | |
| Purchase | 11/29/2007 | 100 | $ 40.8936 | $ 4,089.36 | | | | | |
| Purchase | 12/4/2007 | 6,600 | $ 41.7795 | $ 275,744.70 | | | | | |
| Purchase | 12/5/2007 | 200 | $ 42.3344 | $ 8,466.88 | | | | | |
| Purchase | 12/5/2007 | 100 | $ 42.3522 | $ 4,235.22 | | | | | |
| Purchase | 12/5/2007 | 1,500 | $ 42.3948 | $ 63,592.20 | | | | | |
| Purchase | 12/5/2007 | 300 | $ 42.4000 | $ 12,720.00 | | | | | |
| Purchase | 12/5/2007 | 100 | $ 42.4363 | $ 4,243.63 | | | | | |
| Purchase | 12/5/2007 | 400 | $ 42.4715 | $ 16,988.60 | | | | | |
| Purchase | 12/5/2007 | 600 | $ 42.4904 | $ 25,494.24 | | | | | |
| Purchase | 12/5/2007 | 1,800 | $ 42.6364 | $ 76,745.52 | | | | | |
| Purchase | 12/5/2007 | 600 | $ 42.8359 | $ 25,701.54 | | | | | |
| Purchase | 12/7/2007 | 300 | $ 43.2307 | $ 12,969.21 | | | | | |
| Purchase | 12/7/2007 | 100 | $ 43.2642 | $ 4,326.42 | | | | | |
| Purchase | 12/7/2007 | 3,300 | $ 43.2866 | $ 142,845.78 | | | | | |
| Purchase | 12/20/2007 | 100 | $ 38.3250 | $ 3,832.50 | | | | | |
| Purchase | 12/20/2007 | 700 | $ 38.3299 | $ 26,830.93 | | | | | |
| Purchase | 12/20/2007 | 871 | $ 38.3656 | $ 33,416.44 | | | | | |

**Maine Public Employees Retirement System**
**FIFO Loss Calculations in Wachovia Corp (WB)**
Class Period: 05/08/06 - 06/06/08
Retained share price: $15.9681 (6/9/08 - 8/07/08)

| Transaction | Date | Shares | Price | | Cost | | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Purchase | 12/20/2007 | 829 | $ | 38.3758 | $ | 31,813.54 | | | | | |
| Purchase | 12/20/2007 | 700 | $ | 38.4350 | $ | 26,904.50 | | | | | |
| Purchase | 12/20/2007 | 400 | $ | 38.4585 | $ | 15,383.40 | | | | | |
| Purchase | 12/20/2007 | 200 | $ | 38.4922 | $ | 7,698.44 | | | | | |
| Purchase | 1/8/2008 | 300 | $ | 34.7604 | $ | 10,428.12 | | | | | |
| Purchase | 1/8/2008 | 600 | $ | 34.7711 | $ | 20,862.66 | | | | | |
| Purchase | 1/8/2008 | 1,400 | $ | 34.8083 | $ | 48,731.62 | | | | | |
| Purchase | 1/8/2008 | 500 | $ | 34.8116 | $ | 17,405.80 | | | | | |
| Purchase | 1/8/2008 | 900 | $ | 34.8227 | $ | 31,340.43 | | | | | |
| Purchase | 1/8/2008 | 900 | $ | 35.0500 | $ | 31,545.00 | | | | | |
| Purchase | 1/11/2008 | 3,100 | $ | 36.5041 | $ | 113,162.71 | | | | | |
| Purchase | 1/11/2008 | 1,100 | $ | 36.6567 | $ | 40,322.37 | | | | | |
| Purchase | 1/11/2008 | 1,700 | $ | 36.8595 | $ | 62,661.15 | | | | | |
| Purchase | 1/11/2008 | 2,600 | $ | 36.9410 | $ | 96,046.60 | | | | | |
| Purchase | 1/11/2008 | 200 | $ | 36.9888 | $ | 7,397.76 | | | | | |
| Purchase | 1/11/2008 | 800 | $ | 37.0050 | $ | 29,604.00 | | | | | |
| Purchase | 1/14/2008 | 1,900 | $ | 35.9856 | $ | 68,372.64 | | | | | |
| Purchase | 1/14/2008 | 2,600 | $ | 36.2116 | $ | 94,150.16 | | | | | |
| Purchase | 1/31/2008 | 100 | $ | 37.2631 | $ | 3,726.31 | | | | | |
| Purchase | 1/31/2008 | 200 | $ | 37.4402 | $ | 7,488.04 | | | | | |
| Purchase | 1/31/2008 | 100 | $ | 37.4441 | $ | 3,744.41 | | | | | |
| Purchase | 1/31/2008 | 1,400 | $ | 37.4779 | $ | 52,469.06 | | | | | |
| Purchase | 1/31/2008 | 200 | $ | 37.4813 | $ | 7,496.26 | | | | | |
| Purchase | 1/31/2008 | 300 | $ | 37.4936 | $ | 11,248.08 | | | | | |
| Purchase | 1/31/2008 | 200 | $ | 37.8078 | $ | 7,561.56 | | | | | |
| Purchase | 1/31/2008 | 2,400 | $ | 38.3749 | $ | 92,099.76 | | | | | |
| Purchase | 2/6/2008 | 163,600 | $ | 34.5970 | $ | 5,660,069.20 | | | | | |
| Purchase | 2/11/2008 | 100 | $ | 34.3250 | $ | 3,432.50 | | | | | |
| Purchase | 2/11/2008 | 400 | $ | 34.3432 | $ | 13,737.28 | | | | | |
| Purchase | 2/11/2008 | 300 | $ | 34.3465 | $ | 10,303.95 | | | | | |
| Purchase | 2/11/2008 | 1,300 | $ | 34.3514 | $ | 44,656.82 | | | | | |
| Purchase | 2/11/2008 | 400 | $ | 34.3782 | $ | 13,751.28 | | | | | |
| Purchase | 2/11/2008 | 1,800 | $ | 34.4600 | $ | 62,028.00 | | | | | |
| Purchase | 3/4/2008 | 4,100 | $ | 29.3860 | $ | 120,482.60 | | | | | |
| Purchase | 3/4/2008 | 900 | $ | 29.3931 | $ | 26,453.79 | | | | | |
| Purchase | 3/4/2008 | 500 | $ | 29.4300 | $ | 14,715.00 | | | | | |
| Purchase | 3/4/2008 | 2,500 | $ | 29.4324 | $ | 73,581.00 | | | | | |
| Purchase | 3/4/2008 | 1,700 | $ | 29.4500 | $ | 50,065.00 | | | | | |

**Maine Public Employees Retirement System**
**FIFO Loss Calculations in Wachovia Corp (WB)**
Class Period: 05/08/06 - 06/06/08
Retained share price: $15.9681 (6/9/08 - 8/07/08)

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Purchase | 3/4/2008 | 500 | $ 29.4700 | $ 14,735.00 | | | | | |
| Purchase | 3/4/2008 | 1,300 | $ 29.4830 | $ 38,327.90 | | | | | |
| Purchase | 3/20/2008 | 2,800 | $ 29.5476 | $ 82,733.28 | | | | | |
| Purchase | 3/20/2008 | 1,900 | $ 29.5641 | $ 56,171.79 | | | | | |
| Purchase | 3/20/2008 | 3,800 | $ 29.5825 | $ 112,413.50 | | | | | |
| Purchase | 3/20/2008 | 2,800 | $ 29.7249 | $ 83,229.72 | | | | | |
| Purchase | 4/4/2008 | 11,400 | $ 27.8040 | $ 316,965.60 | | | | | |
| Purchase | 4/8/2008 | 1,600 | $ 27.5170 | $ 44,027.20 | | | | | |
| Purchase | 4/8/2008 | 800 | $ 27.5000 | $ 22,000.00 | | | | | |
| Purchase | 4/8/2008 | 2,200 | $ 27.5070 | $ 60,515.40 | | | | | |
| Purchase[3] | 4/14/2008 | 31,400 | $ 24.0000 | $ 753,600.00 | | | | | |
| Purchase | 4/14/2008 | 9,100 | $ 25.0020 | $ 227,518.20 | | | | | |
| Purchase | 4/15/2008 | 57,500 | $ 25.5690 | $ 1,470,217.50 | | | | | |
| Purchase | 4/15/2008 | 10,900 | $ 25.5010 | $ 277,960.90 | | | | | |
| Purchase | 5/2/2008 | 2,700 | $ 30.1900 | $ 81,513.00 | | | | | |
| Purchase | 5/2/2008 | 2,700 | $ 30.2100 | $ 81,567.00 | Retained | | (203,747) | $ 15.9681 | $ (3,253,452.47) |
| | | **758,864** | | **$ 32,951,188.94** | | | **(758,864)** | | **$ (24,280,533.58)** |

**Overall FIFO Loss: $ (8,670,655.37)**

[1]Shares sold within 90 days after the end of the class period have been valued using the higher price between the actual sales price and the average closing price from the end of the class period to the date of the sale.

[2]Shares received as a result of Wachovia's acquisition of Golden West Financial Corp. on 10/2/2006. The price used is the closing price of Wachovia Financial Corp. shares the day before the merger was completed.

[3]Shares were obtained in a secondary offering on 4/14/2008.

**Maine Public Employees Retirement System**
**LIFO Loss Calculations in Wachovia Corp (WB)**
Class Period: 05/08/06 - 06/06/08
Retained share price: $15.9681 (6/9/08 - 8/07/08)

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| | Pre-class holdings | 0 | | | | | | | |
| Purchase | 6/19/2006 | 4,500 | $ 52.6897 | $ 237,103.65 | Sale | 10/6/2006 | (600) | $ 56.5400 | $ (33,924.00) |
| Purchase | 6/20/2006 | 2,500 | $ 52.8836 | $ 132,209.00 | Sale | 10/9/2006 | (800) | $ 56.1871 | $ (44,949.68) |
| Purchase | 6/21/2006 | 500 | $ 53.3929 | $ 26,696.45 | Sale | 10/10/2006 | (1,000) | $ 55.9057 | $ (55,905.70) |
| Purchase | 7/6/2006 | 10,700 | $ 53.7532 | $ 575,159.24 | Sale | 10/20/2006 | (0.72) | $ 54.3333 | $ (39.12) |
| Purchase | 7/7/2006 | 20,900 | $ 53.8817 | $ 1,126,127.53 | Sale | 10/20/2006 | (0.41) | $ 54.3415 | $ (22.28) |
| Purchase | 7/11/2006 | 300 | $ 53.7581 | $ 16,127.43 | Sale | 11/17/2006 | (2,300) | $ 55.0102 | $ (126,523.46) |
| Purchase | 7/12/2006 | 400 | $ 53.7648 | $ 21,505.92 | Sale | 11/20/2006 | (2,200) | $ 54.9401 | $ (120,868.22) |
| Purchase | 7/13/2006 | 1,000 | $ 53.6545 | $ 53,654.50 | Sale | 11/21/2006 | (7,600) | $ 54.4863 | $ (414,095.88) |
| Purchase | 7/31/2006 | 1,000 | $ 53.6729 | $ 53,672.90 | Sale | 11/22/2006 | (2,100) | $ 54.5231 | $ (114,498.51) |
| Purchase | 8/1/2006 | 3,700 | $ 53.6600 | $ 198,320.00 | Sale | 11/24/2006 | (2,600) | $ 54.3400 | $ (141,284.00) |
| Purchase | 8/1/2006 | 5,500 | $ 53.8137 | $ 295,975.35 | Sale | 11/27/2006 | (5,100) | $ 53.9997 | $ (275,398.47) |
| Purchase | 8/2/2006 | 1,700 | $ 54.3515 | $ 92,397.55 | Sale | 11/28/2006 | (1,135) | $ 53.2813 | $ (60,474.28) |
| Purchase | 8/11/2006 | 3,700 | $ 53.4561 | $ 197,787.57 | Sale | 4/20/2007 | (201,900) | $ 55.6082 | $ (11,227,295.58) |
| Purchase | 8/14/2006 | 10,300 | $ 54.1372 | $ 557,613.16 | Sale | 4/20/2007 | (11,800) | $ 55.7689 | $ (658,073.02) |
| Purchase | 8/15/2006 | 7,700 | $ 55.1301 | $ 424,501.77 | Sale | 4/23/2007 | (3,881) | $ 55.5607 | $ (215,631.08) |
| Purchase | 8/16/2006 | 3,800 | $ 55.4048 | $ 210,538.24 | Sale | 3/19/2008 | (12,000) | $ 29.2472 | $ (350,966.40) |
| Purchase | 8/17/2006 | 4,900 | $ 55.6206 | $ 272,540.94 | Sale | 4/16/2008 | (25,900) | $ 25.2490 | $ (653,949.10) |
| Purchase | 8/18/2006 | 3,500 | $ 55.6624 | $ 194,818.40 | Sale | 4/28/2008 | (137,700) | $ 28.2710 | $ (3,892,916.70) |
| Purchase[2] | 10/2/2006 | 27,747.72 | $ 55.8000 | $ 1,548,322.78 | Sale[1] | 6/9/2008 | (6,100) | $ 18.8900 | $ (115,229.00) |
| Purchase[2] | 10/2/2006 | 25,435.41 | $ 55.8000 | $ 1,419,295.88 | Sale[1] | 6/9/2008 | (2,000) | $ 18.9900 | $ (37,980.00) |
| Purchase | 12/15/2006 | 43,381 | $ 56.9872 | $ 2,472,161.72 | Sale[1] | 6/9/2008 | (2,000) | $ 18.8900 | $ (37,780.00) |
| Purchase | 1/8/2007 | 101,300 | $ 56.2660 | $ 5,699,745.80 | Sale[1] | 6/9/2008 | (300) | $ 18.8900 | $ (5,667.00) |
| Purchase | 1/12/2007 | 6,700 | $ 56.4790 | $ 378,409.30 | Sale[1] | 6/9/2008 | (1,200) | $ 19.0020 | $ (22,802.40) |
| Purchase | 1/12/2007 | 600 | $ 56.5000 | $ 33,900.00 | Sale[1] | 6/10/2008 | (2,200) | $ 19.3250 | $ (42,515.00) |
| Purchase | 1/24/2007 | 10,200 | $ 56.4200 | $ 575,484.00 | Sale[1] | 6/10/2008 | (19,300) | $ 19.9640 | $ (385,305.20) |
| Purchase | 1/24/2007 | 14,300 | $ 56.6055 | $ 809,458.65 | Sale[1] | 6/10/2008 | (3,100) | $ 20.2650 | $ (62,821.50) |
| Purchase | 1/25/2007 | 11,900 | $ 56.3850 | $ 670,981.50 | Sale[1] | 6/10/2008 | (16,400) | $ 19.8880 | $ (326,163.20) |
| Purchase | 2/14/2007 | 8,300 | $ 57.6943 | $ 478,862.69 | Sale[1] | 6/10/2008 | (2,300) | $ 19.9200 | $ (45,816.00) |
| Purchase | 3/16/2007 | 2,900 | $ 55.0000 | $ 159,500.00 | Sale[1] | 6/10/2008 | (21,700) | $ 19.7730 | $ (429,074.10) |
| Purchase | 3/16/2007 | 2,600 | $ 55.0000 | $ 143,000.00 | Sale[1] | 6/11/2008 | (2,600) | $ 19.3050 | $ (50,193.00) |
| Purchase | 3/19/2007 | 1,900 | $ 55.7661 | $ 105,955.59 | Sale[1] | 6/11/2008 | (4,400) | $ 19.4780 | $ (85,703.20) |
| Purchase | 3/19/2007 | 2,200 | $ 55.7661 | $ 122,685.42 | Sale[1] | 6/11/2008 | (1,600) | $ 19.6160 | $ (31,385.60) |
| Purchase | 3/20/2007 | 1,400 | $ 55.9062 | $ 78,268.68 | Sale[1] | 6/11/2008 | (17,700) | $ 19.4230 | $ (343,787.10) |
| Purchase | 3/20/2007 | 1,200 | $ 55.9062 | $ 67,087.44 | Sale[1] | 6/11/2008 | (8,800) | $ 19.2067 | $ (169,018.67) |
| Purchase | 3/21/2007 | 3,600 | $ 56.6087 | $ 203,791.32 | Sale[1] | 6/24/2008 | (24,800) | $ 18.1058 | $ (449,024.67) |

**Maine Public Employees Retirement System**
**LIFO Loss Calculations in Wachovia Corp (WB)**
Class Period: 05/08/06 - 06/06/08
Retained share price: $15.9681 (6/9/08 - 8/07/08)

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Purchase | 3/22/2007 | 1,500 | $ 57.0270 | $ 85,540.50 | | | | | |
| Purchase | 3/22/2007 | 800 | $ 57.0700 | $ 45,656.00 | | | | | |
| Purchase | 9/11/2007 | 11,700 | $ 48.6990 | $ 569,778.30 | | | | | |
| Purchase | 11/19/2007 | 2,800 | $ 38.3117 | $ 107,272.76 | | | | | |
| Purchase | 11/20/2007 | 2,400 | $ 37.6394 | $ 90,334.56 | | | | | |
| Purchase | 11/20/2007 | 100 | $ 38.0750 | $ 3,807.50 | | | | | |
| Purchase | 11/20/2007 | 3,800 | $ 38.1140 | $ 144,833.20 | | | | | |
| Purchase | 11/20/2007 | 5,500 | $ 38.2403 | $ 210,321.65 | | | | | |
| Purchase | 11/20/2007 | 3,800 | $ 38.2451 | $ 145,331.38 | | | | | |
| Purchase | 11/21/2007 | 900 | $ 38.0949 | $ 34,285.41 | | | | | |
| Purchase | 11/21/2007 | 200 | $ 38.5607 | $ 7,712.14 | | | | | |
| Purchase | 11/21/2007 | 200 | $ 39.3129 | $ 7,862.58 | | | | | |
| Purchase | 11/21/2007 | 2,300 | $ 39.4313 | $ 90,691.99 | | | | | |
| Purchase | 11/26/2007 | 100 | $ 39.0463 | $ 3,904.63 | | | | | |
| Purchase | 11/26/2007 | 1,000 | $ 39.1425 | $ 39,142.50 | | | | | |
| Purchase | 11/29/2007 | 1,600 | $ 40.8146 | $ 65,303.36 | | | | | |
| Purchase | 11/29/2007 | 700 | $ 40.8308 | $ 28,581.56 | | | | | |
| Purchase | 11/29/2007 | 700 | $ 40.8445 | $ 28,591.15 | | | | | |
| Purchase | 11/29/2007 | 1,800 | $ 40.8575 | $ 73,543.50 | | | | | |
| Purchase | 11/29/2007 | 100 | $ 40.8602 | $ 4,086.02 | | | | | |
| Purchase | 11/29/2007 | 300 | $ 40.8931 | $ 12,267.93 | | | | | |
| Purchase | 11/29/2007 | 100 | $ 40.8936 | $ 4,089.36 | | | | | |
| Purchase | 12/4/2007 | 6,600 | $ 41.7795 | $ 275,744.70 | | | | | |
| Purchase | 12/5/2007 | 200 | $ 42.3344 | $ 8,466.88 | | | | | |
| Purchase | 12/5/2007 | 100 | $ 42.3522 | $ 4,235.22 | | | | | |
| Purchase | 12/5/2007 | 1,500 | $ 42.3948 | $ 63,592.20 | | | | | |
| Purchase | 12/5/2007 | 300 | $ 42.4000 | $ 12,720.00 | | | | | |
| Purchase | 12/5/2007 | 100 | $ 42.4363 | $ 4,243.63 | | | | | |
| Purchase | 12/5/2007 | 400 | $ 42.4715 | $ 16,988.60 | | | | | |
| Purchase | 12/5/2007 | 600 | $ 42.4904 | $ 25,494.24 | | | | | |
| Purchase | 12/5/2007 | 1,800 | $ 42.6364 | $ 76,745.52 | | | | | |
| Purchase | 12/5/2007 | 600 | $ 42.8359 | $ 25,701.54 | | | | | |
| Purchase | 12/7/2007 | 300 | $ 43.2307 | $ 12,969.21 | | | | | |
| Purchase | 12/7/2007 | 100 | $ 43.2642 | $ 4,326.42 | | | | | |
| Purchase | 12/7/2007 | 3,300 | $ 43.2866 | $ 142,845.78 | | | | | |
| Purchase | 12/20/2007 | 100 | $ 38.3250 | $ 3,832.50 | | | | | |
| Purchase | 12/20/2007 | 700 | $ 38.3299 | $ 26,830.93 | | | | | |
| Purchase | 12/20/2007 | 871 | $ 38.3656 | $ 33,416.44 | | | | | |

**Maine Public Employees Retirement System**
**LIFO Loss Calculations in Wachovia Corp (WB)**
Class Period: 05/08/06 - 06/06/08
Retained share price: $15.9681 (6/9/08 - 8/07/08)

| Transaction | Date | Shares | | Price | | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Purchase | 12/20/2007 | 829 | $ | 38.3758 | $ | 31,813.54 | | | | | |
| Purchase | 12/20/2007 | 700 | $ | 38.4350 | $ | 26,904.50 | | | | | |
| Purchase | 12/20/2007 | 400 | $ | 38.4585 | $ | 15,383.40 | | | | | |
| Purchase | 12/20/2007 | 200 | $ | 38.4922 | $ | 7,698.44 | | | | | |
| Purchase | 1/8/2008 | 300 | $ | 34.7604 | $ | 10,428.12 | | | | | |
| Purchase | 1/8/2008 | 600 | $ | 34.7711 | $ | 20,862.66 | | | | | |
| Purchase | 1/8/2008 | 1,400 | $ | 34.8083 | $ | 48,731.62 | | | | | |
| Purchase | 1/8/2008 | 500 | $ | 34.8116 | $ | 17,405.80 | | | | | |
| Purchase | 1/8/2008 | 900 | $ | 34.8227 | $ | 31,340.43 | | | | | |
| Purchase | 1/8/2008 | 900 | $ | 35.0500 | $ | 31,545.00 | | | | | |
| Purchase | 1/11/2008 | 3,100 | $ | 36.5041 | $ | 113,162.71 | | | | | |
| Purchase | 1/11/2008 | 1,100 | $ | 36.6567 | $ | 40,322.37 | | | | | |
| Purchase | 1/11/2008 | 1,700 | $ | 36.8595 | $ | 62,661.15 | | | | | |
| Purchase | 1/11/2008 | 2,600 | $ | 36.9410 | $ | 96,046.60 | | | | | |
| Purchase | 1/11/2008 | 200 | $ | 36.9888 | $ | 7,397.76 | | | | | |
| Purchase | 1/11/2008 | 800 | $ | 37.0050 | $ | 29,604.00 | | | | | |
| Purchase | 1/14/2008 | 1,900 | $ | 35.9856 | $ | 68,372.64 | | | | | |
| Purchase | 1/14/2008 | 2,600 | $ | 36.2116 | $ | 94,150.16 | | | | | |
| Purchase | 1/31/2008 | 100 | $ | 37.2631 | $ | 3,726.31 | | | | | |
| Purchase | 1/31/2008 | 200 | $ | 37.4402 | $ | 7,488.04 | | | | | |
| Purchase | 1/31/2008 | 100 | $ | 37.4441 | $ | 3,744.41 | | | | | |
| Purchase | 1/31/2008 | 1,400 | $ | 37.4779 | $ | 52,469.06 | | | | | |
| Purchase | 1/31/2008 | 200 | $ | 37.4813 | $ | 7,496.26 | | | | | |
| Purchase | 1/31/2008 | 300 | $ | 37.4936 | $ | 11,248.08 | | | | | |
| Purchase | 1/31/2008 | 200 | $ | 37.8078 | $ | 7,561.56 | | | | | |
| Purchase | 1/31/2008 | 2,400 | $ | 38.3749 | $ | 92,099.76 | | | | | |
| Purchase | 2/6/2008 | 163,600 | $ | 34.5970 | $ | 5,660,069.20 | | | | | |
| Purchase | 2/11/2008 | 100 | $ | 34.3250 | $ | 3,432.50 | | | | | |
| Purchase | 2/11/2008 | 400 | $ | 34.3432 | $ | 13,737.28 | | | | | |
| Purchase | 2/11/2008 | 300 | $ | 34.3465 | $ | 10,303.95 | | | | | |
| Purchase | 2/11/2008 | 1,300 | $ | 34.3514 | $ | 44,656.82 | | | | | |
| Purchase | 2/11/2008 | 400 | $ | 34.3782 | $ | 13,751.28 | | | | | |
| Purchase | 2/11/2008 | 1,800 | $ | 34.4600 | $ | 62,028.00 | | | | | |
| Purchase | 3/4/2008 | 4,100 | $ | 29.3860 | $ | 120,482.60 | | | | | |
| Purchase | 3/4/2008 | 900 | $ | 29.3931 | $ | 26,453.79 | | | | | |
| Purchase | 3/4/2008 | 500 | $ | 29.4300 | $ | 14,715.00 | | | | | |
| Purchase | 3/4/2008 | 2,500 | $ | 29.4324 | $ | 73,581.00 | | | | | |
| Purchase | 3/4/2008 | 1,700 | $ | 29.4500 | $ | 50,065.00 | | | | | |

**Maine Public Employees Retirement System**
**LIFO Loss Calculations in Wachovia Corp (WB)**
Class Period: 05/08/06 - 06/06/08
Retained share price: $15.9681 (6/9/08 - 8/07/08)

| Transaction | Date | Shares | | Price | | Cost | Transaction | Date | Shares | Price | | Proceeds |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Purchase | 3/4/2008 | 500 | $ | 29.4700 | $ | 14,735.00 | | | | | | |
| Purchase | 3/4/2008 | 1,300 | $ | 29.4830 | $ | 38,327.90 | | | | | | |
| Purchase | 3/20/2008 | 2,800 | $ | 29.5476 | $ | 82,733.28 | | | | | | |
| Purchase | 3/20/2008 | 1,900 | $ | 29.5641 | $ | 56,171.79 | | | | | | |
| Purchase | 3/20/2008 | 3,800 | $ | 29.5825 | $ | 112,413.50 | | | | | | |
| Purchase | 3/20/2008 | 2,800 | $ | 29.7249 | $ | 83,229.72 | | | | | | |
| Purchase | 4/4/2008 | 11,400 | $ | 27.8040 | $ | 316,965.60 | | | | | | |
| Purchase | 4/8/2008 | 1,600 | $ | 27.5170 | $ | 44,027.20 | | | | | | |
| Purchase | 4/8/2008 | 800 | $ | 27.5000 | $ | 22,000.00 | | | | | | |
| Purchase | 4/8/2008 | 2,200 | $ | 27.5070 | $ | 60,515.40 | | | | | | |
| Purchase[3] | 4/14/2008 | 31,400 | $ | 24.0000 | $ | 753,600.00 | | | | | | |
| Purchase | 4/14/2008 | 9,100 | $ | 25.0020 | $ | 227,518.20 | | | | | | |
| Purchase | 4/15/2008 | 57,500 | $ | 25.5690 | $ | 1,470,217.50 | | | | | | |
| Purchase | 4/15/2008 | 10,900 | $ | 25.5010 | $ | 277,960.90 | | | | | | |
| Purchase | 5/2/2008 | 2,700 | $ | 30.1900 | $ | 81,513.00 | | | | | | |
| Purchase | 5/2/2008 | 2,700 | $ | 30.2100 | $ | 81,567.00 | Retained | | (203,747) | $ 15.9681 | $ | (3,253,452.47) |
| | | **758,864** | | | **$** | **32,951,188.94** | | | **(758,864)** | | **$** | **(24,280,533.58)** |

**Overall LIFO Loss:  $    (8,670,655.37)**

[1]Shares sold within 90 days after the end of the class period have been valued using the higher price between the actual sales price and the average closing price from the end of the class period to the date of the sale.

[2]Shares received as a result of Wachovia's acquisition of Golden West Financial Corp. on 10/2/2006.  The price used is the closing price of Wachovia Financial Corp. shares the day before the merger was completed.

[3]Shares were obtained in a secondary offering on 4/14/2008.

**Ex. E**

**Fjärde AP-Fonden ("AP4")**
**FIFO Loss Calculations in Wachovia Corp (WB)**
Class Period: 05/08/06 - 06/06/08
Retained share price: $15.9681 (6/9/08 - 8/07/08)

| Transaction | Date | Shares | Price | | Cost | Transaction | Date | Shares | Price | | Proceeds |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Pre-class holdings | 554,100 | | | | Sale | 5/8/2006 | (180,000) | $ 56.0542 | $ | (10,089,756.00) |
| | | | | | | Sale | 5/9/2006 | (50,000) | $ 54.7030 | $ | (2,735,150.00) |
| | | | | | | *Class period sales offsetting opening balance:* | | (230,000) | | $ | (12,824,906.00) |
| | | | | | | | | | | | |
| Purchase | 8/4/2006 | 125,000 | $ 55.9969 | $ | 6,999,612.50 | | | | | | |
| Purchase | 8/14/2006 | 78,000 | $ 54.1149 | $ | 4,220,962.20 | | | | | | |
| Purchase | 5/8/2007 | 16,800 | $ 56.3764 | $ | 947,123.52 | | | | | | |
| Purchase | 5/16/2007 | 21,900 | $ 56.6697 | $ | 1,241,066.43 | | | | | | |
| Purchase | 12/17/2007 | 13,313 | $ 39.5389 | $ | 526,381.38 | | | | | | |
| Purchase | 2/12/2008 | 40,736 | $ 35.0762 | $ | 1,428,864.08 | | | | | | |
| Purchase | 5/14/2008 | 31,951 | $ 27.7985 | $ | 888,189.87 | Retained | | (327,700) | $ 15.9681 | $ | (5,232,746.37) |
| | | **327,700** | | **$** | **16,252,199.98** | | | **(327,700)** | | **$** | **(5,232,746.37)** |

**Overall FIFO Loss: $    (11,019,453.61)**

**Fjärde AP-Fonden ("AP4")**
**LIFO Loss Calculations in Wachovia Corp (WB)**
Class Period: 05/08/06 - 06/06/08
Retained share price: $15.9681 (6/9/08 - 8/07/08)

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| | Pre-class holdings | 554,100 | | | Sale | 5/8/2006 | (180,000) | $ 56.0542 | $ (10,089,756.00) |
| | | | | | Sale | 5/9/2006 | (50,000) | $ 54.7030 | $ (2,735,150.00) |
| | | | | | *Class period sales offsetting opening balance:* | | (230,000) | | $ (12,824,906.00) |
| | | | | | | | | | |
| Purchase | 8/4/2006 | 125,000 | $ 55.9969 | $ 6,999,612.50 | | | | | |
| Purchase | 8/14/2006 | 78,000 | $ 54.1149 | $ 4,220,962.20 | | | | | |
| Purchase | 5/8/2007 | 16,800 | $ 56.3764 | $ 947,123.52 | | | | | |
| Purchase | 5/16/2007 | 21,900 | $ 56.6697 | $ 1,241,066.43 | | | | | |
| Purchase | 12/17/2007 | 13,313 | $ 39.5389 | $ 526,381.38 | | | | | |
| Purchase | 2/12/2008 | 40,736 | $ 35.0762 | $ 1,428,864.08 | | | | | |
| Purchase | 5/14/2008 | 31,951 | $ 27.7985 | $ 888,189.87 | Retained | | (327,700) | $ 15.9681 | $ (5,232,746.37) |
| | | **327,700** | | **$ 16,252,199.98** | | | **(327,700)** | | **$ (5,232,746.37)** |

**Overall LIFO Loss: $ (11,019,453.61)**

**Ex. F**

**Mississippi PERS**
**FIFO Loss Calculation in Wachovia Corp (WB)**
Class Period: 05/08/06 - 06/06/08
Retained share price: $15.9681 (6/9/08 - 8/07/08)

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| | Pre-class holdings | 1,118,314 | | | Sale | 6/27/2006 | (13,100) | $ 52.8400 | $ (692,204.00) |
| | | | | | Sale | 6/27/2006 | (13,000) | $ 52.8400 | $ (686,920.00) |
| | | | | | Sale | 8/15/2006 | (17,900) | $ 55.1750 | $ (987,632.50) |
| | | | | | Sale | 9/5/2006 | (11,000) | $ 55.1100 | $ (606,210.00) |
| | | | | | Sale | 10/30/2006 | (23,228) | $ 55.5230 | $ (1,289,688.24) |
| | | | | | Sale | 12/11/2006 | (1,900) | $ 56.2800 | $ (106,932.00) |
| | | | | | Sale | 12/14/2006 | (1,300) | $ 56.2100 | $ (73,073.00) |
| | | | | | Sale | 12/28/2006 | (4,600) | $ 57.4220 | $ (264,141.20) |
| | | | | | Sale | 2/26/2007 | (5,330) | $ 57.0460 | $ (304,055.18) |
| | | | | | Sale | 3/13/2007 | (4,190) | $ 54.1920 | $ (227,064.48) |
| | | | | | Sale | 3/14/2007 | (5,940) | $ 54.1320 | $ (321,544.08) |
| | | | | | Sale | 4/2/2007 | (18,400) | $ 53.6850 | $ (987,804.00) |
| | | | | | Sale | 6/15/2007 | (16,000) | $ 54.0560 | $ (864,896.00) |
| | | | | | Sale | 6/20/2007 | (1,100) | $ 53.2500 | $ (58,575.00) |
| | | | | | Sale | 11/20/2007 | (1,900) | $ 38.4300 | $ (73,017.00) |
| | | | | | Sale | 11/20/2007 | (66,638) | $ 38.3565 | $ (2,556,000.45) |
| | | | | | Sale | 12/11/2007 | (46,500) | $ 41.9500 | $ (1,950,675.00) |
| | | | | | Sale | 12/13/2007 | (500) | $ 40.1900 | $ (20,095.00) |
| | | | | | Sale | 1/24/2008 | (83,300) | $ 36.4340 | $ (3,034,952.20) |
| | | | | | Sale | 1/25/2008 | (4,700) | $ 37.6250 | $ (176,837.50) |
| | | | | | Sale | 2/1/2008 | (38,100) | $ 38.6420 | $ (1,472,260.20) |
| | | | | | Sale | 2/26/2008 | (67,100) | $ 34.6610 | $ (2,325,753.10) |
| | | | | | Sale | 3/11/2008 | (9,600) | $ 28.3790 | $ (272,438.40) |
| | | | | | Sale | 3/12/2008 | (8,100) | $ 29.9730 | $ (242,781.30) |
| | | | | | Sale | 3/20/2008 | (10,700) | $ 30.7240 | $ (328,746.80) |
| | | | | | Sale | 3/24/2008 | (12,000) | $ 31.8100 | $ (381,720.00) |
| | | | | | *Class period sales offsetting opening balance:* | | (486,126) | | $ (20,306,016.63) |
| | | | | | Sale[1] | 6/24/2008 | (27,200) | $ 18.1058 | $ (492,478.67) |
| | | | | | Sale[1] | 6/27/2008 | (22,200) | $ 17.8853 | $ (397,054.40) |
| | | | | | Sale[1] | 6/30/2008 | (86,900) | $ 17.7381 | $ (1,541,443.06) |
| | | | | | *Post-class period sales offsetting opening balance:* | | (136,300) | | $ (2,430,976.13) |
| Purchase | 6/1/2006 | 1,600 | $ 54.6200 | $ 87,392.00 | Retained | | (1,600) | $ 15.9681 | $ (25,548.96) |
| Purchase | 6/1/2006 | 200 | $ 54.6200 | $ 10,924.00 | Retained | | (200) | $ 15.9681 | $ (3,193.62) |
| Purchase | 6/1/2006 | 300 | $ 54.6200 | $ 16,386.00 | Retained | | (300) | $ 15.9681 | $ (4,790.43) |
| Purchase | 6/9/2006 | 10,400 | $ 54.5370 | $ 567,184.80 | Retained | | (10,400) | $ 15.9681 | $ (166,068.24) |

