Part  (9) Pages 202-229 (end)

499. Nevertheless, Wachovia's July 22, 2008 disclosures continued to materially misrepresent the true state of affairs at Wachovia. Pick-A-Pay LTV ratios, and thus default risks and loss severities, were still higher than Defendants publicly represented, as was, consequently, the level of losses inherent in the $120 billion Pick-A-Pay portfolio.

500. Wachovia continued to conceal, misrepresent and deny these truths on September 9, 2008, when it disparaged as inapplicable to Wachovia's Pick-A-Pay loans certain calculations stating that cumulative losses would be 20% (rather than the 12% level that Wachovia claimed).

501. It was only on September 29, 2008 that the true value of Wachovia was finally revealed. On September 29, 2008, Citigroup Inc. agreed to acquire Wachovia Corp.'s banking operations for $2.1 billion in stock and the assumption another $53 billion in Wachovia debt. Federal banking regulators pushed for the deal by agreeing to share a portion of future losses that Wachovia's failing mortgage portfolio could generate. *See* Dean Foust, Wachovia: *Just the Plum Citigroup Needed*, BusinessWeek, Sept. 29, 2008. The proposed Citigroup acquisition valued Wachovia's banking operations – the operations being acquired, and the lion's share of Wachovia's operations – at a mere $1 per share. *See* David Mildenberg, *Citigroup Agrees to Buy Wachovia's Banking Business (Update 7)*, Bloomberg, Sept. 29, 2008. The low purchase price / valuation was a direct function of Wachovia's $120 billion portfolio of Pick-A-Pay mortgages and the losses those mortgages would suffer.

502. Following this revelation of Wachovia's real value, Wachovia stock immediately lost nearly all its remaining value, falling from its previous closing price, $10.00 per share on Friday September 26, 2008, to close on Monday September 29, 2008 at $1.84 per share. During September 29, 2008 intra-day trading, Wachovia shares fell below $1.00 per share.

503.   Subsequent events and disclosures during October and November 2008 confirmed in greater factual detail what had been revealed on September 29, 2008: that Wachovia, under the weight of the losses inherent in its $120 billion Pick-A-Pay portfolio, was nearly worthless.

504.   For example, the proposed Citigroup transaction was itself subsidized by government guarantees to backstop Wachovia's mortgage losses should they exceed a certain amount. Absent such guarantees to limit acquirer losses, Wachovia's executives stated, no buyer could be found. On October 5, 2008, Robert K. Steel, in his affidavit in the matter of *Wachovia Corporation v. Citigroup, Inc.*, No. 08 Civ. 8503 (LAK) (S.D.N.Y.), stated the following:

> Shortly after I spoke with Mr. Kovacevich, Sheila Bair, Chairman of the Federal Deposit Insurance Corporation ("FDIC") contacted me by telephone. She advised me that the FDIC believed that no transaction with Citigroup or Wells Fargo could be effected without substantial government assistance. Chairman Bair confirmed that in the FDIC's view this situation posed by a systemic risk to the banking system, and that the FDIC was prepared to exercise its powers under Chapter 13 of the Federal Deposit Insurance Act to effect an open bank assisted transaction. Subsequently, Chairman Bair directed Wachovia to commence negotiations with Citi.

Robert K. Steel Affidavit, ¶8

505.   On October 22, 2008, Wachovia's new management: (1) revealed Wachovia's largest-ever quarterly loss reserve provisioning expense, $4.8 billion, 66% of which was dedicated to the Pick-A-Pay portfolio; (2) admitted that cumulative Pick-A-Pay losses would amount to 22% of the entire $120 billion portfolio (or $26.4 billion) – nearly twice the 12% cumulative loss figure that Defendants had represented months earlier; (3) revealed that, as a result of sharp property price declines in California and Florida (which declines were already sharp two years earlier, in late 2006), and as a result of most Pick-A-Pay borrowers picking to pay minimum payments (which they had

203

been doing all along), the average LTV ratio across Wachovia's $120 billion Pick-A-Pay portfolio had risen from 71% to a stunning 95%; and (4) acknowledged with a further $18.8 billion writedown what Defendants had long explicitly denied: the substantial devaluation of Wachovia's Pick-A-Pay franchise. Wachovia's erstwhile acquirer, Wells Fargo, after reviewing Wachovia's $498 billion of loan portfolios, disclosed that it expected those portfolios to generate losses of **$74 billion.** Wachovia's $120 billion Pick-A-Pay portfolio, according to Wells Fargo, would generate cumulative losses of 26%, or $31.2 billion. Thus, though the Pick-A-Pay portfolio amounted to only 20% of Wachovia's total loans, they represented 42% of the total losses.

