UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE WACHOVIA EQUITY SECURITIES LITIGATION | No. 08 Civ. 6171 (RJS)<br><br>**ECF Case** |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

KIRBY McINERNEY, LLP
Ira M. Press
Andrew McNeela
Sarah G. Lopez
Beverly Tse Mirza
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: 212-371-6600
Facsimile: 212-699-1194
*Lead Counsel for Lead Plaintiffs*

Dated: April 27, 2012

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF THE FACTS .................................................................................... 2

III. LEAD COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES FROM THE COMMON FUND .......................... 2

    A. Lead Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund ................................................................................................. 2

    B. The Court Should Award a Reasonable Percentage of the Common Fund to Lead Counsel ................................................................................... 3

    C. The Requested Fee is Fair and Reasonable ............................................................. 4

    D. The Goldberger Factors Support the Requested Award of Attorneys' Fees ........................................................................................................ 4

        1. Lead Counsel Has Devoted Significant Time and Labor to This Action ................................................................................................... 4

        2. The Complexity, Duration, and Magnitude of the Litigation Weigh in Favor of Approval ................................................................. 7

        3. The Risks of the Litigation Warrant Approval ......................................... 7

        4. The Quality of Representation Favors Approval of Lead Counsel's Fees .................................................................................... 9

        5. The Requested Fee in Relation to the Settlement Is Reasonable ........................................................................................... 10

        6. Public Policy Considerations ................................................................. 11

        7. The Class's Reaction to the Fee Request ............................................... 12

        8. The Lodestar Multiplier Requested by Lead Counsel is Fair and Reasonable, and the Cross-Check Supports Approval of Attorneys' Fees ..................................................................................... 12

IV. LEAD COUNSEL SHOULD BE REIMBURSED FOR REASONABLY INCURRED LITIGATION EXPENSES ........................................................................ 13

V. CONCLUSION .............................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**

*Anixter v. Home-State Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) .................................................................................................. 8

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) ............................................................................................................... 11

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ................................................................................................................. 2

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) ................................................................................................................. 8

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) .................................................................................................... 8

*Clark v. Ecolab Inc.*,
    No. 07 Civ. 8623, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) ........................................ 3

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,
    137 F.R.D. 240 (S.D. Ohio 1991) ........................................................................................ 13

*Fin. Acquisition Partners LP v. Blackwell*,
    440 F.3d 278 (5th Cir. 2006) .................................................................................................. 8

*Fogarazzo v. Lehman Bros., Inc.*,
    No. 03 Civ. 5194, 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) .......................................... 3

*Gierlinger v. Gleason*,
    160 F.3d 858 (2d Cir. 1998) .................................................................................................... 7

*Goldberger v. Integrated Res.*,
    209 F.3d 43 (2d Cir. 2000) ............................................................................................. passim

*Hicks v. Stanley*,
    No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...................................... 2

*In re Acceptance Ins. Cos. Sec. Litig.*,
    423 F.3d 899 (8th Cir. 2005) .................................................................................................. 8

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .............................................. 7

*In re Apple Computer, Inc.*,
    127 F. App'x 296 (9th Cir. 2005) ........................................................................................... 8

*In re AremisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002) .............................................................................................. 13

*In re Ashanti Goldfields Sec. Litig.*,
  No. 00 Civ. 717, 2005 WL 3050284 (E.D.N.Y. Nov. 15, 2005) ...................................... 11

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  No. 07 Civ. 61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ...................................... 8

*In re Bisys Sec. Litig.*,
  No. 04 Civ. 3840, 2007 WL 2049726 (S.D.N.Y. July 16, 2007) ...................................... 10

*In re Bristol-Myers Squibb Sec. Litig.*,
  361 F. Supp. 2d 229 (S.D.N.Y. 2005) ........................................................................ 7, 11

*In re Cardinal Health, Inc. Sec. Litig.*,
  528 F. Supp. 2d 752 (S.D. Ohio 2007) ............................................................................ 13

*In re Cendant Corp. PRIDES Litig.*,
  243 F.3d 722 (3d Cir. 2001) ............................................................................................. 13

*In re Cerner Corp. Sec. Litig.*,
  425 F.3d 1079 (8th Cir. 2005) ............................................................................................ 8