**Mississippi PERS**
**FIFO Loss Calculation in Wachovia Corp (WB)**
Class Period: 05/08/06 - 06/06/08
Retained share price: $15.9681 (6/9/08 - 8/07/08)

| Transaction | Date | Shares | | Price | | Cost | Transaction | Date | Shares | | Price | | Proceeds |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Purchase | 6/30/2006 | 10,000 | $ | 54.0680 | $ | 540,680.00 | Retained | | (10,000) | $ | 15.9681 | $ | (159,681.00) |
| Purchase | 8/30/2006 | 1,900 | $ | 55.2600 | $ | 104,994.00 | Retained | | (1,900) | $ | 15.9681 | $ | (30,339.39) |
| Purchase | 9/15/2006 | 2,500 | $ | 55.1000 | $ | 137,750.00 | Retained | | (2,500) | $ | 15.9681 | $ | (39,920.25) |
| Purchase | 9/26/2006 | 1,000 | $ | 55.5000 | $ | 55,500.00 | Retained | | (1,000) | $ | 15.9681 | $ | (15,968.10) |
| Purchase | 9/26/2006 | 200 | $ | 55.5000 | $ | 11,100.00 | Retained | | (200) | $ | 15.9681 | $ | (3,193.62) |
| Purchase | 9/29/2006 | 15,639 | $ | 55.7800 | $ | 872,343.42 | Retained | | (15,639) | $ | 15.9681 | $ | (249,725.12) |
| Purchase[2] | 10/4/2006 | 99,565 | $ | 55.8000 | $ | 5,555,727.00 | Retained | | (99,565) | $ | 15.9681 | $ | (1,589,863.88) |
| Purchase[2] | 10/4/2006 | 29,008 | $ | 55.8000 | $ | 1,618,646.40 | Retained | | (29,008) | $ | 15.9681 | $ | (463,202.64) |
| Purchase[2] | 10/4/2006 | 68,538 | $ | 55.8000 | $ | 3,824,420.40 | Retained | | (68,538) | $ | 15.9681 | $ | (1,094,421.64) |
| Purchase[2] | 10/4/2006 | 23,228 | $ | 55.8000 | $ | 1,296,122.40 | Retained | | (23,228) | $ | 15.9681 | $ | (370,907.03) |
| Purchase | 11/9/2006 | 1,100 | $ | 55.1800 | $ | 60,698.00 | Retained | | (1,100) | $ | 15.9681 | $ | (17,564.91) |
| Purchase | 1/11/2007 | 800 | $ | 56.5800 | $ | 45,264.00 | Retained | | (800) | $ | 15.9681 | $ | (12,774.48) |
| Purchase | 1/11/2007 | 900 | $ | 56.5800 | $ | 50,922.00 | Retained | | (900) | $ | 15.9681 | $ | (14,371.29) |
| Purchase | 1/31/2007 | 800 | $ | 56.5000 | $ | 45,200.00 | Retained | | (800) | $ | 15.9681 | $ | (12,774.48) |
| Purchase | 2/2/2007 | 1,820 | $ | 56.4160 | $ | 102,677.12 | Retained | | (1,820) | $ | 15.9681 | $ | (29,061.94) |
| Purchase | 2/13/2007 | 7,600 | $ | 57.7180 | $ | 438,656.80 | Retained | | (7,600) | $ | 15.9681 | $ | (121,357.56) |
| Purchase | 2/22/2007 | 600 | $ | 58.7700 | $ | 35,262.00 | Retained | | (600) | $ | 15.9681 | $ | (9,580.86) |
| Purchase | 2/28/2007 | 4,000 | $ | 55.5030 | $ | 222,012.00 | Retained | | (4,000) | $ | 15.9681 | $ | (63,872.40) |
| Purchase | 4/13/2007 | 5,800 | $ | 53.8690 | $ | 312,440.20 | Retained | | (5,800) | $ | 15.9681 | $ | (92,614.98) |
| Purchase | 4/20/2007 | 200 | $ | 55.8500 | $ | 11,170.00 | Retained | | (200) | $ | 15.9681 | $ | (3,193.62) |
| Purchase | 4/30/2007 | 2,200 | $ | 55.9970 | $ | 123,193.40 | Retained | | (2,200) | $ | 15.9681 | $ | (35,129.82) |
| Purchase | 6/7/2007 | 3,100 | $ | 53.1100 | $ | 164,641.00 | Retained | | (3,100) | $ | 15.9681 | $ | (49,501.11) |
| Purchase | 6/7/2007 | 1,000 | $ | 52.8500 | $ | 52,850.00 | Retained | | (1,000) | $ | 15.9681 | $ | (15,968.10) |
| Purchase | 6/7/2007 | 1,200 | $ | 52.8500 | $ | 63,420.00 | Retained | | (1,200) | $ | 15.9681 | $ | (19,161.72) |
| Purchase | 6/22/2007 | 21,700 | $ | 51.8300 | $ | 1,124,711.00 | Retained | | (21,700) | $ | 15.9681 | $ | (346,507.77) |
| Purchase | 9/12/2007 | 4,800 | $ | 48.9170 | $ | 234,801.60 | Retained | | (4,800) | $ | 15.9681 | $ | (76,646.88) |
| Purchase | 9/21/2007 | 9,400 | $ | 51.3540 | $ | 482,727.60 | Retained | | (9,400) | $ | 15.9681 | $ | (150,100.14) |
| Purchase | 9/26/2007 | 1,200 | $ | 50.6400 | $ | 60,768.00 | Retained | | (1,200) | $ | 15.9681 | $ | (19,161.72) |
| Purchase | 10/3/2007 | 4,200 | $ | 51.2170 | $ | 215,111.40 | Retained | | (4,200) | $ | 15.9681 | $ | (67,066.02) |
| Purchase | 10/3/2007 | 11,900 | $ | 51.3700 | $ | 611,303.00 | Retained | | (11,900) | $ | 15.9681 | $ | (190,020.39) |
| Purchase[3] | 10/17/2007 | 2,264 | $ | 50.1500 | $ | 113,539.60 | Retained | | (2,264) | $ | 15.9681 | $ | (36,151.78) |
| Purchase | 10/22/2007 | 1,700 | $ | 46.4400 | $ | 78,948.00 | Retained | | (1,700) | $ | 15.9681 | $ | (27,145.77) |
| Purchase | 11/9/2007 | 229,800 | $ | 39.3100 | $ | 9,033,438.00 | Retained | | (229,800) | $ | 15.9681 | $ | (3,669,469.38) |
| Purchase | 11/13/2007 | 900 | $ | 43.7400 | $ | 39,366.00 | Retained | | (900) | $ | 15.9681 | $ | (14,371.29) |
| Purchase | 11/13/2007 | 800 | $ | 43.7400 | $ | 34,992.00 | Retained | | (800) | $ | 15.9681 | $ | (12,774.48) |
| Purchase | 11/20/2007 | 5,800 | $ | 37.6170 | $ | 218,178.60 | Retained | | (5,800) | $ | 15.9681 | $ | (92,614.98) |
| Purchase | 11/21/2007 | 600 | $ | 38.8200 | $ | 23,292.00 | Retained | | (600) | $ | 15.9681 | $ | (9,580.86) |
| Purchase | 12/21/2007 | 21,700 | $ | 39.5000 | $ | 857,150.00 | Retained | | (21,700) | $ | 15.9681 | $ | (346,507.77) |

**Mississippi PERS**
**FIFO Loss Calculation in Wachovia Corp (WB)**
Class Period: 05/08/06 - 06/06/08
Retained share price: $15.9681 (6/9/08 - 8/07/08)

| Transaction | Date | Shares | | Price | | Cost | Transaction | Date | Shares | | Price | | Proceeds |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Purchase | 12/26/2007 | 1,500 | $ | 39.0700 | $ | 58,605.00 | Retained | | (1,500) | $ | 15.9681 | $ | (23,952.15) |
| Purchase | 12/26/2007 | 3,000 | $ | 39.0700 | $ | 117,210.00 | Retained | | (3,000) | $ | 15.9681 | $ | (47,904.30) |
| Purchase | 2/15/2008 | 1,500 | $ | 33.7600 | $ | 50,640.00 | Retained | | (1,500) | $ | 15.9681 | $ | (23,952.15) |
| Purchase | 2/15/2008 | 1,400 | $ | 33.7600 | $ | 47,264.00 | Retained | | (1,400) | $ | 15.9681 | $ | (22,355.34) |
| Purchase | 3/4/2008 | 21,000 | $ | 29.3710 | $ | 616,791.00 | Retained | | (21,000) | $ | 15.9681 | $ | (335,330.10) |
| Purchase | 4/10/2008 | 4,700 | $ | 27.8700 | $ | 130,989.00 | Retained | | (4,700) | $ | 15.9681 | $ | (75,050.07) |
| Purchase | 4/14/2008 | 4,500 | $ | 25.0140 | $ | 112,563.00 | Retained | | (4,500) | $ | 15.9681 | $ | (71,856.45) |
| Purchase | 4/14/2008 | 300 | $ | 24.9890 | $ | 7,496.70 | Retained | | (300) | $ | 15.9681 | $ | (4,790.43) |
| Purchase | 4/14/2008 | 47,300 | $ | 25.5400 | $ | 1,208,042.00 | Retained | | (47,300) | $ | 15.9681 | $ | (755,291.13) |
| Purchase | 4/30/2008 | 9,000 | $ | 29.1500 | $ | 262,350.00 | Retained | | (9,000) | $ | 15.9681 | $ | (143,712.90) |
| Purchase | 4/30/2008 | 2,000 | $ | 29.1500 | $ | 58,300.00 | Retained | | (2,000) | $ | 15.9681 | $ | (31,936.20) |
| Purchase | 4/30/2008 | 1,900 | $ | 29.1500 | $ | 55,385.00 | Retained | | (1,900) | $ | 15.9681 | $ | (30,339.39) |
| Purchase | 4/30/2008 | 26,600 | $ | 29.4340 | $ | 782,944.40 | Retained | | (26,600) | $ | 15.9681 | $ | (424,751.46) |
| | | **736,662** | | | $ | **33,064,483.84** | | | **(736,662)** | | | $ | **(11,763,092.48)** |

**Overall FIFO Loss: $    (21,301,391.36)**

[1]Shares sold within 90 days after the end of the class period have been valued using the higher price between the actual sales price and the average closing price from the end of the class period to the date of the sale.

[2]Shares received as a result of Wachovia's acquisition of Golden West Financial Corp. on 10/2/2006.  The price used is the closing price of Wachovia Financial Corp. shares the day before the merger was completed.

[3]Shares received as a result of Wachovia's acquisition of A.G. Edwards, Inc. on 10/1/2007.  The price used is the closing price of Wachovia Financial Corp. shares the day before the merger was completed.

**Mississippi PERS**
**LIFO Loss Calculation in Wachovia Corp (WB)**
Class Period: 05/08/06 - 06/06/08
Retained share price: $15.9681 (6/9/08 - 8/07/08)

| Transaction | Date | Shares | Price | | Cost | Transaction | Date | Shares | Price | | Proceeds |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Pre-class holdings | 1,118,314 | | | | Sale | 6/27/2006 | (600) | $ | 52.8400 | $ (31,704.00) |
| | | | | | | Sale | 6/27/2006 | (13,000) | $ | 52.8400 | $ (686,920.00) |
| | | | | | | Sale | 8/15/2006 | (7,900) | $ | 55.1750 | $ (435,882.50) |
| | | | | | | Sale | 9/5/2006 | (9,100) | $ | 55.1100 | $ (501,501.00) |
| | | | | | | *Class period sales offsetting opening balance:* | | (30,600) | | $ | (1,656,007.50) |
| Purchase | 6/1/2006 | 1,600 | $ 54.6200 | $ | 87,392.00 | Sale | 6/27/2006 | (12,500) | $ | 52.8400 | (660,500.00) |
| Purchase | 6/1/2006 | 200 | $ 54.6200 | $ | 10,924.00 | Sale | 8/15/2006 | (10,000) | $ | 55.1750 | (551,750.00) |
| Purchase | 6/1/2006 | 300 | $ 54.6200 | $ | 16,386.00 | Sale | 9/5/2006 | (1,900) | $ | 55.1100 | (104,709.00) |
| Purchase | 6/9/2006 | 10,400 | $ 54.5370 | $ | 567,184.80 | Sale | 10/30/2006 | (23,228) | $ | 55.5230 | (1,289,688.24) |
| Purchase | 6/30/2006 | 10,000 | $ 54.0680 | $ | 540,680.00 | Sale | 12/11/2006 | (1,900) | $ | 56.2800 | (106,932.00) |
| Purchase | 8/30/2006 | 1,900 | $ 55.2600 | $ | 104,994.00 | Sale | 12/14/2006 | (1,300) | $ | 56.2100 | (73,073.00) |
| Purchase | 9/15/2006 | 2,500 | $ 55.1000 | $ | 137,750.00 | Sale | 12/28/2006 | (4,600) | $ | 57.4220 | (264,141.20) |
| Purchase | 9/26/2006 | 1,000 | $ 55.5000 | $ | 55,500.00 | Sale | 2/26/2007 | (5,330) | $ | 57.0460 | (304,055.18) |
| Purchase | 9/26/2006 | 200 | $ 55.5000 | $ | 11,100.00 | Sale | 3/13/2007 | (4,190) | $ | 54.1920 | (227,064.48) |
| Purchase | 9/29/2006 | 15,639 | $ 55.7800 | $ | 872,343.42 | Sale | 3/14/2007 | (5,940) | $ | 54.1320 | (321,544.08) |
| Purchase[2] | 10/4/2006 | 99,565 | $ 55.8000 | $ | 5,555,727.00 | Sale | 4/2/2007 | (18,400) | $ | 53.6850 | (987,804.00) |
| Purchase[2] | 10/4/2006 | 29,008 | $ 55.8000 | $ | 1,618,646.40 | Sale | 6/15/2007 | (16,000) | $ | 54.0560 | (864,896.00) |
| Purchase[2] | 10/4/2006 | 68,538 | $ 55.8000 | $ | 3,824,420.40 | Sale | 6/20/2007 | (1,100) | $ | 53.2500 | (58,575.00) |
| Purchase[2] | 10/4/2006 | 23,228 | $ 55.8000 | $ | 1,296,122.40 | Sale | 11/20/2007 | (1,900) | $ | 38.4300 | (73,017.00) |
| Purchase | 11/9/2006 | 1,100 | $ 55.1800 | $ | 60,698.00 | Sale | 11/20/2007 | (66,638) | $ | 38.3565 | (2,556,000.45) |
| Purchase | 1/11/2007 | 800 | $ 56.5800 | $ | 45,264.00 | Sale | 12/11/2007 | (46,500) | $ | 41.9500 | (1,950,675.00) |
| Purchase | 1/11/2007 | 900 | $ 56.5800 | $ | 50,922.00 | Sale | 12/13/2007 | (500) | $ | 40.1900 | (20,095.00) |
| Purchase | 1/31/2007 | 800 | $ 56.5000 | $ | 45,200.00 | Sale | 1/24/2008 | (83,300) | $ | 36.4340 | (3,034,952.20) |
| Purchase | 2/2/2007 | 1,820 | $ 56.4160 | $ | 102,677.12 | Sale | 1/25/2008 | (4,700) | $ | 37.6250 | (176,837.50) |
| Purchase | 2/13/2007 | 7,600 | $ 57.7180 | $ | 438,656.80 | Sale | 2/1/2008 | (38,100) | $ | 38.6420 | (1,472,260.20) |
| Purchase | 2/22/2007 | 600 | $ 58.7700 | $ | 35,262.00 | Sale | 2/26/2008 | (67,100) | $ | 34.6610 | (2,325,753.10) |
| Purchase | 2/28/2007 | 4,000 | $ 55.5030 | $ | 222,012.00 | Sale | 3/11/2008 | (9,600) | $ | 28.3790 | (272,438.40) |
| Purchase | 4/13/2007 | 5,800 | $ 53.8690 | $ | 312,440.20 | Sale | 3/12/2008 | (8,100) | $ | 29.9730 | (242,781.30) |
| Purchase | 4/20/2007 | 200 | $ 55.8500 | $ | 11,170.00 | Sale | 3/20/2008 | (10,700) | $ | 30.7240 | (328,746.80) |
| Purchase | 4/30/2007 | 2,200 | $ 55.9970 | $ | 123,193.40 | Sale | 3/24/2008 | (12,000) | $ | 31.8100 | (381,720.00) |
| Purchase | 6/7/2007 | 3,100 | $ 53.1100 | $ | 164,641.00 | Sale[1] | 6/24/2008 | (27,200) | $ | 18.1058 | (492,478.67) |
| Purchase | 6/7/2007 | 1,000 | $ 52.8500 | $ | 52,850.00 | Sale[1] | 6/27/2008 | (22,200) | $ | 17.8853 | (397,054.40) |
| Purchase | 6/7/2007 | 1,200 | $ 52.8500 | $ | 63,420.00 | Sale[1] | 6/30/2008 | (86,900) | $ | 17.7381 | (1,541,443.06) |
| Purchase | 6/22/2007 | 21,700 | $ 51.8300 | $ | 1,124,711.00 | | | | | | |
| Purchase | 9/12/2007 | 4,800 | $ 48.9170 | $ | 234,801.60 | | | | | | |
| Purchase | 9/21/2007 | 9,400 | $ 51.3540 | $ | 482,727.60 | | | | | | |

**Mississippi PERS**
**LIFO Loss Calculation in Wachovia Corp (WB)**
Class Period: 05/08/06 - 06/06/08
Retained share price: $15.9681 (6/9/08 - 8/07/08)

| Transaction | Date | Shares | | Price | | Cost | Transaction | Date | Shares | Price | | Proceeds |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Purchase | 9/26/2007 | 1,200 | $ | 50.6400 | $ | 60,768.00 | | | | | | |
| Purchase | 10/3/2007 | 4,200 | $ | 51.2170 | $ | 215,111.40 | | | | | | |
| Purchase | 10/3/2007 | 11,900 | $ | 51.3700 | $ | 611,303.00 | | | | | | |
| Purchase[3] | 10/17/2007 | 2,264 | $ | 50.1500 | $ | 113,539.60 | | | | | | |
| Purchase | 10/22/2007 | 1,700 | $ | 46.4400 | $ | 78,948.00 | | | | | | |
| Purchase | 11/9/2007 | 229,800 | $ | 39.3100 | $ | 9,033,438.00 | | | | | | |
| Purchase | 11/13/2007 | 900 | $ | 43.7400 | $ | 39,366.00 | | | | | | |
| Purchase | 11/13/2007 | 800 | $ | 43.7400 | $ | 34,992.00 | | | | | | |
| Purchase | 11/20/2007 | 5,800 | $ | 37.6170 | $ | 218,178.60 | | | | | | |
| Purchase | 11/21/2007 | 600 | $ | 38.8200 | $ | 23,292.00 | | | | | | |
| Purchase | 12/21/2007 | 21,700 | $ | 39.5000 | $ | 857,150.00 | | | | | | |
| Purchase | 12/26/2007 | 1,500 | $ | 39.0700 | $ | 58,605.00 | | | | | | |
| Purchase | 12/26/2007 | 3,000 | $ | 39.0700 | $ | 117,210.00 | | | | | | |
| Purchase | 2/15/2008 | 1,500 | $ | 33.7600 | $ | 50,640.00 | | | | | | |
| Purchase | 2/15/2008 | 1,400 | $ | 33.7600 | $ | 47,264.00 | | | | | | |
| Purchase | 3/4/2008 | 21,000 | $ | 29.3710 | $ | 616,791.00 | | | | | | |
| Purchase | 4/10/2008 | 4,700 | $ | 27.8700 | $ | 130,989.00 | | | | | | |
| Purchase | 4/14/2008 | 4,500 | $ | 25.0140 | $ | 112,563.00 | | | | | | |
| Purchase | 4/14/2008 | 300 | $ | 24.9890 | $ | 7,496.70 | | | | | | |
| Purchase | 4/14/2008 | 47,300 | $ | 25.5400 | $ | 1,208,042.00 | | | | | | |
| Purchase | 4/30/2008 | 9,000 | $ | 29.1500 | $ | 262,350.00 | | | | | | |
| Purchase | 4/30/2008 | 2,000 | $ | 29.1500 | $ | 58,300.00 | | | | | | |
| Purchase | 4/30/2008 | 1,900 | $ | 29.1500 | $ | 55,385.00 | | | | | | |
| Purchase | 4/30/2008 | 26,600 | $ | 29.4340 | $ | 782,944.40 | Retained | | (144,836) | $ 15.9681 | $ | (2,312,755.73) |
| | | **736,662** | | | $ | **33,064,483.84** | | | **(736,662)** | | $ | **(23,393,740.99)** |

**Overall LIFO Loss:  $    (9,670,742.85)**

[1]Shares sold within 90 days after the end of the class period have been valued using the higher price between the actual sales price and the average closing price from the end of the class period to the date of the sale.

[2]Shares received as a result of Wachovia's acquisition of Golden West Financial Corp. on 10/2/2006.  The price used is the closing price of Wachovia Financial Corp. shares the day before the merger was completed.

[3]Shares received as a result of Wachovia's acquisition of A.G. Edwards, Inc. on 10/1/2007.  The price used is the closing price of Wachovia Financial Corp. shares the day before the merger was completed.

# Ex. G

PZM          Labaton Sucharow LLP Announces Filing of Securities Class Action
             Jun 9 2008  15:35:47


*T
      Labaton Sucharow LLP Announces Filing of Securities Class
             Action Lawsuit Against Wachovia Corp. -- WB
*T
NEW YORK, June 9, 2008 (PRIME NEWSWIRE) -- Labaton Sucharow LLP filed a
class action lawsuit on June 6, 2008 in the United States District
Court for the Northern District of California, on behalf of persons who
purchased the securities of Wachovia Corp. (NYSE:WB) ("Wachovia" or the
"Company") between May 8, 2006 and April 11, 2008, inclusive (the
"Class Period"). The complaint names Wachovia, G. Kennedy Thomson
(former CEO), Thomas J. Wurtz (CFO) and Donald K. Truslow (Chief Risk
Officer) as defendants (collectively, "Defendants"). The complaint
alleges that during the Class Period Defendants violated Sections 10(b)
and 20(a) of the Securities Exchange Act of 1934 by issuing various
materially false and misleading statements about Wachovia's financial
results and business operations, which had the effect of artificially
inflating the market price of the Company's securities.

You can view a copy of the complaint online at
http://www.labaton.com/en/cases/Newly-Filed-Cases.cfm or obtain it from
the Court. The case number is C-08-02844 SC, and the Judge presiding
over the case is the Honorable Samuel Conti.

In summary, the complaint alleges that Defendants misled investors by
falsely representing that Wachovia had strict and selective
underwriting and loan origination practices and a conservative lending
approach that set it apart from other lenders. Such reassurances were
repeated by defendants throughout the Class Period in order to
artificially support Wachovia's stock price in the midst of a weakening
mortgage market. In response to increased market concern with the
mortgage lending industry, and Wachovia's option ARMs in particular,
Wachovia falsely represented that its loan underwriting practices were
much better than at other banks and that this would allow it to prosper
while lenders with less exacting standards and procedures would fare
much worse. In reality, Wachovia's actual lending practices differed
materially from the description of those practices in statements made
to investors. The Company's ability to weather the deterioration in the
real estate and credit markets was grossly exaggerated by Defendants,
at precisely the worst time, when analysts began to ask tough
questions. The Company, moreover, had inadequate loan loss reserves and
falsely represented that its capital position was sufficient to fund
its dividend.

Shortly after last assuring the market of its liquidity, the strength
of its underwriting practices, and the adequacy of its reserves,
Wachovia reported a surprise quarterly loss, undertook emergency
measures to increase capital, and cut its dividend. On April 14, 2008,
before the open of ordinary trading, Wachovia reported a loss of $350
million, or $0.20 per share, for the first quarter of 2008. The Company
attributed the results to: (1) a $2.8 billion increase credit loss
reserves, including $1.1 billion specifically for "Pick-A-Pay" reserve
build, the lending program highly touted by the Company during the
Class Period. The need to increase Pick-A-Pay reserves was attributed
Copyright (c) 2008

PZM        Labaton Sucharow LLP Announces Filing of Securities Class Action
           Jun 9 2008  15:35:47
to Wachovia's adoption of a "refined reserve modeling" that resulted in
"higher than expected loss factors on Pick-a-Pay"; and (2) $2 billion
in mark-to-market losses for mortgage backed securities, including a
"$729 million loss on unfunded leveraged finance commitments." In order
to shore-up its capital, Wachovia announced the following steps: (1)
reduce the dividend 41% to $0.375; and (2) plan to raise capital by
$7-8 billion through public offerings.

In reaction to the news, shares fell from $27.81 to $25.55 (8.13%) on
abnormally high volume.

Plaintiff is represented by the law firm of Labaton Sucharow LLP, which
has been representing plaintiffs in securities class actions for over
40 years.

If you bought Wachovia securities between May 8, 2006 and April 11,
2008, inclusive, you may qualify to serve as Lead Plaintiff. Lead
Plaintiff papers must be filed with the court no later than August 8,
2008. If you would like to consider serving as lead plaintiff or have
any questions about the lawsuit, please contact one of our
representatives or Andrei V. Rado, Esq. of Labaton Sucharow, at
800-321-0476. A lead plaintiff is a court-appointed representative
party that acts on behalf of absent class members. You do not need to
be a lead plaintiff in order to share in any recovery that may result
from this litigation. You can share in a recovery as an absent class
member by filing out claim forms that will be made available at the
appropriate time.

More information on this and other class actions can be found on the
Class Action Newsline at www.primenewswire.com/ca

*T
-0-
CONTACT: Labaton Sucharow LLP
         Andrei V. Rado, Esq.
         800-321-0476
*T


Provider ID: 00144330
-0- Jun/09/2008 19:35 GMT

Copyright (c) 2008

**Ex. H**

MWR          Law Offices of Brodsky & Smith, LLC Announces Expanded Class
             Jul 8 2008  10:37:21

Law Offices of Brodsky & Smith, LLC Announces Expanded Class Period
in Class Action Lawsuit Against Wachovia Corp.

BALA CYNWYD, PA -- (MARKET WIRE) -- 07/08/08 -- Law offices of
Brodsky & Smith, LLC announces that a class action lawsuit alleging
an expanded class period has been filed on behalf of all persons who
purchased the common stock of Wachovia Corp. ("Wachovia" or the
"Company") (NYSE: WB) between May 8, 2006 and June 6, 2008.  The
class action lawsuit was filed in the United States District Court
for the Southern District of New York.

The Complaint alleges that defendants violated federal securities
laws by issuing a series of material misrepresentations to the
market, thereby artificially inflating the price of Wachovia.

No class has yet been certified in the above action.  Until a class
is certified, you are not represented by counsel unless you retain
one.  If you are a Wachovia shareholder you have certain rights.  To
be a member of the class you need not take any action at this time,
and you may retain counsel of your choice.  If you want to discuss
your legal rights, you may e-mail or call the law office of Brodsky &
Smith, LLC who will, without obligation or cost to you, attempt to
answer your questions.  You may contact Evan J. Smith, Esquire or
Marc L. Ackerman, Esquire at Brodsky & Smith, LLC, Two Bala Plaza,
Suite 602, Bala Cynwyd, PA 19004, by e-mail at
clients@brodsky-smith.com, or by calling toll free 877-LEGAL-90.


Contact:
Evan J. Smith, Esquire
Marc L. Ackerman, Esquire
Brodsky & Smith, LLC
Email Contact
877-LEGAL-90
-0- Jul/08/2008 14:37 GMT

Copyright (c) 2008

**Ex. I**

# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
## ATTORNEYS AT LAW

**NEW YORK    *    CALIFORNIA    *    NEW JERSEY    *    LOUISIANA**

## FIRM RESUME

Visit our web site at www.blbglaw.com for the most up-to-date information on the firm, its lawyers and practice groups.

Bernstein Litowitz Berger & Grossmann LLP, a firm of over 50 attorneys in offices located in New York, California, New Jersey, and Louisiana, prosecutes class and private actions, nationwide, on behalf of individual and institutional clients. The firm's litigation practice concentrates in the areas of securities class actions in federal and state courts; corporate governance litigation, including claims for breach of fiduciary duty and proxy violations; antitrust; prosecuting violations of federal and state anti-discrimination laws and vindication of employee rights; and consumer class actions. We also handle, on behalf of major institutional clients and lenders, more general complex commercial litigation involving allegations of breach of contract, accountants' liability, breach of fiduciary duty, fraud, and negligence.

We are the nation's leading firm in representing institutional investors in securities fraud class action litigation. The firm's institutional client base includes the New York State Common Retirement Fund, the California Public Employees Retirement System (CalPERS), and the Ontario Teachers' Pension Plan, the largest public pension funds in North America, collectively managing over $300 billion in assets; the Los Angeles County Employees' Retirement Association (LACERA); the Chicago Municipal, Police and Labor Retirement Systems; the State of Wisconsin Investment Board; the Retirement Systems of Alabama; the Connecticut Retirement Plans and Trust Funds; the City of Detroit Pension Systems; the Houston Firefighters' and Municipal Employees' Pension Funds; the Louisiana School, State, Teachers and Municipal Police Retirement Systems; the Public School Teachers' Pension and Retirement Fund of Chicago; the New Jersey Division of Investment of the Department of the Treasury; TIAA-CREF and other private institutions; as well as numerous other public and Taft-Hartley pension entities.

Since its founding in 1983, Bernstein Litowitz Berger & Grossmann LLP has litigated some of the most complex cases in history and has obtained over $20 billion on behalf of investors. Unique among its peers, the firm has negotiated the largest settlements ever agreed to by public companies related to securities fraud, and obtained five of the ten largest securities recoveries in history.

As Co-Lead Counsel for the Class representing Lead Plaintiff the New York State Common Retirement Fund in *In re WorldCom, Inc. Securities Litigation*, arising from the financial fraud and subsequent bankruptcy at WorldCom, Inc., we obtained unprecedented settlements from the investment bank defendants who underwrote WorldCom bonds totaling more than $6 billion, the second largest securities recovery in history. Additionally, all of the former WorldCom Director Defendants agreed to pay over $60 million to settle the claims against them. An unprecedented first for outside directors, $24.75 million of that amount is coming out of the pockets of the individuals—20% of their collective net worth. Also, after four weeks of trial, Arthur Andersen, WorldCom's former auditor, settled for $65 million. In July 2005, settlements had been reached with the former executives of WorldCom, bringing the total obtained for the Class to over $6.15 billion.

*Bernstein Litowitz Berger & Grossmann LLP*

The firm was also Co-Lead Counsel in *In re Cendant Corporation Securities Litigation*, which settled for more than $3 billion in cash. This settlement is the largest ever recovered from a public company and a public accounting firm and includes some of the most significant corporate governance changes ever achieved through securities class action litigation. The firm represented Lead Plaintiffs CalPERS, the New York State Common Retirement Fund, and the New York City Pension Funds on behalf of all purchasers of Cendant securities during the class period. In 2006, the firm also recovered over $1.3 billion for investors in Nortel Networks, and recent settlements in *In re McKesson HBOC Inc. Securities Litigation* total over $1 billion in monies recovered for investors. Additionally, the firm was lead counsel in the celebrated *In re Washington Public Power Supply System Litigation*, which, after seven years of litigation and three months of jury trial, resulted in what was then the largest securities fraud recovery ever – over $750 million.

The firm's prosecution of Arthur Andersen LLP, for Andersen's role in the 1999 collapse of the Baptist Foundation of Arizona ("BFA"), received intense national and international media attention. As lead trial counsel for the defrauded BFA investors, the firm obtained a cash settlement of $217 million from Andersen in May 2002, after six days of what was scheduled to be a three month trial. In combination with prospective BFA asset sales and a settlement with BFA's former law firm, it is expected that the over 11,000 retirees and investors will recover over 70% of their losses. The case was covered in great detail by *The Wall Street Journal, The New York Times, The Washington Post*, "60 Minutes II," National Public Radio, and the BBC, as well as various other international news outlets.

Equally important, Bernstein Litowitz Berger & Grossmann LLP has successfully advanced novel and socially beneficial principles by developing important new law in the areas in which we litigate.

The firm served as co-lead counsel on behalf of Texaco's African-American employees in *Roberts v. Texaco Inc.*, which similarly resulted in the largest settlement ever in a race discrimination case. The creation of a Task Force to oversee Texaco's human resources activities for five years was unprecedented and will, undoubtedly, serve as a model for public companies into the next century.

On behalf of twelve public pension funds, including the New York State Common Retirement Fund, CalPERS, LACERA, and other institutional investors, the firm successfully prosecuted *McCall v. Scott*, a derivative suit filed against the directors and officers of Columbia/HCA Healthcare Corporation, the subject of the largest health care fraud investigation in history. This settlement, announced in February 2003, included a landmark corporate governance plan which went well beyond all recently enacted regulatory reforms, greatly enhancing the corporate governance structure in place at HCA.

In the consumer field, the firm has gained a nationwide reputation for vigorously protecting the rights of individuals and for achieving exceptional settlements. In several instances, the firm has obtained recoveries for consumer classes that represented the entirety of the class' losses – an extraordinary result in consumer class cases. Additionally, the firm has become a leader in the area of Internet Privacy and is counsel in several of the seminal cases that have been brought on behalf of Internet users whose personal information is being intercepted and sent to Web-based companies.

Our firm is dedicated to litigating with the highest level of professional competence, striving to secure the maximum possible recovery for our clients in the most efficient and professionally responsible manner. In those cases where we have served as either lead counsel or as a member of plaintiffs' executive committee, the firm has recovered billions of dollars for our clients.

*Bernstein Litowitz Berger & Grossmann LLP*

## THE FIRM'S PRACTICE AREAS

### Securities Fraud Litigation

Securities fraud litigation is the cornerstone of the firm's class action litigation practice. Since its founding, the firm has tried and settled many high profile securities fraud class actions and continues to play a leading role in major securities litigation pending in federal and state courts. Moreover, since passage of the Private Securities Litigation Reform Act of 1995, which sought to encourage institutional investors to become more pro-active in securities fraud class action litigation, the firm has become the nation's leader in representing institutional investors in securities fraud and derivative litigation.

The firm has the distinction of having prosecuted many of the most complex and high-profile cases in securities law history, recovering billions of dollars and obtaining unprecedented corporate governance reforms on behalf of our clients. Several of the firm's high-profile current prosecutions and outstanding accomplishments as class counsel are detailed in our Recent Actions and Significant Recoveries section beginning on page 8.