506.    On November 19, 2008, federal prosecutors and the Securities and Exchange Commission announced that they had opened an investigation probing whether Wachovia's Golden West division had misled borrowers and investors. Specifically, investigators stated that they were examining whether Golden West fraudulently lured borrowers into mortgages, such as by switching them into more expensive loans, falsified financial data so that borrowers could qualify for certain loans, or misled investors as to the quality of Golden West's loans. Wachovia shares lost 13% of their value on that news, having lost 88% of their value year-to-date.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

507.    At all relevant times, the market for Wachovia's common stock was an efficient market for the following reasons, among others:

a.        Wachovia's stock met the requirements for listing, and was listed actively traded on the NYSE, a highly efficient market;

b.     As a regulated issuer, Wachovia filed periodic public reports with the SEC and the NYSE;

c.     Wachovia traded an average of 19.6 million shares per day during the Class Period;

d.     Wachovia regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

e.     Wachovia was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

508.     As a result of the foregoing, the market for Wachovia's common stock promptly digested current information regarding Wachovia from all publicly available sources and reflected such information in Wachovia's stock price.  Under these circumstances, all purchasers of Wachovia's common stock during the Class Period suffered similar injury through their purchase of Wachovia's common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

509.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful

205

cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Wachovia who knew that those statements were false when made.

## LEAD PLAINTIFF'S CLASS ACTION ALLEGATIONS

510. Lead Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of: (1) a class consisting of plaintiffs and all other persons or entities who purchased Wachovia's common stock between May 8, 2006 and September 29, 2008, inclusive, and who were damaged thereby (the "Class"); and (2) a subclass of persons who acquired Wachovia shares through Wachovia's Class Period acquisition of Golden West and/or its Class Period acquisition of A.G. Edwards and/or Wachovia's April 14, 2008 stock offering (the "Offerings Subclass"), *see* ¶¶ 485-86.

511. Excluded from the Class and Offerings Subclass are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest

512. The members of the Class and Offerings Subclass are so numerous that joinder of all members is impracticable. Throughout the Class Period, Wachovia common stock was actively traded on the NYSE under the symbol "WB." As of January 31, 2008, there were approximately

206

1,981,983,990 outstanding shares of Wachovia's common stock. While the exact number of Class members and Offerings Subclass members is unknown to Lead Plaintiff at this time and can only be ascertained through appropriate discovery, Lead Plaintiff believes that there are hundreds or thousands of members in both the proposed Class and the Offerings Subclass. Record owners and other members of the Class and Offerings Subclass may be identified from records maintained by Wachovia or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

513.    Lead Plaintiff's claims are typical of the claims of the members of the Class and Offerings Subclass as all members of the Class and Offerings Subclass are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

514.    Lead Plaintiff will fairly and adequately protect the interests of the members of the Class and Offerings Subclass and has retained counsel competent and experienced in class action and securities litigation.

515.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual members of the Class and Offerings Subclass may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class and Offerings Subclass to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

516.    Common questions of law and fact exist as to all members of the Class and Offerings Subclass and predominate over any questions solely affecting individual members of the Class and Offerings Subclass. Among the questions of law and fact common to the Class are:

207

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements disseminated by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business and operations of Wachovia;

(c)     whether Defendants acted wilfully or recklessly in omitting and/or misrepresenting material facts;

(d)     whether Defendants' non-disclosures and/or misrepresentations constituted a fraud on the market by artificially inflating the market prices of Wachovia common stock during the Class Period; and

(e)     whether the members of the Class and the Offerings Subclass have sustained damages and, if so, what is the proper measure of such damages.

517.     Questions (a), (b) and (e) are also common the Offerings Subclass members.

### COUNT I

**Violation of § 10(b) of the Exchange Act Against and Rule 10b-5
Promulgated Thereunder Against All Defendants**

518.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

519.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public regarding Wachovia's business, operations, management and the intrinsic value of Wachovia common stock; and (ii) cause plaintiff and other members of the class to purchase Wachovia's

208

common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

520. Defendants (a) employ devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Wachovia's common stock in violation of Section 10(b) of the Exchange and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

521. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in continuous course of conduct to conceal adverse material information about the business and operations of Wachovia as specified herein.