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06 Civ. 1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ...................................... 3

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ............................... 6, 12

*In re Genta Sec. Litig.*,
  No. 04 Civ. 2123, 2008 WL 2229843 (D.N.J. May 28, 2008) .......................................... 13

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................................... 12

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003) .............................................................................. 13

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009) ............................................................................ 3, 9

*In re Marsh & McLennan Cos. Sec. Litig.*,
  No. 04 Civ. 8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................. 3, 13

*In re MBIA, Inc., Sec. Litig.*,
  No. 08-cv-264-KMK, slip op. (S.D.N.Y. Dec. 20, 2011) .................................................. 10

*In re Medical X-Ray Film Antitrust Litig.*,
  No. 93 Civ. 5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ......................................... 10

*In re Merck & Co., Inc. Sec. Litig.*,
  432 F.3d 261 (3d Cir. 2005) ............................................................................................... 8

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  No. 02 MDL 1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ......................................... 6

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) .............................................................................. 7

*In re Nortel Networks Corp. Sec. Litig.*,
    539 F.3d 129 (2d Cir. 2008) ........................................................................................... 12

*In re PEC Solutions, Inc. Sec. Litig.*,
    418 F.3d 379 (4th Cir. 2005) ............................................................................................ 8

*In re Philip Servs. Corp. Sec. Litig.*,
    No. 98 Civ. 835, 2007 WL 959299 (S.D.N.Y. Mar. 28, 2007) ........................................ 3

*In re Priceline.com, Inc. Sec. Litig.*,
    Master File No. 00-Civ. 1884, 2007 WL 2115592 (D. Conn. July 20, 2007) .......... 6, 10, 11

*In re Ravisent Techs. Sec. Litig.*,
    No. 00 Civ. 1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ...................................... 13

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ..................................................................................... 12, 13

*In re Scor Holding (Switzerland) AG Sec. Litig.*,
    No. 04 Civ. 7897, slip op. (S.D.N.Y. Dec. 17, 2008) .................................................... 10

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................. 6, 7, 11, 12

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) .................................. 12

*In re Wachovia Equity Sec. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. Mar. 31, 2011) ............................................................... 9

*In re Wachovia Preferred Securities and Bond/Notes Litigation*,
    09 Civ. 6991 (RJS) (S.D.N.Y.) ........................................................................................ 4

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) .............................................................................. 3

*Jones v. Amalgamated Warbasse Houses, Inc.*,
    721 F.2d 881 (2d Cir. 1983) ............................................................................................ 6

*Key Equity Investors Inc. v. SEL-LEB Mktg, Inc.*,
    246 F. App'x 780 (3d Cir. 2007) ...................................................................................... 8

*LeBlanc–Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998) ............................................................................................ 7

*Luciano v. Olsten Corp.*,
    109 F.3d 111 (2d Cir. 1997) ............................................................................................ 6

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................................... passim

*Manners v. Am. Gen. Life Ins. Co.*,
  No. 98 Civ. 266, 1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999) .................................. 13

*Maywalt v. Parker Parsley Petroleum, Co.*,
  963 F. Supp. 310 (S.D.N.Y. 1997) ................................................................................. 10

*McDaniel v. County of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) ............................................................................................ 4

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ................................................................................................ 7, 10

*Robbins v. Koger Props. Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ....................................................................................... 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...................................................................................................... 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ....................................................................................... 3, 12

*Winer Family Trust v. Queen*,
  503 F.3d 319 (3d Cir. 2007) ............................................................................................ 8

**Statutes**

15 U.S.C. §78u-4(a)(6) ................................................................................................................ 3

Federal Rule of Civil Procedure 23(h) ......................................................................................... 1

Federal Rule of Civil Procedure 54(d)(2) .................................................................................... 1

**Other Authorities**

Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*:
  Civil 2d §1803 (2d ed. 1986) .......................................................................................... 2

**I.      INTRODUCTION**

Plaintiffs' Lead Counsel[1] respectfully submits this memorandum of law in support of its motion pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure for an award of attorneys' fees and reimbursement of litigation expenses to be paid out of the Settlement Fund, including interest at the same rate as the Settlement Fund's rate.