The attorneys in the securities fraud litigation practice group have extensive experience in the laws that regulate the securities markets and in the disclosure requirements of corporations that issue publicly traded securities. Many of the attorneys in this practice group also have accounting backgrounds and one is a certified public accountant. The group has access to state-of-the-art, online financial wire services and databases, which enable them to instantaneously investigate any potential securities fraud action involving a public company's debt and equity securities.

### Corporate Governance and Shareholders' Rights

The corporate governance and shareholders' rights practice group prosecutes derivative actions, claims for breach of fiduciary duty and proxy violations on behalf of individual and institutional investors in state and federal courts throughout the country. The group has prosecuted actions challenging numerous highly publicized corporate transactions which violated fair process and fair price, and the applicability of the business judgment rule. The group has also addressed issues of corporate waste, shareholder voting rights claims, and executive compensation. As a result of the firm's high profile and widely recognized capabilities, the corporate governance practice group is increasingly in demand by institutional investors who are exercising a more assertive voice with corporate boards regarding corporate governance issues and the board's accountability to shareholders. A major component of the *Cendant* settlement referenced above is Cendant's agreement to adopt the most extensive corporate governance changes in history.

Recent examples of highly successful M&A litigation conducted by Bernstein Litowitz Berger & Grossmann include the widely publicized lawsuit arising from the proposed acquisition of Caremark Corp. by CVS Corp.—which led to an increase of approximately $3.5 billion in the consideration offered to shareholders—as well as the lawsuit over an attempted buyout of Cablevision Corp. by its controlling family—which, although still ongoing, has resulted in an increase of over $2.2 billion in the consideration currently on offer to Cablevision shareholders. The firm is actively involved in litigating numerous cases in this area of law, an area that has become increasingly important in light of efforts by various market participants to buy companies from their public shareholders "on the cheap."

### Employment Discrimination and Civil Rights

The employment discrimination and civil rights practice group prosecutes class and multi-plaintiff actions, and other high impact litigation against employers and other societal institutions that violate federal or state employment, anti-discrimination, and civil rights laws. The practice group represents diverse clients on a wide range of issues including Title VII actions, race, gender, sexual orientation and age discrimination suits, sexual harassment and "glass ceiling" cases in which otherwise qualified employees are passed over for promotions to managerial or executive positions.

*Bernstein Litowitz Berger & Grossmann LLP*

Bernstein Litowitz Berger & Grossmann LLP is committed to effecting positive social change in the workplace and in society. The practice group has the necessary financial and human resources to ensure that the class action approach to discrimination and civil rights issues is successful. This litigation method serves to empower employees and other civil rights victims, who are usually discouraged from pursuing litigation because of personal financial limitations, and offers the potential for effecting the greatest positive change for the greatest number of people affected by discriminatory practice in the workplace. As stated, the firm's practice group recently settled the *Texaco* racial discrimination lawsuit for $176 million, the largest settlement in the history of employment discrimination cases.

## Consumer Advocacy

The consumer advocacy practice group at Bernstein Litowitz Berger & Grossmann LLP prosecutes cases across the entire spectrum of consumer rights, consumer fraud, and consumer protection issues. The firm represents victimized consumers in state and federal courts nationwide in individual and class action lawsuits that seek to provide consumers and purchasers of defective products with a means to recover their damages. The attorneys in this group are well versed in the vast array of laws and regulations that govern consumer interests and are aggressive, effective, court-tested litigators. The consumer practice advocacy group has recovered hundreds of millions of dollars for millions of consumers throughout the country. Most notably, in a number of cases, the firm has obtained recoveries for the class that were the entirety of the potential damages suffered by the consumer. For example, in recent actions against MCI and Empire Blue Cross, the firm recovered all of the damages suffered by the class.

The group has achieved its successes by advancing innovative claims and theories of liabilities, such as obtaining decisions in Pennsylvania and Illinois appellate courts that adopted a new theory of consumer damages in mass marketing cases. Bernstein Litowitz Berger & Grossmann LLP is, thus, able to lead the way in protecting the rights of consumers. For example, the firm is a recognized leader in Internet privacy, where it prosecuted several seminal cases on behalf of Web users whose personal information has been unwittingly intercepted and sent to Internet companies in violation of federal statutes and state law.

## THE COURTS SPEAK

Throughout the firm's history, many courts have recognized the professional competence and diligence of the firm and its members. A few examples are set forth below.

Judge Denise Cote (United States District Court for the Southern District of New York) has noted, several times on the record, the quality of BLB&G's ongoing representation of the Class in *In re WorldCom, Inc. Securities Litigation*. Judge Cote on December 16, 2003:

> "I have the utmost confidence in plaintiffs' counsel . . . they have been doing a superb job. . . . The Class is extraordinarily well represented in this litigation."

In granting final approval of the $2.575 billion settlement obtained from the Citigroup Defendants, Judge Cote again praised BLB&G's efforts:

> "The magnitude of this settlement is attributable in significant part to Lead Counsel's advocacy and energy....The quality of the representation given by Lead Counsel...has been superb...and is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation. Lead Counsel has been energetic and creative…. Its negotiations with the Citigroup Defendants have resulted in a settlement of historic proportions."

*   *   *

*Bernstein Litowitz Berger & Grossmann LLP*

In February 2005, at the conclusion of trial of *In re Clarent Corporation Securities Litigation*, The Honorable Charles R. Breyer of the United States District Court for the Northern District of California praised the efforts of counsel: "It was the best tried case I've witnessed in my years on the bench….[A]n extraordinarily civilized way of presenting the issues to you [the jury]….We've all been treated to great civility and the highest professional ethics in the presentation of the case…. The evidence was carefully presented to you….They got dry subject matter and made it interesting… [brought] the material alive… good trial lawyers can do that…. I've had fascinating criminal trials that were far less interesting than this case. [I]t's a great thing to be able to see another aspect of life… It keeps you young…vibrant… [and] involved in things… These trial lawyers are some of the best I've ever seen."

\*    \*    \*

In granting the Court's approval of the resolution and prosecution of *McCall v. Scott*, a shareholder derivative lawsuit against certain former senior executives of HCA Healthcare (formerly Columbia/HCA), Senior Judge Thomas A. Higgins (United States District Court, Middle District of Tennessee) said that the settlement "confers an exceptional benefit upon the company and the shareholders by way of the corporate governance plan. . . . Counsel's excellent qualifications and reputations are well documented in the record, and they have litigated this complex case adeptly and tenaciously throughout the six years it has been pending. They assumed an enormous risk and have shown great patience by taking this case on a contingent basis, and despite an early setback they have persevered and brought about not only a large cash settlement but sweeping corporate reforms that may be invaluable to the beneficiaries."

\*    \*    \*

Judge Walls (District of New Jersey), in approving the $3.2 billion *Cendant* settlement, said that the recovery from all defendants, which represents a 37% recovery to the Class, "far exceeds recovery rates of any case cited by the parties." The Court also held that the $335 million separate recovery from E&Y is "large" when "[v]iewed in light of recoveries against accounting firms for securities damages." In granting Lead Counsel's fee request, the Court determined that "there is no other catalyst for the present settlement than the work of Lead Counsel. . . . This Court, and no other judicial officer, has maintained direct supervision over the parties from the outset of litigation to the present time. In addition to necessary motion practice, the parties regularly met with and reported to the Court every five or six weeks during this period about the status of negotiations between them. . . . [T]he Court has no reason to attribute a portion of the Cendant settlement to others' efforts; Lead Counsel were the only relevant material factors for the settlement they directly negotiated." The Court found that "[t]he quality of result, measured by the size of settlement, is very high. . . . The Cendant settlement amount alone is over three times larger than the next largest recovery achieved to date in a class action case for violations of the securities laws, and approximately ten times greater than any recovery in a class action case involving fraudulent financial statements. . . The E&Y settlement is the largest amount ever paid by an accounting firm in a securities class action." The Court went on to observe that "the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel were high in this action. Lead Counsel are experienced securities litigators who ably prosecuted the action." The Court concluded that this Action resulted in "excellent settlements of uncommon amount engineered by highly skilled counsel with reasonable cost to the class."

\*    \*    \*

After approving the settlement in *Alexander v. Pennzoil Company*, the Honorable Vanessa D. Gilmore of the United States District Court for the Southern District of Texas ended the settlement hearing by praising our firm for the quality of the settlement and our commitment to effectuating change in the workplace.  "... the lawyers for the plaintiffs ... did a tremendous, tremendous job. ... not only in the monetary result obtained, but the substantial and very innovative programmatic relief that the plaintiffs have obtained in this case ... treating people fairly and with respect can only inure to the benefit of everybody concerned.  I think all these lawyers did an outstanding job trying to make sure that that's the kind of thing that this case left behind."

\*    \*    \*

*Bernstein Litowitz Berger & Grossmann LLP*

On February 23, 2001, the United States District Court for the Northern District of California granted final approval of the $259 million cash settlement in *In re 3Com Securities Litigation*, the largest settlement of a securities class action in the Ninth Circuit since the Private Securities Litigation Reform Act was passed in 1995, and the fourth largest recovery ever obtained in a securities class action. The district court, in an Order entered on March 9, 2001, specifically commented on the quality of counsel's efforts and the settlement, holding that "counsel's representation [of the class] was excellent, and ... the results they achieved were substantial and extraordinary." The Court described our firm as "among the most experienced and well qualified in this country in [securities fraud] litigation."

*        *        *

United States District Judge Todd J. Campbell of the Middle District of Tennessee heard arguments on Plaintiffs' Motion for Preliminary Injunction in *Cason v. Nissan Motor Acceptance Corporation Litigation*, the highly publicized discriminatory lending class action, on September 5, 2001. He exhibited his own brand of candor in commenting on the excellent work of counsel in this matter: "In fact, the lawyering in this case... is as good as I've seen in any case. So y'all are to be commended for that."

*        *        *

In approving the $30 million settlement in the *Assisted Living Concepts, Inc. Securities Litigation*, the Honorable Ann L. Aiken of the Federal District Court in Oregon, praised the recovery and the work of counsel. She stated that, "...without a doubt...this is a...tremendous result as a result of very fine work...by the...attorneys in this case."

*        *        *

The Honorable Judge Edward A. Infante of the United States District Court for the Northern District of California expressed high praise for the settlement and the expertise of plaintiffs' counsel when he approved the final settlement in the *Wright v. MCI Communications Corporation* consumer class action. "The settlement. . . . is a very favorable settlement to the class. . . . to get an 85% result was extraordinary, and plaintiffs' counsel should be complimented for it on this record. . . . The recommendations of experienced counsel weigh heavily on the court. The lawyers before me are specialists in class action litigation. They're well known to me, particularly Mr. Berger, and I have confidence that if Mr. Berger and the other plaintiffs' counsel think this is a good, well-negotiated settlement, I find it is." The case was settled for $14.5 million.

*        *        *

At the *In re Computron Software, Inc. Securities Litigation* settlement hearing, Judge Alfred J. Lechner, Jr. of the United States District Court for the District of New Jersey approved the final settlement and commended Bernstein Litowitz Berger & Grossmann's efforts on behalf of the Class. "I think the job that was done here was simply outstanding. I think all of you just did a superlative job and I'm appreciat[ive] not only for myself, but the court system and the plaintiffs themselves. The class should be very, very pleased with the way this turned out, how expeditiously it's been moved." *In re Computron Software, Inc. Securities Litigation* was a securities fraud class action filed on behalf of shareholders who purchased Computron common stock at inflated prices due to alleged misrepresentation about the company's financial obligation. The case settled for $15 million dollars.

*        *        *

The *In re Louisiana-Pacific Corporation Securities Litigation*, filed in the United States District Court, District of Oregon, was a securities class action alleging fraud and misrepresentations in connection with the sale of defective building materials. Our firm, together with co-lead counsel, negotiated a settlement of $65.1 million, the largest securities fraud settlement in Oregon history, which was approved by Judge Robert Jones on February 12, 1997. The Court there recognized that ". . . the work that is involved in this case could only be accomplished through the unique talents of plaintiffs' lawyers . . . which involved a talent that is not just simply available in the mainstream of litigators."

*        *        *

*Bernstein Litowitz Berger & Grossmann LLP*

Judge Kimba M. Wood of the United States District Court for the Southern District of New York, who presided over the six-week securities fraud class action jury trial in *In re ICN/Viratek Securities Litigation*, also recently praised our firm for the quality of the representation afforded to the class and the skill and expertise demonstrated throughout the litigation and trial especially. The Court commented that ". . . plaintiffs' counsel did a superb job here on behalf of the class. . . This was a very hard fought case. You had very able, superb opponents, and they put you to your task. . . The trial work was beautifully done and I believe very efficiently done. . ."

\*    \*    \*

Similarly, the Court in the *In re Prudential-Bache Energy Income Partnership Securities Litigation*, United States District Court, Eastern District of Louisiana, recognized Bernstein Litowitz Berger & Grossmann LLP's ". . . professional standing among its peers." In that case, which was settled for $120 million, our firm served as Chair of Plaintiffs' Executive Committee.

\*    \*    \*

In the landmark securities fraud case, *In re Washington Public Power Supply System Litigation* (United States District Court, District of Arizona), the district court called the quality of representation "exceptional," noting that "[t]his was a case of overwhelmingly unique proportions. . . a rare and exceptional case involving extraordinary services on behalf of Class plaintiffs." The Court also observed that "[a] number of attorneys dedicated significant portions of their professional careers to this litigation, . . . champion[ing] the cause of Class members in the face of commanding and vastly outnumbering opposition. . . [and] in the face of uncertain victory. . . . [T]hey succeeded admirably."

\*    \*    \*

Likewise, in *In re Electro-Catheter Securities Litigation*, where our firm served as co-lead counsel, Judge Nicholas Politan of the United States District Court for New Jersey said:

> Counsel in this case are highly competent, very skilled in this very specialized area and were at all times during the course of the litigation...always well prepared, well spoken, and knew their stuff and they were a credit to their profession. They are the top of the line.

\*    \*    \*

In our ongoing prosecution of the *In re Bennett Funding Group Securities Litigation*, the largest "Ponzi scheme" fraud in history, partial settlements totaling over $140 million have been negotiated for the class. While the action continues to be prosecuted against other defendants, the United States District Court for the Southern District of New York has already found our firm to have been "extremely competent" and of "great skill" in representing the class.

\*    \*    \*

Judge Sarokin of the United States District Court for the District of New Jersey, after approving the $30 million settlement in *In re First Fidelity Bancorporation Securities Litigation*, a case in which were lead counsel, praised the ". . . outstanding competence and performance" of the plaintiffs' counsel and expressed "admiration" for our work in the case.

*Bernstein Litowitz Berger & Grossmann LLP*

# RECENT ACTIONS & SIGNIFICANT RECOVERIES

Currently, Bernstein Litowitz Berger & Grossmann LLP is counsel in many diverse nationwide class and individual actions and has obtained many of the largest and most significant recoveries in history.  Some examples from our practice groups include:

## Securities Class Actions

*In re WorldCom, Inc. Securities Litigation* -- (United States District Court for the Southern District of New York) The largest securities fraud class action in history. The court appointed BLB&G client the **New York State Common Retirement Fund** as Lead Plaintiff and the firm as Lead Counsel for the class in this securities fraud action arising from the financial fraud and subsequent bankruptcy at WorldCom, Inc. The complaints in this litigation allege that WorldCom and others disseminated false and misleading statements to the investing public regarding its earnings and financial condition in violation of the federal securities and other laws. As a result, investors suffered tens of billions of dollars in losses.  The Complaint further alleges a nefarious relationship between Citigroup subsidiary Salomon Smith Barney and WorldCom, carried out primarily by Salomon employees involved in providing investment banking services to WorldCom (most notably, Jack Grubman, Salomon's star telecommunications analyst), and by WorldCom's former CEO and CFO, Bernard J. Ebbers and Scott Sullivan, respectively. On November 5, 2004, the Court granted final approval of the $2.575 billion cash settlement to settle all claims against the Citigroup defendants.  In mid-March 2005, on the eve of trial, the 13 remaining "underwriter defendants," including J.P. Morgan Chase, Deutsche Bank and Bank of America, agreed to pay settlements totaling nearly $3.5 billion to resolve all claims against them, bringing the total over $6 billion. Additionally, by March 21, 2005, the day before trial was scheduled to begin, all of the former WorldCom Director Defendants had agreed to pay over $60 million to settle the claims against them.  An unprecedented first for outside directors, $24.75 million of that amount is coming out of the pockets of the individuals— 20% of their collective net worth.  The case generated headlines across the country—and across the globe—and is changing the way Wall Street does business.  In the words of Lynn Turner, a former SEC chief accountant, the settlement sent a message to directors "that their own personal wealth is at risk if they're not diligent in

their jobs." After four weeks of trial, Arthur Andersen, WorldCom's former auditor, settled for $65 million.  In July 2005, settlements were reached with the former executives of WorldCom, bringing the total obtained for the Class to over $6.15 billion.

*In re Cendant Corporation Securities Litigation* -- (United States District Court, District of New Jersey) Securities class action filed against Cendant Corporation, its officers and directors and Ernst & Young, its auditors.  Cendant settled the action for $2.8 billion and Ernst & Young settled for $335 million.  The settlements are the third largest in history in a securities fraud action.  Plaintiffs allege that the company disseminated materially false and misleading financial statements concerning CUC's revenues, earnings and expenses for its 1997 fiscal year.  As a result of company-wide accounting irregularities, Cendant has restated its financial results for its 1995, 1996 and 1997 fiscal years and all fiscal quarters therein.  The firm represents Lead Plaintiffs **CalPERS** - the **California Public Employees Retirement System**, the **New York State Common Retirement Fund** and the **New York City Pension Funds**, the three largest public pension funds in America, in this action.

*Baptist Foundation of Arizona v. Arthur Andersen, LLP* -- (Superior Court of the State of Arizona in and for the County of Maricopa) Firm client, the **Baptist Foundation of Arizona Liquidation Trust** ("BFA") filed a lawsuit charging its former auditors, the "Big Five" accounting firm of Arthur Andersen LLP, with negligence in conducting its annual audits of BFA's financial statements for a 15-year period beginning in 1984, and culminating in BFA's bankruptcy in late 1999. Investors lost hundreds of millions of dollars as a result of BFA's demise. The lawsuit alleges that Andersen ignored evidence of corruption and mismanagement by BFA's former senior management team and failed to investigate suspicious transactions related to the mismanagement. These oversights of accounting work, which were improper under generally accepted accounting principles,

*Bernstein Litowitz Berger & Grossmann LLP*

allowed BFA's undisclosed losses to escalate to hundreds of million of dollars, and ultimately resulted in its demise.  On May 6, 2002, after one week of trial, Andersen agreed to pay $217 million to settle the litigation.  The court approved the settlement on September 13, 2002 and, ultimately, investors are expected to recover 70% of their losses.

***In re Nortel Networks Corporation Securities Litigation --*** ("Nortel II") (United States District Court for the Southern District of New York) Securities fraud class action on behalf of persons and entities who purchased or acquired the common stock of Nortel Networks Corporation.  The action charges Nortel, and certain of its officers and directors, with violations of the Securities Exchange Act of 1934, alleging that the defendants knowingly or, at a minimum, recklessly made false and misleading statements with respect to Nortel's financial results during the relevant period.  BLB&G clients the Ontario Teachers' Pension Plan Board and the Treasury of the State of New Jersey and its Division of Investment were appointed as Co-Lead Plaintiffs for the Class, and BLB&G was appointed Lead Counsel for the Class by the court in July 2004.  On February 8, 2006, BLB&G and Lead Plaintiffs announced that they and another plaintiff had reached an historic agreement in principle with Nortel to settle litigation pending against the Company for approximately $2.4 billion in cash and Nortel common stock (all figures in US dollars). The Nortel II portion of the settlement totaled approximately $1.2 billion.  Nortel later announced that its insurers had agreed to pay $228.5 million toward the settlement, bringing the total amount of the global settlement to approximately $2.7 billion, and the total amount of the Nortel II settlement to over $1.3 billion.

***HealthSouth Corporation Bondholder Litigation --*** (United States District Court for the Northern District of Alabama {Southern Division}) On March 19, 2003, the investment community was stunned by the charges filed by the Securities and Exchange Commission against Birmingham, Alabama based HealthSouth Corporation and its former Chairman and Chief Executive Officer, Richard M. Scrushy, alleging a "massive accounting fraud." Stephen M. Cutler, the SEC's Director of Enforcement, said "HealthSouth's fraud represents an appalling betrayal of investors." According to the SEC, HealthSouth overstated its earnings by at least $1.4 billion since 1999 at the direction of Mr. Scrushy. Subsequent revelations have disclosed that the overstatement actually exceeded over $2.4 billion, virtually wiping

out all of HealthSouth's reported profits for the last five years. A number of executives at HealthSouth, including its most senior accounting officers -- including every chief financial officer in HealthSouth's history -- have pleaded guilty to criminal fraud charges. In the wake of these disclosures, numerous securities class action lawsuits have been filed against HealthSouth and certain individual defendants. On June 24, 2003, the Honorable Karon O. Bowdre of the District Court appointed the **Retirement Systems of Alabama** to serve as Lead Plaintiff on behalf of a class of all purchasers of HealthSouth bonds who suffered a loss as a result of the fraud. Judge Bowdre appointed BLB&G to serve as Co-Lead Counsel for the bondholder class.  On February 22, 2006, the RSA announced that it and several other institutional plaintiffs leading investor lawsuits arising from the corporate scandal at HealthSouth Corporation had reached a class action settlement with HealthSouth, certain of the company's former directors and officers, and certain of the company's insurance carriers. The total consideration to be paid in the settlement is approximately $445 million.  The action continues against the remaining defendants.

***In re McKesson HBOC, Inc. Securities Litigation --*** (United States District Court, Northern District of California) Securities fraud litigation filed on behalf of purchasers of HBOC, McKesson and McKesson HBOC securities.  On April 28, 1999, the Company issued the first of several press releases which announced that, due to its improper recognition of revenue from contingent software sales, it would have to restate its previously reported financial results.  Immediately thereafter, McKesson HBOC common stock lost $9 billion in market value.  On July 14, 1999, the Company announced that it was restating $327.8 million of revenue improperly recognized in the HBOC segment of its business during the fiscal years ending March 31, 1997, 1998 and 1999.  The complaint alleges that, during the Class Period, Defendants issued materially false and misleading statements to the investing public concerning HBOC's and McKesson HBOC's financial results, which had the effect of artificially inflating the prices of HBOC's and the Company's securities.  On September 28, 2005, the court granted preliminary approval of a $960 million settlement which BLB&G and its client, Lead Plaintiff the **New York State Common Retirement Fund**, obtained from the company.  On December 19, 2006, defendant Arthur Andersen agreed to pay $72.5 million in cash to settle all claims asserted against it. This settlement brings the total recovery to more than

*Bernstein Litowitz Berger & Grossmann LLP*

$1 billion for distribution to eligible Settlement Class Members.  The action continues against remaining defendant Bear Stearns.

***Ohio Public Employees Retirement System, et al. v. Freddie Mac, et al.***  -- (United States District Court for the Southern District of Ohio {Eastern Division}) Securities fraud class action filed on behalf of the **Ohio Public Employees Retirement System** and the **State Teachers Retirement System of Ohio** against the Federal Home Loan Mortgage Corporation ("Freddie Mac") and certain of its current and former officers. The Class includes all purchasers of Freddie Mac common stock during the period July 15, 1999 through June 6, 2003. The Complaint alleges that Freddie Mac and certain current or former officers of the Company issued false and misleading statements in connection with Company's previously reported financial results. Specifically, the complaint alleges that the defendants misrepresented the Company's operations and financial results by having engaged in numerous improper transactions and accounting machinations that violated fundamental GAAP precepts in order to artificially smooth the Company's earnings and to hide earnings volatility. On November 21, 2003, Freddie Mac restated its previously reported earnings in connection with these improprieties, ultimately restating more than $5.0 billion in earnings. In October 2005, with document review nearly complete, Lead Plaintiffs began deposition discovery. On April 25, 2006, the parties reported to the Court that they had reached an agreement in principle to settle the case for $410 million.  On October 26, 2006, the Court granted final approval of the settlement.

***In re Washington Public Power Supply System Litigation*** -- (United States District Court, District of Arizona) Commenced in 1983, the firm was appointed Chair of the Executive Committee responsible for litigating the action on behalf of the class.  The action involved an estimated 200 million pages of documents produced in discovery; the depositions of 285 fact witnesses and 34 expert witnesses; more than 25,000 introduced exhibits; six published district court opinions; seven appeals or attempted appeals to the Ninth Circuit; and a three-month jury trial, which resulted in a settlement of over $750 million – then the largest securities fraud settlement ever achieved.

***In re Lucent Technologies, Inc. Securities Litigation*** -- (United States District Court for the District of New Jersey) A securities fraud class action filed on behalf of purchasers of the common stock of Lucent Technologies, Inc. from October 26, 1999 through December 20, 2000. In the action, BLB&G served as Co-Lead Counsel for the shareholders and Lead Plaintiffs, the **Parnassus Fund** and **Teamsters Locals 175 & 505 D&P Pension Trust**, and also represented the **Anchorage Police and Fire Retirement System** and the **Louisiana School Employees' Retirement System**. Lead Plaintiffs' complaint charged Lucent with making false and misleading statements to the investing public concerning its publicly reported financial results and failing to disclose the serious problems in its optical networking business. When the truth was disclosed, Lucent admitted that it had improperly recognized revenue of nearly $679 million in fiscal 2000. On September 23, 2003, the Court granted preliminary approval of the agreement to settle this litigation, a package which is currently valued at approximately $517 million composed of cash, stock and warrants. The appointment of BLB&G as Co-Lead Counsel is especially noteworthy as it marks the first time since the 1995 passage of the Private Securities Litigation Reform Act that a court has reopened the lead plaintiff or lead counsel selection process to account for changed circumstances, new issues and possible conflicts between new and old allegations.

***In re Williams Securities Litigation*** -- (United States District Court for the Northern District of Oklahoma) Securities fraud class action filed on behalf of a class of all persons or entities that purchased or otherwise acquired certain securities of The Williams Companies.  The action alleged securities claims pursuant to Section 10(b) of the Securities Exchange Act of 1934 and Section 11 of the Securities Act of 1933.  After a massive discovery and intensive litigation effort, which included taking more than 150 depositions and reviewing in excess of 18 million pages of documents, BLB&G and its clients, the Arkansas Teacher Retirement System and the Ontario Teachers' Pension Plan Board, announced an agreement to settle the litigation against all defendants for $311 million in cash on June 13, 2006.  The recovery is among the largest recoveries ever in a securities class action in which the corporate defendant did not restate its financial results.

***In re DaimlerChrysler Securities Litigation*** -- (United States District Court for the District of Delaware) A securities class action filed against defendants DaimlerChrysler AG, Daimler-Benz AG and two of DaimlerChrysler's top executives, charging that Defendants acted in bad faith and misrepresented the nature of the 1998 merger between Daimler-Benz AG and the Chrysler

*Bernstein Litowitz Berger & Grossmann LLP*

Corporation. According to plaintiffs, defendants framed the transaction as a "merger of equals," rather than an acquisition, in order to avoid paying an "acquisition premium." Plaintiffs' Complaint alleges that Defendants made this representation to Chrysler shareholders in the August 6, 1998 Registration Statement, Prospectus, and Proxy, leading 97% of Chrysler shareholders to approve the merger. BLB&G is court-appointed Co-Lead Counsel for Co-Lead Plaintiffs the **Chicago Municipal Employees Annuity and Benefit Fund** and the **Chicago Policemen's Annuity and Benefit Fund**. BLB&G and the Chicago funds filed the action on behalf of investors who exchanged their Chrysler Corporation shares for DaimlerChrysler shares in connection with the November 1998 merger, and on behalf of investors who purchased DaimlerChrysler shares in the open market from November 13, 1998 through November 17, 2000. On August 22, 2003, BLB&G, as Co-Lead Counsel for Plaintiffs, obtained an agreement in principle to settle the action for $300 million.

***In re Bennett Funding Group Securities Litigation***
-- (United States District Court, Southern District of New York). Investor class action involving the sale of $570 million in fraudulent investments, described as the largest "Ponzi" scheme in United States history. The action was prosecuted against over fifty defendants including Bennett's former auditors, insurers and broker-dealers who sold Bennett investment. The class includes all purchasers of Bennett securities from March 29, 1992 through March, 29, 1996. The action settled with multiple defendants for over $165 million.

## Corporate Governance and Shareholders' Rights

***McCall v. Scott*** -- (United States District Court, Middle District of Tennessee). A derivative action filed on behalf of Columbia/HCA Healthcare Corporation -- now "HCA" -- against certain former senior executives of HCA and current and former members of the Board of Directors seeking to hold them responsible for directing or enabling HCA to commit the largest healthcare fraud in history, resulting in hundreds of millions of dollars of loss to HCA. The firm represents the **New York State Common Retirement Fund** as Lead Plaintiff, as well as the **California Public Employees' Retirement System** ("CalPERS"), the **New York City Pension Funds**, the **New York State Teachers' Retirement System** and the **Los Angeles County Employees' Retirement Association** ("LACERA") in this action. Although the district court initially dismissed the action, the United States Court of Appeals for the Sixth Circuit reversed that dismissal and upheld the complaint in substantial part, and remanded the case back to the district court. On February 4, 2003, the Common Retirement Fund, announced that the parties had agreed in principle to settle the action, subject to approval of the district court. As part of the settlement, HCA will adopt a corporate governance plan that goes well beyond the requirements both of the Sarbanes-Oxley Act and of the rules that the New York Stock Exchange has proposed to the SEC, and also enhances the corporate governance structure presently in place at HCA. HCA also will receive $14 million. Under the sweeping governance plan, the HCA Board of Directors will be substantially independent, and will have increased power and responsibility to oversee fair and accurate financial reporting. In granting final approval of the settlement on June 3, 2003, the Honorable Senior Judge Thomas A. Higgins of the District Court said that the settlement "confers an exceptional benefit upon the company and the shareholders by way of the corporate governance plan."

***Official Committee of Unsecured Creditors of Integrated Health Services, Inc. v. Elkins, et al.*** -- (Delaware Chancery Court) The Official Committee of Unsecured Creditors (the "Committee") of Integrated Health Services ("HIS"), filed a complaint against the current and former officers and directors of IHS, a health care provider which declared bankruptcy in January 2000. The Committee, on behalf of the Debtors Bankruptcy Estates, sought damages for breaches of fiduciary duties and waste of corporate assets in proposing, negotiating, approving and/or ratifying excessive and unconscionable compensation arrangements for Robert N. Elkins, the Company's former Chairman and Chief Executive Officer, and for other executive officers of the Company. BLB&G is a special litigation counsel to the committee in this action. The Delaware Chancery Court sustained most of Plaintiff's fiduciary duty claims against the defendants, finding that the complaint sufficiently pleaded that the defendants

11

*Bernstein Litowitz Berger & Grossmann LLP*

"consciously and intentionally disregarded their responsibilities." The Court also observed that Delaware law sets a very high bar for proving violation of fiduciary duties in the context of executive compensation. Resulting in a multi-million dollar settlement, the Integrated Health Services litigation was one of the few executive compensation cases successfully litigated in Delaware.

## Employment Discrimination and Civil Rights

***Roberts v. Texaco, Inc.*** **--** (United States District Court for the Southern District of New York)  Six highly qualified African-American employees filed a class action complaint against Texaco Inc. alleging that the Company failed to promote African-American employees to upper level jobs and failed to compensate them fairly in relation to Caucasian employees in similar positions. Two years of intensive investigation on the part of the lawyers of Bernstein Litowitz Berger & Grossmann LLP, including retaining the services of high level expert statistical analysts, revealed that African-Americans were significantly under-represented in high level management jobs and Caucasian employees were promoted more frequently and at far higher rates for comparable positions within the Company.  Settled for over $170 million. Texaco also agreed to a Task Force to monitor its diversity programs for five years. The settlement has been described as the most significant race discrimination settlement in history.

***GMAC/NMAC/Ford/Toyota/Chrysler Consumer Finance Discrimination Litigation*** The cases involve allegations that the lending practices of General Motors Acceptance Corporation, Nissan Motor Acceptance Corporation, Ford Motor Credit, Toyota Motor Credit and Chrysler Financial cause black and Hispanic car buyers to pay millions of dollars more for car loans than similarly situated white buyers. At issue is a discriminatory kickback system under which minorities typically pay about 50% more in dealer mark-up which is shared by auto dealers with the defendants.  On February 24, 2003, the Honorable Todd J. Campbell of the States District Court for the Middle District of Tennessee granted preliminary approval of the settlement of the class

action pending against Nissan Motor Acceptance Corporation ("NMAC"). Under the terms of the settlement, NMAC will offer pre-approved loans to hundreds of thousands of current and potential black and Hispanic NMAC customers, and will limit how much it raises the interest charged to car buyers above the company's minimum acceptable rate. The company will also contribute $1 million to America Saves, to develop a car financing literacy program targeted toward minority consumers. The settlement also provides for the payment of $5,000 to $20,000 to the 10 people named in the class-action lawsuit. Other car buyers wishing to recover damages will still be able to sue NMAC separately.  BLB&G continues to prosecute the actions against the other auto lenders.

***Alexander v. Pennzoil Company*** -- (United States District Court, Southern District of Texas)  A class action on behalf of all salaried African-American employees at Pennzoil alleging race discrimination in the Company's promotion, compensation and other job related practices.  The action settled for $6.75 million.

***Butcher v. Gerber Products Company*** -- (United States District Court, Southern District of New York) Class action asserting violations of the Age Discrimination in Employment Act arising out of the mass discharging of approximately 460 Gerber sales people, the vast majority of whom were long-term Gerber employees aged 40 and older. Settlement terms are confidential.

## Consumer Class Actions

***E*Trade Group, Inc.*** -- (Superior Court of California, Santa Clara County)  A class action filed on behalf of all individuals who have or had accounts with E*Trade from September 1996 to the present. The complaint alleges that E*Trade's representations to customers regarding the manner in which their accounts would be handled were false and misleading; that the electronic trading systems were

inadequate to meet customer demands; and that, as a result of these misrepresentations, customers suffered significant losses and have been deprived of the benefits which E*Trade had represented they would receive.

***General Motors Corporation*** -- (Superior Court of New Jersey Law Division, Bergen County)  A class

*Bernstein Litowitz Berger & Grossmann LLP*

action consisting of all persons who owned W-body cars with defective rear disc brake caliper pins which tended to corrode, creating both a safety hazard and premature wearing of the front and rear disc brakes, causing extensive economic damage. BLB&G is co-lead counsel in this case where a proposed settlement would provide $19.5 million to the class for reimbursement of brake repairs.

***Rent-A-Center*** -- (Supreme Court of the State of New York, Bronx County) Deceptive sales and marketing in "rent-to-own" transactions. In this case, BLB&G recently obtained a landmark ruling upholding a rental-purchasers' right to bring suit.

***Empire Blue Cross*** -- (United States District Court, Southern District of New York) Overcharging health care subscribers. BLB&G was lead counsel in a

recently approved $6.6 million settlement that represented 130% of the class' damages and offered all the overcharged subscribers 100 cents on the dollar repayment.

***DoubleClick*** -- (United States District Court, Southern District of New York). Internet Privacy. A class action on behalf of Internet users who have had personal information surreptitiously intercepted and sent to a major Internet advertising agency. In the settlement agreement reached in this action, DoubleClick commits to a series of industry-leading privacy protections for online consumers while continuing to offer its full range of products and services. This is likely the largest class action there has ever been - virtually every, if not every, Internet user in the United States.