522. The Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Wachovia's value and performance and continued substantial growth, which included the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Wachovia and its business operations in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fund and deceit upon the purchasers of Wachovia common stock during the Class Period.

523.    Each of the Individual Defendants' primary liability, are controlling person liability,

arises from the following facts: (i) the Individual Defendants were high-level executives and/or

directors at the Company during the Class Period and members of the Company's management team

or had control thereof; (ii) each of these Defendants, by virtue of his responsibilities and activities

as a senior officer and/or director of the Company was privy to and participated in the creation,

development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii)

each of these Defendants enjoyed significant personal contact and familiarity with the other team,

internal reports and other data and information about the Company's finances, operations, and sales

at all relevant times; and (iv) each of these Defendants was aware of the Company's finances,

operations and sales at all relevant times; and (iv) each of these Defendants was aware of the

Company's dissemination of information to the investing public which they knew or recklessly

disregarded was materially false and misleading.

524.    The Defendants had actual knowledge of the misrepresentations and omissions of

material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

ascertain and to disclose such facts, even though such facts were available to them.   Such

Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

for the purpose and effect of concealing Wachovia's operating condition from the investing public

and supporting the artificially inflated price of its common stock. As demonstrated by Defendants'

overstatements and misstatements of the Company's business, operations and earnings throughout

the Class Period, Defendants, if they did not have actual knowledge by deliberately refraining from

taking those steps necessary to discover whether those statements were false or misleading.

525.    As a result of the dissemination of the materially false and misleading information

and the failure to disclose material facts, as set forth above, the market price of Wachovia's common

stock was artificially inflated during the Class Period.  In ignorance of the fact that market prices of

Wachovia's publicly-traded common stock were artificially inflated, and relying on the integrity of

the efficient market for Wachovia securities and/or directly on the false and misleading statements

made by Defendants but not disclosed in public statements by Defendants during the Class Period

(which caused Wachovia's shares to trade at artificially inflated prices), plaintiff and the other

members of the Class acquired Wachovia common stock during the Class Period at artificially high

prices and were damaged thereby.

526.    As a direct and proximate result of Defendants' wrongful conduct, Lead Plaintiff and

the other members of the Class suffered damages in connection with their purchases of Wachovia

common stock during the Class Period.

**COUNT II**

**Violation of § 20(a) of the Exchange Act**
**Against the Individual Defendants**

527.    Lead Plaintiff repeats and realleges each and every allegation contained above as if

fully set forth herein.

528.    The Individual Defendants acted as controlling persons of Wachovia within the

meaning of Section 20(a) of the Exchange Act as alleged herein.  By reason of their positions as

officers and/or directors of Wachovia, and their ownership of Wachovia stock, the Individual

Defendants had the power and authority to cause Wachovia to engage in the wrongful conduct

complained of herein.  The Individual Defendants were provided with or had unlimited access to

211

copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

529.    As set forth above, Wachovia and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## CLAIMS BROUGHT PURSUANT TO THE SECURITIES ACT

530.    In the allegations and claims set forth in this part of the complaint, Plaintiff assert a series of strict liability and negligence claims based on the Securities Act on behalf of the subclasses (as defined in ¶¶ 463-470 above, except that Plaintiffs explicitly disclaim subparts (c) and (d) of ¶ 469 from these Securities Act allegations). Plaintiffs' Securities act claims are not based on any allegations of knowing or reckless misconduct on behalf of the Defendants named in the Third and Fourth Claims for Relief. Plaintiffs' Securities Act claims do not allege, and do not "sound in fraud," and Plaintiffs specifically disclaim any reference to or reliance upon allegations of fraud in these non-fraud claims under the Securities Act. To avoid (unfounded) argument by Defendants that the claims below somehow "sound in fraud," it is necessary to state or summarize facts also stated above.

212

531.    This action was brought within one year after the discovery of the untrue statements and omissions (and within one year after such discovery should have been made in the exercise of reasonable diligence) and within three years after each of the offerings described herein.