The proposed Settlement recovers $75 million for the Class.  This $75 million settlement is approximately in the top 10% of securities class action settlements occurring in 1996 through 2011. *See* Lead Plaintiffs' Memorandum in Support of Motion for Final Approval at 15-16 (citing Declaration of Ira M. Press in Support of Proposed Class Settlement, Plan of Allocation and Award of Attorneys' Fees and Expenses, dated April 27, 2012 ("Press Decl.") ¶ 47 and Ex. 3 at 4).[2]

Lead Counsel respectfully seeks an award of attorneys' fees in the amount of 5% of the Settlement Amount, or $3,750,000.00, plus any accrued interest, and reimbursement of $139,649.64 in litigation expenses actually incurred.

As set forth below, this request is reasonable considering the factors identified by the Second Circuit in *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000) to determine the appropriateness of a fee award.  The requested fee percentage is a fraction of the percentage fees ordinarily awarded in securities class actions that settle in the $65 million to $90 million range. *See* Press Decl. at ¶ 76, and Ex. 8.  The requested expenses are also reasonable because they are of the kind that are regularly reimbursed by courts within this Circuit and were necessary for the prosecution of the Action.

---

[1] Unless otherwise indicated, all capitalized terms herein have the same meaning as is ascribed in the Stipulation and Agreement of Settlement (the "Stipulation") filed with the Court on January 20, 2012 [D.E. 98-1].

[2] References to "Ex." or "Exs." are references to exhibits annexed to the Press Decl., unless otherwise noted.

## II.     STATEMENT OF THE FACTS

The relevant facts supporting the motion are set forth in detail in the memorandum of law submitted in support of Lead Plaintiffs' Motion for Final Approval of the Proposed Class Action Settlement and Plan of Allocation ("Settlement Brief") and the accompanying Press Declaration both filed herewith.

## III.    LEAD COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES FROM THE COMMON FUND

### A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The court's authority to reimburse the parties stems from the fact that the class action [device] is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts." 7B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*: Civil 2d §1803, at 493-94 (2d ed. 1986).  The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to prevent the unjust enrichment of persons who benefit from a lawsuit without shouldering its costs.  *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).

In addition, courts have recognized that awards of attorneys' fees from a common fund should serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and therefore to discourage future alleged misconduct of a similar nature.  *See Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

### B. The Court Should Award a Reasonable Percentage of the Common Fund to Lead Counsel

Where "an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class, as . . . in a securities class action litigation, the attorney is entitled to the reasonable value of the services performed in creating that class recovery, as set by the court." *In re Philip Servs. Corp. Sec. Litig.*, No. 98 Civ. 835, 2007 WL 959299, at *1 (S.D.N.Y. Mar. 28, 2007) (internal citations and quotations omitted). As the Second Circuit observed in *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* :

> Courts may award attorneys' fees in common fund cases under either the "lodestar" method or the "percentage of the fund" method. The lodestar method multiplies hours reasonably expended against a reasonable hourly rate. Courts in their discretion may increase the lodestar by applying a multiplier based on factors such as the riskiness of the litigation and the quality of the attorneys.

396 F.3d 96, 121 (2d Cir. 2005) (internal citation omitted).

Nonetheless, "[t]he trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Id.* (internal quotations, alterations, and citations omitted).[3] Moreover, the text of the PSLRA also supports using the percentage method, as it provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a *reasonable percentage* of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6) (emphasis added); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354-55 (S.D.N.Y. 2005) (the PSLRA expressly contemplates that "the percentage method will be used to calculate attorneys' fees in securities fraud class actions"); *Maley*, 186 F. Supp. 2d at 370

---

[3] *See also Fogarazzo v. Lehman Bros., Inc.*, No. 03 Civ. 5194, 2011 WL 671745, at *2 (S.D.N.Y. Feb. 23, 2011) ("[t]he trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation"); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06 Civ. 1825, 2010 WL 2653354, at *2 (E.D.N.Y. June 24, 2010) (same); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 480 (S.D.N.Y. 2009) (same); *see also, e.g.*, *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009 ) ("the percentage method continues to be the trend of district courts in this Circuit and has been expressly adopted in the vast majority of circuits"); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623, 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010).