## Toxic/Mass Torts

***Fen/Phen Litigation ("Diet Drug" Litigation)*** -- -- (Class action lawsuits filed in 10 jurisdictions including New York, New Jersey, Vermont, Pennsylvania, Florida, Kentucky, Indiana, Arizona, Oregon and Arkansas) The firm played a prominent role in the nationwide "diet drug" or "fen-phen" litigation against American Home Products for the Company's sale and marketing of Redux and Pondimin. The suits allege that a number of pharmaceutical companies produced these drugs which, when used in combination, can lead to life-threatening pulmonary hypertension and heart valve thickening. The complaint alleges that these manufacturers knew of or should have known of the serious health risks created by the drugs, should have warned users of these risks, knew that the fen/phen combination was not approved by the FDA, had not been adequately studied, and yet was being routinely prescribed by physicians. This litigation led to one of the largest class action settlements in history, the multi-billion dollar Nationwide Class Action Settlement with American Home Products approved by the United States District Court for the Eastern District of Pennsylvania. In this litigation, BLB&G was involved in lawsuits filed in the 10 jurisdictions and was designated Class Counsel in the Consolidated New York and New Jersey state court litigations. Additionally, the firm was Co-Liaison Counsel in the New York litigations and served as the State Court Certified Class Counsel for the New York Certified Class to the Nationwide Settlement.

*Bernstein Litowitz Berger & Grossmann LLP*

## CLIENTS AND FEES

Most of the firm's clients are referred by other clients, law firms and lawyers, bankers, investors and accountants. A considerable number of clients have been referred to the firm by former adversaries. We have always maintained a high level of independence and discretion in the cases we decide to prosecute. As a result, the level of personal satisfaction and commitment to our work is high.

As stated, our client roster includes many large and well known financial and lending institutions and pension funds, as well as privately held corporate entities which are attracted to our firm because of our reputation, particular expertise and fee structure.

We are firm believers in the contingency fee as a socially useful, productive and satisfying basis of compensation for legal services, particularly in litigation. Wherever appropriate, even with our corporate clients, we will encourage a retention where our fee is at least partially contingent on the outcome of the litigation. This way, it is not the number of hours worked that will determine our fee but, rather, the result achieved for our client.

*Bernstein Litowitz Berger & Grossmann LLP*

# IN THE PUBLIC INTEREST

Bernstein Litowitz Berger & Grossmann LLP is guided by two principles: excellence in legal work and a belief that the law should serve a socially useful and dynamic purpose. Attorneys at the firm are active in academic, community and *pro bono* activities, as well as participating as speakers and contributors to professional organizations. In addition, the firm endows a public interest law fellowship and sponsors an academic scholarship at Columbia Law School.

**The Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship**, Columbia Law School. BLB&G is committed to fighting discrimination and effecting positive social change. In support of this commitment, the firm donated funds to Columbia Law School to create the Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship. This newly endowed fund at Columbia Law School will provide Fellows with 100% of the funding needed to make payments on their law school tuition loans so long as such graduates remain in the public interest law field. The Bernstein Litowitz Berger & Grossmann Fellows will be able to leave law school free of any law school debt if they make a long term commitment to public interest law.

**Firm sponsorship of *inMotion***, New York, NY. BLB&G is a sponsor of inMotion, a non-profit organization in New York City dedicated to providing *pro bono* legal representation to indigent women, principally battered women, in connection with the myriad legal problems they face. The organization trains and supports the efforts of New York lawyers, typically associates at law firms or in-house counsel, who provide *pro bono* counsel to these women. Several members and associates of the firm volunteer their time and energies to help women who need divorces from abusive spouses, or representation on legal issues such as child support, custody and visitation. To read more about inMotion and the remarkable services it provides, visit the organization's website at www.inmotiononline.org.

**The Paul M. Bernstein Memorial Scholarship**, Columbia Law School. Paul M. Bernstein was the founding senior partner of the firm. Mr. Bernstein led a distinguished career as a lawyer and teacher and was deeply committed to the professional and personal development of young lawyers. The Paul M. Bernstein Memorial Scholarship Fund is a gift of the firm of Bernstein Litowitz Berger & Grossmann LLP, and the family and friends of Paul M. Bernstein. Established in 1990, the scholarship is awarded annually to one or more second-year students selected for their academic excellence in their first year, professional responsibility, financial need and contributions to fellow students and the community.

**Firm sponsorship of City Year New York**, New York, NY. BLB&G is also an active supporter of City Year New York, a division of AmeriCorps. The program was founded in 1988 as a means of encouraging young people to devote time to public service and unites a diverse group of volunteers for a demanding year of full-time community service, leadership development and civic engagement. Through their service, corps members experience a rite of passage that can inspire a lifetime of citizenship and build a stronger democracy.

*Bernstein Litowitz Berger & Grossmann LLP*

# THE MEMBERS OF THE FIRM

**MAX W. BERGER**, a founding partner of the firm, supervises the firm's litigation practice and prosecutes class and individual actions on behalf of the firm's clients. Mr. Berger has litigated many of the firm's most high profile and significant cases. Together, with other partners at the firm, he has obtained five of the largest securities fraud recoveries in history—the $6.15 billion settlement of *In re WorldCom, Inc. Securities Litigation*, the $3.2 billion settlement of *In re Cendant Corporation Securities Litigation*, the $1.3 billion recovery in *In re Nortel Networks Corporation Securities Litigation*, the $1.03 billion partial settlement of *In re McKesson HBOC, Inc. Securities Litigation*, and the over $600 million investor recovery in *In re Lucent Technologies, Inc. Securities Litigation*.

Mr. Berger is widely recognized for his professional excellence and achievements. For the second year in a row, he received the top attorney ranking for the "Litigation—Securities Mainly Plaintiff" category by the *Chambers and Partners' 2007 Guide to America's Leading Lawyers for Business*. The inaugural issue of *Benchmark: The Definitive Guide to America's Leading Litigation Firms & Attorneys* (published by Legal Media Group—*Institutional Investor* and *Euromoney*) singled out Mr. Berger as one of a handful of New York's "local litigation stars." Additionally, he was named a "litigation star" by the 2007 edition of the *US Legal 500*, one of "10 Legal Superstars" by *Securities Law360*, and is consistently named as one of the "500 Leading Lawyers in America" by *Lawdragon* magazine.

Mr. Berger's role in the *WorldCom* case received extensive media attention and has been the subject of feature articles in numerous major publications including *BusinessWeek* and *The American Lawyer*. For their outstanding efforts on behalf of the *WorldCom* Class, *The National Law Journal* profiled Mr. Berger and his partner Sean Coffey (two of only eleven attorneys selected nationwide) in its special June 2005 "Winning Attorneys" section. Additionally, Mr. Berger was featured in the July 2006 *New York Times* article, "A Class-Action Shuffle," which assessed the evolving landscape of the securities litigation arena.

Mr. Berger also serves the academic community in numerous capacities as a member of the Dean's Council to Columbia Law School, and as a member of the Board of Trustees of Baruch College. In May 2006, he was presented with the "Distinguished Alumnus Award" for his many and varied contributions to Baruch College. Mr. Berger has also been selected as an Advisor to the American Law Institute, Restatement Third of Torts, and he currently serves on the Advisory Board of Columbia Law School's Center on Corporate Governance. Additionally, Mr. Berger has taught Profession of Law, an ethics course at Columbia.

Mr. Berger is a past chairman of the Commercial Litigation Section of the Association of Trial Lawyers of America (now known as the American Association for Justice) and lectures for numerous professional organizations. In 1997, Mr. Berger was honored for his outstanding contribution to the public interest by Trial Lawyers For Public Justice, where he was a "Trial Lawyer of the Year" Finalist for his work in *Roberts, et al. v. Texaco*, the celebrated race discrimination case, on behalf of Texaco's African-American employees.

Among numerous charitable and volunteer works, Mr. Berger is an active supporter of City Year New York, a division of AmeriCorps, dedicated to encouraging young people to devote time to public service. In July 2005, he was named City Year New York's "Idealist of the Year," for his long-time service and work in the community. He and his wife, Dale, have also established the Dale and Max Berger Public Interest Law Fellowship at Columbia Law School and the Max W. Berger Pre-Law Program at Baruch College.

Mr. Berger received an Accounting degree from the Baruch School of the City College of New York in 1968. At Baruch, he was President of the student body and won numerous awards.

Mr. Berger received his J.D. from Columbia Law School in 1971, where he was an editor of the *Columbia Survey of Human Rights Law*.

ADMISSIONS: Admitted to bar, 1972, New York. 1973, U.S. District Court, Southern District of New York. 1973, U.S. Court of Appeals, Second Circuit. 1975, U.S. District Court, Eastern District of New York. 1992, U.S. District Court, District of Arizona. 1999, U.S. Supreme Court.

**\*\*\*\***

**EDWARD A. GROSSMANN**, one of the firm's founding partners, graduated *cum laude* from the University of Wisconsin in 1970 and the University of Michigan School of Law in 1973.

Mr. Grossmann served as lead counsel in the Prudential-Bache Energy Income Limited Partnership and the *In re Bennett Funding Group* class actions, well-publicized cases which have each settled for in excess of $120 million.

*Bernstein Litowitz Berger & Grossmann LLP*

He is a past chairman of the Class and Derivative Action Trials Subcommittee of the Litigation Section of the American Bar Association and a past chairman of the Commercial Litigation Section of the Association of Trial Lawyers of America and has lectured for that organization. Mr. Grossmann is a member of the Committee of Visitors of the University of Michigan Law School and a member of the Committee of Visitors of the University of Wisconsin Center for Jewish Studies. He is also past President of the JCC on the Palisades and is a past trustee of the UJA Federation of Northern New Jersey.

ADMISSIONS: Admitted to bar, 1974, New York. 1974, U.S. District Courts, Southern and Eastern Districts of New York. 1975, U.S. Court of Appeals, Second Circuit. 1990, U.S. Court of Appeals, Third Circuit. 1991, U.S. Court of Appeals, Ninth Circuit. 1993, U.S. Court of Appeals, Fifth Circuit. 1996, U.S. Court of Appeals, Eleventh Circuit.

\*\*\*\*

**JOHN P. ("SEAN") COFFEY** is a graduate of the United States Naval Academy ("U.S.N.A."), receiving a B.S. in Ocean Engineering, *with merit*, in 1978. He received his J.D., *magna cum laude*, from Georgetown University Law Center in 1987, where he was Articles Editor of the *Georgetown Law Journal*, a member of the Order of the Coif, and recipient of the Charles A. Keigwin Award for academic excellence.

Before graduating from law school, Mr. Coffey was a Commissioned Officer in the United States Navy, where he served as a P-3C Orion patrol plane mission commander, an Intern in the Organization for the Joint Chiefs of Staff, and the personal military aide to Vice President George H.W. Bush. After leaving active duty to pursue his legal career, Mr. Coffey continued to serve in the Navy Reserve, where he commanded a P-3C squadron and the Reserve component of the *Enterprise* carrier battle group staff, and served for four years as a Captain in the Office of the Secretary of Defense at the Pentagon. In August 2004, he retired from the Navy after thirty years of uniformed service.

Mr. Coffey served as an Assistant United States Attorney for the Southern District of New York from 1991 to 1995, where he conducted numerous complex fraud investigations and tried many cases to verdict.

Since joining BLB&G in 1998, Mr. Coffey has served as the lead trial attorney in two of the most notable fraud cases ever to go to trial. In April 2005, Mr. Coffey and his BLB&G team completed their prosecution of the *WorldCom* securities class action—a prosecution that yielded a record-breaking recovery for defrauded investors of over $6.15 billion—by taking the lone non-settling defendant, WorldCom's former auditor Arthur Andersen LLP, to trial.  Mr. Coffey's role in the *WorldCom* prosecution was featured in a December 2004 article in *The American Lawyer* entitled "Taking Citi To School" and a November 2005 article in *The American Lawyer* entitled "Breaking The Banks."

In 2002, in another trial against Andersen, this time arising out of the collapse of the Baptist Foundation of Arizona, *BFA Liquidation Trust v. Arthur Andersen LLP*, the largest non-profit bankruptcy in U.S. history, Mr. Coffey obtained a $217 million settlement, one of the largest amounts ever paid by an accounting firm.

Mr. Coffey currently serves as court-appointed Lead Counsel representing investors in the *Schering-Plough, Omnicom, HealthSouth, Merck, Refco, Delphi* and *Converium* litigations, and copyright holders in the *Premier League v. YouTube* class action.

Mr. Coffey has been profiled in *The Wall Street Journal*, *American Lawyer*, and *BusinessWeek*, and was featured on "The Wall Street Fix" on PBS' *Frontline*. Mr. Coffey and senior BLB&G partner Max Berger were named two of the 2005 "Winning Attorneys of the Year" by the *National Law Journal*, and the September 2005 issue of *Bloomberg Markets* profiled Mr. Coffey as "Wall Street's New Nemesis."

Prior to joining BLB&G, Mr. Coffey was a litigation partner with Latham & Watkins and an Adjunct Professor of Law at Fordham University. He serves as Vice President of the U.S.N.A. Class of 1978 and is a member of the Board of Directors of The Community Fund of Bronxville, Eastchester, Tuckahoe, Inc., in Westchester County, N.Y.  He is also a member of the Federal Bar Council, the American Bar Association, the Association of the Bar of the City of New York (including its newly-formed Securities Litigation Committee), the American Association for Justice, and the Trial Lawyers for Public Justice Foundation.

ADMISSIONS: Admitted to bar, 1988, New York. 1989, U.S. District Court, Southern District of New York. 1992, U.S. Court of Appeals, Second Circuit. 1995, U.S. District Court, Western District of New York. 1998, U.S. District Court, Eastern District of New York. 1999, New Jersey.  2007, U.S. Court of Appeals, Third Circuit.

\*\*\*\*

*Bernstein Litowitz Berger & Grossmann LLP*

**STEVEN B. SINGER** joined BLB&G in 1994.  He has been responsible for prosecuting a number of the largest securities fraud cases in history. Mr. Singer was one of the lead trial lawyers on the *WorldCom Securities Litigation*, which culminated in a four-week trial against WorldCom's auditors, and resulted in the historic recovery of over $6.15 billion from the professionals associated with the WorldCom debacle—the second largest recovery in history. He has also been responsible for numerous additional high-profile litigations, including *In re Lucent Technologies Securities Litigation*, which resulted in the fifth largest settlement of all time; *In re 3Com Securities Litigation*, the largest securities fraud class action recovery in Ninth Circuit history; and a multi-million dollar private action arising out of the demise of Lernout & Hauspie.

Mr. Singer has also distinguished himself in the Firm's other practice areas, securing large recoveries for victims of discrimination and consumer fraud. In 1997, the Trial Lawyers for Public Justice named Mr. Singer as a finalist for "Trial Lawyer of the Year" for his role in the prosecution of the celebrated race discrimination litigation, *Roberts v. Texaco*, which resulted in the largest discrimination settlement in history.

Mr. Singer frequently lectures at the Firm's *Institutional Investor Forum* and is an active member of the New York State and American Bar Associations. He is also a speaker at various continuing legal education programs offered by the Practicing Law Institute ("PLI").

Mr. Singer received his B.A., cum laude, from Duke University in 1988 and his J.D. from Northwestern University School of Law in 1991.

ADMISSIONS: Admitted to the bar, 1992, New York. 1992, U.S. District Courts, Eastern and Southern Districts of New York.

****

**CHAD JOHNSON** is involved in all areas of the firm's litigation practice, with particular emphasis on prosecuting securities fraud actions, complex commercial litigation, patent litigation, and trial practice.

Among other matters, Mr. Johnson was one of the partners who prosecuted the *In re WorldCom, Inc. Securities Litigation*—resulting in a recovery for investors of over $6.15 billion after five weeks of trial—one of the largest securities fraud recovery in history. Mr. Johnson also oversaw the firm's prosecution of *In re Williams Securities Litigation* in the United States District Court for the Northern District of Oklahoma.  The Williams case required a massive undertaking by BLB&G, including the need to take and defend 170 depositions and to review and analyze over 18 million pages of documents. The case proceeded through class certification discovery, fact discovery, expert discovery, summary judgment, and trial preparation. Shortly before trial, BLB&G and the Lead Plaintiffs were able to obtain a total recovery from the defendants of $311 million. This is among the largest recoveries ever achieved in a securities class action in which the corporate defendant did not restate its financial results and where the SEC did not obtain any recovery for investors. Mr. Johnson was also one of the partners responsible for prosecuting the *OM Group Securities Litigation*, which resulted in a $92.4 million recovery for investors.

Mr. Johnson is responsible for overseeing the firm's prosecution of the federal derivative action against the individuals involved in the options backdating scandal at *UnitedHealth Group, Inc*. That case is pending in the United States District Court for the District of Minnesota. In connection with that lawsuit, BLB&G represents several public pension funds, all of whom are Court-appointed Lead Plaintiffs in the case. Since the initiation of that lawsuit, the company has effectively acknowledged that it engaged in options backdating—and the company's Chairman and CEO (and a recipient of hundreds of millions of dollars of apparently backdated stock options), William McGuire, has been forced out of the company because of his involvement in the scandal.

Mr. Johnson is overseeing the firm's prosecution (with co-counsel) of numerous patent litigations now pending against major electronics manufacturers including Nikon, Samsung, LG Phillips, and others. These patent litigations relate to the technology used to manufacture flat panel displays, including LCD televisions, as well as well as semi-conductor chips. The technology at issue was developed by a New York-based manufacturing company, *Anvik Corporation*, which holds the patents at issue. As alleged in the complaints, the technology was subsequently misappropriated by certain companies based overseas. The cases allege that the defendants are manufacturing products sold into the United States using Anvik's patented technology without Anvik's permission. The revenues defendants are generating using Anvik's patented technology, as alleged in the complaints, is in the hundreds of millions, if not billions, of dollars per year. These cases are all pending in the United States District Court for the Southern District of New York.

*Bernstein Litowitz Berger & Grossmann LLP*

Prior to joining the firm, Mr. Johnson was a partner with Latham & Watkins, where he practiced for ten years. While with Latham & Watkins, he represented investment banks, accounting firms, law firms, boards of directors, and both publicly and privately held companies. Mr. Johnson has extensive experience in the areas of securities and professional liability litigation, complex commercial litigation, patent litigation, and international arbitration. He has handled a variety of matters before federal and state courts, as well as arbitration tribunals both in the United States and abroad, including the International Chamber of Commerce, the London Court of International Arbitration, the Netherlands Arbitration Institute, the Permanent Court of Arbitration, the American Arbitration Association, and JAMS/Endispute.

Mr. Johnson graduated from Harvard Law School, *cum laude*, where he was president of the Harvard Law School Forum. He also graduated from the University of Michigan, *with high distinction*, where he was an Angell scholar.

ADMISSIONS: Admitted to bar, 1993, Illinois and District of Columbia. 1998, New York.

**\*\*\*\***

**GERALD H. SILK**'s practice focuses on representing public pension funds and other institutional investors on matters involving federal and state securities laws, accountants' liability and the fiduciary duties of corporate officials. He also advises creditors on their rights with respect to pursuing affirmative claims against officers and directors, as well as professionals both inside and outside the bankruptcy context. Additionally, Mr. Silk is one of the partners who oversee the firm's new matter department, in which he, along with a group of financial analysts and investigators, counsels clients on potential legal claims.  He was the subject of "Picking Winning Securities Cases," a feature article in the June 2005 issue of *Bloomberg Markets* magazine, which detailed his work for the firm in this capacity. He was also named one of America's top 500 "rising stars" in the legal profession and one of 3000 Leading Plaintiffs' Lawyers in America by *Lawdragon* magazine.  Additionally, Mr. Silk was selected for inclusion in the list of 2006 *New York Super Lawyers.*

Most recently, Mr. Silk is one of the partners at the firm responsible for advising institutional shareholder clients on legal matters arising out of the options backdating scandal. He is currently representing several institutional investors in the options backdating case, *In re UnitedHealth Group, Inc. Shareholder Derivative Litigation*, pending in the District of Minnesota. Mr. Silk has appeared frequently in the news as a commentator on option backdating issues, including on *CNBC's Morning Call, The Financial Times*, *The National Law Journal* and the *New York Law Journal.*

He is also currently representing shareholders in New York State Supreme Court against certain officers and directors of *Cablevision Systems Corporation* alleging breaches of fiduciary duties by the controlling shareholders in attempting to take the company private for an unfair price.  Mr. Silk was one of the principal attorneys responsible for prosecuting the *In re Independent Energy Holdings Securities Litigation*, a case against the officers and directors of Independent Energy as well as several investment banking firms which underwrote a $200 million secondary offering of ADRs by the U.K.-based Independent Energy. The Independent Energy litigation was resolved for $48 million. Mr. Silk has also prosecuted and successfully resolved several other securities class actions, which resulted in substantial cash recoveries for investors, including *In re Sykes Enterprises, Inc. Securities Litigation* in the Middle District of Florida, and *In re OM Group, Inc. Securities Litigation* in the Northern District of Ohio. He was also a member of the litigation team responsible for the successful prosecution of *In re Cendant Corporation Securities Litigation* in the District of New Jersey, which was resolved for $3.2 billion.

Mr. Silk received a B.S. in economics from the Wharton School of Business, University of Pennsylvania in 1991, and a J.D., *cum laude*, from Brooklyn Law School in 1995. In 1995-96, Mr. Silk served as a law clerk to the Hon. Steven M. Gold, U.S.M.J., in the United States District Court for the Eastern District of New York. Prior to joining the firm in 1998, Mr. Silk was an associate in the Business and Securities Litigation Department at Weil, Gotshal & Manges LLP, where he was primarily involved in defending securities cases and counseling boards of directors on corporate governance matters.

Mr. Silk lectures to institutional investors at conferences throughout the country, and has written or substantially contributed to several articles on developments in securities and corporate law, including "The Compensation Game," *Lawdragon*, Fall 2006; "Institutional Investors as Lead Plaintiffs: Is There A New And Changing Landscape?", 75 St. John's Law Review 31 (Winter 2001); "The Duty To Supervise, Poser, Broker-Dealer Law and Regulation", 3rd Ed. 2000, Chapter 15; "Derivative Litigation In New York after Marx v. Akers", New York Business Law Journal, Vol. 1, No. 1 (Fall 1997).

ADMISSIONS: Admitted to bar, 1996, New York. 1997, U.S. District Courts for the Southern and Eastern Districts of New York.

*Bernstein Litowitz Berger & Grossmann LLP*

****

**BLAIR A. NICHOLAS** has successfully represented numerous institutional investors in high-profile actions involving federal and state securities laws, accountants' liability, and corporate governance matters. Mr. Nicholas has extensive trial experience, including having served as one of the lead trial counsel in *In re Clarent Corporation Securities Litigation*, a securities fraud class action prosecuted before the Federal District Court for the Northern District of California. After a four week jury trial, in which Mr. Nicholas delivered the closing argument, the jury returned a securities fraud verdict in favor of investors against the former Chief Executive Officer of Clarent.

Mr. Nicholas was one of the principal attorneys responsible for prosecuting the *In re Williams Securities Litigation,* a securities fraud class action that settled shortly before trial for $311 million. Mr. Nicholas has also prosecuted and successfully resolved a number of high-profile securities class actions, including *In re Informix Securities Litigation*, resolved for $142 million; *In re Gemstar Securities Litigation*, resolved for $92.5 million; *In re Legato Systems Securities Litigation*, resolved for $85 million; *In re Network Associates Securities Litigation*, resolved for $70 million; and *In re Finova Group Securities Litigation*, resolved for $42 million.

In 2007, The American Lawyer named him one of its "Fab Fifty Young Litigators"—one of the top 50 litigators in the country, 45 and under, who have "made their marks already and whom [they] expect to see leading the field for years to come." Mr. Nicholas was also honored in the *Daily Journal*'s January 2007 issue, as being among the "Top 20 Under 40" attorneys in California, "rack[ing] up a string of multi-million dollar victories for investors." In 2008, Mr. Nicholas was honored with the selection as one of the *San Diego Super Lawyers* and was named by *Lawdragon* as one of the "Top 100 Securities Litigators You Need to Know."

Mr. Nicholas has presented at institutional investor conferences throughout the United States and has written articles relating the application of the federal and state securities laws, including the articles "Industry-Wide Collapse Defense Falls Flat in Recent Subprime-Related Securities Fraud Decisions," *Securities Litigation & Regulation Reporter* (2008 WL 2605113, Vol. 14, No. 4, July 1, 2008) (co-author); "Auditor Liability: Institutional Investors Pursue Opt-Out Actions To Maximize Recovery of Securities Fraud Losses," *Securities Litigation and Enforcement Institute* (PLI 2007) (co-author); and "Reforming the Reform Act and Restoring Investor Confidence in the Securities Markets," *Securities Reform Act Litigation Reporter* (Vol. 13, No. 4, July 2002).

Mr. Nicholas received a B.A. in Economics from the University of California, Santa Barbara and received his J.D. from the University of San Diego School of Law, where he served as Lead Articles Editor of the San Diego Law Review. He served as Vice President on the Executive Committee of the San Diego Chapter of the Federal Bar Association and is an active member of the Association of Business Trial Lawyers of San Diego, Litigation Section of the State Bar of California, and the San Diego County Bar Association. Mr. Nicholas also served as a member of the Board of Directors of the Child Abuse Prevention Foundation of San Diego. He practices in the firm's California office.

ADMISSIONS: Admitted to bar, 1995, California. 1996, Ninth Circuit Court of Appeals. 1996, U.S. District Courts for the Southern, Central and Northern Districts of California. 1996, U.S. District Court for the District of Arizona.

****

**DAVID R. STICKNEY** practices in the firm's California office, where he focuses on complex litigation in state and federal courts nationwide at both the trial court and appellate levels. Mr. Stickney has prosecuted many class and individual actions and has successfully resolved a number of the firm's prominent cases, including, for example, *In re McKesson Securities Litigation*, which settled before trial for a total of $1.023 billion, the largest settlement amount in history for any securities class action within the Ninth Circuit; *Wyatt v. El Paso Corp.*, which recently settled for $285 million; *BFA Liquidation Trust v. Arthur Andersen LLP*, which settled during trial for $217 million; and *In re EMAC Securities Litigation*, which settled on undisclosed terms before trial.

During 1996-1997, Mr. Stickney served as law clerk to the Honorable Bailey Brown of the United States Court of Appeals for the Sixth Circuit. Mr. Stickney received his J.D. from The University of Cincinnati College of Law in 1996, where he was a Jacob B. Cox Scholar and Lead Articles Editor of *The University of Cincinnati Law Review*. Mr. Stickney received his B.A. from the University of California at Davis in 1993.

*Bernstein Litowitz Berger & Grossmann LLP*

Mr. Stickney lectures on securities litigation and shareholder matters, including for seminars and programs sponsored by the Practicing Law Institute and Glasser Legalworks.  He has also authored and co-authored several articles concerning securities litigation and class actions. His professional affiliations include the Association of Business Trial Lawyers.

ADMISSIONS: Admitted to bar, 1997, California. 1997, U.S. Court of Appeals for the Sixth and Ninth Circuits. 1997, U.S. District Courts for the Northern, Southern and Central Districts of California.

****

**SALVATORE J. GRAZIANO,** an experienced trial attorney, has taken a leading role in a number of major securities fraud class actions including cases against: (i) Raytheon Company and PricewaterhouseCoopers LLP, total recoveries of $460 million; (ii) MicroStrategy, Inc. and PricewaterhouseCoopers LLP, total recoveries valued in excess of $150 million; (iii) i2 Technologies, Inc. and Arthur Andersen LLP, total recovery of $87.75 million; and (iv) Aetna, Inc., total recovery of $82.5 million.

Mr. Graziano has litigated cases resulting in favorable decisions for securities investors nationwide, including the seminal Second Circuit decision of *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000), interpreting the pleading standards of the Private Securities Litigation Reform Act of 1995.

Upon graduation from law school, Mr. Graziano served as an Assistant District Attorney in the Manhattan District Attorney's Office. He has over 10 years of securities fraud civil litigation experience. Mr. Graziano has previously served as a member of the Financial Reporting Committee of the Association of the Bar of the City of New York and as a member of the Securities Regulation Committee of the New York City Bar Association. Mr. Graziano has been a panelist on numerous CLE litigation programs.

Mr. Graziano graduated from New York University College of Arts and Science in 1988, *cum laude*, with a B.A. in psychology, with honors, and thereafter received his J.D., *cum laude*, from New York University School of Law in 1991.

ADMISSIONS: Admitted to bar, 1992, New York. 1995, U.S. District Courts for the Southern and Eastern Districts of New York. 1999, U.S. Court of Appeals for the Second Circuit. 2002, U.S. Court of Appeals for the Eleventh Circuit. 2003, U.S. Court of Appeals for the First Circuit.

****

**WILLIAM C. FREDERICKS** graduated with high honors from Swarthmore College in 1983 with a B.A. in political science, and earned his M.Litt. degree in international relations from Oxford University (England) in 1988. In 1988, he also received his J.D. from Columbia University, where he was a three-time Harlan Fiske Stone Scholar, a Columbia University International fellow, an articles editor of *The Columbia Journal of Transnational Law*, and the recipient of the Beck Prize in property law, the Toppan Prize in advanced constitutional law, and the Greenbaum Prize for written advocacy. A panel chaired by Justice Antonin Scalia also awarded Mr. Fredericks the Gov. Thomas E. Dewey Prize for best oral argument in the final round of the 1988 Harlan Fiske Stone Moot Court Competition. After law school, Mr. Fredericks clerked for the Hon. Robert S. Gawthrop III of the U.S. District Court for the Eastern District of Pennsylvania, and then spent seven years practicing securities and complex commercial litigation as an associate at Simpson Thacher & Bartlett and Willkie Farr & Gallagher before moving to the plaintiffs' side of the bar in 1997.

Mr. Fredericks has represented investors as a lead or co-lead counsel in over two dozen securities class actions, notably *In re Rite Aid Securities Litigation* (E.D. Pa.) (total settlements of $323 million, including the then-second largest securities fraud settlement ever against a big-four accounting firm); *In re Sears Roebuck & Co. Securities Litigation* (N.D. Ill.) ($215 million settlement announced, subject to judicial approval); and *Irvine v. Imclone Systems, Inc.* (S.D.N.Y.) ($75 million settlement). Mr. Fredericks has also successfully represented several institutional clients (including Mexico's TV Azteca and Australia's Australis Media Group) in private commercial disputes at both the trial and appellate level. See, e.g., *National Broadcasting Co. v. Bear Stearns & Co., et al.*, 165 F.3d 184 (2d Cir. 1999); *News Ltd. v. Australis Holdings Pty. Limited*, 728 N.Y.S. 2d 667 (1st Dep't 2001) and 742 N.Y.S. 2d 190 (1st Dep't 2002).

*Bernstein Litowitz Berger & Grossmann LLP*

Mr. Fredericks has been a panelist on a variety of litigation programs sponsored by various organizations, including the Practising Law Institute (PLI) and the American Law Institute/American Bar Association (ALI/ABA). He is a member of the Association of the Bar of the City of New York, and a former chairman of the Association's Committee on Military Affairs and Justice.

Mr. Fredericks is admitted to practice before the courts of New York State, the U.S. District Courts for the Southern and Eastern Districts of New York and the District of Colorado, and the U.S. Courts of Appeals for the Second, Third, Sixth and Tenth Circuits. He has also been admitted *pro hac vice* by, and argued before, the Supreme Court of the State of New Jersey (see *Kaufman v. I-Stat Corp.*, 165 N.J. 94 (2000).)

****

**JEFFREY N. LEIBELL** specializes in prosecuting securities class actions as well as derivative actions involving breaches of fiduciary duty and corporate governance on behalf of the firm's clients.

A Certified Public Accountant, Mr. Leibell served as a Senior Manager in the Audit Department of Deloitte & Touche LLP, where he audited "Fortune 500" and other companies in a variety of industries, prior to attending law school. Since joining the firm in 1996, he has prosecuted a number of the firm's most significant cases, including *In re Cendant Corporation Securities Litigation*, which resulted in a $3.2 billion settlement, and *McCall v. Scott*, the Columbia/HCA Derivative Litigation.

He received his B.S., *cum laude*, in Accounting from Brooklyn College of the City University of New York in 1979, and a J.D. from Columbia University in 1992, where he was the Senior Notes Editor of the *Columbia Business Law Review* and a Harlan Fiske Stone Scholar. Mr. Leibell is the author of "Accountant's Liability in the Savings & Loan Crisis: An Argument in Favor of Affirmative Defenses."

Mr. Leibell is a member of the New York State Society of Certified Public Accountants, the New York State Bar Association and the American Bar Association.

ADMISSIONS: Admitted to bar, 1992, New York. 1993, U. S. District Courts for the Southern and Eastern Districts of New York. 1995, U. S. Court of Appeals, Second Circuit. 1996, U. S. District Court for the Eastern District of Michigan. 1999, U.S. Court of Appeals, Sixth Circuit. 2000, U.S. District Court for the District of Colorado; U.S. Court of Appeals, Third Circuit. 2004, U.S. Court of Appeals, Fourth Circuit.

****

**JOHN C. BROWNE** received his B.A. in Economics, *magna cum laude*, in 1994 from James Madison University and his J.D., *cum laude*, in 1998 from Cornell Law School where he was an Editor of the Cornell Law Review.

Prior to joining the firm, Mr. Browne was an attorney at Latham & Watkins, where he had a wide range of experience in commercial litigation, including defending corporate officers and directors in securities class actions and derivative suits, and representing major corporate clients in state and federal court litigations and arbitrations. Mr. Browne was a member of the team representing the New York State Common Retirement Fund in *In re WorldCom, Inc. Securities Litigation*, which culminated in a five-week trial against Arthur Andersen LLP and a recovery for investors of over $6.15 billion—the second largest securities fraud recovery in history.

Mr. Browne prosecuted *In re King Pharmaceuticals Litigation*, which settled for $38.25 million. In March 2008, Mr. Browne achieved a $28.5 million settlement on behalf of shareholders in *In re SFBC Securities Litigation*. Mr. Browne is currently prosecuting a number of securities and other cases, including *In re Refco Securities Litigation*, in which a partial settlement of $140 million has been achieved, *In re RAIT Financial Trust Securities Litigation*, and *The Football Association Premier League Limited, et al. v. YouTube, Inc., et al.*

Mr. Browne has been a panelist at various continuing legal education programs offered by the American Law Institute ("ALI") and has published several articles relating to securities litigation. Most recently, Mr. Browne co-authored, along with senior partner Max Berger, "Is the Sky Really Falling on the U.S. Capital Markets?," *The NAPPA Report*, Vol. 21, May 2007, available at www.nappa.org.

ADMISSIONS: Admitted to bar, 2000, New York.

*Bernstein Litowitz Berger & Grossmann LLP*

\*\*\*\*

**MARK LEBOVITCH** is primarily responsible for the Firm's corporate transaction litigation practice. Currently, he is prosecuting breach of fiduciary duty claims on behalf of two public pension systems in the *Yahoo!, Inc. Takeover Litigation*. Previously, he helped to obtain for shareholders billions of dollars in additional consideration and significant corporate governance improvements by asserting breach of fiduciary duty claims arising from, among other things, the hostile takeover battles over *Caremark Rx, Inc.* and *CBOT Holdings, Inc.*, the private equity buyout of *Ceridian Corporation*, the acquisition of Commerce Bancorp., and the going private proposal for *Cablevision Systems Corporation*.