532.    Specifically, the Securities Act Defendants (set forth below) conducted securities offerings on behalf of Wachovia during the Class Period (referred to collectively as the "Offerings"), through which the Company (i) completed two acquisitions (of Golden West and A.G. Edwards) using, *inter alia*, common stock at valued at $21.9 billion and (ii) raised an additional $3.5 billion. The Offerings were conducted pursuant to prospectuses and registration statements filed with the SEC on the dates indicated below.

533.    The Securities Act Defendants conducted three (3) securities offerings on behalf of Wachovia during the Class Period (referred to collectively as the "Offerings"), through which the Company acquired Golden West (for $18.2 billion in common stock) and A.G. Edwards (for $3.7 billion in common stock) and raised an additional $3.5 billion, for a total from all offerings of approximately **$25.5 billion**. The Offerings at issue are as follows:

- **The June 2006 Offering**: On or about June 1, 2006, Wachovia registered about 340,000,000 shares of common stock in connection with the Golden West Financial business combination with a maximum aggregate offering of about **$18.2 billion**. The June 2006 Offering was marketed to Golden West shareholders through the materially false and misleading Registration Statement and Prospectus filed with the SEC on FORM S-4, and amendments thereto on July 24, 2006 (Form S-4/A) ("the June 2006 Offering Documents").

213

- **June 2007 Offering**: On or about June 28, 2007, Wachovia filed a Registration Statement and Prospectus with the SEC on FORM S-4 for 82,000,000 of common stock in connection with the A.G. Edwards business combination with a maximum aggregate offering of about **$3.7 billion**. The June 2007 Offering was marketed to A.G. Edwards shareholders through the materially false and misleading Registration Statement and Prospectus filed with the SEC on FORM S-4, and amendments thereto on August 7, 2007 (Form S-4/A), August 22, 2007 (Form S-4/A) and August 28, 2007 (Form S-4/A) ("the June 2007 Offering Documents"). Ultimately, and pursuant to the June 2007 Offering Materials, Wachovia issued 72 million shares of its common stock to complete its acquisition of A.G. Edwards.

- **The April 2008 Offering**: On or about April 14, 2008, Wachovia conducted a public offering of about 146,000,000 shares of common stock with an offering price of about **$3.5 billion**. The April 2008 Offering was marketed and sold to the public through a materially false and misleading Prospectus Supplement dated April 14, 2008 to a Registration Statement and Prospectus dated April 14, 2008 ("the April 2008 Offering Documents"). From this offering, Wachovia raised approximately $3.5 billion before expenses.

The June 2006 Offering Documents, the June 2007 Offering Documents, and the April 2008 Offering Documents are collectively referred to herein as "the Offering Documents."

A.    **Securities Act Defendants**

534.    The Securities Act claims are asserted against the Company, Defendants G. Kennedy Thompson and Thomas J. Wurtz as signatories to the Offering Documents, and the Underwriter

214

Defendants (defined above). Each of these Defendants is statutorily liable under Sections 11 or 12 of the Securities Act for the materially untrue statements contained in some or all of the Offering Documents, as set forth below, including Wachovia's materially false and misleading financial statements incorporated therein.

**B.   The June 2006 Offering Documents Contained Materially False or Misleading Statements**

535.   Wachovia conducted the June 2006 Offering as part of its acquisition of Golden West. Wachovia filed its Form S-4 Registration Statement for the June Offering on or about June 1, 2006, which it thereafter amended on July 24, 2006 (Form S-4/A).

536.   The June 2006 Offering was conducted pursuant to the June 2006 Offering Documents, which incorporated by express reference several of Wachovia's public filings, including its Form 10-K for the fiscal year ended December 31, 2005 (the "2005 10-K"), and its Form 10-Q for the quarters ended March 31, 2006 (the "First Quarter 2006 10-Q"). The 2005 10-K was signed by Defendants Thompson and Wurtz, and the First Quarter 10-Q was signed by Defendants Thompson and Wurtz.

537.   Wachovia made materially false or misleading statements in the June 2006 Offering Documents regarding its financial results, compliance with GAAP, credit risk management and underwriting practices. These statements misinformed Golden West shareholders about the reliability of Wachovia's financial statements, and rendered the June 2006 Offering Documents materially untrue and misleading.