(by using this language, Congress "indicated a preference for the use of the percentage method" rather than the lodestar method).

### C. The Requested Fee is Fair and Reasonable

Here, Lead Counsel is seeking a fee award that is only 5% of the Settlement Amount. A 5% fee request is well below what is typically awarded in similar actions (*see* Ex. 8) and what was awarded by this Court in the related actions. *See, e.g., In re Wachovia Preferred Securities and Bond/Notes Litigation*, 09 Civ. 6991 (RJS), slip op. (S.D.N.Y. Dec. 30, 2011) ("*Wachovia Bond Action*") (12% awarded) (Press Decl. Ex. 10). Lead Counsel worked hard and faced and overcame huge challenges in the course of 3 years, expending 5,725.25 hours prosecuting this Action. Moreover, the requested fee represents a lodestar multiplier of 1.653, which is at the low end of the range awarded in similar actions. *See* Ex. 8. We submit this is an appropriate fee, whether calculated via the "percentage-of-the-fund" or "lodestar" or methods.

### D. The Goldberger Factors Support the Requested Award of Attorneys' Fees

Under either the percentage common fund approach or the lodestar multiplier approach, the "*Goldberger* factors" ultimately determine the reasonableness of a common fund fee. *Goldberger*, 209 F.3d at 50. They include: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.*; *see also McDaniel v. County of Schenectady*, 595 F.3d 411, 417, 422-26 (2d Cir. 2010) (confirming the continued availability of both lodestar and percentage-of-the-fund methods and the applicability of the "*Goldberger* factors").

As shown below, the requested fee is reasonable on a percentage basis, and we respectfully submit should be approved in full.

#### 1. Lead Counsel Has Devoted Significant Time and Labor to This Action

Lead Counsel devoted 5,725.25 hours to this matter (excluding time devoted to preparing this submission), yielding a "lodestar" amount of $2,269,147.50. *See* Press Decl. at ¶¶ 58, 60, and Ex. 5.

### a. Lead Counsel's Hours are Reasonable

Where the lodestar is used as a cross-check, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Lead Counsel submit that the substantial time devoted to this litigation over four years reflects the intensive effort they exerted to bring this case to a favorable resolution, and was reasonable. Lead Counsel among other things:

- Investigated, drafted, and filed the Amended Complaint and the Second Amended Complaint, which involved: (i) review and analysis of Wachovia's public filings, including its SEC filings; (ii) review and analysis of news articles, press releases, announcements, and analysts' reports by and relating to Wachovia; (iii) researched law applicable to the claims asserted in the Action and the defenses thereto; (iv) consultation with damages and forensic accounting experts; and (v) consultation with professional investigators. Press Decl. at ¶¶ 18, 35;

- Opposed two motions to dismiss. *Id.* at ¶¶ 22, 56;

- Filed a Notice of Appeal of the March 31, 2011 Joint Opinion and Order dismissing this Action in its entirety with prejudice. *Id.* at ¶¶ 23, 56;

- Conducted numerous settlement meetings and telephone calls, prepared mediation statements and reply mediation statements, negotiated during one day of mediation in New York City before retired Judge Daniel Weinstein, which resulted in the parties reaching an agreement in principle to settle. *Id.* at ¶¶ 25, 27-28, 56;

- Vigorously pressed the Class' interest through the negotiation of beneficial terms for the Class in the Stipulation. *Id.* at ¶¶ 29, 57;

- Moved for Preliminary Approval which was granted on January 27, 2012. In preparation of the Preliminary Approval Motion, Lead Counsel, researched, retained, and supervised the Court-appointed Claims Administrator in all administration proceedings to date, including effectuation of Notice to the Class, publication of the Summary Notice, establishment of the Notice website, and ongoing collection and processing of Class Members' claim forms. Lead Counsel also consulted with a damages expert in devising the Plan of Allocation. *Id.* at ¶¶ 32, 57;

- Conducted confirmatory discovery which included interviewing a company representative, reviewing over 563,000 pages of documents produced by Defendants and performing additional factual and legal review and research. *Id.* at ¶¶ 32, 56.