Mr. Lebovitch is also a member of the Firm's subprime litigation team, which focuses on vindicating shareholder and consumer rights arising from the mortgage and mortgage-based security debt crisis and he is also a member of the teams prosecuting *In re Suprema Specialties, Inc. Securities Litigation*, and *In re Omnicom Group, Inc. Securities Litigation*.

Mr. Lebovitch received his B.A., *cum laude*, in 1996 from Binghamton University and his J.D., *cum laude,* from New York University School of Law in 1999. Following law school, Mr. Lebovitch clerked for Vice Chancellor Stephen P. Lamb on the Court of Chancery of the State of Delaware, one of the nation's premier courts deciding hostile takeover and corporate transaction-based litigation and claims relating to the valuation of corporate securities. Prior to joining the firm, Mr. Lebovitch was a litigation associate at Skadden, Arps, Slate, Meagher & Flom in New York, where he represented clients in a variety of corporate governance and commercial matters, including several matters went to trial and representing corporate clients in several significant securities fraud cases.

Mr. Lebovitch's publications include "Calling a Duck a Duck: Determining the Validity of Deal Protection Provisions in Merger of Equals Transactions" (*2001 Columbia Business Law Review 1*) and "Practical Refinement" (*The Daily Deal,* January 2002), both of which discussed evolving developments in the law of directors' fiduciary duties. Mr. Lebovitch has spoken publicly on a wide range of corporate governance issues, including at the NYU Journal of Law & Business Symposium on Private Equity and the Credit Crisis, a webcast sponsored by Riskmetrics Group entitled "Subprime Litigation and Liability: What You Need to Know for 2008," and an upcoming PLI panel entitled, "What All Business Lawyers Must Know About Delaware Law Developments 2008."

He is a member of the American Bar Association, its Section on Business Law and Committee on Corporate Governance, and the Association of the Bar of the City of New York.

ADMISSIONS: Admitted to bar, 2000, New York. 2001, U. S. District Courts for the Southern and Eastern Districts of New York.

\*\*\*\*

**HANNAH GREENWALD ROSS** received her B.A, *cum laude*, from Cornell University in 1995 and received her J.D. from the Dickinson School of Law of The Pennsylvania State University, where she was a member of the Woolsack Honor Society, in 1998. While at Dickinson, Ms. Ross was a Comments Editor of the *Dickinson Law Review*. She was also the recipient of the D. Arthur Magaziner Human Services Award, awarded to the senior who has demonstrated good character, sound academic performance, high ethical standards, fidelity to the highest goals of the profession and commitment to selfless human service.

Before joining BLB&G, Ms. Ross was a prosecutor in the Insurance and Unemployment Fraud Division of the Massachusetts Attorney General's office. Prior to that, she was an Assistant District Attorney in the Middlesex County (Massachusetts) District Attorney's office from 1998 to 2000.

Ms. Ross's practice at the firm focuses on securities fraud litigation. Ms. Ross was part of the team that successfully prosecuted the securities class action against the *Federal Home Loan Mortgage Corporation* ("Freddie Mac") resulting in a settlement of $410 million. She was also a member of the team that successfully prosecuted the *In re OM Group, Inc. Securities Litigation* resulting in a settlement of $92.4 million.

Ms. Ross is currently prosecuting a number of other securities cases, including *In re The Mills Corporation Securities Litigation* and *In re Delphi Corporation Securities Litigation*. Ms. Ross is also working on cases relating to stock option backdating.

ADMISSIONS: Admitted to bar, Massachusetts (1998) and New York (2002).

*Bernstein Litowitz Berger & Grossmann LLP*

## OF COUNSEL

**DOUGLAS M. MCKEIGE** received a B.A., *cum laude*, in Economics from Tufts University in 1979 and a J.D., *magna cum laude*, from Tulane University in 1986, where he was Order of the Coif and Articles Editor of the *Tulane Law Review*. A former partner with the Firm, Mr. McKeige now serves as Counsel. He has successfully prosecuted many significant federal securities class actions at the Firm, including *In re 3Com Securities Litigation*, which settled for $259 million, the largest settlement of a securities class action in the Ninth Circuit. A popular speaker and lecturer, he is a member of the National Association of Public Pension Attorneys, the Society of Pension Professionals, the National Association of State Treasurers, the National Council on Teacher Retirement and the National Conference on Public Employee Retirement Systems. Mr. McKeige is a frequent speaker at public pension fund conferences nationwide and has addressed the National Conference on Public Employees Retirement Systems annual meeting four years in a row on the role of institutional investors in securities litigation. For nearly a decade, Mr. McKeige ran the Firm's *Institutional Investor Forum*, an educational symposium conducted yearly for public pension fund managers, trustees and counsel.

ADMISSIONS: Admitted to bar, 1987, New York. 1987, U.S. District Courts, Southern and Eastern Districts of New York.

**ELLIOTT J. WEISS**, one of America's most highly respected experts in securities and corporate law, joined the firm as Counsel in December 2005 after retiring from his post as the Charles E. Ares Professor of Law at the University of Arizona's Rogers College of Law.

Having spent nearly three decades of commitment to the development of young lawyers at several of the country's finest academic institutions, Professor Weiss has enjoyed a remarkable career teaching, writing and lecturing, having strongly influenced and directed public policy regarding our capital markets.

He has authored and co-authored several seminal texts and over 30 influential articles on securities litigation and corporate law throughout his career. Among his many published works, Professor Weiss was the lead co-author of "Let the Money Do the Monitoring: How Institutional Investors Can Reduce Agency Costs in Securities Class Actions" *[104 Yale L.J. 2053 (1995)]*, which proposed new rules governing the organization of securities class actions. Congress based the lead plaintiff provisions of the Private Securities Litigation Reform Act of 1995 on that article and thus changed dramatically the dynamics of the securities class action litigation process. He recently reviewed the impact of those provisions in "The Lead Plaintiff Provisions After a Decade, or 'Look What's Happened to My Baby,'" forthcoming in the *Vanderbilt Law Review*.

Professor Weiss also was the first Executive Director of the Investor Responsibility Research Center, where he did groundbreaking work on institutional investors' responsibility for corporate governance issues, and has served as a member of the National Adjudicatory Council of NASD-Regulation and as a consultant to the United States' Securities and Exchange Commission.

A member, past and present, of numerous esteemed professional associations, including the American Law Institute, Professor Weiss has been a force for positive change in the legal, financial and business communities, and continues his long career defending the rights of investors and demanding responsible behavior from corporate management.

A graduate of Dartmouth College and Yale Law School, Professor Weiss resides in Tucson, Arizona and maintains an office at the Rogers College of Law.

ADMISSIONS: Admitted to bar, 1965, California (inactive). 1966, New York.

**G. ANTHONY GELDERMAN, III** served as Chief of Staff and General Counsel to the Treasurer of the State of Louisiana, (1992-1996) and prior to that served as General Counsel to the Louisiana Department of the Treasury. Mr. Gelderman also coordinated all legislative matters for the State Treasurer during his tenure with the Treasury Department. Earlier in Mr. Gelderman's legal career, he served as law clerk to U.S. District Judge Charles Schwartz, Jr., Eastern District of Louisiana (1986-1987).

Mr. Gelderman is a former adjunct professor of law at the Tulane Law School where he has taught a course in legislative process. He is a member of the Louisiana State (Chairman, Young Lawyers Continuing Legal Education Committee, 1990-1993) and American Bar Associations. In 1995, Mr. Gelderman was profiled by the American Bar Association in *Barrister* magazine as one of the 25 young lawyers in America making a difference in the legal profession.

Mr. Gelderman heads the firm's Louisiana office.

*Bernstein Litowitz Berger & Grossmann LLP*

ADMISSIONS: Admitted to bar, 1986, Louisiana. 1997, U.S. District Courts for the Eastern District and Middle District of Louisiana.

**WALLACE A. SHOWMAN**, Counsel to the Firm, received his B.A. from Queens College in 1985 and his J.D. from New York University School of Law in 1988. He has litigated dozens of successful class actions and derivative cases involving securities, corporate transactions, and consumer protection, including *In re Cendant Securities Litigation* (D. N.J.) and *In re Telxon Corp. Securities Litigation* (D. Ohio). He has also represented plaintiffs in several cases involving alleged fraud in private placement of securities and in NASD and NYSE securities arbitrations.

Mr. Showman is a member of the American Bar Association, the American Association for Justice, New York State Bar Association, New York County Lawyers Association, and the Association of the Bar of the City of New York.

ADMISSIONS: Admitted to bar, 1989, New York. 1989, U.S. District Courts, Southern, Eastern and Northern Districts of New York. 1994, Fifth Circuit Court of Appeals. 1998, United States Supreme Court. 2003, Second Circuit Court of Appeals. 2003, U.S. District Court, District of Colorado. 2005, Tenth Circuit Court of Appeals.

**JONATHAN HARRIS**, Counsel to the firm, received his B.A. from Stanford University in 1984, *Phi Beta Kappa*, and his J.D. from Stanford Law School in 1987, *Order of the Coif*. After law school, he clerked for the Honorable Thomas P. Griesa, United States District Court for the Southern District of New York.

Mr. Harris has over ten years experience litigating civil and criminal cases, and in representing individuals and companies in regulatory and internal investigations. Mr. Harris frequently represents individuals and, among other matters, was co-lead counsel in *O'Meally v. Wachovia Securities and Prudential Securities*, (NASD 2006), resulting in one of the largest monetary judgments ever awarded by an NASD panel to an individual broker. Prior to joining BLB&G in 2007, Mr. Harris was Counsel at Curtis, Mallet-Prevost, Colt & Mosle LLP.

In 2005, Mr. Harris was lead clemency counsel, *pro bono*, for death row inmate and Nobel Prize nominee, Stanley "Tookie" Williams. Mr. Harris is also the author of a novel, *Seizing Amber*, published in 2001 by Sourcebooks Landmark. Mr. Harris has appeared on CNN with Paula Zahn, CBS News and numerous other national and local media programs to discuss cases in which he was counsel. He speaks frequently on the issue of executive clemency, most recently appearing on a panel at Stanford Law School in May 2007.

Mr. Harris is currently a member of the team prosecuting *In re Ceridian Shareholder Litigation*, and currently represents a number of former senior executives in disputes with their prior employers and partners.

ADMISSIONS: Admitted to bar, 1989, New York. District of Columbia, 1991. California, 1993.

**KURT HUNCIKER** received his B.A. from Stanford University and his J.D. from Harvard Law School, where he served as a founding editor of the *Harvard Environmental Law Review*. Mr. Hunciker is a member of Phi Beta Kappa.

Mr. Hunciker's practice is concentrated in complex business and securities litigation. Prior to joining BLB&G, Mr. Hunciker represented clients in a number of class actions and other actions brought under the federal securities laws and the Racketeer Influenced and Corrupt Organizations Act. He has also represented clients in actions brought under intellectual property laws, federal antitrust laws, and the common law governing business relationships.

Mr. Hunciker served as a member of the trial team for the *In re WorldCom, Inc. Securities Litigation* and is currently a member of the teams prosecuting the *In re Biovail Corp. Securities Litigation* and In re Mutual Funds Securities Litigation.

ADMISSIONS: Admitted to bar, 1979, New York, and U.S. District Courts for the Southern and Eastern Districts of New York. 1982, U.S. District Court for the Northern District of New York. 1986, U.S. Court of Appeals for the Fourth Circuit. 1988, U.S. Court of Appeals for the Ninth Circuit. 1989, U.S. Court of Appeals for the Second Circuit.

*Bernstein Litowitz Berger & Grossmann LLP*

**BRUCE W. LEPPLA** has over a decade of experience litigating complex civil matters involving securities and investment fraud on behalf of institutional investors, including public retirement funds and Taft-Hartley funds. As Counsel to the firm, he works closely with the firm's new matter department analyzing securities law issues and advising clients on potential legal claims.

Prior to joining the firm, Mr. Leppla was a partner at Lieff Cabraser Heimann & Bernstein, LLP where he served with others as counsel in a number of securities actions, including *In re Qwest Communications Securities Litigation, In re Brooks Automation Inc. Securities Litigation, In re Broadcom Corporation Derivative Litigation, Alaska State Department of Revenue, et al. v. America Online, Inc., et al.* and other cases. He brings to BLB&G a significant finance and economics background as well as experience as an entrepreneur specializing in banking and technology start-ups. In this connection he is the author or co-author of 11 United States and international patents in technology and commercial product design. Mr. Leppla has also founded and built successful commercial real estate development and management companies both in the United States and Japan.

Mr. Leppla has authored and co-authored a wide variety of publications on developments in securities law, including "Stay in the Class or Opt-Out? Institutional Investors are Increasingly Opting-Out of Securities Class Litigation," and "Selected Waiver: Recent Developments in the Ninth Circuit and California," recently published in the *Securities Litigation Report*. He serves as an Editorial Board Member of *Wall Street Lawyer*.

Mr. Leppla obtained his J.D. from Boalt Hall School of Law at the University of California. Prior to law school, he received his B.A. and M.A. in Economics from Yale University and the University of California at Berkeley, respectively.

Mr. Leppla works out of both the New York and California office, and is currently based in San Francisco.

ADMISSIONS: Admitted to bar, 1976, California, U.S. Court of Appeals for the Ninth Circuit, and the U.S. District Courts for the Northern, Central, and Eastern Districts of California. 1978, New York. 2006, Colorado, as well as other Federal District Courts.


## SENIOR COUNSEL


**ROCHELLE FEDER HANSEN**, Senior Counsel to the firm, received her B.A. from Brooklyn College of the City University of New York in 1966 and her M.S. in 1976. She received her J.D., *magna cum laude*, from Benjamin N. Cardozo School of Law in 1979, where she was a member of the *Law Review*.

Ms. Hansen has handled a number of high profile securities fraud cases at the firm, including *In re StorageTek Securities Litigation*, *In re First Republic Securities Litigation*, and the *RJR Nabisco Litigation*. Ms. Hansen has also acted as Antitrust Program Coordinator for Columbia Law School's Continuing Legal Education Trial Practice Program for Lawyers.

ADMISSIONS: Admitted to bar, 1980, New York. 1980, U.S. District Courts for the Southern and Eastern Districts of New York. 1993, U.S. Court of Appeals, Fifth Circuit.

**BEATA GOCYK-FARBER** is involved in all areas of the firm's litigation practice, with particular emphasis on securities fraud actions, complex commercial litigation, and trial practice. Additionally, she is in charge of the firm's European business development.

Ms. Gocyk-Farber was a senior member of the litigation and trial team that prosecuted *In re WorldCom, Inc. Securities Litigation,* resulting in a recovery for investors of over $6.15 billion—the second largest securities fraud recovery in the history of the financial markets. She was also one of the senior lawyers leading the prosecution of *In re Williams Securities Litigation*, which resulted in $311 million in recoveries for the plaintiffs shortly before trial. This was one of the largest recoveries in a securities class action in which the corporate defendant did not restate its financial results. She is currently a senior member of the team prosecuting *In re HealthSouth Securities Litigation* and *In re Converium Securities Litigation*. Ms. Gocyk-Farber also has extensive experience in prosecuting executive compensation cases and is one of the senior lawyers prosecuting the federal derivative action against the individuals involved in the options backdating scandal at *United Health Group, Inc*.

Ms. Gocyk-Farber received her J.D., *summa cum laude*, from the Benjamin N. Cardozo School of Law in 1997, where she was a member of the *Cardozo Law Review,* the Order of the Coif, a Balkin Scholar and the recipient of the West Publishing Award for Academic Excellence. She authored and published "Patenting Medical Procedures: In Search of a Compromise Between Ethics and Economics" while at Cardozo.

Prior to joining BLB&G in 2001, Ms. Gocyk-Farber was an associate with Cleary Gottlieb Steen & Hamilton in New York, where she represented large financial institutions and sovereign governments in securities and merger and acquisitions transactions.

*Bernstein Litowitz Berger & Grossmann LLP*

Ms. Gocyk-Farber is fluent in Polish and has working knowledge of Russian.  She is a member of the International Law Section of the American Bar Association.

ADMISSIONS: Admitted to bar, 1998, New York. 2002, U.S. District Court for the Southern District of New York.

**TIMOTHY A. DeLANGE** received his B.A. from the University of California, Riverside in 1994 and his J.D. from the University of San Diego School of Law in 1997. He was the 1994 recipient of the American Jurisprudence award in Contracts.

Mr. DeLange focuses on complex litigation in state and federal courts nationwide. Mr. DeLange is a member of the team prosecuting *In re McKesson Securities Litigation*, together with firm partners Max Berger and David Stickney. In that case, a partial settlement was reached for $960 million, the largest recovery for securities class-action settlements in courts within the Ninth Circuit.

Mr. DeLange is currently prosecuting a number of other securities cases, including, along with firm partner Blair Nicholas, *In re Accredo Health, Inc. Securities Litigation*. Mr. DeLange also serves as the editor of the firm's quarterly publication, the Advocate.

Prior to joining the firm, Mr. DeLange practiced complex litigation at Brobeck, Phleger & Harrison LLP. He practices out of the firm's California office.

ADMISSIONS: Admitted to Bar, 1997, California. 1997, U.S. District Court for the Southern District of California. 2001, U.S. District Court for the Central District of California. 2002, U.S. District Courts for the Northern and Eastern Districts of California.

**NIKI L. MENDOZA** joined the San Diego office in 2002. Since joining the firm, Ms. Mendoza has helped obtain hundreds of millions of dollars in recoveries on behalf of defrauded investors, including her involvement in the *In re El Paso Corp. Securities Litigation*, *In re Symbol Technologies Corp. Securities Litigation,* and *In re Gemstar-TV Guide International, Inc. Securities Litigation*, among others.

In 2005, Ms. Mendoza assisted in completing a full jury trial and achieving a rare securities fraud verdict against the company's CEO in *In re Clarent Corporations Securities Litigation*. She also recently conducted extensive fact and expert discovery, full motion practice and completed substantial trial preparation in *In re Electronic Data Systems, Inc. Securities Litigation*, resulting in settlement just prior to trial for $137.5 million – one of the larger settlements in non-restatement cases since the passage of the PSLRA.  Ms. Mendoza is also part of the team prosecuting a race discrimination class action lawsuit filed against Bank of America.

Ms. Mendoza co-authored various articles which have been cited in federal court opinions (including *Dura Pharm., Inc. v. Broudo-The Least of All Evils*, 1505 PLI/Corp. 272, 274 (Sept. 2005) and  *Dura-Bull: Myths of Loss Causation*, 1557 PLI/Corp. 339 (Sept. 2006)). In addition to her practice, she serves as a 2007 Co-Chair of the Steering Committee of the San Diego County Bar Association's Children At Risk committee, a committee that works with schools and children's organizations and coordinates literacy and enrichment programs that rely on attorney volunteers.

Ms. Mendoza received her B.A. and J.D. from the University of Oregon, where she was a member of the Order of the Coif and a Managing Editor of the *Oregon Law Review*, for which she wrote "Rooney v. Kulongoski, Limiting the Principle of Separation of Powers?" She served as judicial law clerk to the Honorable Chief Judge Michael R. Hogan of the United States District Court for the District of Oregon from 1998 to 2001 where she received the Distinguished Service Recognition in September 2001.

Before joining BLB&G, Ms. Mendoza represented both plaintiffs and defendants in commercial and employment litigation, practicing in both Hawaii and California. Ms. Mendoza is a member of the State Bar of Hawaii and the State Bar of California. She practices out of the firm's California Office.

ADMISSIONS: Admitted to bar, Hawaii, 1997. California, 2001. California, 2001. U.S. District Courts for the Districts of Hawaii, and Northern, Southern, Central and Eastern Districts of California, and the U.S. Circuit Courts of Appeal for the Fifth Circuit, Ninth Circuit and Tenth Circuit.

*Bernstein Litowitz Berger & Grossmann LLP*

## ASSOCIATES

**IAN D. BERG's** practice focuses on securities fraud litigation, subprime litigation and derivative claims. Mr. Berg has litigated a number of cases on behalf of public pension funds and shareholders, including *In re Delphi Corp. Securities Litigation* and *In re Tyco International Ltd Securities Litigation,* which recovered over $3 billion for harmed shareholders. In addition, Mr. Berg has extensive experience in implementing and managing electronic discovery initiatives.

Mr. Berg received his B.A. from Northwestern University in 1998 and his J.D from the Northwestern University School of Law in 2001.

He currently practices out of the firm's California office.

ADMISSIONS: Admitted to bar, 2001, Illinois; 2003, Pennsylvania; 2003, U.S. District Court, District of Colorado.

**JERALD BIEN-WILLNER** received his B.A., *cum laude*, from Claremont McKenna College in 1997 where he was Dean's List, a Claremont McKenna Distinguished Scholar, a recipient of the McKenna Scholar four-year merit scholarship and was recognized by the faculty as the outstanding Literature graduate in his class. Mr. Bien-Willner received his J.D. from the University of Arizona College of Law in 2002 where he was a member of the Moot Court Board, National Moot Court Team and awarded Best Oral Advocate, and a Snell and Wilmer Scholar receiving a full academic merit scholarship. Prior to joining the firm, Mr. Bien-Willner was in-house counsel for a real estate holding company where he advised on legal and business matters and prosecuted securities, tort, contract, real estate and insurance bad faith actions.

Mr. Bien-Willner is an active member of the team prosecuting the *Mutual Fund Investment Multi-District Litigation*, which includes the *In re Invesco*, *In re MFS* and *In re Pilgrim Baxter* actions. Mr. Bien-Willner is also a member of the team prosecuting *In re Retek, Inc. Securities Litigation*.

Mr. Bien-Willner is proficient in Spanish.

ADMISSIONS: Admitted to bar, 2003, California, Arizona and the U.S. District Courts for the Southern and Central Districts of California.

**MICHAEL D. BLATCHLEY** received his B.A. from the University of Wisconsin in 2000 and his J.D., *cum laude*, from Brooklyn Law School in 2007. At Brooklyn Law School, Mr. Blatchley was an Edward V. Sparer Public Interest Law Fellow and received numerous awards recognizing his academic achievements, including the William Payson Richardson Memorial Prize and the Richard Elliott Blyn Memorial Prize. He also served as an editor for the Brooklyn Law Review, was a member and coach of the Moot Court Honor Society, and held a judicial internship position for the Honorable David G. Trager, United States District Judge for the Eastern District of New York. In addition, Mr. Blatchley worked as an intern at The Legal Aid Society's Harlem Community Law Office, as well as at Brooklyn Law School's Second Look and Workers' Rights Clinics, and provided legal assistance to victims of Hurricane Katrina in New Orleans, Louisiana.

Mr. Blatchley's practice focuses on securities fraud litigation. He is currently a member of the firm's new matter department in which he, along with a team of attorneys, financial analysts, forensic accountants, and investigators, counsels the firm's clients on their legal claims.

ADMISSIONS: Admitted to bar, 2008, New Jersey.

**JAI K. CHANDRASEKHAR** received his B.A., *summa cum laude*, from Yale University, where he was elected to Phi Beta Kappa, in 1987. He received his J.D. from Yale Law School, where he was a Book Review Editor of the *Yale Law Journal*, in 1997.

Prior to joining the firm, Mr. Chandrasekhar was a Staff Attorney with the Division of Enforcement of the United States Securities and Exchange Commission, where he investigated securities law violations and coordinated investigations involving multiple SEC offices and other government agencies.

Before his tenure at the SEC, he was an Associate at Sullivan & Cromwell LLP, where he represented corporate issuers and underwriters in public and private offerings of stocks, bonds, and complex securities and advised corporations on periodic reporting under the Securities Exchange Act of 1934, compliance with the Sarbanes-Oxley Act of 2002, and other corporate and securities matters.

ADMISSIONS: Admitted to bar, 2001, New York. 2006, U.S. District Courts, Southern and Eastern Districts of New York; U.S. Court of Appeals for the Third Circuit.

*Bernstein Litowitz Berger & Grossmann LLP*

**JOHN M. DIAZ** received his B.S. in Political Science from John Jay College of Criminal Justice, *magna cum laude*, in 1995 and received his J.D., with Honors, in 2002 from New York Law School, where he was an Articles Editor for the *New York Law Review*.

Before earning his law degree, Mr. Diaz served as an Investigator for both the New York State Workers' Compensation Board and the New York State Department of Law, where he investigated Workers' Compensation Law compliance, consumer fraud and claims against the State of New York. His experience also includes representing debtors, creditors and fiduciaries in bankruptcy litigation as an associate at Kaye Scholer. Prior to joining BLB&G, Mr. Diaz served as in-house counsel for a marketing and advertising company, where he advised on legal and business matters.

Mr. Diaz is currently a member of the teams prosecuting the *State Street Bank & Trust Co. ERISA Litigation* and *In re The Mills Corporation Securities Litigation*.

ADMISSIONS: Admitted to bar, 2003, New York. 2004, United States District Court, Eastern District of New York. 2004, United States District Court, Southern District of New York.

**BENJAMIN GALDSTON** primarily focuses on complex securities fraud litigation and corporate governance matters. He practices in the firm's California office. Mr. Galdston participated in prosecuting *In re McKesson Securities Litigation*, together with firm partners Max Berger and David Stickney. In that case, a partial settlement was reached for $960 million, the largest recovery for securities class-action settlements in courts within the Ninth Circuit. Together with firm partners Max Berger, Sean Coffey, and David Stickney, Mr. Galdston recently represented institutional investors seeking to recover damages in *In re EMAC Securities Litigation*, a case that arose from a private offering of asset-backed securities. Among other cases, Mr. Galdston currently represents a certified class of investors in *In re Retek, Inc. Securities Litigation*, now pending in the U.S. District Court for the District of Minnesota and the Lead Plaintiff in *In re Stone Energy Corp. Securities litigation*, now pending in the U.S. District Court for the Western District of Louisiana.

Mr. Galdston received his law degree from the University of San Diego School of Law in 2000, where he earned the American Trial Lawyers' Association Book Award for Outstanding Scholarship in Appellate Advocacy, the American Jurisprudence Award for Property, and the Computer Assisted Learning Institute Award for Excellence in Legal Research. He was also an Executive Board Member of the Appellate Moot Court Board, competed in national Moot Court tournaments, and directed the University of San Diego School of Law National Criminal Procedure Moot Court Tournament. Following law school, Mr. Galdston represented investors in securities fraud actions at another national law firm.

Previously, Mr. Galdston was the sole proprietor of Litigation Support Systems, where he designed, constructed and maintained relational document databases for small law firms litigating document-intensive cases. He served as President of the Greater San Diego Barristers Club and is a member of the California Bar Association and the Federal Bar Association. He has published several articles concerning practice in the federal courts.

ADMISSIONS: Admitted to bar, 2000, California. U.S. District Courts for the Southern, Northern and Central Districts of California.

**PATRICIA S. GILLANE** received her B.A., *cum laude*, from Columbia University in 1985 and her J.D. from Brooklyn Law School in 1989, where she was an editor of the *Brooklyn Law Review*. Ms. Gillane is the author of "One Moment in Time: The Second Circuit Ponders Choreographic Photography as a Copyright Infringement: Horgan vs. MacMillan." She is a member of the American Bar Association and a former member of the Association of the Bar of the City of New York, where she served on the Professional Responsibility Committee.

Together with firm partners Max Berger and Edward Grossmann, Ms. Gillane successfully prosecuted *In re Bennett Funding Group Litigation* which arose out of the largest Ponzi scheme in history. After years of litigation, the matter settled for a total of over $165 million.

Most recently, she was a member of the team representing the New York State Common Retirement Fund in *In re WorldCom, Inc. Securities Litigation*, which culminated in a five-week trial against Arthur Andersen LLP and a recovery for investors of over $6.15 billion—the second largest securities fraud recovery in history.

ADMISSIONS: Admitted to bar, 1990, New York. 1990, U.S. District Courts, Southern and Eastern Districts of New York.

*Bernstein Litowitz Berger & Grossmann LLP*

**LAURA H. GUNDERSHEIM** received her B.A, *magna cum laude,* from the University of California, Los Angeles in 2001, where she was Phi Beta Kappa, and received her J.D. from Harvard Law School in 2004. While at Harvard, Ms. Gundersheim was a founding member and the Vice-President of the Harvard Advocates for Reproductive Choices and an executive committee member of the *Women's Law Journal.* While in law school, she worked at the Lawyers' Committee for Civil Rights, Health Law Advocates, The Hale & Dorr Legal Services Center and the Tenant Advocacy Project.

Since graduating from law school, Ms. Gundersheim's practice has included securities fraud and shareholder derivative litigation on behalf of institutional investor clients, as well as consumer fraud, copyright infringement, and employment discrimination litigation. She was an integral part of the team that prosecuted the landmark *In Re Walt Disney Derivative Litigation* which redefined the fiduciary duties of directors in public companies.

She is currently a member of the teams prosecuting *In re The Mills Corporation Securities Litigation, In re Comverse Technology, Inc. Derivative Litigation*, *In re Sunrise Senior Living Securities Litigation*, *In re Openwave Securities Litigation*, *Fleishman v. Huang et al. Derivative Litigation* and *Breese et al v. CooperSurgical, Inc.*

Ms. Gundersheim is a member of the New York Bar Association's Consumer Affairs Committee and Trial Lawyers for Public Justice.

ADMISSIONS: Admitted to bar, 2005, New York. 2005, U.S. District Courts for the Southern and Eastern Districts of New York.

**DAVID R. HASSEL** received his B.A., *magna cum laude*, in 1995 from St. Olaf College, Northfield, Minnesota in Political Thought, and a J.D. with High Distinction/Special Honors from the University of Iowa in 1999, where he was a member of the *Iowa Law Review* and Associate Editor of the *Journal of Transnational Law & Contemporary Problems*.

Mr. Hassel's practice focuses on securities and complex litigation, as well as corporate governance issues. Together with firm partners Max Berger, Sean Coffey, Steven Singer and Chad Johnson, Mr. Hassel was a member of the team responsible for prosecuting the *In re WorldCom, Inc. Securities Litigation*, which culminated in a five-week trial against Arthur Andersen LLP and a recovery for investors of over $6.15 billion—the second largest securities fraud recovery in history. Currently, Mr. Hassel is a senior associate prosecuting *In re Omnicom Inc. Securities Litigation* and *In re HealthSouth Corp. Securities Litigation*.

Prior to joining the firm, Mr. Hassel was a litigation associate at Dewey Ballantine, LLP in its New York office, representing clients in private securities litigation, informal inquiries from the SEC and SROs and general corporate governance issues as well as general commercial litigation.

ADMISSIONS: Admitted to bar, Massachusetts, 2000. New York, 2002. U.S. District Court, Southern District of New York, 2004.

**AVI JOSEFSON** received his B.A., *cum laude*, from Brandeis University in 1997 and his J.D., *Dean's List*, from Northwestern University in 2000. At Northwestern, Mr. Josefson represented indigent juvenile and adult clients in various courts and was awarded the Justice Stevens Public Interest Fellowship (1999) and the Public Interest Law Initiative Fellowship (2000).

He is a co-author of several articles including "Top 10 Considerations When Seeking Insurance Recovery for E-Commerce and Internet Claims," which he wrote for the ABA, as well as "Political and Currency Risk Insurance" and "It's Not a Small World After All: Meeting the Challenge of Global Risks" which he wrote for the *Manufacturers Alliance Risk Management Councils I & II*.

Mr. Josefson was a member of the team responsible for the successful prosecution of the *Columbia/HCA Healthcare Corporation Derivative Litigation*, arising from the largest healthcare fraud in history.

ADMISSIONS: Admitted to bar, Illinois, 2000.  New York, 2003.

**MATTHEW P. JUBENVILLE** received a B.A. in Molecular, Cellular and Developmental Biology, with distinction, in 2000 from the University of Colorado, where he was a member of Phi Beta Kappa. He received his J.D. from the University of San Diego School of Law in 2003, where he was a member of the *San Diego Law Review*.

Mr. Jubenville's practice focuses on complex securities litigation. He was part of the team that successfully prosecuted *In re Williams Securities Litigation*, which resulted in a $311 million cash settlement against defendants, including $21 million from Ernst & Young LLP. Currently, Mr. Jubenville is a member of the teams prosecuting *In re Accredo Health, Inc. Securities Litigation*, *In re Dura Pharmaceuticals, Inc. Securities Litigation* and *Turnley et al. v. Bank of America, N.A. et al.*

*Bernstein Litowitz Berger & Grossmann LLP*

Mr. Jubenville practices out of the firm's California office.

ADMISSIONS: Admitted to bar, California, 2003. U.S. District Court for the Southern District of California, 2006.

**ERIC T. KANEFSKY** received his B.A. in 1999 from The George Washington University and his J.D., *cum laude*, from Temple University in 2002, where he was the Associate Research Editor of the *Temple Law Review*. While at Temple, Mr. Kanefsky was a James Beasley First Year Scholar and awarded the Temple University Law Foundation Scholarship for the 2000-2001 academic year. He was also selected as one of approximately fifteen students to participate in Temple's Federal Judicial Clerkship program, through which he served as a student law clerk to the Hon. Bruce W. Kauffman, United States District Court Judge for the Eastern District of Pennsylvania, during his third year of law school. While in law school, Mr. Kanefsky also interned for The Honorable James R. Melinson, Chief Magistrate Judge for the Eastern District of Pennsylvania.

After law school, Mr. Kanefsky was a litigation associate in the White Collar and Government Enforcement Group at Ballard Spahr Andrews & Ingersoll LLP in Philadelphia. Since joining BLB&G in 2003, he has worked on numerous high profile securities class actions on behalf of the Firm's institutional clients, including *In re Symbol Technologies Securities Litigation*, which has achieved settlements totaling $163 million, *In re HealthSouth Bondholders Litigation*, which has achieved settlements totaling $445 million, and *In re R&G Financial Corporation Securities Litigation*, which has achieved settlements totaling $51 million. He is currently a member of the litigation team prosecuting *In re Scottish Re Group Securities Litigation*, a securities class action against, among others, Scottish Re Group Limited, which at one time was the country's third-largest reinsurer. Mr. Kanefsky is also a member of the litigation team representing the English Premier Soccer League and Bourne Music Company in a nationally and internationally followed copyright infringement class action against online video-sharing service *YouTube* and its parent Google.

In addition to his work on behalf of the Firm's institutional clients, Mr. Kanefsky represents creditors of distressed and bankrupt companies seeking redress for their losses against prior management, auditors, bankers and other advisors. In this capacity, Mr. Kanefsky has achieved significant recoveries on behalf of the unsecured creditors of *Integrated Health Services Inc.* and Friedman's Jewelers Inc.

Mr. Kanefsky also represents individuals in matters involving employment and compensation disputes with large financial institutions, including investment banks, commercial banks, and hedge funds, among others. He is currently representing fourteen former employees of *Banc of America Securities* ("BAS") arising out of BAS's failure to pay them earned, but not paid, bonus compensation for 2007.

ADMISSIONS: Admitted to bar, 2002, Pennsylvania (voluntarily inactive). 2002, New Jersey. 2005, New York. 2003, U.S. District Court, Eastern District of Pennsylvania. 2003, U.S. District Court, District of New Jersey. 2005, U.S. District Courts, Southern and Eastern Districts of New York.