538.   Wachovia's financial statements in its First Quarter 2006 10-Q materially misstated and did not fairly present Wachovia's financial performance and condition, and were not presented

in accordance with GAAP and applicable SEC rules and regulations. In particular, Wachovia's First

Quarter 2006 financial statements:

    a.    omitted the disclosures required by FAS 107 and FSP 94-6-1 regarding concentrations of credit risk created by its loan portfolio;

    b.    omitted disclosure of "information that is adequate to inform users of the general nature of the risk associated with the concentration" for concentrations in volume of business with particular customers, concentrations in revenue from certain products, and concentrations in certain markets or geographic areas;

    c.    omitted the disclosures required by FAS 107 and FSP 94-6-1 regarding significant concentrations of credit risk created by its investment portfolio which, in significant parts, was comprised of subprime-related ABS CDOs and RMBS, CMBS and consumer mortgages, leveraged finance distribution exposures, monoline-related exposures, and subprime-related CDS; and

    d.    omitted the disclosures required by SOP 94-6 for significant estimates in violation of GAAP and SEC rules.

539.    In the June 2006 Offering Documents, Wachovia also made materially false or misleading statements, and failed to disclose material information about Golden West, its underwriting practices, and the quality (or lack thereof) of its mortgage portfolio. In particular Defendants stated in the June 2006 Offering documents that among the factors that "supported the decision to approve the merger: . . . Wachovia's board concluded . . . that Golden West's financial condition and asset quality are very sound and will further strengthen Wachovia's balance sheet."

This statement falsely represented that Golden West's asset quality was very strong, when nowhere in the June 2006 Offering Documents did Defendants disclose that:

    a.    Golden West did not follow strict underwriting and loan-origination practices, including in its Pick-A-Pay mortgage portfolio;

    b.    a material portion of Golden West's loans were made on a "low documentation" basis, such that it had no way of confirming the credit-worthiness of many loan applicants, thereby rendering the Company's reassurances about its loan-origination and underwriting practices materially inaccurate;

    c.    Golden West's loan loss provisions were understated and did not properly reflect the risk facing Golden West, thereby inflating the pro forma income for the to be merged companies as presented in the June 2006 Offering Documents.

## C.    The June 2007 Offering Documents Contained Materially False or Misleading Statements

540.    Wachovia conducted the June 2007 Offering as part of its acquisition of A.G. Edwards. Wachovia filed its Form S-4 Registration Statement for the June 2007 Offering on or about June 28, 2007, which it thereafter amended on August 7, 2007 (Form S-4), August 22, 2007 (Form S-4) and August 28, 2007 (Form S-4).

541.    The June 2007 Offering was conducted pursuant to the June 2007 Offering Documents, which incorporated by express reference several of Wachovia's public filings, including its Form 10-K for the fiscal year ended December 31, 2006 (the "2006 10-K"), and its Form 10-Qs

217

for the quarters ended March 31, 2007 (the "First Quarter 2007 10-Q") and June 30, 2007 (the "Second Quarter 2007 10-Q"). The 2006 10-K and the First and Second Quarter 2007 10-Qs were signed by Defendants Thompson and Wurtz.

542.   Wachovia made materially false or misleading statements in the June 2007 Offering Documents regarding its financial results, compliance with GAAP, credit risk management and underwriting practices. These statements misinformed A.G. Edwards shareholders about the reliability of Wachovia's financial statements, and rendered the June 2007 Offering Documents materially untrue and misleading.

543.   Wachovia's financial statements in its 2006 10-K and First Quarter 2007 10-Q materially misstated and did not fairly present Wachovia's financial performance and condition, and were not presented in accordance with GAAP and applicable SEC rules and regulations. The Company's results of operations, and more specifically, but not exclusively, provision for loan losses, net income and earnings per share or EPS, were materially false and misleading as those amounts disclosed were not derived in conformity with GAAP. In particular, Wachovia's 2006 and First Quarter 2007 financial statements:

> (a)   overstated Wachovia's loan portfolio (*i.e.*, avoided direct write-offs) and understated the allowance for credit losses, and thus these financial statements materially understated the amounts reported as the provision for credit losses, and thereby materially overstated net income;
>
> (b)   omitted the disclosures required by FAS 107 and FSP 94-6-1 regarding concentrations of credit risk created by its loan portfolio;

218

(c)     omitted disclosure of "information that is adequate to inform users of the general nature of the risk associated with the concentration" for concentrations in volume of business with particular customers, concentrations in revenue from certain products, and concentrations in certain markets or geographic areas;