Moreover, Lead Counsel directly supervised the day-to-day litigation work, to ensure efficiency and minimize unnecessary duplication of work. Accordingly, Lead Counsel's hours are reasonable.

### b. Lead Counsel's Hourly Rates Are Reasonable

In a lodestar analysis, the appropriate hourly rates are those rates that are "normally charged in the community where the counsel practices, *i.e.*, the 'market rate.'" *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *17 n. 6 (S.D.N.Y. July 27, 2007); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115-16 (2d Cir. 1997) ("[t]he lodestar figure should be in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation") (internal quotations omitted). Awards in comparable cases are an appropriate measure of the market value of counsel's time. *Jones v. Amalgamated Warbasse Houses, Inc.*, 721 F.2d 881, 885 (2d Cir. 1983).

The rates billed by Lead Counsel (ranging from $295 to $800 per hour), are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude. *See* Press Decl. at Exs. 5, 7.[4] Similar billing rates have been approved by other courts in this Circuit. *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484, 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007); *In re Priceline.com, Inc. Sec. Litig.*, No. 00 Civ. 1884, 2007 WL 2115592, at *5 (D. Conn. July 20, 2007).

Finally, the use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for

---

[4] "[T]he best indicator of the 'market rate' in the New York area for plaintiffs' counsel in securities class actions is to examine the rates charged by New York firms that defend class actions on a regular basis." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) (emphasis omitted).

6

inflation.[5]  Accordingly, Lead Counsel submits that its calculated lodestar of $2,269,147.50 represents the appropriate amount on which to apply a multiplier to reflect the contingent nature of the fee and risk incurred by Lead Counsel, discussed below at Sections III.D.3, 5 and 8.

### 2. The Complexity, Duration, and Magnitude of the Litigation Weigh in Favor of Approval

Courts have recognized the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006).  A securities fraud class action's magnitude and complexity must be evaluated in comparison to similarly complex cases.  *See In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 234 (S.D.N.Y. 2005).  This case was no exception.  It involved complex legal and factual issues relating to the banking industry, banking regulations, mortgage loans, CDOs, loan origination standards, assessment of loan quality, and movements in the American mortgage and real estate markets, in addition to inherently complex Securities Act issues regarding, *inter alia*, negative causation and damages. Accordingly, the complexity of this case supports the requested fee award.

### 3. The Risks of the Litigation Warrant Approval

Courts have frequently recognized that "[t]he risk of the litigation is often cited as the first, and most important, *Goldberger* factor." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 361 (E.D.N.Y. 2010) (internal citation and quotations omitted).  As the Second Circuit has observed, "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended."

---

[5] *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989)  (endorsing "an appropriate adjustment for delay in payment" by applying "current" rate); *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (rates "should be 'current rather than historic' ") (citation and internal quotations omitted); *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (current rates "should be applied in order to compensate for the delay in payment"); *Telik*, 576 F. Supp. 2d at 589 (same); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) (same).

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) (citation omitted).

Lead Counsel undertook the representation of Lead Plaintiffs and the Class in this Action on a wholly contingent basis, investing substantial time and funds to prosecute this Action, without any guarantee of compensation or of recovering out-of-pocket expenses.  There is a real risk of no recovery in complex securities litigation cases such as this one.  In the past few years, circuit courts have been upholding dismissals of securities fraud cases and as a result, counsel who was prosecuting those cases received no compensation even after spending thousands of hours.[6]  Moreover, even plaintiffs who succeeded at trial have found their judgments overturned on post-trial motions[7] or appeal.[8]

While Lead Counsel believes that the evidence confirms Defendants' wrongful conduct, Defendants steadfastly denied any wrongdoing. *See* Press Decl. ¶¶ 14, 39-40.  In any event, substantial questions concerning loss causation and damages existed at the time the Settlement was achieved, creating a substantial risk that in the absence of a settlement, the Class' recovery would have been commensurately smaller, or nonexistent.