**TAKEO A. KELLAR** received his B.A., *magna cum laude* and Phi Beta Kappa, from the University of California, Riverside in 1997. He received his J.D. from the University of San Diego School of Law in 2004, where he was an Executive Board Member of the Appellate Moot Court Board.

Mr. Kellar's practice at the firm focuses on securities fraud, corporate governance and shareholder rights litigation. Mr. Kellar was part of the trial team that successfully prosecuted *In re Clarent Corp. Securities Litigation*, which resulted in a jury verdict in favor of plaintiffs and against the founder and former Chief Executive Officer of Clarent. He was also a member of the team that successfully prosecuted *In re Williams Securities Litigation* resulting in a settlement of $311 million shortly before trial.

Based in the firm's California office, Mr. Kellar is currently a member of the teams prosecuting *Atlas v. Accredited Home Lenders Holding Co., et al.*, *In re Connetics, Inc. Securities Litigation*, and *In re New Century Securities Litigation*; as well as the stock options backdating derivative actions, *In re Activision, Inc. Shareholder Derivative Litigation* and *In re Apollo Group, Inc. Shareholder Derivative Litigation*.

ADMISSIONS: Admitted to bar, 2004, California; U.S. District Courts for the Central, Northern and Southern Districts of California.

**PAUL A. KEMNITZER** received his B.A. in Accounting in 1988 from the State University of New York at Plattsburgh, and his J.D., *summa cum laude*, from New York Law School in 2002. During law school, Mr. Kemnitzer served as an Articles Editor for the *New York Law School Law Review*, for which he wrote the article entitled, "The Anti-Competitive Effects of Stranded Costs on the Creation of Municipal Electric Companies."

*Bernstein Litowitz Berger & Grossmann LLP*

Mr. Kemnitzer has extensive legal experience in complex commercial litigation and has also served as a Judicial Law Clerk for the Honorable Carl E. Stewart, Judge for the United States Court of Appeals for the Fifth Circuit. In addition, Mr. Kemnitzer brings over 10 years of experience as a Certified Public Accountant, having worked for several private and public accounting firms prior to earning his law degree. He also served a four-year term as the elected Treasurer and Chief Financial Officer of the City of Glens Falls, New York (1994-1997). Mr. Kemnitzer's practice focuses on securities fraud actions and complex commercial litigation. He is currently a member of the teams prosecuting *In re New Century Securities Litigation* and *In re RAIT Financial Trust Securities Litigation*.

ADMISSIONS: Admitted to bar, New York, 2003. District of Columbia, 2006.

**NOAM MANDEL** received his B.S.F.S. from Georgetown University in 1998 and his J.D., *cum laude*, from Boston University School of Law in 2002 where he served as an Editor for the *Boston University Law Review* and won awards in civil procedure, evidence, and international law. While in law school, he also participated in an exchange program with the University of Leiden, The Netherlands, where he concentrated his studies on international and comparative law.

Mr. Mandel prosecutes securities fraud, corporate governance and shareholder rights litigation for the firm's institutional investor clients. He has been a member of the litigation teams on several of the firm's recent high profile cases including *In re Nortel Networks Corporation Securities Litigation*, which resulted in a recovery worth in excess of $1.3 billion in cash and stock, as well as the securities class action against the *Federal Home Loan Mortgage Corporation* ("Freddie Mac"), in which a $410 million settlement was obtained for defrauded investors. More recently, he was a member of the team that prosecuted the *Caremark Merger Litigation*, a shareholder class action contesting the terms of a proposed merger between Caremark Rx, Inc. and CVS Corporation on behalf of Caremark's shareholders. The litigation resulted in over $3 billion in additional consideration being offered to Caremark shareholders by CVS.

Prior to joining BLB&G, Mr. Mandel was a litigation associate at Simpson Thacher & Bartlett LLP, where his practice focused on securities, shareholder and ERISA fiduciary matters.

ADMISSIONS: Mr. Mandel is admitted to bar of the State of New York and the United States District Court, Southern District of New York.

**LAUREN A. McMILLEN** received her B.A. in History in 1996 from Duke University and her J.D., *cum laude*, in 2000 from the University of Pennsylvania Law School, where she was a Research Editor for the University of Pennsylvania Law Review.

Following law school, Ms. McMillen served as a law clerk for the Honorable Colleen McMahon, District Court Judge for the Southern District of New York.

Prior to joining the firm in 2007, Ms. McMillen was a litigation associate at Heller Ehrman LLP. She has extensive experience in securities litigation and complex commercial litigation, and has defended various corporations and accounting firms in securities class actions and represented individuals in regulatory investigations before the Securities and Exchange Commission.

Ms. McMillen is currently a member of the teams prosecuting *In re New Century Securities Litigation*, *The Football Association Premier League Limited, et. al. v. YouTube, Inc., et al.*, *In re HealthSouth Bondholder Litigation*, and *In re Converium Holding AG Securities Litigation*.

ADMISSIONS: Admitted to bar, New York. 2001, U. S. District Court, Southern District of New York, 2001. U. S. District Court, Eastern District of New York, 2006.

**BRETT M. MIDDLETON** primarily focuses in the areas of securities fraud and auditor liability. He has significant trial experience, having worked with firm partner Blair Nicholas in successfully prosecuting *In re Clarent Corp. Securities Litigation*, which resulted in a jury verdict in favor of plaintiffs and against the founder and former CEO of Clarent Corp.

Mr. Middleton was on the litigation team representing the Arkansas Teacher Retirement System and the Ontario Teachers' Pension Plan Board in *In re Williams Securities Litigation*, which resulted in a $311 million cash settlement against all defendants. The settlement was one of the largest in a securities class action case without a restatement by the defendant company. As part of this action, the team engaged in a massive discovery effort which included taking more than 150 depositions and reviewing in excess of 18 million pages of documents. Mr. Middleton was responsible for the prosecution of the case against Ernst & Young for its 2001 audit of Williams' Energy Marketing & Trading subsidiary and was instrumental in obtaining a settlement from Ernst & Young in the amount of $21 million.

*Bernstein Litowitz Berger & Grossmann LLP*

Most recently, Mr. Middleton assisted firm partners Jerry Silk and Salvatore Graziano in prosecuting a shareholder class action against the directors of *Caremark RX, Inc.* for violations of their fiduciary duties arising from their approval and continued endorsement of a proposed merger with CVS Corporation and their refusal to consider fairly an alternative transaction proposed by Express Scripts, Inc.

Among other matters, Mr. Middleton is currently working with firm partner David Stickney on the *In re Dura Pharmaceuticals, Inc. Securities Litigation* matter. He is also assisting Mr. Stickney in the firm's representation of Amalgamated Bank as lead plaintiff against certain officers and directors of *Activision, Inc.* for their participation in the backdating of stock options. He is also working with Mr. Nicholas in prosecuting the federal derivative action against the individuals involved in the options backdating scandal at *Apollo Group, Inc.* which is the parent company of the University of Phoenix.

Mr. Middleton graduated from the University of California, Los Angeles in 1993 and received his J.D. from the University of San Diego School of Law in 1998. He is an active member of the Federal Bar Association and the Association of Business Trial Lawyers of San Diego. Mr. Middleton practices out of the firm's California office.

ADMISSIONS: Admitted to the State Bar of California, 1998; U.S. District Court for the Central District of California, 1998; U.S. District Court for the Southern District of California, 2002; and U.S. District Court for the Northern District of California, 2005.

**JOHN J. MILLS** received his B.A. from Duke University in 1997, and his J.D. from Brooklyn Law School in 2000, *cum laude*. While in law school, Mr. Mills was a member of The Brooklyn Journal of International Law and a Carswell Merit Scholar recipient.

Mr. Mills' practice concentrates on Class Action Settlements and Settlement Administration. Mr. Mills also has experience representing large financial institutions in corporate finance transactions.

ADMISSIONS: Admitted to bar, New York, 2003. United States District Courts for the Southern and Eastern Districts of New York, 2007.

**MATTHEW MOEHLMAN** received his A.B. in English and American Literature and Language from Harvard College in 1992, where he was an editor of *The Harvard Lampoon* magazine and *The Harvard Crimson* newspaper. He received his J.D. from the University of Virginia School of Law in 2003.

Prior to joining BLB&G, Mr. Moehlman worked as an associate at Strasburger & Price, LLP in Texas, and has experience in commercial litigation.

ADMISSIONS: Admitted to bar, Texas, 2004. New York, 2005.

**JOHN RIZIO-HAMILTON** received his B.A., with honors, from John Hopkins University in 1997, and his J.D., *summa cum laude*, from Brooklyn Law School, where he was Editor-in-Chief of the *Brooklyn Law Review* and first-place winner of the J. Braxton Craven Memorial Constitutional Law Moot Court Competition.

Mr. Rizio-Hamilton has extensive experience in civil and criminal litigation. Prior to joining the firm, he clerked for the Honorable Chester J. Straub of the United States Court of Appeals for the Second Circuit. In that capacity, he worked on cases involving an accountant's duty to correct under the Securities Exchange Act of 1934 and a question of first impression regarding class certification under Federal Rule of Civil Procedure 23(b)(3). Prior to clerking for Judge Straub, Mr. Rizio-Hamilton clerked for the Honorable Sidney H. Stein of the United States District Court for the Southern District of New York.

Mr. Rizio-Hamilton is currently a member of the teams prosecuting *In re Affiliated Computer Services, Inc. Derivative Litigation* and *In re Omnicom Group, Inc. Securities Litigation*.

ADMISSIONS: Admitted to bar, New York, 2005.

**JEREMY P. ROBINSON** received his LL.B. from Queen's University, Faculty of Law in Kingston, Ontario, Canada in 1998, where he graduated within the top 10% of his class and received numerous prizes, including honors in the Niagara International Moot Court Competition. In 2000, Mr. Robinson was awarded a Harold G. Fox scholarship and spent a year in London, England working with barristers and judges of the Middle Temple, Inns of Court. In 2005, he received his Master of Laws degree from Columbia University School of Law, where he was a Harlan Fiske Stone Scholar.

Prior to joining BLB&G, Mr. Robinson worked as a litigation associate at Torys LLP in Toronto, Canada, during which time he co-authored numerous publications, including one of the first books published in Canada regarding new private sector privacy litigation. Mr. Robinson has extensive experience in securities and general commercial litigation.

*Bernstein Litowitz Berger & Grossmann LLP*

Along with firm partners Max Berger, Sean Coffey, Sal Graziano and John Browne, Mr. Robinson is a member of the team prosecuting *In re Refco, Inc. Securities Litigation*, which is currently pending in the Southern District of New York. Mr. Robinson is also a member of the teams responsible for prosecuting *In re Isolagen, Inc. Securities Litigation* and *In re R&G Financial Corporation Securities Litigation*.

ADMISSIONS: Admitted to bar, Ontario, Canada, 2000. New York, 2007.

**MATTHEW P. SIBEN** received his B.A. from the University of California, Santa Barbara, *summa cum laude*, in 1996 and received his J.D. in 2000 from Harvard Law School, *cum laude*, where he was an Executive Editor for the *Harvard Negotiation Law Review* and an Editor of the *Journal of Law and Public Policy*.

Mr. Siben has prosecuted a number of major securities fraud class actions, including *In re Enron*, *In re UnitedHealth Group*, and *In re NYSE Specialists Securities Litigation*. He also has experience prosecuting consumer fraud class actions.

Based in the firm's California office, Mr. Siben is currently a member of the teams prosecuting *Atlas v. Accredited Home Lenders Holding Co., et al.*, *In re Connectics, Inc. Securities Litigation*, *Police & Fire Retirement System of the City of Detroit v. SafeNet, Inc., et al.*, *In re Countrywide Financial Corp. Derivative Shareholder Litigation*, and *In re International Rectifier Corp. Securities Litigation*.

ADMISSIONS: Admitted to bar, 2001, New York. 2001, Massachusetts. 2002, California.

**KATHERINE McCRACKEN SINDERSON** received her B.A., *cum laude*, from Baylor University in 2002 and her J.D., *cum laude*, from Georgetown University in 2006, where she was a Dean's Scholar. While at Georgetown, Ms. Sinderson served as an Articles Editor for *The Georgetown Journal of Gender and the Law*.

Ms. Sinderson's practice focuses on securities fraud and class action litigation. She is currently a member of the teams prosecuting *In re Washington Mutual, Inc. Securities Litigation, Mohammed Al-Beitawi, et.al., v. Fremont General Corporation, et al.*, *In re Bristol-Myers Squibb Co. Securities Litigation; In re Dollar General*, a shareholder class action pending in Tennessee state court, and *In re Comverse Technology, Inc. Derivative Shareholder Litigation*, the stock options backdating case currently pending in the Eastern District of New York.

ADMISSIONS: Admitted to bar, New York, 2007.

**DAVID A. THORPE** received his B.A. from the University of California, Los Angeles in 1999. While at UCLA, Mr. Thorpe was named an Ahmanson Undergraduate Research Scholar by the Center for 17th and 18th Century Studies in connection with the William Andrews Clark Memorial Library. Mr. Thorpe received his J.D. in 2001 from Southwestern University School of Law.

Mr. Thorpe has significant experience prosecuting several major class and individual securities actions on behalf of institutional clients. Some of the notable cases in which he served as lead counsel include *In re AOL Time Warner Individual Opt-Out Litigation* ($600 million recovery), comprising both *The Regents of the University of California et al., v. Parsons, et al.* ($260 million recovery) and *Ohio Public Employees Retirement System, et al., v. Richard D. Parsons, et al.* ($175 million recovery), as well as, *In re Amazon.com, Inc. Securities Litigation* ($27 million recovery).

Mr. Thorpe practices out of the firm's California office and is currently a member of the teams prosecuting the *Tyco International, Ltd. Opt-Out Litigation*, *Countrywide Financial Corporation Shareholder Derivative Litigation*, *CheckFree Corporation Securities Litigation*, as well as the *In re Linear Technology Corp. Shareholder Derivative Litigation*.

ADMISSIONS: Admitted to bar, 2001, California.

**DAVID H. WEBBER** received his B.A. from Columbia University in 1995, *Phi Beta Kappa*, and his J.D. in 2002 from New York University School of Law, where he was a Notes Development Editor for the *New York University Law Review*.

Following law school, Mr. Webber served as a law clerk for the Honorable Harold A. Ackerman, United States Senior District Court Judge for the District of New Jersey.

Prior to joining the firm in 2007, Mr. Webber was a litigation associate at Patterson Belknap Webb and Tyler LLP. He has extensive experience in complex commercial litigation, including bondholder and creditors committee actions, consumer fraud cases, fiduciary duty litigation, and false claims (*Qui Tam*) actions. He has also represented clients in internal investigations and civil litigation including international arbitration, employment discrimination and Fair Labor Standards Act violations. In addition, Mr. Webber has litigated on behalf of domestic violence survivors, and was honored in 2005 with a Pro Bono Award from The Legal Aid Society.

Mr. Webber is currently a member of the teams prosecuting the *In re Refco, Inc. Securities Litigation* and *UnitedHealth Group, Inc. Shareholder Derivative Litigation*.

ADMISSIONS: Admitted to bar, 2002, New Jersey.  2004, New York.  2002, U.S. District Court, District of New Jersey. 2005, United States District Court, Southern District of New York. 2005, United States District Court, Eastern District of New York. 2005, U.S. Court of Appeals for the Third Court.

**ADAM H. WIERZBOWSKI** received his B.A., *magna cum laude*, from Dartmouth College in 2000, and earned his J.D., with honors, from The George Washington University Law School in 2003. While at George Washington Law, Mr. Wierzbowski served as Notes Editor for *The George Washington International Law Review* and was a member of the Moot Court Board.

Mr. Wierzbowski's practice focuses on securities fraud litigation. He is currently a member of the teams prosecuting the *UnitedHealth Group, Inc. Shareholder Derivative Litigation* and the *Mutual Fund Investment Multi-District Litigation*, which includes the actions *In re Invesco*, *In re MFS* and *In re Pilgrim Baxter*.

ADMISSIONS: Admitted to bar, 2004, New York. 2005, U.S. District Courts for the Southern and Eastern Districts of New York.

**JON F. WORM** received his B.S., *cum laude*, in 1997, and his J.D., *magna cum laude*, in 2003, from the University of Notre Dame.  While at Notre Dame Law School, Mr. Worm was awarded the Dean's Fellowship and received the Highest Grades Awards in Federal Income Taxation and Immigration Law in recognition of his outstanding academic achievements.  In addition, he served as a staff member for the *Notre Dame Law Review*, worked as a teaching assistant for the first year legal writing program, and served as Vice President of the American Constitution Society for Law and Policy, a leading progressive legal organization.

Prior to joining BLB&G, Mr. Worm served as a law clerk to the Honorable Marilyn L. Huff, United States District Judge for the Southern District of California.  Prior to that, he served as a law clerk to the Honorable Federico A. Moreno, United States District Judge for the Southern District of Florida.  Mr. Worm also worked as a litigation associate at Mayer, Brown, Rowe & Maw LLP in Chicago where he represented plaintiffs and defendants in civil and criminal cases.

Mr. Worm practices out of the firm's California office and focuses on securities fraud litigation

ADMISSIONS: Admitted to bar, 2003, Illinois. 2007, California.

**Ex. J**

# FIRM PROFILE



**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**
Attorneys at Law

280 King of Prussia Road, Radnor, Pennsylvania 19087 • 610-667-7706 • Fax: 610-667-7056 • info@sbtklaw.com

2125 Oak Grove Road, Suite 120, Walnut Creek, California 94598 • 925-945-0770 • Fax: 925-945-8792 • info@sbtklaw.com

**www.sbtklaw.com**

Schiffrin Barroway Topaz & Kessler, LLP ("SBTK"), a law firm based just outside of Philadelphia, Pennsylvania, specializes in representing shareholders and consumers in complex class action litigation in state and federal courts throughout the United States. Since our inception in 1987, SBTK has recovered billions of dollars on behalf of defrauded shareholders and aggrieved consumers. The firm is led by partners Andrew L. Barroway, Marc A. Topaz, David Kessler, Joseph H. Meltzer, Stuart L. Berman, Katharine M. Ryan, Gregory M. Castaldo, Michael K. Yarnoff, Darren J. Check, Andrew L. Zivitz, Sean M. Handler, John A. Kehoe, Lee D. Rudy, Eric L. Zagar and Edward W. Ciolko and numerous experienced associates and staff.

SBTK's practice is dedicated exclusively to the prosecution of class actions, with unique expertise and skill litigating securities class actions. Now in our 21st year, SBTK has grown into one of the largest and most successful firms in the field. Recognized by courts and our clients for achieving exemplary results, SBTK is one of the largest plaintiffs' law firms in the country with sixty attorneys, a superior support staff and an in-house investigative team. With SBTK's extensive experience prosecuting securities fraud actions, derivative actions and transactional litigation against public companies and their officers and directors, SBTK has emerged as the leading firm in the campaign to eradicate securities fraud and corporate malfeasance. Recognizing SBTK's experience and commitment to corporate governance reform, courts across the country have appointed SBTK as lead or co-lead counsel in approximately 80 cases involving the egregious practice of options backdating. SBTK's depth and breadth of its practice places it in a unique position to track, advise, prosecute and resolve complex securities actions.

In the course of representing various institutional investors from the United States, Canada, Europe, and around the world, including pension funds, mutual fund managers, investment advisors, insurance companies, and hedge funds, SBTK has recovered billions of dollars on behalf of our clients and the classes we represent. SBTK, with the guidance and assistance of our clients serving as lead plaintiff, is especially proud of our ability to create and structure resolutions with financially troubled companies and, when appropriate, to institute corporate governance reforms when serving as lead counsel in shareholder actions.

SBTK is also at the forefront of protecting the rights of employees. The firm's nationally recognized ERISA Litigation Department specializes in breach of fiduciary duty actions brought pursuant to the Employee Retirement Income Security Act of 1974. SBTK has helped pensioners across the country recover hundreds of millions of dollars in retirement savings lost as a result of mismanaged pension assets. Further, SBTK's Wage and Hour Department represents thousands of workers across the country pursuing claims for unpaid wages under the Fair Labor Standards Act and relevant state compensation laws.

SBTK's Competition Group combats violations of federal and state antitrust laws (and deceptive trade practice laws) including price-fixing, bid-rigging, monopolization, resale price maintenance and price discrimination. Due to the expertise and experience of the Group's attorneys in this highly specialized area of the law, SBTK has been appointed by courts to leadership positions in several important antitrust actions filed in state and federal courts throughout the country.

# NOTEWORTHY ACHIEVEMENTS

*During the firm's successful history, SBTK has recovered billions of dollars for defrauded stockholders and consumers. The following are among the firm's notable achievements:*

### *In re Tyco International, Ltd. Sec. Litig.*, No. 02-1335-B (D.N.H. 2002):

SBTK, which served as Co-Lead Counsel in this highly publicized securities fraud class action on behalf of a group of institutional investors, achieved a record $3.2 billion settlement with Tyco International, Ltd. ("Tyco") and their auditor PricewaterhouseCoopers, LLP ("PwC"). The $2.975 billion settlement with Tyco represents the single-largest securities class action recovery from a single corporate defendant in history. In addition, the $225 million settlement with PwC represents the largest payment PwC has ever paid to resolve a securities class action and is the second-largest auditor settlement in securities class action history.

As presiding Judge Paul Barbadoro aptly stated in his Order approving the final settlement, "[i]t is difficult to overstate the complexity of [the litigation]." Judge Barbadoro noted the extraordinary effort required to pursue the litigation towards its successful conclusion, which included the review of more than 82.5 million pages of documents, more than 220 depositions and over seven hundred discovery requests and responses. In addition to the complexity of the litigation, Judge Barbadoro also highlighted the great risk undertaken by Co-Lead Counsel in pursuit of the litigation, which he indicated was greater than in other multi-billion dollar securities cases and "put [Plaintiffs] at the cutting edge of a rapidly changing area of law."

In sum, the Tyco settlement is of historic proportions for the investors who suffered significant financial losses and it has sent a strong message to those who would try to engage in this type of misconduct in the future.

### *In re Tenet Healthcare Corp. Sec. Litig.*, No. CV-02-8462-RSWL (Rx) (C.D. Cal. 2002):

SBTK serves as Co-Lead Counsel in this action. A partial settlement was approved on May 26, 2006. The partial settlement was comprised of three distinct elements, including a substantial monetary commitment by the company in the amount of $215 million, personal contributions by two of the individual defendants totaling $1.5 million and the enactment and/or continuation of numerous changes to the company's corporate governance practices, which have led various institutional rating entities to rank Tenet among the best in the U.S. in regards to corporate governance. The significance of the partial settlement was heightened by Tenet's precarious financial condition. Faced with many financial pressures — including several pending civil actions and federal investigations, with total contingent liabilities in the hundreds of millions of dollars, — counsel was concerned that Tenet would be unable to fund a settlement or satisfy a judgment of any greater amount in the near future. By reaching the partial settlement, SBTK was able to avoid the risks associated with a long and costly litigation battle and provide a significant and immediate benefit to the class. SBTK also obtained a rarity in securities class action litigation — personal financial contributions from individual defendants. Moreover, there still exists the possibility of a significant recovery from Tenet's outside auditor, KPMG LLP as the action continues against them.

### *In re AremisSoft Corp. Sec. Litig.*, C.A. No. 01-CV-2486 (D.N.J. 2002):

SBTK is particularly proud of the results recently achieved before the Honorable Joel A. Pisano in this case. This case was exceedingly complicated, as it involved the embezzlement of hundreds of millions of dollars by former officers of the Company, some of whom are now fugitives. In settling the action, SBTK, as sole Lead Counsel, assisted in reorganizing AremisSoft as a new Company which allowed for it to continue operations, while successfully separating out the securities fraud claims and the bankrupt Company's claims into a litigation trust. Pursuant to the Settlement, the litigation trust has distributed more than 16 million shares of the reorganized Company to members of the class. The Court-appointed co-trustees, Joseph P. LaSala, Esq. and Fred S. Zeidman, retained SBTK to continue prosecuting the actions on behalf of the litigation trust. After extensive litigation in the Isle of Man, including the successful freezing of more than $200 million of stolen funds, the trust settled its action against one of the principal wrongdoers and recovered approximately $200 million. Thus far, the trust has distributed to beneficiaries of the trust more than 28% of their recognized losses (excluding the value of the equity of the new Company), and is poised to recover even more. Recently, the trust commenced further litigation in Cyprus, where it obtained a Mareva injunction and interim ancillary relief against various bank accounts and assets owned and/or controlled by the other principal wrongdoer.

### *In re CVS Corporation Sec. Litig.,* C.A. No. 01-11464 JLT (D.Mass. 2001):

After more than three years of contentious litigation and a series of protracted mediation sessions, SBTK, LLP, serving as Co-Lead Counsel, secured a $110 million recovery for class members in the CVS Sec. Litig. Specifically, the suit alleged that CVS violated accounting practices by delaying discounts on merchandise in an effort to prop up its earnings. In addition, the suit charged that in 2001 the Company and its Chief Executive Officer, Thomas M. Ryan, improperly delayed announcement of its intention to close approximately 200 underperforming stores, and that an industry-wide pharmacist shortage would have a materially negative impact on the Company's performance. Settlement was reached just days prior to the commencement of trial, and shortly after the district court had denied the defendants' motions for summary judgment. This substantial recovery represents the third-largest settlement in a securities class action case in the First Circuit.

### *In re Delphi Corp. Sec. Litig.,* Master File No. 1:05-MD-1725 (E.D. Mich. 2005):

In early 2005, various securities class actions were filed against auto-parts manufacturer Delphi Corporation in the Southern District of New York.  SBTK and its client, Austria-based mutual fund manager Raiffeisen Kapitalanlage-Gesellschaft m.b.H. ("Raiffeisen"), were appointed as Co-Lead Counsel and Co-Lead Plaintiff, respectively. The Lead Plaintiffs alleged that (i) Delphi improperly treated financing transactions involving inventory as sales and disposition of inventory; (ii) improperly treated financing transactions involving "indirect materials" as sales of these materials; and (iii) improperly accounted for payments made to and credits received from General Motors as warranty settlements and obligations. As a result, Delphi's reported revenue, net income and financial results were materially overstated, prompting Delphi to restate its earnings for the five previous years. Complex litigation involving difficult bankruptcy issues has potentially resulted in an excellent recovery for the class, but is awaiting Delphi's exit from bankruptcy before the settlement of cash and stock, valued in the hundreds of millions of dollars, can be finalized. In addition, Co-Lead Plaintiffs have also reached a settlement of claims against Delphi's outside auditor, Deloitte & Touche, LLP, for $38.25 million on behalf of Delphi investors, which is awaiting Court approval.

### *Royal Dutch Shell European Shareholder Litigation:*

SBTK was instrumental in achieving a landmark settlement worth at least $352 million in cash on behalf of non-US investors with Royal Dutch Shell plc relating to Shell's 2004 restatement of oil reserves. This settlement of securities fraud claims on a class-wide basis under Dutch law was the first of its kind, and sought to resolve claims exclusively on behalf of European and other non-United States investors. Uncertainty over whether jurisdiction for non-United States investors existed in a 2004 class action filed in federal court in New Jersey prompted a significant number of prominent European institutional investors from nine countries, representing more than one billion shares of Shell, to actively pursue a potential resolution of their claims outside the United States. Among the European investors which actively sought and supported this settlement were Alecta pensionsförsäkring, ömsesidigt, PKA Pension Funds Administration Ltd., Swedbank Robur Fonder AB, AP7 and AFA Insurance, all of which were represented by SBTK. This settlement is awaiting approval from the Dutch Court.

### *In re The Interpublic Group of Companies Sec. Litig.,* No. 02 Civ. 6527 (S.D.N.Y. 2002):

SBTK served as sole Lead Counsel in this action on behalf of an institutional investor and received final approval of a settlement consisting of $20 million in cash and 6,551,725 shares of IPG common stock. As of the final hearing in the case, the stock had an approximate value of $87 million, resulting in a total settlement value of approximately $107 million. In granting its approval, the Court praised SBTK for acting responsibly and noted the firm's professionalism, competence and contribution to achieving such a favorable result.

### *In re Digital Lightwave, Inc. Sec. Litig.,* Consolidated Case No. 98-152-CIV-T-24E (M.D. Fla. 1999):

The firm served as Co-Lead Counsel in one of the nation's most successful securities class actions in history measured by the percentage of damages recovered. After extensive litigation and negotiations, a settlement consisting primarily of stock was worth over $170 million at the time when it was distributed to the Class. SBTK took on the primary role in negotiating the terms of the equity component, insisting that the class have the right to share in any upward appreciation in the value of the stock after the settlement was reached. This recovery represented an astounding approximately two hundred percent (200%) of class members' losses.

*In re Initial Public Offering Sec. Litig.,* **Master File No. 21 MC 92 (SAS) (S.D.N.Y. Dec. 12, 2002):**

SBTK holds a prominent position as an Executive Committee member in this action. Of the sixty plaintiffs firms which originally filed actions in these coordinated proceedings, SBTK was one of only six firms selected to serve on the Executive Committee. The coordinated actions, which have been filed against 309 separate issuers of publicly traded securities, challenge the legality of the practices which accompany the allocations of shares in initial public offerings. In addition to suing the issuers of such securities, the 309 coordinated actions also name as defendants the primary investment banking firms which underwrote the offerings. This case, which has received a great deal of national and international media attention, is widely considered the largest securities class action litigation in history and has resulted in numerous important rulings by the Court.

*In re Global Crossing, Ltd. ERISA Litigation,* **No. 02 Civ. 7453 (S.D.N.Y. 2004):**

SBTK served as Co-Lead Counsel in this novel, complex and high-profile action which alleged that certain directors and officers of Global Crossing, a former high-flier of the late 1990's tech stock boom, breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") to certain company-provided 401(k) plans and their participants. These breaches arose from the plans' alleged imprudent investment in Global Crossing stock during a time when defendants knew, or should have known, that the company was facing imminent bankruptcy. A settlement of plaintiffs' claims restoring $79 million to the plans and their participants was approved in November 2004. At the time, this represented the largest recovery received in a company stock ERISA class action.

*In re AOL Time Warner ERISA Litigation,* **No. 02-CV-8853 (S.D.N.Y. 2006):**

SBTK, which served as Co-Lead Counsel in this highly-publicized ERISA fiduciary breach class action brought on behalf of the Company's 401(k) plans and their participants, achieved a record $100 million settlement with defendants. The $100 million restorative cash payment to the plans (and, concomitantly, their participants) represents the largest recovery from a single defendant in a breach of fiduciary action relating to mismanagement of plan assets held in the form of employer securities. The action asserted claims for breach of fiduciary duties pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") on behalf of the participants in the AOL Time Warner Savings Plan, the AOL Time Warner Thrift Plan, and the Time Warner Cable Savings Plan (collectively, the "Plans") whose accounts purchased and/or held interests in the AOLTW Stock Fund at any time between January 27, 1999 and July 3, 2003. Named as defendants in the case were Time Warner (and its corporate predecessor, AOL Time Warner), several of the Plans' committees, as well as certain current and former officers and directors of the company. In March 2005, the Court largely denied defendants' motion to dismiss and the parties began the discovery phase of the case. In January 2006, Plaintiffs filed a motion for class certification, while at the same time defendants moved for partial summary judgment. These motions were pending before the Court when the settlement in principle was reached. Notably, an Independent Fiduciary retained by the Plans to review the settlement in accordance with Department of Labor regulations approved the settlement and filed a report with Court noting that the settlement, in addition to being "more than a reasonable recovery" for the Plans, is "one of the largest ERISA employer stock action settlements in history."

*In re Honeywell International ERISA Litigation,* **No. 03-1214 (DRD) (D.N.J. 2004):**

SBTK served as Lead Counsel in a breach of fiduciary duty case under ERISA against Honeywell International, Inc. and certain fiduciaries of Honeywell defined contribution pension plans. The suit alleged that Honeywell and the individual fiduciary defendants, allowed Honeywell's 401(k) plans and their participants to imprudently invest significant assets in company stock, despite that defendants knew, or should have known, that Honeywell's stock was an imprudent investment due to undisclosed, wide-ranging problems stemming from a consummated merger with Allied Signal and a failed merger with General Electric. The settlement of plaintiffs' claims included a $14 million payment to the plans and their affected participants, and significant structural relief affording participants much greater leeway in diversifying their retirement savings portfolios.

*In re Remeron Antitrust Litigation,* **No. 02-CV-2007 (D.N.J. 2004):**

SBTK was Co-Lead Counsel in an action which challenged Organon, Inc.'s filing of certain patents and patent infringement lawsuits as an abuse of the Hatch-Waxman Act, and an effort to unlawfully extend their monopoly in the market for Remeron. Specifically, the lawsuit alleged that defendants violated state and federal antitrust laws in their efforts to keep competing products from entering the market, and sought damages sustained by consumers and third-party payors. After lengthy litigation, including numerous motions and over 50 depositions, the matter settled for $36 million. The settlement is pending final approval by the court.

### *Henry v. Sears, et. al.,* Case No. 98 C 4110 (N.D. Ill. 1999):

The firm served as Co-Lead Counsel for one of the largest consumer class actions in history, consisting of approximately 11 million Sears credit card holders whose interest rates were improperly increased in connection with the transfer of the credit card accounts to a national bank. SBTK successfully negotiated a settlement representing approximately 66% of all class members' damages, thereby providing a total benefit exceeding $156 million. All $156 million was distributed automatically to the Class members, without the filing of a single proof of claim form. In approving the settlement, the District Court stated: ". . . I am pleased to approve the settlement. I think it does the best that could be done under the circumstances on behalf of the class. . . . The litigation was complex in both liability and damages and required both professional skill and standing which class counsel demonstrated in abundance."

### *In re Transkaryotic Therapies, Inc. Sec. Litig.,* Civil Action No.: 03-10165-RWZ (D. Mass. 2003):

After five years of hard-fought, contentious litigation, SBTK as Lead Counsel on behalf of the Class, has entered into one of largest settlements ever against a biotech company with regard to non-approval of one of its drugs by the U.S. Food and Drug Administration ("FDA"). Specifically, the Plaintiffs alleged that Transkaryotic Therapies, Inc. ("TKT") and its CEO, Richard Selden, engaged in a fraudulent scheme to artificially inflate the price of TKT common stock and to deceive Class Members by making misrepresentations and nondisclosures of material facts concerning TKT's prospects for FDA approval of Replagal, TKT's experimental enzyme replacement therapy for Fabry disease. With the assistance of the Honorable Daniel Weinstein, a retired state court judge from California, SBTK secured a $50 million settlement from the Defendants during a complex and arduous mediation. The settlement is awaiting final approval by the Court.

### *In re Assisted Living Concepts, Inc. Sec. Litig.,* Lead Case No. 99-167-AA (D. Or. 1999):

SBTK served as Co-Lead Counsel and was instrumental in obtaining a $30 million recovery for class members from the Company, its executive officers and directors, and several underwriters for their role in an alleged complex accounting fraud involving the use of a purportedly independent joint venture to absorb the Company's start-up losses. Even after this $30 million recovery, through counsel's efforts, an additional $12.5 million was obtained from the auditors providing for a total recovery of $42.5 million.