(d)     omitted the disclosures required by FAS 107 and FSP 94-6-1 regarding significant concentrations of credit risk created by its investment portfolio which, in significant parts, was comprised of subprime-related ABS CDOs and RMBS, CMBS and consumer mortgages, leveraged finance distribution exposures, monoline-related exposures, and subprime-related CDS;

(e)     materially misstated the value and or valuation of, generally, the Company's financial position, and more specifically, but not exclusively, the investments discussed in (d) above, as those values were not derived in conformity with GAAP;

(f)     omitted the disclosures required by SOP 94-6 for significant estimates in violation of GAAP and SEC rules; and

(g)     failed to properly present VIEs, for which the Company was the primary beneficiary, as consolidated, and thereby, materially misstated the Company's financial position and results of operations, in violation of GAAP.

544.    In the June 2007 Offering Documents, Wachovia also failed to disclose material information about its underwriting practices and the quality (or lack thereof) of its mortgage portfolio. In particular nowhere in the June 2007 Offering Documents did Defendants disclose that:

(a) the Company did not follow strict underwriting and loan-origination practices, including in its Pick-A-Pay mortgage portfolio;

(b) a material portion of the Company's loans were made on a "low documentation" basis, such that it had no way of confirming the credit-worthiness of many loan applicants, thereby rendering the Company's reassurances about its loan-origination and underwriting practices materially inaccurate;

(c) the Company's loan loss provisions were understated and did not properly reflect the risk facing the Company, thereby inflating Wachovia's reported income; and

(d) the certifications signed by Defendants Thompson and Wurtz, which attested to the accuracy of the reported financial statements in the 2006 10-K and the First Quarter 2006 10-Q, were themselves misleading because of the above misstatements and omissions included in the reports, and provided false comfort to the market.

**D.     The April 2008 Offering Documents Contained Materially False or Misleading Statements**

545.    On or about April 15, 2008, Wachovia conducted a public offering of about 146,000,000 shares of common stock with an offering price of about $3.5 billion. The April 2008 Offering was marketed and sold to the public through the materially false and misleading April 2008 Offering Documents.

220

546.    The April 2008 Offering was conducted pursuant to the April 2008 Offering Materials, which incorporated by express reference several of Wachovia's public filings, including its Form 10-K for the fiscal year ended December 31, 2007 (the "2007 10-K"). The 2007 10-K was signed by Defendants Thompson and Wurtz.

547.    Wachovia made materially false or misleading statements in the April 2008 Offering Documents regarding its financial results, compliance with GAAP, credit risk management and underwriting practices. These statements misinformed the public about the reliability of Wachovia's financial statements, and rendered the April 2008 Offering Documents materially untrue and misleading.

548.    Wachovia's financial statements in its 2007 10-K materially misstated and did not fairly present Wachovia's financial performance and condition, and were not presented in accordance with GAAP and applicable SEC rules and regulations. The Company's results of operations, and more specifically, but not exclusively, provision for loan losses, net income and earnings per share or EPS, were materially false and misleading as those amounts disclosed were not derived in conformity with GAAP. In particular, Wachovia's 2006 financial statements:

(a)    overstated Wachovia's loan portfolio (*i.e.*, avoided direct write-offs) and understated the allowance for credit losses, and thus these financial

statements materially understated the amounts reported as the provision for credit losses, and thereby materially overstated net income;

(b)    omitted the disclosures required by FAS 107 and FSP 94-6-1 regarding concentrations of credit risk created by its loan portfolio;

221

(c)    omitted disclosure of "information that is adequate to inform users of the general nature of the risk associated with the concentration" for concentrations in volume of business with particular customers, concentrations in revenue from certain products, and concentrations in certain markets or geographic areas;

(d)    omitted the disclosures required by FAS 107 and FSP 94-6-1 regarding significant concentrations of credit risk created by its investment portfolio which, in significant parts, was comprised of subprime-related ABS CDOs and RMBS, CMBS and consumer mortgages, leveraged finance distribution exposures, monoline-related exposures, and subprime-related CDS;

(e)    materially misstated the value and or valuation of, generally, the Company's financial position, and more specifically, but not exclusively, the investments discussed in (d) above, as those values were not derived in conformity with GAAP;

(f)    omitted the disclosures required by SOP 94-6 for significant estimates in violation of GAAP and SEC rules; and

(g)    failed to properly present VIEs, for which the Company was the primary beneficiary, as consolidated, and thereby, materially misstated the Company's financial position and results of operations, in violation of GAAP.