---

[6] *See, e.g.*, *Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007); *Key Equity Investors Inc. v. SEL-LEB Mktg, Inc.*, 246 F. App'x 780 (3d Cir. 2007); *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278 (5th Cir. 2006); *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261 (3d Cir. 2005); *In re Cerner Corp. Sec. Litig.*, 425 F.3d 1079 (8th Cir. 2005); *In re Apple Computer, Inc.*, 127 F. App'x 296 (9th Cir. 2005); *In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379 (4th Cir. 2005); *In re Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d 899 (8th Cir. 2005).

[7] *See, e.g.*, *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07 Civ. 61542, 2011 WL 1585605, at *6, *20 (S.D. Fla. Apr. 25, 2011) (although the jury found that certain statements violated section 10(b) of the Exchange Act, the court entered judgment as a matter of law in favor of the defendants as to all claims and statements, on the ground that plaintiffs had failed to present evidence from which the jury could reasonably find loss causation).

[8] *See, e.g., Robbins v. Koger Props. Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing district court's denial of defendant's Federal Rule of Civil Procedure 50(a) motion after trial; reversing $81 million judgment in plaintiffs' favor and entering judgment in favor of defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation and remanding for new trial in light of intervening Supreme Court decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994)).

Furthermore, the risk inherent in taking this matter on a contingency fee basis is demonstrated by the progress of this case to date. On March 31, 2011, the Court entered its Joint Opinion and Order, *inter alia*, dismissing this Action in its entirety with prejudice. *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326 (S.D.N.Y. Mar. 31, 2011) (the "Opinion"). At that juncture, Lead Plaintiffs, the proposed class and Lead Counsel faced a very real likelihood that they would be unable to obtain any recovery from Defendants. Only after retaining the assistance of a highly skilled mediator, were the parties able to settle this Action for $75 million on September 8, 2011. This Settlement is still subject to the Court's final approval. At this time, Lead Counsel remains uncompensated for the substantial investment of time put into this case. None of Lead Counsel's out-of-pocket expenses have been reimbursed. Uncompensated expenditures of time and money of this magnitude can severely impact negatively firms of the relatively small size involved here. Thus, this case clearly involved substantial risks that warrant the requested fee award.

### 4. The Quality of Representation Favors Approval of Lead Counsel's Fees

Lead Counsel also submits that the quality of its representation supports the reasonableness of the requested fee.

Given the number and complexity of the factual and legal issues presented by this Action, this case required the expertise and capacity that Lead Counsel brought to bear. Kirby McInerney LLP has many years of experience in complex federal civil litigation, particularly the litigation of securities and other class actions. *See* Press Decl. Ex. 4. We believe that the Settlement is attributable in significant part to the diligence, determination, and reputation of Lead Counsel.

Another consideration for assessing the quality of services rendered by Lead Counsel is the quality of the opposing counsel in the case. *See Maley*, 186 F Supp. 2d at 373. The Defendants were represented by Fried Frank Harris Shriver & Jacobson LLP, one of the most prominent national defense firms and Underwriter Defendants were represented by Sidley Austin LLP, another highly prominent firm. *See e.g.*, *In re Initial Public Offering Sec. Litig.*, 671 F.

9

Supp. 2d 467, 510 (S.D.N.Y. 2009) (finding plaintiffs' counsel's prosecution against "such formidable opponents . . . an impressive feat"). Accordingly, Plaintiffs and all defendants were well represented.

### 5.      The Requested Fee in Relation to the Settlement Is Reasonable

Regardless of which method a court uses to award attorneys' fees, the award must be reasonable under the circumstances of the particular case. *See Goldberger*, 209 F.3d at 47. The Supreme Court has held that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).

Here, the 5% fee requested by Lead Counsel in this Action is well below the range of percentage fees awarded in this Circuit for comparable recoveries. Courts in the Second Circuit frequently award percentage fees in excess of 20% of the common fund in large class action settlements.[9] Moreover, in comparable settlements since 2008 ranging between $65-90 million, the percentage fees awarded in those cases range from 16.4% to 33.3%. *See* Press Decl. Ex. 8. Finally, in the Wachovia Bond Action, this Court awarded a 12% fee award. *See* Press Decl. Ex. 11. In light of the percentage amount of the vast majority of fee awards, the requested 5% fee is completely reasonable.