### *Wanstrath v. Doctor R. Crants, et. al. Shareholders Litigation,* No. 99-1719-111 (Tenn. Chan. Ct., 20th Judicial District, 1999):

SBTK served as Lead Counsel in a derivative action filed against the officers and directors of Prison Realty Trust, Inc., challenging the transfer of assets from the Company to a private entity owned by several of the Company's top insiders. Numerous federal securities class actions were pending against the Company at this time. Through the derivative litigation, the Company's top management was ousted, the composition of the Board of Directors was significantly improved, and important corporate governance provisions were put in place to prevent future abuse. SBTK, in addition to achieving these desirable results, was able to effectuate a global settlement of all pending litigation against the backdrop of an almost certain bankruptcy. The case was resolved in conjunction with the federal securities cases for the payment of approximately $50 million by the Company's insurers and the issuance of over 46 million shares to the class members.

### *In re PNC Financial Services Group, Inc. Sec. Litig.,* Case No. 02-CV-271 (W.D. Pa. 2002):

SBTK served as Co-Lead Counsel in a securities class action case brought against PNC bank, certain of its officers and directors and its outside auditor, Ernst & Young, LLP ("E&Y"), relating to the conduct of defendants in establishing, accounting for and making disclosures concerning three special purpose entities ("SPEs") in the second, third and fourth quarters of PNC's 2001 fiscal year. Plaintiffs alleged that these entities were created by defendants for the sole purpose of allowing PNC to secretly transfer hundreds of millions of dollars worth of non-performing assets from its own books to the books of the SPEs without disclosing the transfers or consolidating the results and then making positive announcements to the public concerning the bank's performance with respect to its non-performing assets. SBTK was instrumental in obtaining a $30 million recovery for class members from PNC and the assignment of certain claims it may have had against its audit and other third party law firms and insurance companies. An additional $6.6 million was recovered from the insurance company and the law firms and an agreement in principle has now been reached with the audit to resolve all claims for another $9.075 million, providing for a total recovery from the Sec. Litig. of $45.675. When coupled with the $156 million restitution fund established through government actions against some of the same defendants and third parties, the total recovery for class members exceeds $200 million, which has now been distributed with PNC paying all costs associated with notifying the Class of the settlement.

### *In re New Power Holdings, Inc. Sec. Litig.,* No. 02 Civ. 1550 (S.D.N.Y. 2002):

SBTK served as Co-Lead Counsel and was instrumental in obtaining a recovery of $41 million in cash for class members against a bankrupt company, certain of its officers and directors and the underwriters of the Company's offering. Claims involved New Power, an offshoot of Enron, that was formed to re-enter the deregulated energy market and pursued an IPO with no viable plan to hedge against volatile energy prices.

### *In re Liberate Technologies Sec. Litig.,* No. C-02-5017 (MJJ) (N.D. Cal. 2005):

Plaintiffs alleged that Liberate engaged in fraudulent revenue recognition practices to artificially inflate the price of its stock, ultimately forcing it to restate its earning. As sole Lead Counsel, SBTK successfully negotiated a $13.8 million settlement, which represents almost 40% of the damages suffered by the class. In approving the settlement, the district court complimented Lead Counsel for its "extremely credible and competent job."

### *In re Sodexho Marriott Shareholders Litigation,* Consol. C.A. No. 18640-NC (Del. Ch. 1999):

SBTK was Class Counsel in this case which was pending in Delaware Chancery Court, in which Class Counsel was partially responsible for creating an aggregate financial benefit of approximately $166 million for members of the class.

### *In re Riverstone Networks, Inc. Sec. Litig.,* Case No. CV-02-3581 (N.D. Cal. 2002):

SBTK served as Lead Counsel on behalf of plaintiffs alleging that Riverstone and certain of its officers and directors sought to create the impression that the Company, despite the industry-wide downturn in the telecom sector, had the ability to prosper and succeed and was actually prospering. In that regard, plaintiffs alleged that defendants issued a series of false and misleading statements concerning the Company's financial condition, sales and prospects, and used inside information to personally profit. After extensive litigation, the parties entered into formal mediation with the Honorable Charles Legge (Ret.). Following five months of extensive mediation, the parties reached a settlement of $18.5 million.

### *In re McLeod USA Inc. Sec. Litig.,* No. C02-0001-MWB (N.D. Iowa 2002):

SBTK served as Co-Lead Counsel on behalf of plaintiffs, alleging that McLeod USA and certain of its officers misrepresented the health and prospects of the company's business. After more than three years of litigation, SBTK helped obtain a settlement of $30 million from the defendants.

### *In re Viacom, Inc. Shareholder Derivative Litig.,* Index No. 602527/05 (New York County, NY 2005):

SBTK represented the Public Employees Retirement System of Mississippi and served as lead counsel in a derivative action alleging that the members of the Board of Directors of Viacom, Inc. paid excessive and unwarranted compensation to Viacom's Executive Chairman and CEO, Sumner M. Redstone, and co-COOs Thomas E. Freston and Leslie Moonves, in breach of their fiduciary duties. Specifically, SBTK alleged that in fiscal year 2004, when Viacom reported a record net loss of $17.46 billion, the board improperly approved compensation payments to Redstone, Freston, and Moonves of approximately $56 million, $52 million, and $52 million, respectively. Judge Ramos of the New York State Supreme Court denied Defendants' motion to dismiss the action as SBTK overcame several complex arguments related to the failure to make a demand on Viacom's Board; Defendants then appealed that decision to the Appellate Division of the Supreme Court of New York. Prior to a decision by the appellate court, a settlement was reached in early 2007. Pursuant to the settlement, Sumner Redstone, the company's Executive Chairman and controlling shareholder, agreed to a new compensation package that, among other things, substantially reduces his annual salary and cash bonus, and ties the majority of his incentive compensation directly to shareholder returns.

### *In re Computer Associates Sec. Litig.,* No. 02-CV-1226 (E.D.N.Y. 2002):

SBTK served as Co-Lead Counsel on behalf of plaintiffs, alleging that Computer Associates and certain of its officers misrepresented the health of the company's business, materially overstated the company's revenues, and engaged in illegal insider selling. After nearly two years of litigation, SBTK helped obtain a settlement of $150 million in cash and stock from the company.

### *Kaltman, et. al. v Key Energy Services, Inc., et. al.,* No. 04-CV-082-RAJ (W.D. Tex. 2004):

SBTK served as sole Lead Counsel on behalf of plaintiffs, alleging that Key Energy, as well as certain of its officers and directors, had made materially false and misleading statements in the company's public filings and press releases relating to its financial results, particularly its net income and fixed asset records. After nearly four years of litigation, SBTK secured a settlement of $15.425 million, which was recently approved by the Court.

### *In re Family Dollar Stores, Inc. Derivative Litig.,* Master File No. 06-CVS-16796 (Mecklenburg County, NC 2006):

SBTK served as Lead Counsel, derivatively on behalf of Family Dollar Stores, Inc., and against certain of Family Dollar's current and former officers and directors. The actions were pending in Mecklenburg County Superior Court, Charlotte, North Carolina, and alleged that certain of the company's officers and directors had improperly backdated stock options to achieve favorable exercise prices in violation of shareholder-approved stock option plans. As a result of these shareholder derivative actions, SBTK was able to achieve substantial relief for Family Dollar and its shareholders. Through SBTK's litigation of this action, Family Dollar agreed to cancel hundreds of thousands of stock options granted to certain current and former officers, resulting in a seven-figure net financial benefit for the company. In addition, Family Dollar has agreed to, among other things: implement internal controls and granting procedures that are designed to ensure that all stock options are properly dated and accounted for; appoint two new independent directors to the board of directors; maintain a board composition of at least 75 percent independent directors; and adopt stringent officer stock-ownership policies to further align the interests of officers with those of Family Dollar shareholders. The settlement was approved by Order of the Court on August 13, 2007.

### *In re Barnes & Noble, Inc. Derivative Litig.,* Index No. 06602389 (New York County, NY 2006):

SBTK served as Lead Counsel, derivatively on behalf of Barnes & Noble, Inc., and against certain of Barnes & Noble's current and former officers and directors. This action was pending in the Supreme Court of New York, and alleged that certain of the company's officers and directors had improperly backdated stock options to achieve favorable exercise prices in violation of shareholder-approved stock option plans. As a result of this shareholder derivative action, SBTK was able to achieve substantial relief for Barnes & Noble and its shareholders. Through SBTK's litigation of this action, Barnes & Noble agreed to re-price approximately $2.64 million unexercised stock options that were alleged improperly granted, and certain defendants agreed to voluntarily repay approximately $1.98 million to the Company for the proceeds they received through exercise of alleged improperly priced stock options. Furthermore, Barnes & Noble has agreed to, among other things: adopt internal controls and granting procedures that are designed to ensure that all stock options are properly dated and accounted for; at least once per calendar year, preset a schedule of dates on which stock options will be granted to new employees or to groups of twenty (20) or more employees; make final determinations regarding stock options at duly-convened committee meetings; and designate one or more specific officer(s) within the Company who will be responsible for, among other things, compliance with the Company's stock option plans. The settlement was approved by Order of the Court on November 14, 2007.

### *In re Sepracor, Inc. Derivative Litig.,* Case No. 06-4057-BLS (Suffolk County, MA 2006):

SBTK served as Lead Counsel, derivatively on behalf of Sepracor, Inc., and against certain of Sepracor's current and former officers and directors. This action was pending in the Superior Court of Suffolk County, Massachusetts, and alleged that certain of the company's officers and directors had improperly backdated stock options to achieve favorable exercise prices in violation of shareholder-approved stock option plans. As a result of this shareholder derivative action, SBTK was able to achieve substantial relief for Sepracor and its shareholders. Through SBTK's litigation of this action, Sepracor agreed to cancel or re-price more than 2.7 million unexercised stock options that were alleged to have been improperly granted. Furthermore, Sepracor has agreed to, among other things: adopt internal controls and granting procedures that are designed to ensure that all stock options are properly dated and accounted for; not alter the exercise prices of stock options without shareholder approval; hire an employee responsible for ensuring that the Company's complies with its stock option plans; and appoint a director of internal auditing. The settlement was approved by Order of the Court on January 4, 2008.

# PARTNERS

**ANDREW L. BARROWAY**, a partner of the firm, received his law degree from the University of Pennsylvania Law School, where he was a member of the ABA Negotiation team. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Mr. Barroway frequently lectures on securities class action and lead plaintiff issues, and recently spoke at the 2005 Institutional Investor Hedge Fund Workshop in New York City and the Public Funds Summit 2005 in Phoenix, Arizona. Mr. Barroway has been actively involved in all aspects of litigation on behalf of the firm and has played pivotal roles in the resolutions of *In re The Interpublic Group of Companies Sec. Litig.,* No. 02 Civ. 6527 (S.D.N.Y. 2002) (settled and approved — settlement value of approximately $107 million); *In re Digital Lightwave, Inc. Sec. Litig.,* Consolidated Case No. 98-152-CIV-T-24E (M.D. Fla. 1999) (settled and approved — settlement value of $170 million); *In re Tyco International, Ltd. Sec. Lit.,* No. 02-1335-B (D.N.H. 2002) (settled and approved — $3.2 billion); and *Kaltman, et al. v Key Energy Services, Inc., et al.,* No. 04-CV-082-RAJ (W.D. Tex. 2004) (settled and approved — $15.425 million). Mr. Barroway also represents numerous public pension funds, private investment funds, money management firms, and individuals in securities fraud litigation in which SBTK has been appointed as Lead or Co-Lead Counsel.

**STUART L. BERMAN**, a partner of the firm, concentrates his practice on securities class action litigation in federal courts throughout the country, with a particular emphasis on representing institutional investors active in litigation. Mr. Berman regularly counsels and educates institutional investors located around the world on emerging legal trends, new case ideas and the rights and obligations of institutional investors as they relate to securities fraud class actions and individual actions.  In this respect, Mr. Berman has been instrumental in courts appointing the firm's institutional clients as lead plaintiffs in class actions as well as in representing institutions individually in direct actions. Mr. Berman is currently representing institutional investors in direct actions against Vivendi and Merck, and took a very active role in the precedent setting Shell settlement on behalf of many of the firm's European institutional clients.

In connection with these responsibilities, Mr. Berman is a frequent speaker on securities issues, especially as they relate to institutional investors, at events such as The European Pension Symposium in Florence, Italy; the Public Funds Symposium in Washington, D.C.; the Pennsylvania Public Employees Retirement (PAPERS) Summit in Harrisburg, Pennsylvania; the New England Pension Summit in Newport, Rhode Island; the Rights and Responsibilities for Institutional Investors in Amsterdam, Netherlands; and the European Investment Roundtable in Barcelona, Spain.

Mr. Berman is an honors graduate from Brandeis University and received his law degree from George Washington University National Law Center.

**GREGORY  M. CASTALDO**, a partner of the firm, received his law degree from Loyola Law School, where he received the American Jurisprudence award in legal writing. He received his undergraduate degree from the Wharton School of Business at the University of Pennsylvania. He is licensed to practice law in Pennsylvania and New Jersey.  Mr. Castaldo has served as SBTK's litigation partner in the following cases in which SBTK is Lead or Co-Lead counsel: *In re Tenet Healthcare Corp.,* No. 02-CV-8462 (C.D. Cal. 2002) (partial settlement approved — $216.5 million, case continuing against auditor); *In re Liberate Technologies Sec. Litig.,* No. C-02-5017 (MJJ) (N.D. Cal. 2005) (settled and approved — $13.8 million); *In re Sodexho Marriott Shareholders Litig.,* Consol. C.A. No. 18640-NC (Del. Ch. 1999) (settled and approved — $166 million benefit); *In re Motive, Inc. Sec. Litig.,* 05-CV-923 (W.D.Tex. 2005) (partial settlement pending — $7 million cash, 2.5 million shares, case continuing against auditor); and *In re Wireless Facilities, Inc., Sec. Litig.,* 04-CV-1589 (S.D. Cal. 2004) (settlement pending — $16.5 million).

**DARREN J. CHECK**, a partner of the firm, concentrates his practice in the area of securities litigation and institutional investor relations. He is a graduate of Franklin & Marshall College where he received a degree in History, with honors. Mr. Check received his law degree from Temple University School of Law and is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey, and the United States District Court for the District of Colorado. Mr. Check began his career at SBTK by working extensively with Mr. Kessler in *In re Initial Public Offering Sec. Litig.,* No. 21 MC 92 (SAS) (S.D.N.Y. Dec. 12, 2002).

Currently, Mr. Check concentrates his time as the firm's Director of Institutional Relations and heads up the firm's business development and portfolio monitoring departments. He consults with institutional investors from around the world regarding their rights and responsibilities with respect to their investments and purchases and taking an active role in shareholder and consumer litigation. Mr. Check assists clients in evaluating what systems they have in place to identify and monitor shareholder and consumer litigation that has an affect on their funds, and also assists them in evaluating the strength of such cases and to what extent they may

be affected by the conduct that has been alleged. He currently works with clients in the U.S., Canada, United Kingdom, France, Italy, Sweden, Denmark, Finland, Norway, Germany, Austria, Switzerland, and the Netherlands.

Mr. Check regularly speaks on the subject of shareholder litigation, corporate governance, investor activism, and recovery of investment losses. Mr. Check has spoken at or participated in panel sessions at conferences around the world, including the MultiPensions 2005 Conference in Amsterdam, Netherlands; the European Pension Symposium in Florence, Italy; the Public Funds Summit in Phoenix, Arizona; the European Investment Roundtable in Barcelona, Spain; The Rights & Responsibilities Of Institutional Investors in Amsterdam, Netherlands; the Corporate Governance & Responsible Investment Summit, Stockholm, Sweden; Pension Fund Investment World — Germany in Frankfurt, Germany, and Australian Investment Management Summit in Melbourne, Australia.

Mr. Check has also been actively involved in the precedent setting Shell settlement, as well as the direct action litigation against Vivendi and Merck.

**EDWARD W. CIOLKO**, a partner of the firm, received his law degree from Georgetown University Law Center, and an MBA from the Yale School of Management. He is licensed to practice law in the State of New Jersey, and has been admitted to practice before the United States District Court for the District of New Jersey and the United States Courts of Appeals for the 1st Circuit, 9th Circuit and 11th Circuit. Mr. Ciolko concentrates his practice in the areas of ERISA, Antitrust, RESPA and Consumer Protection.

Mr. Ciolko is counsel in several pending nationwide ERISA breach of fiduciary duty class actions, brought on behalf of retirement plans and their participants alleging, inter alia, imprudent investment of plan assets which caused significant losses to the retirement savings of tens of thousands of workers. These cases include *In re Beazer Homes USA, Inc. ERISA Litig.*, 07-CV-00952-RWS (N.D. Ga. 2007); *Nowak v. Ford Motor Co.*, 240 F.R.D. 355 (E.D. Mich. 2006); *Gee v. UnumProvident Corp.*, 03-1552 (E.D. Tenn. 2003); *Pettit v. JDS Uniphase Corp. et al.*, C.A. No. 03-4743 (N.D. Ca. 2003); *Hargrave v. TXU, et al.*, C.A. No. 02-2573 (N.D. Tex. 2002); *Evans v. Akers*, C.A. No. 04-11380 (D. Mass. 2004); *Lewis v. El Paso Corp.* No. 02-CV-4860 (S.D. Tex. 2002); and *In re Schering-Plough Corp. ERISA Litig.* No. 03-CV-1204 (D.N.J. 2003).

Mr. Ciolko's efforts have also helped achieve a number of large recoveries for affected retirement plan participants: *In re Sears, Roebuck & Co. ERISA Litig.*, C.A. No. 02-8324 (N.D. Ill. 2002)(settled and approved — $14.5 million recovery); and *In re Honeywell Intern'l ERISA Litig.*, No. 03-CV-1214 (DRD) (D.N.J. 2003) (settled and approved — $14 million recovery, as well as significant structural relief regarding the plan's administration and investment of its assets).

Mr. Ciolko has also concentrated part of his practice to the investigation and prosecution of pharmaceutical antitrust actions, medical device litigation, and related anticompetitive and unfair business practices including *In re Wellbutrin SR Antitrust Litigation,* 04-CV-5898 (E.D. Pa. Dec. 17, 2004); *In re Remeron End-Payor Antitrust Litigation,* Master File No. 02-CV-2007 (D.N.J. Apr. 25, 2002); *In re Modafinil Antitrust Litigation,* 06-2020 (E.D. Pa. May 12, 2006); *In re Medtronic, Inc. Implantable Defibrillator Litigation,* 05-CV-2700 (D. Minn. 2005); and *In re Guidant Corp. Implantable Defibrillator Litigation,* 05-CV-2883 (D. Minn. 2005).

Before coming to SBTK, Mr. Ciolko worked for two and one-half years as a Law Clerk and Attorney Advisor to Commissioner Sheila F. Anthony of the Federal Trade Commission ("FTC"). While at the FTC, Mr. Ciolko reviewed commission actions/ investigations and counseled the Commissioner on a wide range of antitrust and consumer protection topics including, in pertinent part: the confluence of antitrust and intellectual property law; research and production of "Generic Drug Entry Prior to Patent Expiration: An FTC Study," and an administrative complaint against, among others, Schering-Plough Corporation regarding allegedly unlawful settlements of patent litigation which delayed entry of a generic alternative to a profitable potassium supplement (K-Dur).

**SEAN M. HANDLER**, a partner of the firm, received his Bachelor of Arts degree from Colby College, graduating with distinction in American Studies. Mr. Handler then earned his Juris Doctor, cum laude, from Temple University School of Law.

After law school, Mr. Handler practiced labor law at Reed Smith, LLP in Philadelphia. Since joining SBTK, Mr. Handler has concentrated his practice in the area of securities litigation, with a particular emphasis on litigation strategy and lead plaintiff litigation. In this role, Mr. Handler has been responsible for numerous reported decisions.

In addition to these responsibilities, Mr. Handler also spends considerable time litigating ongoing securities litigation matters on behalf of institutional clients including *In re Delphi Corporation Sec. Litig.,* No. 06-10026 (GER) (E.D. MI. 2006); *Smajlaj v. Brocade Communications Systems, Inc., et al.,* No. 05-cv-02042 (CRB) (N.D. Cal. 2005); and *State of New Jersey and Its Division of Investment v. Sprint Corporation, et al.,* No. 03-2071-JWL (D. Kan. 2003).

**JOHN A. KEHOE**, a partner of the firm, received his B.A. from DePaul University and M.P.A., with high honors, from the University of Vermont. He earned his J.D., magna cum laude, from Syracuse University College of Law, where he was Associate Editor of the *Syracuse Law Review*, Associate Member of the Moot Court Board, and Alternate Member on the National Appellate Team.

Mr. Kehoe has litigated many high profile securities and antitrust actions in state and federal courts, including *Ohio Public Employees Retirement System et al. v. Freddie Mac et al.*, 03-CV-4261 (S.D.N.Y.) (resulting in a $410 million combined class and derivative settlement); *In re Bristol-Myers Squibb Sec. Litig.*, 02-CV-2251 (S.D.N.Y.) (resulting in a $300 million class settlement); *In re Adelphia Communications Corp. Sec. & Der. Litig.*, No. 03 MD 1529 (S.D.N.Y.) (resulting in a $460 million class settlement); and *In re Vitamins Antitrust Litig.*, MDL No. 1285 (D.D.C.) (resulting in more than $2 billion in federal and state class and direct action settlements). Mr. Kehoe is currently among the lead trial attorneys representing individual and institutional investors in 309 separate class actions that have been consolidated for pretrial purposes in *In re Initial Public Offering Sec. Litig.*, No. 21 MC 92 (S.D.N.Y.).

Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Kehoe spent six years as a litigation associate with Clifford Chance LLP, where he represented Fortune 100 corporations and their officers and directors in complex commercial litigation and criminal or civil actions brought by the Department of Justice, the Securities and Exchange Commission, and the Federal Trade Commission. From 1986 to 1994, he served as a police officer in the State of Vermont, where he was a member of the Special Reaction Team and Major Accident Investigation Team.

Mr. Kehoe is currently admitted to practice before the courts of New York State, the U.S. District Court for the Southern District of New York, the Court of Appeals for the Second Circuit, and the Court of Appeals for the Eleventh Circuit.

**DAVID KESSLER**, the managing partner of the firm, graduated with distinction from the Emory School of Law. He is licensed to practice in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Prior to practicing law, Mr. Kessler was a Certified Public Accountant in Pennsylvania. In addition, Mr. Kessler often lectures on securities litigation related topics. Mr. Kessler also manages the firm's nationally recognized securities department and in this capacity, has achieved or assisted in obtaining Court approval for the following outstanding results in federal securities and consumer class action cases: *In re Tyco International, Ltd. Sec. Lit.*, No. 02-1335-B (D.N.H. 2002) (settled and approved — $3.2 billion); *In re PNC Financial Services Group, Inc. Sec. Litig.*, Case No. 02-CV-271 (W.D. Pa. 2002) (settled and approved — $45.675 million); *Henry v. Sears, et al.*, Case No. 98 C 4110 (N.D. Ill. 1999) (settled and approved — $156 million); *In re Assisted Living Concepts, Inc. Sec. Litig.*, Lead Case No. 99-167-AA (D. Or. 1999) (settled and approved — $42.5 million); *In re Tenet Healthcare Corp. Sec. Litig.*, No. CV-02-8462-RSWL (Rx) (C.D. Cal. 2002) (partial settlement approved — $216.5 million, settlement pending with auditor — $65 million). Mr. Kessler is also currently serving as the firm's primary litigation partner in what is widely recognized as the largest securities class action case in history in *In re Initial Public Offering Sec. Litig.*, Master File No. 21 MC 92 (SAS) (S.D.N.Y. Dec. 12, 2002).

**JOSEPH H. MELTZER**, a partner of the firm and a member of SBTK's Management Committee, concentrates his practice in the areas of ERISA and Antitrust complex litigation.

Mr. Meltzer leads the firm's ERISA Litigation Department, which has excelled in the highly specialized area of prosecuting claims on behalf of participants in 401(k) and other retirement savings plans. Mr. Meltzer is lead counsel in numerous nationwide class actions brought under ERISA, including *Lewis v. El Paso Corp.*, 02-CV-4860 (S.D. Tex. Dec. 19, 2002); *In re Loral Space ERISA Litig.*, 03-CV-9729 (S.D.N.Y. Dec. 8, 2003) and *In re Schering-Plough Corp. ERISA Litig.*, 03-CV-1204 (D.N.J. Mar. 18, 2003). Since founding the ERISA Litigation Department, Mr. Meltzer has recovered well over $250 million for retirement plan participants, including in *In re AOL Time Warner ERISA Litig.*, C.A. No. 02-8853 (S.D.N.Y. 2002) (settled and approved — $100 million) and *In re Global Crossing Ltd. ERISA Litig.*, No. 02-7453 (S.D.N.Y. 2002) (settled and approved — $79 million). A frequent lecturer on ERISA litigation and employee benefits issues, Mr. Meltzer is a member of the ABA's Section Committee on Employee Benefits and has been recognized by numerous courts for his ability and expertise in this complex area of the law.

Mr. Meltzer also manages the firm's Antitrust and Pharmaceutical Pricing practice groups. Here, Mr. Meltzer focuses on helping clients that have been injured by anticompetitive and unlawful business practices, including with respect to overcharges related to prescription drug and other health care expenditures. Mr. Meltzer serves as lead counsel in numerous nationwide actions representing such clients as the Pennsylvania Turnpike Commission, the Southeastern Pennsylvania Transportation Authority (SEPTA) and the Sidney Hillman Health Center of Rochester. Mr. Meltzer also serves as special assistant attorney general for the state of Montana. Examples of his success in these areas include *In re Remeron Antitrust Litig.*, 02-CV-2007 (D.N.J.) (settled and approved — $36 million) and *In re Augmentin Antitrust Litig.*, 02-442 (E.D. Va.) (settled and approved — $29 million). Mr. Meltzer lectures on issues related to antitrust litigation and is a member of the ABA's Section Committee on Antitrust Law.

Mr. Meltzer is an honors graduate of the University of Maryland and received his law degree with honors from Temple University School of Law. Honors include being named a Pennsylvania Super Lawyer in 2008.

**LEE D. RUDY**, a partner of the firm, concentrates his practice in the areas of mergers & acquisition litigation and shareholder derivative actions. Most recently, Mr. Rudy has served as lead counsel in numerous high-profile derivative actions relating to the "backdating" of stock options, including *In re Monster Worldwide, Inc. Derivative Litigation*, Index No. 06-108700 (New York County, NY); *In re Barnes & Noble, Inc. Derivative Litig.*, Index No. 06-602389 (New York County, NY); *In re Affiliated Computer Services, Inc. Derivative Litig.*, Cause No. 06-3403 (Dallas County, TX); *In re Sepracor, Inc. Derivative Litig.*, Case No. 06-4057-BLS (Suffolk County, MA); and *In re Family Dollar Stores, Inc. Derivative Litig.*, Master File No. 06-CVS-16796 (Mecklenburg County, NC).

Settlements of these, and similar, actions have resulted in significant monetary and corporate governance improvements for those companies and their public shareholders.

Mr. Rudy has also served as lead counsel on behalf of shareholders of companies challenging mergers and other going-private transactions, including *In re William Lyon Homes Shareholder Litigation*, Consol. CA No. 2015-N (DE Ch. 2006) ($35 million class benefit); and *In re Insight Communications Company, Inc. Shareholders Litigation*, Consol. CA No. 1154-N (DE Ch. 2005) ($53.5 million class benefit).

Mr. Rudy has significant courtroom experience, both in trial and appellate courts across the country. Prior to civil practice, Mr. Rudy served for several years as an Assistant District Attorney in the Manhattan (NY) District Attorney's Office, and as an Assistant United States Attorney in the US Attorney's Office (DNJ). He has tried dozens of cases before juries in state and federal court, including several major fraud cases. He received his law degree from Fordham University, and his undergraduate degree, cum laude, from the University of Pennsylvania.

**KATHARINE M. RYAN**, a partner of the firm, graduated cum laude from Villanova University School of Law in May 1984. Ms. Ryan is admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the Court of Appeals for the Third Circuit and the United States Supreme Court. Ms. Ryan recently participated as a speaker in a legal teleconference entitled "Is the PSLRA's Safe Harbor Provision Safe?" In addition to actively litigating and assisting in achieving the historic Tyco settlement, Ms. Ryan has also served as the litigating partner for SBTK in the following settled cases in which SBTK has served as Lead or Co-Lead Counsel: *In re The Interpublic Group of Companies Sec. Litig., N*o. 02 Civ. 6527 (S.D.N.Y. 2002) (settled and approved — settlement value of approximately $107 million); *In re New Power Holdings, Inc. Sec. Litig.,* No. 02 Civ. 1550 (S.D.N.Y. 2002) (settled and approved — $41.5 million); *In re Cornerstone Propane Partners LP Sec. Litig.*, 03-CV-2522 (N.D. Cal. 2003) (settled and approved — $13.5 million); *In re El Paso Electric Company Sec. Litig.*, 03-CV-4 (W.D. Tex. 2003) (settled and approved — $10 million); *Kaltman, et al. v Key Energy Services, Inc., et al.*, 04-CV-82 (W.D. Tex.) (settled and approved — $15.425 million); *In re Solectron Corporation Sec. Litig.*, 03-CV-986 (N.D. Cal. 2003) (settled and approved — $15 million); *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 02-CV-8334 (S.D.N.Y. 2002) (settled and approved — $5.95 million); and *Tanne v Autobytel, Inc., et al.* , No. CV04-8987 MMM (JWJx) (C.D. Cal. 2004) (settled and approved — $6 million).

**MARC A. TOPAZ**, a partner of the firm, received his law degree from Temple University School of Law, where he was an editor of the *Temple Law Review* and a member of the Moot Court Honor Society. He also received his Master of Law (L.L.M.) in taxation from the New York University School of Law, where he served as an editor of the *New York University Tax Law Review*. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Mr. Topaz oversees the firm's derivative, transactional and case development departments. In this regard, Mr. Topaz has been heavily involved in all of the firm's cases related to the subprime mortgage crisis, including cases seeking recovery on behalf of shareholders in companies affected by the subprime crisis, as well as cases seeking recovery for 401K plan participants that have suffered losses in their retirement plans. Mr. Topaz has also played an instrumental role in the firm's option backdating litigation. These cases which are pled mainly as derivative claims or as securities law violations, have served as an important vehicle both for re-pricing erroneously issued options and providing for meaningful corporate governance changes. In his capacity as the firm's department leader of case initiation and development, Mr. Topaz has been involved in many of the firm's most prominent cases, including *In re Initial Public Offering Sec. Litig.,* Master File No. 21 MC 92 (SAS) (S.D.N.Y. Dec. 12, 2002); *Wanstrath v. Doctor R. Crants, et al.*, No. 99-1719-111 (Tenn. Chan. Ct., 20th Judicial District, 1999); *In re Tyco International, Ltd. Sec. Lit.*, No. 02-1335-B (D.N.H. 2002) (settled and approved — $3.2 billion); and virtually all of the 80 options backdating cases in which the firm is serving as Lead or Co-Lead Counsel. Mr. Topaz has played an important role in the firm's focus on remedying breaches of fiduciary duties by corporate officers and directors and improving corporate governance practices of corporate defendants.

**MICHAEL K. YARNOFF**, a partner of the firm, received his law degree from Widener University School of Law. Mr. Yarnoff is licensed to practice law in Pennsylvania, New Jersey, and Delaware and has been admitted to practice before the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey. In addition to actively litigating and assisting in achieving the historic Tyco settlement, Mr. Yarnoff served as the primary litigating partner on behalf of SBTK in the following cases: *In re CVS Corporation Sec. Litig.*, C.A. No. 01-11464 JLT (D.Mass. 2001) (settled and approved — $110 million); *In re Transkaryotic Therapies, Inc. Sec. Litig.*, Civil Action No. 03-10165-RWZ (D.Mass. 2003) (settled and approved — $50 million); *In re Riverstone Networks, Inc. Sec. Litig.*, Case No. CV-02-3581 (N.D. Cal. 2002) (settled and approved — $18.5 million); *In re Zale Corporation Sec. Litig.*, 06-CV-1470 (N.D. Tex. 2006) (settled and approved — $5.9 million); *Gebhard v. ConAgra Foods Inc., et al.*, 04-CV-427 (D. Neb. 2004) (settled and approved — $14 million); *Reynolds v. Repsol YPF, S.A., et al.*, 06-CV-733 (S.D.N.Y. 2006) (settled and approved — $8 million); and *In re InfoSpace, Inc. Sec. Litig.*, 01-CV-913 (W.D. Wash. 2001) (settled and approved — $34.3 million).

**ERIC L. ZAGAR**, a partner of the firm, received his law degree from the University of Michigan Law School, cum laude, where he was an Associate Editor of the *Michigan Law Review*. He has practiced law in Pennsylvania since 1995, and previously served as a law clerk to Justice Sandra Schultz Newman of the Pennsylvania Supreme Court. He is admitted to practice in Pennsylvania, California, and New York.

In addition to his extensive options backdating practice, Mr. Zagar concentrates his practice in the area of shareholder derivative litigation. In this capacity, Mr. Zagar has served as Lead or Co-Lead counsel in numerous derivative actions in courts throughout the nation, including *David v. Wolfen*, Case No. 01-CC-03930 (Orange County, CA 2001) (Broadcom Corp. Derivative Action); and *In re Viacom, Inc. Shareholder Derivative Litig.*, Index No. 602527/05 (New York County, NY 2005). Mr. Zagar has successfully achieved significant monetary and corporate governance relief for the benefit of shareholders, and has extensive experience litigating matters involving Special Litigation Committees. Mr. Zagar is also a featured speaker at SBTK's annual symposium on corporate governance.

**ANDREW L. ZIVITZ**, a partner of the firm, received his law degree from Duke University School of Law, and received a Bachelor of Arts degree, with distinction, from the University of Michigan, Ann Arbor. Prior to joining SBTK, Mr. Zivitz practiced with the Philadelphia law firms of Klehr, Harrison, Harvey, Branzburg & Ellers, LLP and Drinker Biddle & Reath, LLP, where he litigated complex commercial and environmental matters.

Mr. Zivitz is admitted to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Mr. Zivitz concentrates his practice in the area of securities litigation. In this respect, Mr. Zivitz has served as one of the litigating partners on the following settled matters in which SBTK was Lead or Co-Lead Counsel: *In re Tenet Healthcare Corp.*, 02-CV-8462 (C.D. Cal. 2002) (settlement against corporate defendants approved — $216.5; settlement against auditor pending approval — $65 million); *In re Computer Associates Sec. Litig.*, No. 02-CV-1226 (E.D.N.Y. 2002) (settled and approved — $150 million settlement value); *In re McLeod USA Inc. Sec. Litig.*, No. C02-0001-MWB (N.D. Iowa 2002) (settled and approved — $30 million); *In re Friedman's, Inc. Sec. Litig.*, 03-CV-3475 (N.D. Ga. 2003) (partial settlements pending — $14.95 million*); In re Check Point Technologies Ltd. Sec. Litig.*, 03-CV-6594 (S.D.N.Y. 2003) (settled and approved — $13 million); *In re Avista Corporation Sec. Litig.*, 03-CV-328 (E.D. Wash. 2003) (settled and approved — $9.5 million)*; In re Luigand Pharmaceuticals, Inc. Sec. Litig.*, 3:04 cv 01620 (S.D. Cal. 2004) (settled and approved — $8 million).