549.    In the April 2008 Offering Documents, Wachovia also failed to disclose material information about its underwriting practices and the quality (or lack thereof) of its mortgage portfolio. In particular nowhere in the April 2008 Offering Documents did Defendants disclose that:

(a)     the Company did not follow strict underwriting and loan-origination practices, included in its Pick-A-Pay mortgage portfolio;

(b)     a material portion of the Company's loans were made on a "low documentation" basis, such that it had no way of confirming the credit-worthiness of many loan applicants, thereby rendering the Company's reassurances about its loan-origination and underwriting practices materially inaccurate;

(c)     the Company's loan loss provisions were understated and did not properly reflect the risk facing the Company, thereby inflating Wachovia's reported income; and

(d)     the certifications signed by Defendants Thompson and Wurtz, which attested to the accuracy of the reported financial statements in the 2007 10-K, were themselves misleading because of the above misstatements and omissions included in the reports, and provided false comfort to the market.

## COUNT III

### Violations of Section 11 of the Securities Act
### In Connection With The Offerings On Behalf of the Subclass Against
### the Securities Act Defendants

550.     Plaintiffs repeat and reallege each and every allegation in ¶¶ 483-502 relating to the Securities Act claims as it fully set forth herein.  Defendants' liability under this Claim for Relief is predicated on the participation of each Defendant in conducting the Offerings pursuant to the Registration Statements, which were false and misleading due to various GAAP violations and Defendants' failure to disclose that Golden West's, and later Wachovia's, Pick-A-Pay loans were

223

highly susceptible to default. This claim for Relief does not sound in fraud. Any allegations of fraud or fraudulent conduct and/or motive are specifically excluded. For purposes of asserting this and their other claims under the Securities Act, Plaintiffs do not allege that Defendants acted with intentional, reckless or otherwise fraudulent intent.

551.    This Count is brought pursuant to Section 11 of the Securities Act against the Securities Act Defendants, on behalf of members of the Subclass who purchased or otherwise acquired the securities issued pursuant and/or traceable to the Offerings and were damaged by the acts alleged herein. This Count is based solely in strict liability and negligence.

552.    Defendant Wachovia was the issuer, within the meaning of Section 11 of the Securities Act, pursuant to the Offering Documents (including the Registration Statements) of the registered securities issued in the June 2006, June 2007, and April 2008 Offerings.

553.    As discussed above, in June, Wachovia issued $18.2 billion of its common stock to complete the Golden West acquisition.

554.    As discussed above, in April 2008, Wachovia issued and sold to investors $3.5 billion of its common stock. Defendants Wachovia Securities, Goldman Sachs, Citi, Credit Suisse, Ramirez, Utendahl and UBS were statutory underwriters for the registered securities, as admitted in the April 2008 Offering Documents.

555.    Defendant Thompson signed the Registration Statement for each of the June 2006, June 2007 and April 2008 Offerings, which were then updated and incorporated into the Offering Documents, as a senior officer of Wachovia within the meaning of Section 11 of the Securities Act.

224

556.    Defendant Wurtz signed the Registration Statement for each of the June 2006, June 2007 and April 2008 Offerings, which were then updated and incorporated into the Offering Documents, as a senior officer of Wachovia within the meaning of Section 11 of the Securities Act.

557.    The Offering Documents, including the Registration Statements, contained untrue statements of material fact and omitted to state material facts required to be stated therein or necessary to make the statements therein not misleading.

558.    Defendants issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public which were contained in the Offering Documents, which misrepresented or failed to disclose the material adverse facts alleged in connection with Plaintiffs' Securities Act claims, as set forth above.

559.    In Connection with offering the registered securities to the public and the sale of those securities, the Securities Act Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mails and a national securities exchange.

560.    As the issuer of the registered securities, Wachovia is strictly liable for the untrue statements of material fact and material omissions described herein.

561.    None of the other Securities Act Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were accurate and complete in all material respects. Had they exercised reasonable care, they would have known of the material misstatements and omissions alleged herein.