---

[9] *See e.g., In re MBIA, Inc., Sec. Litig.*, No. 08 Civ 264, slip op. at 2 (S.D.N.Y. Dec. 20, 2011) (awarding fee representing 22% of the nearly $15 million settlement) (Ex. 9); *In re Scor Holding (Switzerland) AG Sec. Litig.*, No. 04 Civ. 7897, slip op. at 2 (Dkt. No. 265) (S.D.N.Y. Dec. 17, 2008) (awarding fee representing 20% of the nearly $17 million settlement); *In re Priceline.com*, 2007 WL 2115592, at *4-5 (approving fee award of 30% of $80 million settlement); *In re Bisys Sec. Litig.*, No. 04 Civ. 3840, 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (awarding 30% fee on $65 million settlement); *Maley*, 186 F. Supp. 2d at 374 (awarding 33.3% of settlement fund valued at more than $11.5 million *In re Medical X-Ray Film Antitrust Litig.*, No. 93 Civ. 5904, 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7, 1998) (finding a fee of 33.33% of a $40 million settlement reasonable and "well within the range accepted by courts in this circuit"); *Maywalt v. Parker Parsley Petroleum, Co.*, 963 F. Supp. 310, 313 (S.D.N.Y. 1997) (approving a fee of approximately 33.4% of the settlement fund of $8.25 million, and recognizing 50% as the upper limit in federal courts for fees and expenses).

### 6. Public Policy Considerations

"'A strong public policy concern exists for rewarding firms for bringing successful securities litigation.'" *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 593 (S.D.N.Y. 2008) (quoting *In re Ashanti Goldfields Sec. Litig.*, No. 00 Civ. 717, 2005 WL 3050284, at *5 (E.D.N.Y. Nov. 15, 2005)). The Supreme Court has recently reaffirmed its longstanding recognition of the importance of private class actions to the enforcement of the securities laws. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318-19 (2007) (private securities fraud actions provide "'a most effective weapon in the enforcement'" of securities laws and are "'a necessary supplement to Commission action'"); *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985). District courts in the Second Circuit have also recognized private securities class actions as encouraging enforcement of securities laws.[10] "Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *Telik*, 576 F. Supp. 2d at 585 (citing *Maley*, 186 F. Supp. 2d at 369). Accordingly, Lead Counsel respectfully submits that this Court should find that public policy favors granting the Fee and Expense Request in full.

---

[10] *Telik*, 576 F. Supp. 2d at 585; *In re Priceline.com,* 2007 WL 2115592, at *5 (finding award percentage encourages enforcement of securities laws and supports "attorneys' decisions to take these types of cases on a contingent fee basis"); *In re Bristol–Myers Squibb*, 361 F. Supp. 2d at 236 ("[P]ublic policy supports granting attorneys' fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC").

### 7. The Class's Reaction to the Fee Request

In addition to the criteria set forth in *Goldberger*, courts in the Second Circuit consider the reaction of the Class to the fee request in deciding how large a fee to award. *See Veeco*, 2007 WL 4115808, at *10; *Maley*, 186 F. Supp. 2d at 374; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) ("The class's reaction to the fee request supports approval of the requested fees").

Thus far, no Class Members have objected to the fee request. If any objections are received prior to the deadline for such filings (May 12, 2012), Lead Counsel will submit a response. Such responses are due May 25, 2012.

### 8. The Lodestar Multiplier Requested by Lead Counsel is Fair and Reasonable, and the Cross-Check Supports Approval of Attorneys' Fees

The Second Circuit also permits courts to utilize a lodestar "crosscheck" to further test the reasonableness of a percentage-based fee. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paraprofessional by their current hourly rate, and totaling the amounts for all timekeepers. Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.* (citing *Goldberger*, 209 F.3d at 47).