# ASSOCIATES AND OTHER PROFESSIONALS

**JULES D. ALBERT**, an associate of the firm, received his J.D. in 2005 from the University of Pennsylvania Law School, where he was a Senior Editor of the *University of Pennsylvania Journal of Labor and Employment Law* and recipient of the James Wilson Fellowship. Mr. Albert also received a Certificate of Study in Business and Public Policy from The Wharton School at the University of Pennsylvania. Mr. Albert graduated magna cum laude with a Bachelor of Arts in Political Science from Emory University. Mr. Albert is licensed to practice law in Pennsylvania, and concentrates his practice in mergers and acquisitions and stockholder derivative actions.

**NAUMON A. AMJED**, an associate of the firm, has significant experience conducting complex litigation in state and federal courts including federal securities class actions, shareholder derivative actions, suits by third-party insurers and other actions concerning corporate and alternative business entity disputes.

Mr. Amjed has litigated in numerous state and federal courts across the country, including the Delaware Court of Chancery, and has represented shareholders in several high-profile lawsuits, including: *LAMPERS v. CBOT Holdings, Inc. et al.*, C.A. No. 2803-VCN (Del. Ch.); *In re Alstom SA Sec. Litig.*, 454 F. Supp. 2d 187 (S.D.N.Y. 2006); *In re Global Crossing Sec. Litig.*, 02 — Civ. — 910 (S.D.N.Y.); *In re Enron Corp. Sec. Litig.*, 465 F. Supp. 2d 687 (S.D. Tex. 2006); and *In re Marsh McLennan Cos., Inc. Sec. Litig.* 501 F. Supp. 2d 452 (S.D.N.Y. 2006).

Prior to joining the firm, Mr. Amjed was associated with the Wilmington, Delaware law firm of Grant & Eisenhofer, P.A.

Mr. Amjed is a graduate of the Villanova University School of Law, cum laude, and holds an undergraduate degree in business administration from Temple University, cum laude.

Mr. Amjed is a member of the Delaware State bar and is admitted to practice before the United States Court for the District of Delaware.

**ROBERT W. BIELA**, an associate of the firm, received his law degree from the Penn State Dickinson School of Law, where he served on the editorial board of the *Environmental Law and Policy Journal*. Mr. Biela received his undergraduate degree from West Chester University. Prior to joining the firm, Mr. Biela was an associate at Mager White and Goldstein, LLP. Mr. Biela is licensed to practice law in the Commonwealth of Pennsylvania and the United States District Court for the Eastern District of Pennsylvania. His practice focuses primarily in the area of ERISA, antitrust and consumer protection.

**KATHERINE B. BORNSTEIN**, an associate of the firm, received her law degree from Emory University School of Law. Ms. Bornstein received her undergraduate degree from the University of Maryland. She is licensed to practice law in Pennsylvania, Maryland and California. Prior to joining SBTK, Ms. Bornstein was an associate at Provost & Umphrey

Law Firm, LLP, where she worked on a number of complex litigation issues. Ms. Bornstein concentrates her practice in the areas of ERISA, antitrust and consumer protection.

**NICHOLE BROWNING**, an associate of the firm, received her B.A. degree from Emory University in 1994 and her J.D. degree from The American University, Washington College of Law in 1997. Ms. Browning attended the Universidad de Chile in Santiago, Chile in 1995, where she studied human rights law. She completed her final year of law school at Emory University School of Law. Ms. Browning has spent most of her legal career representing plaintiffs in federal securities fraud and corporate governance claims. At SBTK, Ms. Browning concentrates her practice in the area of shareholders' derivative actions. Ms. Browning is admitted to practice law in Georgia and California and has been admitted to practice before the Eleventh Circuit Court of Appeals, the United States District Court for the Northern District of Georgia, and all Georgia trial and appellate courts. Ms. Browning is the co-author of "Private Securities Litigation Reform Act of 1995 (PSLRA) Update," which was a chapter in the *Class Actions ICLE of Georgia* (2002).

**JONATHAN R. CAGAN**, an associate of the firm, received his law degree from the Temple University School of Law. Mr. Cagan received his undergraduate degree, cum laude, from Temple University. Mr. Cagan is licensed to practice law in New Jersey, and is admitted to the Third Circuit Court of Appeals. Mr. Cagan concentrates his practice in the area of securities litigation and specializes in discovery matters.

**ALISON K. CLARK**, an associate of the firm, received her law degree, cum laude, from Boston University School of Law, and received her undergraduate degree in Political Science, with honors, from Lehigh University. Prior to joining SBTK, Ms. Clark was an attorney with a Fairfield County, Connecticut law firm, where she practiced in the areas of civil and commercial litigation, and real estate transactions. Ms. Clark is licensed to practice law in Connecticut, and has been admitted to practice before the United States District Court for the District of Connecticut. Ms. Clark concentrates her practice in the mergers and acquisitions and shareholder derivative department.

**MICHELLE A. COCCAGNA**, an associate of the firm, received her law degree from Villanova University School of Law in 2007 and her Bachelor of Science degree, magna cum laude, in Finance and International Business from Villanova University in 2004. She is licensed to practice law in Pennsylvania and New Jersey and has been admitted to practice before the United States District Court for the District of New Jersey. Prior to joining SBTK, Ms. Coccagna worked as in-house counsel for a financial services firm in New York City. She concentrates her practice in the area of FLSA and wage and hour litigation.

**MARK S. DANEK**, an associate of the firm, received his undergraduate degree in Architecture from Temple University in 1996, and his law degree from Duquesne University School of Law in 1999. Prior to joining SBTK, Mr. Danek was employed as in-house counsel of a real estate investment trust corporation that specialized in the collection of delinquent property tax receivables. He is licensed to practice law in the Commonwealth of Pennsylvania and has been admitted to practice before the Courts of the Commonwealth of Pennsylvania, the United States District Court for the Western District of Pennsylvania and the Supreme Court of the United States of America. Mr. Danek concentrates his practice in the area of securities litigation.

**JENNIFER L. ENCK**, an associate of the firm, received her law degree, cum laude, from Syracuse University College of Law in 2003 and her undergraduate degree in International Politics from The Pennsylvania State University in 1999. Ms. Enck also received a Masters degree in International Relations from Syracuse University's Maxwell School of Citizenship and Public Affairs. Prior to joining SBTK, Ms. Enck was an associate with Spector, Roseman & Kodroff, P.C. in Philadelphia, where she worked on a number of complex antitrust, securities and consumer protection cases. Ms. Enck is licensed to practice law in Pennsylvania. She concentrates her practice in the areas of securities litigation and settlement matters.

**ROBERT J. GRAY**, an associate of the firm, received his law degree from the Temple University School of Law. Mr. Gray received a Bachelor of Sciences degree from La Salle University with a dual major of Accounting and Finance. Prior to joining SBTK, Mr. Gray was an associate at Philadelphia boutique litigation firm practicing in the areas of complex commercial litigation and corporate transactions. Mr. Gray also worked as in-house counsel for a small, publicly-traded holding company. Prior to beginning his law career, Mr. Gray worked as a forensic accountant for six years, conducting a variety of investigations for numerous governmental agencies and law firms. He received his CPA license in 1997. Mr. Gray is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. He concentrates his practice in the area consumer protection.

**JOHN GROSS**, an associate of the firm, received his law degree from Widener School of Law, and his undergraduate degree from Temple University. Mr. Gross is licensed to practice law in Pennsylvania, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Prior to joining SBTK, Mr. Gross was an insurance defense litigation associate at a large, Philadelphia based firm. Mr. Gross now concentrates his practice in the areas of securities litigation, antitrust litigation and shareholder derivative actions.

**MARK K. GYANDOH**, an associate of the firm, received his undergraduate degree from Haverford College and his law degree from Temple University School of Law. While attending law school, Mr. Gyandoh served as the research editor for the *Temple International and Comparative Law Journal*. He also interned as a judicial clerk for the Honorable Dolores K. Sloviter of the U.S. Court of Appeals for the Third Circuit and the Honorable Jerome B. Simandle of the U.S. District Court for New Jersey. After graduating law school Mr. Gyandoh was employed as a judicial clerk for the Honorable Dennis Braithwaite of the Superior Court of New Jersey Appellate Division. Mr. Gyandoh is the author of "Foreign Evidence Gathering: What Obstacles Stand in the Way of Justice?" 15 Temp. Int'l & Comp. L.J. (2001) and "Incorporating the Principle of Co-Equal Branches into the European Constitution: Lessons to Be Learned from the United States" found in *Redefining Europe* (2005). Mr. Gyandoh is licensed to practice in New Jersey and Pennsylvania and concentrates in the area of ERISA, antitrust and consumer protection.

**BENJAMIN J. HINERFELD**, an associate at the firm, concentrates his work in securities litigation. In 1996, he graduated from the University of Pittsburgh School of Law, where he served as Lead Note and Comment Editor of the *Journal of Law and Commerce*. From 1996 to 1997, he clerked for the Hon. Sandra Schultz Newman of the Supreme Court of Pennsylvania. Prior to joining SBTK, Mr. Hinerfeld worked in a securities litigation firm in Wilmington, Delaware. From 2000 to 2003, Mr. Hinerfeld was a writing consultant with the Undergraduate Writing Center at the University of Texas at Austin. During that time he also co-authored, with Dr. Sarah Jane Rehnborg and Catherine Fallon, "Investing in Volunteerism: The Impact of Service Initiatives in Selected Texas State Agencies" a report prepared by The RGK Center for Philanthropy and Community Service, LBJ School of Public Affairs. He received his bachelor's degree from Vassar College and a master's degree in American History from the University of Texas at Austin. Mr. Hinerfeld is licensed to practice law in Pennsylvania and Delaware.

**MICHAEL J. HYNES,** an associate of the firm, received his law degree from Temple University School of Law, and is a graduate of Franklin and Marshall College. Mr. Hynes is licensed to practice law in Pennsylvania, New Jersey and Montana, and has been admitted to practice in the United States Court of Appeals for the Ninth Circuit, and the United States District Courts for the Eastern and Middle Districts of Pennsylvania. Prior to joining SBTK, Mr. Hynes practiced law at Cozen O'Connor, where he concentrated on bankruptcy and commercial litigation. He was an attorney with the Defenders' Association of Philadelphia from 1991 to 1996, where he defended thousands of misdemeanor and felony cases. At SBTK, Mr. Hynes concentrates his practice in the area of shareholder derivative litigation.

**JEFFREY S. JOHNSON,** an associate of the firm, received his law degree cum laude from Villanova University School of Law, where he served on the editorial board of the *Sports and Entertainment Law Journal.* He also received a Masters in Taxation (LL.M) cum laude in 2005 from Villanova University School of Law. Mr. Johnson received his undergraduate degree from James Madison University. Mr. Johnson is licensed to practice law in Pennsylvania and New Jersey. Prior to joining SBTK, Mr. Johnson was a commercial litigation associate at a large, Philadelphia based firm. Mr. Johnson currently concentrates his practice in the area of shareholder derivative actions.

**TARA P. KAO,** an associate of the firm, received her J.D. from Villanova University School of Law, where she was a Managing Editor of Student Works for the *Villanova Law Review.* Ms. Kao received her Bachelor of Science in Business/Finance, with honors, from Carnegie Mellon University. She is licensed to practice law in Pennsylvania, and concentrates her practice in the area of mergers and acquisitions and shareholder derivative actions.

**D. SEAMUS KASKELA,** an associate of the firm, received his law degree from Rutgers School of Law — Camden, and received his undergraduate degree in Sociology from Saint Joseph's University. Prior to graduating from law school and joining SBTK, Mr. Kaskela was a law clerk with a large Philadelphia law firm, where he worked in the complex civil litigation department. Mr. Kaskela is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania (pending) and the United States District Court for the District of New Jersey. Mr. Kaskela works in the firm's case development department.

**JENNIFER L. KEENEY,** an associate of the firm, received her law degree, cum laude, from Temple University Beasley School of Law, where she was the Special Projects Editor for the *Temple International and Comparative Law Journal.* Ms. Keeney earned her undergraduate degree in History, with honors, from Washington University in St. Louis in 2003. She is licensed to practice in Pennsylvania and concentrates her practice at SBTK in the area of securities litigation.

**JAMES A. MARO, JR.,** an associate of the firm, received his law degree from the Villanova University School of Law in 2000. He received a B.A. in Political Science from the Johns Hopkins University in 1997. Mr. Maro is licensed to practice law in Pennsylvania and New Jersey and is admitted to practice in the United States District Court for the Eastern District of Pennsylvania. He concentrates his practice in the area of ERISA, antitrust and consumer protection and also has experience in the areas of mergers and acquisitions and shareholder derivative actions.

**LISA MELLAS,** an associate of the firm, received her law degree from the University of Florida College of Law and her undergraduate degree from the University of Florida. Prior to joining SBTK, Ms. Mellas was an associate at White and Williams, LLP, where she practiced in the Intellectual Property Department. Ms. Mellas is licensed to practice in New York, New Jersey and Pennsylvania, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the Western District of Pennsylvania, and the District of New Jersey. She concentrates her practice in the area of consumer protection and ERISA litigation.

**JAMES H. MILLER,** an associate of the firm, received his J.D. in 2005 from Villanova University School of Law, where he was enrolled in Villanova University's JD/MBA program. Mr. Miller received his Master of Business Administration from Villanova University in 2005, and received his Bachelor of Chemical Engineering from Villanova University in 2002. Mr. Miller is licensed to practice law in Pennsylvania and concentrates his practice in the areas of mergers and acquisitions and shareholder derivative actions.

**CASANDRA A. MURPHY,** an associate of the firm, received her law degree from Widener University School of Law and her undergraduate from Gettysburg College. Prior to joining SBTK, Ms. Murphy was an associate at Post & Schell, P.C. where she practiced general casualty litigation. Ms. Murphy is licensed to practice in Pennsylvania and New Jersey, and has been admitted to practice before the United State District Court for the Eastern District of Pennsylvania. Ms. Murphy has lectured for the Pennsylvania Bar Institute and the Philadelphia Judicial Conference. She concentrates her practice in the areas of consumer protection, ERISA, pharmaceutical pricing and antitrust litigation.

**CHRISTOPHER L. NELSON,** an associate of the firm, received his law degree from Duke University School of Law, and his undergraduate degree in Business, Economics, and the Law from Washington University in St. Louis. Prior to joining SBTK, Mr. Nelson practiced with the Philadelphia law firm of Berger & Montague, P.C., where he was a securities litigator. Mr. Nelson is admitted to practice law in the Commonwealth of Pennsylvania, the Supreme Court of the United States, the United States Court of Appeals for the Fourth, Fifth and Ninth Circuits, and the United States District Court for the Eastern District of Pennsylvania. Mr. Nelson concentrates his practice in the area of securities litigation, and is Lead or Co-Lead Counsel in numerous pending nationwide class action securities cases.

**MICHELLE M. NEWCOMER,** an associate of the firm, received her law degree from Villanova University School of Law. Ms. Newcomer received her undergraduate degrees in Finance and Art History from Loyola College in Maryland in 2002. Ms. Newcomer is licensed to practice law in Pennsylvania and New Jersey. She concentrates her practice in the area of securities litigation.

**SHARAN NIRMUL**, an associate of the firm, focuses on securities and corporate governance litigation. He has represented investors successfully in major securities fraud litigation including financial frauds involving Global Crossing Ltd, Qwest Communications International, WorldCom Inc., Delphi Corp., Marsh and McLennan Companies, Inc. and Able Laboratories. Mr. Nirmul has also represented shareholders in derivative and direct shareholder litigation in the Delaware Chancery Court and in other state courts around the country. Prior to joining the firm, Mr. Nirmul was associated with the Wilmington, Delaware law firm of Grant & Eisenhofer, P.A.

Sharan Nirmul received his law degree from The George Washington University Law School (J.D. 2001) where he served as an articles editor for the *Environmental Lawyer Journal* and was a member of the Moot Court Board. He was awarded the school's Lewis Memorial Award for excellence in clinical practice. He received his undergraduate degree from Cornell University (B.S. 1996).

Mr. Nirmul is admitted to practice law in the state courts of New York, New Jersey, Pennsylvania and Delaware and in the U.S. District Courts for the Southern District of New York, District of New Jersey, District of Delaware, and District of Colorado.

**DAVID PROMISLOFF**, an associate of the firm, received his law degree from the University of Michigan in 2005. While in law school, he served as an associate editor of the *Michigan Telecommunications and Technology Law Review*. Mr. Promisloff received his undergraduate degree from Emory University in 2002, double majoring in political science and history. Mr. Promisloff is licensed to practice in Pennsylvania, and works in the firm's case development department.

**KAREN E. REILLY**, an associate of the firm, received her law degree from Pace University School of Law, where she was a member of the Moot Court Board and National Moot Court Team. Ms. Reilly received her undergraduate degree from the State University of New York College at Purchase. She is licensed to practice law in Pennsylvania, New Jersey, New York, Connecticut and Rhode Island, and has been admitted to practice before the United States District Courts for the Eastern District of Pennsylvania, District of New Jersey, Southern and Eastern Districts of New York, and the District of Connecticut. Prior to joining SBTK, Ms. Reilly practiced at Pelino & Lentz, P.C., in Philadelphia, where she litigated a broad range of complex commercial cases. Ms. Reilly concentrates her practice in the area of securities litigation.

**STEVEN D. RESNICK**, an associate of the firm, received his law degree from The Dickinson School of Law of The Pennsylvania State University, and his undergraduate degree, cum laude, from West Chester University. Mr. Resnick is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States Court of Appeals for the Third Circuit, the United States District Court for the District of New Jersey and the United States District Court for the District of Nebraska. Prior to joining SBTK, Mr. Resnick was an associate at the firm of German, Gallagher & Murtagh, where his practice concentrated in the defense of medical malpractice, products liability and premises liability. Mr. Resnick is active in the American Association for Justice and serves on the Board of Governors of the New Lawyers Division. Mr. Resnick has broad experience in Mass Tort litigation and now concentrates his practice in the area of securities litigation.

**RICHARD A. RUSSO, JR.**, an associate of the firm, received his J.D. from the Temple University Beasley School of Law, cum laude, where he was a member of the Temple Law Review. Mr. Russo received his Bachelor of Science in Business Administration, cum laude, from Villanova University. He is licensed to practice law in Pennsylvania and New Jersey, and concentrates his practice in the area of securities litigation.

**EMANUEL SHACHMUROVE**, an associate of the firm, received his law degree from The University of Michigan Law School, where he was an Associate Editor of the *Michigan Journal of Law Reform*. Mr. Shachmurove received his Bachelor of Science in Economics, cum laude, from The Wharton School at the University of Pennsylvania, where he was a Joseph Wharton Scholar. Mr. Shachmurove concentrates his practice in mergers and acquisitions and shareholder derivative litigation.

**BHARATI O. SHARMA,** an associate of the firm, received her law degree from the American University Washington College of Law, a Master of Public Administration from The George Washington University, and her undergraduate degree from the University of Pittsburgh. Ms. Sharma is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the District of New Jersey. Ms. Sharma is a former judicial law clerk to the Honorable Stephen Skillman, Superior Court of New Jersey, Appellate Division, and a former member of American University's International Law Review. She is the founder and former President of the South Asian Bar Association of Philadelphia. Ms. Sharma has also served on the Executive Committees of the North American South Asian Bar Association and the Philadelphia Bar Association Young Lawyer's Division. Prior to joining SBTK, Ms. Sharma practiced complex civil litigation at a Philadelphia law firm. She now concentrates her practice in the area of securities litigation.

**BENJAMIN J. SWEET**, an associate of the firm, received his juris doctor from The Dickinson School of Law, and his BA, cum laude, from the University Scholars Program of The Pennsylvania State University. While in law school, Mr. Sweet served as Articles Editor of the *Dickinson Law Review*, and was also awarded Best Oral Advocate in the ATLA

Junior Mock Trial Competition. Prior to joining SBTK, Mr. Sweet practiced in the Pittsburgh office of Reed Smith LLP, where he specialized in complex civil litigation. While at Reed Smith, Mr. Sweet co-authored "Assignability of Non-Compete Covenants," 74 Pa. Bar. Q. 64 (April 2003). Mr. Sweet is licensed to practice law in the Commonwealth of Pennsylvania, the United States District Court for the Western District of Pennsylvania and the United States Court of Appeals for the Ninth Circuit. Mr. Sweet concentrates his practice in the area of securities litigation and has helped obtain several multi-million dollar settlements on behalf of class members in several nationwide federal securities class actions.

**MICHAEL C. WAGNER,** an associate of the firm, received his undergraduate degree in Government from Franklin & Marshall College, and his law degree from the University of Pittsburgh School of Law in 1996. Mr. Wagner is licensed to practice law in Pennsylvania, and he has been admitted to practice in the United States Court of Appeals for the Third Circuit, and United States District Courts for the Eastern and Western Districts of Pennsylvania, for the Eastern District of Michigan, and for the District of Colorado. Before joining SBTK, Mr. Wagner worked at Rubin, Fortunato & Harbison, a boutique law firm in Paoli, PA, representing Fortune 100 corporations, as well as individuals and small businesses, in employment matters across the country. Mr. Wagner earlier worked for several years at Spector, Gadon & Rosen, in Philadelphia, concentrating his practice in complex commercial and corporate litigation. At SBTK, Mr. Wagner focuses his practice in the area of shareholder derivative litigation.

**JOSEPH A. WEEDEN,** an associate of the firm, received his law degree from the University of North Carolina School of Law, where he received the Gressman-Politt Award for outstanding oral advocacy. Mr. Weeden also received his undergraduate degree from the University of North Carolina at Chapel Hill, where he was a Joseph E. Pogue Scholar. Prior to joining the firm, Mr. Weeden was an associate at Kaufman & Canoles, P.C., where he practiced in the areas of commercial and business law. Mr. Weeden is licensed to practice law in Virginia, and concentrates his practice in the area of ERISA and consumer protection litigation.

**GERALD D. WELLS, III,** an associate of the firm, received his law degree from Temple University School of Law, where he served on the editorial board of the *Environment Law & Technology Journal.* He is licensed to practice in Pennsylvania and New Jersey and has admission pending in California. Mr. Wells has also been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District Court of New Jersey, and the United States District Court

for the Eastern District of Michigan. Mr. Wells concentrates his practice in the areas of antitrust, ERISA, and consumer protection, and FLSA/overtime litigation and has helped obtain several multi-million dollar settlements on behalf of class members.

**NICK S. WILLIAMS,** an associate of the firm, received his J.D. from the University of Virginia School of Law, where he was a member of the Articles Review Board of the *Virginia Journal of International Law.* He received his B.A., with highest distinction, from George Mason University, where he was recognized as the outstanding senior in International Studies. Prior to joining SBTK, Mr. Williams practiced general commercial, securities, antitrust, and employment litigation for many years at Mayer Brown LLP in New York and Washington, D.C. Mr. Williams is admitted to practice in New York, the District of Columbia, the United States District Courts for the Southern, and Eastern, Districts of New York, and the Court of Federal Claims. Mr. Williams concentrates his practice in the areas of ERISA, FLSA, and Antitrust litigation.

**ROBIN WINCHESTER,** an associate of the firm, received her law degree from Villanova University School of Law, and received her undergraduate degree in Finance from St. Joseph's University. Prior to joining SBTK, Ms. Winchester served as a law clerk to the Honorable Robert F. Kelly in the United States District Court for the Eastern District of Pennsylvania. Ms. Winchester is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. She concentrates her practice in the area of shareholder derivative actions.

**TERENCE S. ZIEGLER,** an associate of the firm, received his law degree from the Tulane University School of Law. Mr. Ziegler received a Bachelor of Business Administration degree with a concentration in Finance from Loyola University. Mr. Ziegler is licensed to practice law in the State of Louisiana, and has been admitted to practice before the United States Court of Appeals for the Fifth Circuit, the United States District Court for the Eastern District of Louisiana and the United States District Court for the Middle District of Louisiana. Mr. Ziegler concentrates his practice in the areas of consumer protection, ERISA, pharmaceutical pricing and antitrust.

# OF COUNSEL

**ROBERT M. BRAMSON** has more than twenty-five years of experience in the litigation of antitrust and consumer cases, class actions and other complex litigation. Mr. Bramson received his undergraduate degree in economics, summa cum laude, from the University of California at Berkeley in 1977, and obtained his law degree from the Boalt Hall School of Law in 1981. Mr. Bramson is a member of the California Bar.

Mr. Bramson has represented both plaintiffs and defendants in numerous antitrust cases, and has acted as lead counsel in two such actions taken to trial — *Pacific West Cable Co. v. City of Sacramento, et. al.* (E.D. Cal.) ($12 Million settlement on 24th day of trial, at close of plaintiff's case; Sherman Act §2 monopolization claims) and *Coleman et. al. v. Sacramento Cable Television* (Sacramento Sup. Ct.) ($2.4 Million judgment after 17-day trial; class action/B & P §17200 case; B & P §17204 discriminatory pricing claims).

Mr. Bramson specializes in antitrust, business torts and communications litigation, as well as in class action cases. He served for many years on the Board of Directors of the National Association of Consumer Advocates and co-chaired its class action committee. He is a contributing author to the National Consumer Law Center's publication Consumer Class Actions. He acted as reporter for the National Association of Consumer Advocates in preparing its influential Standards and Guidelines For Consumer Class Actions, 176 F.R.D. 375 (1997).

Mr. Bramson's lecture topics have included "Strategic and Ethical Issues in Litigating 17200 Cases" (Bar Association of San Francisco, San Francisco 2001), "Equitable Remedies In Class Actions and Under California's Section 17200 Statute" (National Association of Consumer Advocates, Chicago 2000), "Ethical Issues Arising in Class Action Settlements" (National Consumer Law Center, Wash. DC and San Diego 1999 and 1998) "California's Business & Professions Code Section 17200" (California Bar Association, Lake Tahoe 1997), "Preparation of Competitive Business Practices Cases" (Continuing Education of the Bar, Sacramento 1997), and "The Cable Communications Policy Act of 1984" (California State University, Fullerton 1993).

In addition to serving as Of Counsel to SBTK, Mr. Bramson is a partner in the law firm of Bramson, Plutzik, Mahler & Birkhaeuser, LLP, of Walnut Creek, California.

**ALAN R. PLUTZIK** specializes in complex business litigation in state and federal courts throughout the United States. Areas of particular emphasis include class actions, securities fraud and corporate governance litigation, consumer law, antitrust, constitutional and communications law. Mr. Plutzik is admitted to practice in California and the District of Columbia (inactive member), and is a member of the bars of the United States Supreme Court, the Second, Eighth, Ninth, Tenth and District of Columbia Circuits and numerous federal district courts throughout the United States.

Mr. Plutzik received his law degree from the University of California at Berkeley's Boalt Hall School of Law in 1977. He received his undergraduate degree from St. John's College, Annapolis, Maryland, in 1971, and also holds an M. A. from Stanford University. Over the course of his twenty-nine year career, Mr. Plutzik has also handled a wide variety of class actions and derivative cases. He has represented, among other clients, corporate shareholders and limited partners challenging conduct by their general partners, officers or directors; consumers and businesses harmed by price-fixing and other anticompetitive conduct; consumers in actions against insurance companies, banks and other lenders; investors in securities fraud cases and derivative suits; employees in ERISA and wage/hour cases; purchasers of mislabeled and defective products; victims of toxic pollution; persons harmed by defective products; and cellular telephone and cable television subscribers.

Mr. Plutzik has also handled a substantial number of cases that raise First Amendment and other constitutional issues, and has represented broadcasters, cable television companies, communications common carriers and consumers in litigation and in administrative proceedings before the Federal Communications Commission and the California Public Utilities Commission.

Mr. Plutzik has written or lectured on topics that include class actions, California consumer law, substantive and procedural issues under the federal securities laws, First Amendment issues applicable to new media, cable television franchising and cable television companies' access to utility poles and real estate developments. He has appeared as a guest radio commentator on the Len Tillem Show on KGO-Radio in San Francisco, discussing class actions, consumer protection law and investor rights.

Mr. Plutzik has served as a judge pro tem on the Contra Costa County Superior Court. He is also President of the Warren W. Eukel Teacher Trust, a community-based charity that honors outstanding teachers in Contra Costa County, California.

In addition to serving as Of Counsel to SBTK, Mr. Plutzik is a partner in the law firm of Bramson, Plutzik, Mahler & Birkhaeuser, LLP, of Walnut Creek, California.

**L. TIMOTHY FISHER** specializes in consumer and securities class actions and complex business litigation. He has been actively involved in several cases in which multi-million dollar recoveries were achieved for consumers and investors. Mr. Fisher has handled cases involving a wide range of issues including nutritional labeling, health care, telecommunications, corporate governance, unfair business practices and fraud. Mr. Fisher is a member of the California Bar.

Mr. Fisher received his Juris Doctorate from Boalt Hall at the University of California at Berkeley in 1997. While in law school, he was an active member of the Moot Court Board and participated in moot court competitions throughout the United States. In 1994, Mr. Fisher received an award for Best Oral Argument in the first year moot court competition.

In 1992, Mr. Fisher graduated with highest honors from the University of California at Berkeley and received a degree in political science. Prior to graduation, he authored an honors thesis for Professor Bruce Cain entitled "The Role of Minorities on the Los Angeles City Council." He is also a member of Phi Beta Kappa.

In addition to serving as Of Counsel to SBTK, Mr. Fisher is an associate in the law firm of Bramson, Plutzik, Mahler & Birkhaeuser, LLP, of Walnut Creek, California.


**DONNA SIEGEL MOFFA**, Of Counsel to the firm, received her law degree, with honors, from Georgetown University Law Center in May 1982. She received her undergraduate degree, cum laude, from Mount Holyoke College in Massachusetts. Ms. Siegel Moffa is admitted to practice before the Third Circuit Court of Appeals, the United States Courts for the District of New Jersey and the District of Columbia, as well as the Supreme Court of New Jersey and the District of Columbia Court of Appeals. Prior to joining the firm, Ms. Siegel Moffa was a member of the law firm of Trujillo, Rodriguez & Richards, LLC, where she litigated, and served as co-lead counsel, in complex class actions arising under federal and state consumer protection statutes, lending laws and laws governing contracts and employee compensation. Prior to entering private practice,

Ms. Siegel Moffa worked at both the Federal Energy Regulatory Commission (FERC) and the Federal Trade Commission (FTC). At the FTC, she prosecuted cases involving allegations of deceptive and unsubstantiated advertising. In addition, both at FERC and the FTC, Ms. Siegel Moffa was involved in a wide range of administrative and regulatory issues including labeling and marketing claims, compliance, FOIA and disclosure obligations, employment matters, licensing and rulemaking proceedings.

Ms. Siegel Moffa continues to concentrate her practice in the area of consumer protection litigation. She served as co-lead counsel for the class in *Robinson v. Thorn Americas, Inc.*, L-03697-94 (Law Div. 1995), a case that resulted in a significant monetary recovery for consumers and changes to rent-to-own contracts in New Jersey. Ms. Siegel Moffa was also counsel in *Muhammad v. County Bank of Rehoboth Beach, Delaware*, 189 N.J. 1 (2006), U.S. Sup. Ct. cert. denied, 127 S. Ct. 2032 (2007), in which the New Jersey Supreme Court struck a class action ban in a consumer arbitration contract. She has served as class counsel representing consumers pressing TILA claims, e.g. *Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540 (D.N.J. 1999), and *Dal Ponte v. Am. Mortg. Express Corp.*, CV- 04-2152 (D.N.J. 2006), and has pursued a wide variety of claims that impact consumers and individuals including those involving predatory and sub-prime lending, mandatory arbitration clauses, price fixing, improper medical billing practices, the marketing of light cigarettes and employee compensation.

Ms. Siegel Moffa's practice has involved significant appellate work representing individuals, classes, and non-profit organizations participating as amicus curiae, such as the National Consumer Law Center and the AARP. In addition, Ms. Siegel Moffa has regularly addressed consumer protection and litigation issues in presentations to organizations and professional associations. Ms. Siegel Moffa is a member of the New Jersey State Bar Association, the Camden County Bar Association, the District of Columbia Bar Association, the National Association of Consumer Advocates and the Public Justice Foundation.

# CONSULTANTS

**KEVIN P. CAULEY** serves as an institutional liaison at the firm. Mr. Cauley has extensive experience working with public and Taft-Hartley pension funds regarding their rights and responsibilities with respect to their investments and purchases and taking an active role in shareholder and consumer litigation. In addition, Mr. Cauley assists clients in evaluating what systems they have in place to identify and monitor shareholder and consumer litigation that has an effect on their funds, and also assists them in evaluating the strength of such cases and to what extent they may be affected by alleged misconduct.

Mr. Cauley, a graduate of Temple University, also has prior experience at family-owned businesses, in institutional fiduciary investment consulting, money manager selection, best trade executions, and asset allocation modeling. He has held the Series 7, 24, 63, and 65 licenses with the NASD. Mr. Cauley has also done political consulting in coordinating and directing various aspects of field operations for local, state, and national campaigns in Southeastern Pennsylvania. He is also an active member of The Pennsylvania Future Fund, A.O.H. Division 88 "Officer Danny Boyle Chapter," The Clover Club of Philadelphia, The Foreign Policy Research Institute, The Princeton Committee on Foreign Relations, and is an elected member to The Pennsylvania Society and The Union League of Philadelphia, where he serves on the Armed Services Committee.

**PETER KRANEVELD**, an advisor to the firm, works with SBTK to analyze and evaluate corporate governance issues, shareholder rights and activism and how these fit into the interests of the firm's large international client base of pension funds and other institutional investors. An economist by training, Mr. Kraneveld has a long history of working with pension funds and other institutional shareholders. He recently completed an eight year stint working with Dutch pension fund PGGM, a public pension fund for the healthcare sector in the Netherlands, and one of the largest pension funds in Europe. Mr. Kraneveld's last three years

at PGGM were spent as a Special Advisor for International Affairs where his main responsibilities included setting up a network among national and international lobbying organizations, domestic and foreign pension funds and international civil servants and using it to promote the interests of the pension fund industry. Mr. Kraneveld served as Chief Economist for PGGM's Investments Directorate from 1999 until 2004 where his accomplishments included the Tactical Asset Allocation process and designing alternative scenarios for Asset Liability Management.

Prior to his work with PGGM, Mr. Kraneveld worked with the Organisation for Economic Co-operation and Development (OECD) and the Dutch Ministry of Economic Affairs.

**DAVID RABBINER** serves as SBTK's Director of Investigative Services and leads investigations necessary to further and strengthen the firm's class action litigation efforts. Although his investigative services are primarily devoted to securities matters, Mr. Rabbiner routinely provides litigation support, conducts due diligence, and lends general investigative expertise and assistance to the firm's other class-action practice areas. Mr. Rabbiner plays an integral role on the firm's legal team, providing critical investigative services to obtain evidence and information to help ensure a successful litigation outcome. Before joining SBTK, Mr. Rabbiner enjoyed a broad-based, successful career as an FBI Special Agent, including service as an Assistant Special Agent in Charge, overseeing multiple criminal programs, in one of the Bureau's largest field offices. He holds an A.B. in English Language and Literature from the University of Michigan and a Juris Doctor from the University of Miami School of Law.