562.    Class members did not know, nor in the exercise of reasonable diligence could have known, that the Offering Documents contained untrue statements of material fact and omitted to state

225

material facts required to be stated or necessary to make the statements particularized above not misleading when they purchased or acquired the registered securities.

563.     As a direct and proximate result of Defendants' acts and omissions in violation of the Securities act, the Subclass suffered substantial damage in connection with its purchase of the registered securities issued pursuant to the Offering Documents. By reason of the conduct alleged herein, each Defendant violated Section 11 of the Securities Act.

564.     By reason of the foregoing, the Securities Act Defendants are liable to the members of the Subclass who acquired registered securities pursuant to or traceable to the Offering Documents.

565.     This claim is brought within one year after the discovery of the untrue statements and omissions, and within three years after the issuance of the Offering Documents.

## COUNT IV

### Violation of Section 15 of the Securities Act of 1933
### Against the Individual Defendants

566.     Plaintiffs repeat and reallege each and every allegation above relating to the Securities Act claims as if fully set forth herein.

567.     This cause of action is being brought pursuant to section 15 of the Securities Act of 1933, 15 U.S.C. §77o, against the Individual Defendants on behalf of members of the Offerings subclass who purchased or otherwise acquired the securities issued and or traceable to the Offerings and were damaged by the acts alleged herein. This Count is based solely on strict liability and negligence, and does not sound in fraud. Any allegations of fraud or fraudulent conduct and/or motive are specifically excluded. For purposes of asserting this and their other claims under the

226

Securities Act, Plaintiffs do not allege that Defendants acted with intentional, reckless or otherwise fraudulent intent.

568.    Each of the Individual Defendants was a control person of Wachovia with respect to the filing of the Offering Documents, *see* ¶¶ 486, 489, 494, 499, by virtue of his/her position as a senior executive officer and/or director of Wachovia.

569.    As a result, the Individual Defendants are liable under Section 15 of the Securities Act for National City's primary violations of Section 11 of the Securities Act.

### COUNT V
**Violations of Section 20A of the Exchange Act on Behalf of Lead Plaintiffs, Asserted Against Defendants Thompson, Truslow, and Wurtz**

570.    Plaintiffs repeat and reallege each of the allegations set forth above as if fully set forth herein.

571.    This Count is asserted pursuant to Section 20A of the Exchange Act against Defendants Thompson, Truslow and Wurtz on behalf of Lead Plaintiff and all members of the Class who purchased Wachovia common stock contemporaneously with any of these Defendants' sales of Wachovia stock during the class period.

572.    Each of these Defendants sold substantial numbers of shares of Wachovia common stock during the Class Period while in possession of material, adverse, nonpublic information. This conduct violated Section 20A of the Exchange Act.

573.    As set forth in the certifications Lead Plaintiff previously filed with the Court, Lead Plaintiffs purchased shares of Wachovia common stock on the same day as or close in time to sales of Wachovia common stock made by the Defendants named in this Count, while these Defendants

227

were in possession of material, adverse, nonpublic information. The sales and purchases were contemporaneous within the meaning of Section 20A of the Exchange Act.

574.   Numerous other class members also purchased Wachovia common stock contemporaneously with these Defendants' sales of stock during the Class Period based on material, adverse, nonpublic information.

575.   Accordingly, under Section 20A of the Exchange Act, the Defendants named in the Count are liable to the Lead Plaintiffs and the Class for all profits gained and losses avoided by them as a result of their stock sales.

576.   The Defendants named in this claim are required to account for all such sales and to disgorge their profits or ill-gotten gains.

## PRAYER FOR RELIEF

WHEREFORE, Lead Plaintiff prays for relief and judgment, as follows:

A.   Determining that this action is a proper class action, certifying Lead Plaintiff as Class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.   Awarding compensatory damages in favor of Lead Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.   Awarding Lead Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.   Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Lead Plaintiff hereby demands a trial by jury.

228

Dated: New York, New York
       May 28, 2010

                              **KIRBY McINERNEY LLP**

                    By:    _Ira M. Press_

                           Ira M. Press
                           Roger W. Kirby
                           825 Third Avenue, 16th Floor
                           New York, NY  10022
                           Telephone: (212) 371-6600
                           Facsimile: (212) 751-2540
                           Email: ipress@kmllp.com

                           *Plaintiffs Lead Counsel*

229