The requested fee here represents a 1.653 multiplier, which is within the range of multipliers that are typically approved in this Circuit.[11] The multiplier is also within the range of multipliers that have been recently awarded in securities class actions settling in the range of $65

---

[11] *See, e.g., In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 134 (2d Cir. 2008) (holding that a $34 million fee, representing a 2.04 multiplier was "toward the lower end of reasonable fee awards"); *Wal-Mart*, 396 F.3d at 123 (multiplier of 3.5 approved on appeal); *Telik*, 576 F. Supp. 2d at 590 (finding a multiplier of 1.6 "well within range awarded by courts in this Circuit"); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier); *In re EVCI*, 2007 WL 2230177, at *17 (finding a multiplier of 2.43 in a lodestar cross-check to confirm the reasonableness of the requested attorneys' fees).

million to $90 million. *See* Press Decl. Ex. 8 (showing a multiplier range from 0.69 to 4.14). Moreover, the multiplier here is well within the range approved in other circuits.[12] Accordingly, Lead Counsel's request is well within the range of reasonableness, particularly in light of the substantial risks associated with this Action.

## IV. LEAD COUNSEL SHOULD BE REIMBURSED FOR REASONABLY INCURRED LITIGATION EXPENSES

Lead Counsel also requests reimbursement in the amount of $139,649.64 for out-of-pocket expenses reasonably and necessarily incurred in connection with the prosecution of this Action. The Declaration attests to the accuracy of Lead Counsel's expenses and it is well established that expenses are properly recovered by counsel. *See, e.g In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (citations omitted).

Because the expenses were incurred with no guarantee of recovery, Lead Counsel had a strong incentive to keep them at a reasonable level, and did so. Lead Counsel made a concerted effort to avoid unnecessary expenditures and economized wherever possible. Most of the expenses arose out of professional services rendered by experts and court reporters, along with the costs of document production, legal research, and other expenses directly related to the prosecution of this Action. These expenses were all necessarily incurred in connection with this litigation and, we submit, are reasonable. *See* Press Decl. ¶ 80, Ex. 6; *see also In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *20 (S.D.N.Y. Dec. 23, 2009) (granting reimbursement of almost $8 million in expenses incurred over 5 years);

---

[12] *See, e.g.*, *In re Genta Sec. Litig.*, No. 04 Civ. 2123, 2008 WL 2229843, at *11 (D.N.J. May 28, 2008) (lodestar multiplier of 3.72); *In re Ravisent Techs. Sec. Litig.*, No. 00 Civ. 1014, 2005 WL 906361, at *12 (E.D. Pa. Apr. 18, 2005) (lodestar multiplier of 3.1); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (holding that a lodestar multiplier of three would be reasonable and appropriate); *In re Rite Aid,* 362 F. Supp. 2d at 588 (finding multipliers of four fairly common); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (lodestar multiplier of 4.3); *In re Cardinal Health, Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (performing lodestar cross-check and stating, "[m]ost courts agree that the typical lodestar multiplier in a large post-PSLRA securities class actions ranges from 1.3 to 4.5"); *Manners v. Am. Gen. Life Ins. Co.*, No. 98 Civ. 266, 1999 WL 33581944, at *31 (M.D. Tenn. Aug. 11, 1999) (observing that multipliers in similar litigations "have ranged from 1-4 and have reached as high as 10"); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (noting multipliers of 4 and 5 in other cases).

*Priceline.com,* 2007 WL 2115592, at *6 (approving expenses of $1.39 million over seven years).[13]

## V. CONCLUSION

For the reasons set forth above, Lead Counsel submits that this fee request is fair and reasonable. It satisfies the guidelines of *Goldberger*, especially in light of the complicated nature of the case, the time, effort, and skill required to litigate this Action and reach this Settlement. Accordingly, for the foregoing reasons, Lead Counsel respectfully requests that this Court enter the accompanying proposed Order and Final Judgment awarding: (1) attorneys' fees of 5% of the Settlement Amount of $75,000,000 or $3,750,000.00, plus any accrued interest; and (2) reimbursement of Lead Counsel's litigation expenses in the amount of $139,649.64, plus any accrued interest.

Dated: April 27, 2012

Respectfully Submitted,

KIRBY McINERNEY LLP

By: /s/ Ira M. Press
Ira M. Press
Andrew S. McNeela
Sarah G. Lopez
Beverly Tse Mirza
825 Third Avenue, 16th Floor
New York, NY 10022
Tel: (212) 371-6600
Fax: (212) 751-2540
*Lead Counsel for Lead Plaintiffs*

---

[13] The request for reimbursement does not include any costs the Claims Administrator has or will incur in connection with claims processing and the eventual distribution of the settlement proceeds.